At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the _18_ day of
August 2009

PRESENT:  HON. Troy K. Webber
                             Surrogate

In the Matter of the Application of

ORLY GENGER, as a person interested,
for the removal of DALIA GENGER
as Trustee of the Orly Genger 1993 Trust
pursuant to SCPA §711 (11)

File No.: 0017/2008

**SUPPLEMENTAL ORDER TO
SHOW CAUSE WITH
TEMPORARY RESTRAINTS**

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009,

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993

Trust, show cause before Surrogate Troy K. Webber at the Surrogate's Court, ~~sitting at 60 Centre~~
_31 Chambers Street,_ ~~Street~~, Room ~~300~~ _509_, New York, New York, on the _8th_ day of _September_ 2009 at 10:00 o'clock

in the forenoon of that day or as soon thereafter as counsel may be heard why an order should

not be entered:

(a)    Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any other assets which may be remaining in the Orly Trust;

(b) Removing Respondent as Trustee of the Orly Trust for breaching her fiduciary duties, wasting and dissipating the assets of the Orly Trust and imprudently managing and injuring the property committed to her charge;

(c) Surcharging Respondent in the amount of the loss of the value of Orly's interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d) Appointing Michael D. Grohman, Esq. as successor trustee;

(e) Waiving any requirement that Petitioner post an undertaking; and

(f) Granting Petitioner such further relief deemed necessary or proper. *and/or her counsel*

ORDERED that, during the pendency of this proceeding, Respondent, ~~her agents and all~~ *are required to give notice by overnight mail to Petitioners Counsel of any 1) offer to purchase the Orly Trusts 19.3% interest in TPI w/in 10 days of receiving such offer and 2) act by Respondent, her agents and all other persons acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell or otherwise dispose of the Orly Trusts interest in TPI at least 10 days prior to such act;* ~~other persons acting on her behalf are temporarily restrained from withdrawing, selling disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly Trust's 19.43% interest in TPI and other assets remaining in the Orly Trust; and it is further~~ *and it is further*

ORDERED that service of a copy of this Order and the papers upon which it is based shall be served on David Parnes, in his capacity as Trustee of the Sagi Genger 1993 Trust, by overnight mail service at his residence, located at 29 Elkachi Street, Tel Aviv, Israel 69497, ~~or~~ *on or before August 21, 2009 and on ~~such~~ Pedowitz & Meister, LLP, attorneys* ~~any other address at which she can be located, on or before August __, 2009.~~ *for Dalia Genger, as trustee of the Orly Genger 1993 Trust by personal delivery or overnight m ~~ail~~ ENTER on or before August 21, 2009.*

*TK/*

Surrogate

At the Surrogate's Court held in and for the County
of New York, at the Courthouse, 31 Chambers
Street, New York, New York on the ⎯1⎯ day of
~~June~~ 2009
July

New York County Surrogate's Court
DATA ENTRY DEPT.
Date: July 1, 2009

PRESENT: HON. Troy K. Webber
_____
Surrogate

| | |
|---|---|
| In the Matter of the Application of<br><br>ORLY GENGER, as a person interested,<br>for the removal of DALIA GENGER<br>as Trustee of the Orly Genger 1993 Trust<br>pursuant to SCPA §711 (11) | File No.: 0017/2008<br><br><br>**ORDER TO SHOW CAUSE<br>WITH TEMPORARY<br>RESTRAINTS** |

On reading and filing the annexed Verified Petition of Petitioner, ORLY GENGER, and

the exhibits, verified on the 22nd day of June, 2009, and the memorandum of law in support of

Petitioner's Verified Petition dated June 22, 2009,

LET the Respondent, DALIA GENGER, the sole fiduciary of the Orly Genger 1993

Trust, show cause before Surrogate Troy K. Webber at the Surrogate's Court, ~~31 Chambers~~ Sitting at 60 Centre

~~Street,~~ Room 300 New York, New York, on the 5th day of ~~June~~ August 2009 at 10:00 o'clock in the forenoon of that

day or as soon thereafter as counsel may be heard why an order should not be entered:

(a)      Enjoining and restraining Respondent, her agents and all other persons

acting on her behalf from withdrawing, selling disposing, transferring, assigning, removing,

pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly

Trust's 19.43% interest in Trans-Resources, Inc., ("TRI"), a closely held corporation, founded by

Arie Genger, Petitioner's father and Respondent's former husband of Respondent and any other

assets which may be remaining in the Orly Trust;

(b)     Removing Respondent as Trustee of the Orly Trust for breaching her

fiduciary duties, wasting and dissipating the assets of the Orly Trust and imprudently managing

and injuring the property committed to her charge;

(c)     Surcharging Respondent in the amount of the loss of the value of Orly's

interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d)     Appointing Michael D. Grohman, Esq. as successor trustee;

(e)     Waiving any requirement that Petitioner post an undertaking; and

(f)     Granting Petitioner such further relief deemed necessary or proper.

ORDERED that, during the pendency of this proceeding, Respondent, ~~her agents and all~~ [and/or her counsel]
are required to give notice by overnight mail to petitioners counsel of any 1) offer
~~other persons acting on her behalf are temporarily restrained from withdrawing, selling,~~
to purchase the Orly Trust's 19.3% interest in TRI within 10 days of receiving
~~disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering,~~
such offer and 2) act by Respondent, her agents and all other persons
~~liening, hypothecating or secreting the Orly Trust's 19.43% interest in TRI and other assets~~
acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell or
~~remaining in the Orly Trust; and it is further~~
otherwise alter the Orly Trust's interest in TRI at least 10 days prior to such act
and it is further
ORDERED that service of a copy of this Order and the papers upon which it is based

shall be served on Respondent by personal service at either her residence, located at 200 East

65th Street, Apt. 32W, New York, New York 10021, or any other address at which she can be

located, on or before ~~June~~ July 7, 2009; and it is further

ORDERED, that any responsive papers shall be filed by
July 29, 2009.

~~ENTER:~~

Surrogate

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

<table>
<tr>
<td>
In the Matter of the Application of ORLY<br>
GENGER, as a person interested, for the<br>
removal of DALIA GENGER as Trustee of the<br>
ORLY GENGER 1993 Trust Pursuant to<br>
SCPA § 711 (11)
</td>
<td>
<b>ATTORNEY AFFIRMATION<br>
AMENDING PETITION FOR<br>
REMOVAL OF DALIA<br>
GENGER AS TRUSTEE</b><br><br>
<b>FILE NO.: 0017/2008</b>
</td>
</tr>
</table>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JUDITH E. SIEGEL-BAUM, an attorney duly admitted to practice law in the State of

New York, affirms the following under penalty of perjury:

1.      I am a member of the law firm Cozen O'Connor, attorneys for the Petitioner

herein.

2.      I make this affirmation in order to amend paragraph 1. of the Verified Petition for

Removal of Dalia Genger as Trustee and Request for Temporary Restraining Order, dated and

verified June 22, 2009, to read as follows:

> Orly, domiciled at 1965 Broadway, Apt. 22G, New York, New York
>
> 10024, is the current beneficiary of the Orly Genger 1993 Trust dated December
>
> 13, 1993 (the "Orly Trust") (annexed hereto as <u>Exhibit A</u>). Dalia Genger,
>
> Residing at 200 East 65th Street, Apt. 32W, New York, New York  10021
>
> ("Respondent" or "Dalia"), Orly's mother, is the current sole Trustee of the Orly
>
> Trust, and was appointed successor Trustee in January 2008.  The Orly Trust
>
> provides for discretionary payments of income and principal to Orly during her
>
> lifetime with the remainder to be distributed to her descendants, per stirpes.  If

Orly dies leaving no descendants, the remainder of the trust property is to be

distributed to the Sagi Trust.  David Parnes, residing at 29 Elkachi Street, Tel

Aviv, ISRAEL  69497, is the current Trustee of the Sagi Trust.

Dated: New York, New York
        August _14_, 2009

Judith E. Siegel-Baum

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| In the Matter of the Application of ORLY GENGER, as a person interested, for the removal of DALIA GENGER as Trustee of the ORLY GENGER 1993 Trust Pursuant to SCPA § 711 (11) | **VERIFIED PETITION FOR REMOVAL OF DALIA GENGER AS TRUSTEE AND REQUEST FOR TEMPORARY RESTRAINING ORDER**<br><br>**FILE NO.: 0017/2008** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TO THE SURROGATE'S COURT, STATE OF NEW YORK
COUNTY OF NEW YORK

Petitioner, Orly Genger ("Petitioner" or "Orly"), by her attorneys Cozen O'Connor, respectfully alleges as her Verified Petition for Removal of Dalia Genger as Trustee:

1.     Orly, domiciled at 1965 Broadway, Apt. 22G, New York, New York 10024, is the current beneficiary of the Orly Genger 1993 Trust dated December 13, 1993 (the "Orly Trust") (annexed hereto as Exhibit A).  Dalia Genger, residing at 200 East 65th Street, Apt. 32W, New York, New York 10021 ("Respondent" or "Dalia"), Orly's mother, is the current sole Trustee of the Orly Trust, and was appointed successor Trustee in January 2008.

2.     Based upon the allegations contained herein, Petitioner requests that this Court provide the following relief:

(a)     Enjoining and restraining Respondent, her agents, and all other persons acting on her behalf from withdrawing, selling, disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering, liening, hypothecating, or secreting the Orly Trust's 19.43% interest in Trans-Resources, Inc. ("TRI"),[1] a closely held corporation, founded

---

[1] TRI is the parent company of several subsidiaries that provide growers with specialty fertilizer and industrial chemicals, including Haifa Chemicals Ltd., Na-Churs Alpine Solutions, Plant Products Co. Ltd., and Elgo Irrigation Co.

by Arie Genger ("Arie"), Petitioner's father and Respondent's former husband, and any other assets which may be remaining in the Orly Trust. The Orly Trust's TRI shares are in imminent danger of being sold by Respondent and her son, Orly's brother, Sagi Genger ("Sagi"), for the purpose of benefiting Sagi Genger and presumably Respondent, and depleting and denuding the value of Orly's Trust;

(b)     removing Respondent as Trustee of the Orly Trust for breaching her fiduciary duties, wasting and dissipating the assets of the Orly Trust, and imprudently managing and injuring the property committed to her charge. As will be demonstrated herein, Respondent has conspired with, and participated in the diversion of trust assets to, Sagi, who underhandedly sold without any objection from Respondent, the Orly Trust's indirect interest in TPR Investment Associates Inc. ("TPR"), a closely held family-owned corporation.

(c)     surcharging Respondent in the amount of the loss of the value of Orly's interest in TPR as determined by the Court and awarding the Petitioner costs and attorneys' fees;

(d)     appointing Michael D. Grohman, Esq., as successor trustee;

(e)     waiving any requirement that Petitioner post an undertaking; and

(f)     granting Petitioner such further relief deemed necessary or proper.

3.     To assist the Court in perceiving the severity of Respondent's conduct and the urgency of the provision of extraordinary relief, the following is an overview of the facts supporting this Petition.

## I.     OVERVIEW

4.     Arie and Dalia were married on July 23, 1967, in a ceremony held in Israel. In 2004, however, their marriage ended in divorce. Prior to 1993, at which time Dalia and Arie were married, Dalia and Arie formed D & K LP ("D & K"), a family-owned limited partnership

whose name was shorthand for "Dalia and Kids." At the time of its formation, Dalia, the general partner, held a 4% interest, and Orly and Sagi, the limited partners, each held a 48% interest.

5. In December 1993, Dalia and Arie also established identical irrevocable *inter vivos* trusts for the benefit of each of their children: the Orly Trust and the Sagi Genger 1993 Trust (the "Sagi Trust"). For estate-planning purposes, Dalia and Arie funded each trust with a $600,000 gift. The intent behind the trusts was to ensure that both children received property of equal value. Sash A. Spencer and Lawrence M. Small were named Co-Trustees of both trusts and remained Co-Trustees until the Genger's divorce. After the Trusts were funded, Orly and Sagi each assigned their 48% interests in D & K to their Trusts.

6. At the same time in December 1993, D & K purchased 240 shares of common stock (constituting 49% of the outstanding shares) in TPR for $10,200,000. The shares were purchased with $600,000 from each of the Orly Trust and the Sagi Trust and $50,000 from Dalia, totaling $1,250,000, and the balance was satisfied with a recourse $8,950,000 promissory note (the "Note") (a copy of which is annexed hereto as Exhibit B). Pursuant to the Note, principal, together with accrued interest, was to be repaid by D & K in annual installments over ten years. The Note was secured by a pledge of the 240 TPR shares owned by D & K. Each of the Trusts and Dalia assumed liability on the Note in proportion to its/her direct interest in D & K. Accordingly, each of the Orly and Sagi Trusts assumed a 48% liability on the Note and acquired a 23.52% indirect interest in TPR and Dalia assumed a 4% liability on the Note and a 1.96% indirect interest in TPR. Payments were made on the Note until 1999, at which time D & K stopped making payments with the implied consent of the interested parties.

7. At the time of the above-described transaction, Arie owned the remaining 51% of TPR, which held investments in various securities, including TRI common stock, as well as its

interest in the Note. As of March 30, 2001, TPR held a 52.85% interest in TRI. The remaining minority interest in TRI (47.15%) was owned by various entities controlled directly and indirectly by Jules and Eddie Trump (the "Trump Group").

8.      On October 26, 2004, Dalia and Arie entered into a Stipulation and Agreement of Settlement as a final settlement of their divorce (the "Settlement Agreement") (annexed hereto as Exhibit C). Pursuant to the Settlement Agreement, Dalia received, *inter alia*, Arie's 51% interest in TPR and retained her 4% interest in D & K. TPR's 52.85% interest in TRI was transferred to Arie and the Trusts as follows: (i) 13.99% to Arie, (ii) 19.43% to the Orly Trust, and (iii) 19.43% to the Sagi Trust. The Orly Trust and the Sagi Trust each granted Arie an irrevocable lifetime voting proxy over their TRI shares (annexed hereto as Exhibit D). Therefore, after October 29, 2004, Arie and the two Trusts held a controlling interest in TRI, and TPR no longer owned any TRI common stock.

9.      In connection with the divorce settlement, Dalia took measures to cede management of D & K and TPR to her son Sagi. On October 21, 2004, days before signing the Settlement Agreement, Dalia and Sagi formed D & K GP LLC ("D & K GP"), whose sole purpose was to act as the general partner of D & K. Dalia exchanged her 4% interest in D & K and $1.00 for a 99% membership interest in D & K GP. Sagi purchased a 1% membership interest in D & K GP for $1.00. Pursuant to the Limited Liability Agreement of D & K GP (annexed hereto as Exhibit E), Sagi was given the power to select a manager of D & K GP whose function would be to control D & K's assets. Sagi selected himself to act as manager; thus, Dalia effectively handed Sagi the authority to control D & K and its assets. Also, by forming D & K GP, Dalia and Sagi shielded themselves from any personal liability stemming from D & K, including any personal liability related to the Note. This left the Trusts solely liable on the Note.

10.     On October 30, 2004, Dalia entered into a shareholder agreement with TPR that provided for the management of TPR. Specifically, pursuant to the shareholder agreement (annexed hereto as Exhibit F), D & K, which owned 49% of TPR, was given authority to appoint one board member to the TPR board. Sagi, as the managing partner of D & K, appointed himself as a board member of TPR. As the majority owner of TPR, Dalia was named as the other board member. In addition, the shareholder agreement appointed Sagi as Chief Executive Officer ("CEO") of TPR. Accordingly, Dalia essentially ceded control of TPR to Sagi, just as she had done with D & K.

11.     Below, for the Court's convenience, is a side-by-side summary of Arie's, Dalia's, the Orly Trust's, and the Sagi Trust's interests in TPR before and after Arie's and Dalia's divorce.[2]

### TPR OWNERSHIP
### BEFORE AND AFTER DIVORCE

#### PERCENTAGE

| Person | TPR Before | TPR After |
|---|---|---|
| Arie Genger | 51.00% | 0% |
| Dalia Genger | 1.96% | 52.96% |
| Orly Trust | 23.52% | 23.52% |
| Sagi Trust | 23.52% | 23.52% |
| **TOTAL** | **100%** | **100%** |

---

[2] For the Court's convenience, the chart annexed hereto as Exhibit G provides a summary of Arie's, Dalia's, the Orly Trust's, and the Sagi Trust's ownership interests in TPR, TRI, and D & K as of October 26, 2004 – i.e., the date that Arie and Dalia executed the Settlement Agreement.

12.     In connection with the Settlement Agreement, Dalia required that the Trustees of the Orly Trust and the Sagi Trust (Messrs. Sash and Small) resign and be replaced with friends of Sagi. Numerous successor trustees were appointed to the Orly Trust and the Sagi Trust, all of whom were affiliated with Sagi in one way or another. David Parnes and Eric Gribetz (Sagi's longtime friends) and Leah Fang (Sagi's sister-in-law) were appointed as successor trustees to the Orly Trust, and Messrs. Parnes and Gribetz, Rochelle Fang (Sagi's mother-in-law), and Mr. Parnes again, were appointed successor trustees of the Sagi Trust. In January 2008, Dalia was appointed successor trustee of the Orly Trust, despite Orly's objection. By that time, as a result of Dalia's granting him control of TPR and D & K, and through the appointment of his friends and relatives as successor trustees of the Trusts, Sagi effectively had obtained control over the assets held by all of D & K, TPR, the Sagi Trust, and the Orly Trust.

13.     On August 2, 2006, Sagi, as part of his managerial role in D & K GP, D & K, and TPR, assigned the Note – which then had an approximate value of $11,000,000 as a result of accrued interest – to Mr. Parnes for only $12,000. (A copy of the Memorandum dated August 2, 2006, assigning the Note is annexed hereto as Exhibit H.) The assignment stated that D & K "denied enforceability of the Note" (see Exhibit H annexed hereto), which presumably is why it was "sold" for $12,000. Sagi signed the assignment on behalf of both TPR, as the maker, and D & K, as the holder. Dalia was copied on the memorandum assigning the note, but neither Orly, the Orly Trust, nor the then-Trustee of the Orly Trust received copies of the memorandum. At the time of this assignment, Mr. Parnes was acting as trustee of both the Orly Trust and the Sagi Trust. Shortly after the assignment, Mr. Parnes resigned as Trustee of the Orly Trust in recognition of the inherent conflict he faced in that role.

14.     Sometime in 2007, Sagi sold a 2% interest in TPR to Rochelle Fang. The cost of the 2% interest was based upon a bogus valuation of TPR at $50,000,000. At the time of the sale, TPR's assets were worth between approximately $11,000,000 and $12,000,000, plus the value of the Note. This sale effectively stripped Dalia of her majority interest in TPR giving Sagi unfettered control of TPR, in addition to his control of D & K and D & K GP. In January 2008, when Dalia was appointed successor trustee of the Orly Trust, she completely divested herself of the balance of her TPR shares. Dalia has not informed either the Court or Orly as to when she transferred her TPR interest.

15.     On August 22, 2008, unbeknownst to Orly, Rochelle Fang, who had been appointed Trustee of the Sagi Trust, attempted to sell the Sagi Trust's 19.43% interest in TRI to the Trump Group, who already owned 47.15% of TRI's outstanding shares, for $26,715,416. This sale purportedly transferred control of TRI from Arie to the Trump Group who thereafter purported to hold 66.58% of TRI's outstanding common stock.[3] In connection with the supposed sale, Sagi and David Parnes were given seats on TRI's board of directors. If given effect, this purported sale, which was consummated after Dalia was appointed successor trustee of the Orly Trust, would dilute and diminish the value of the Orly Trust's interest in TRI.

16.     Dalia, who had notice of the supposed sale, made no effort to prevent the sale or to protect the value of the Orly Trust's interest in TRI. Fearing that Dalia would continue to neglect her duty to protect the Orly Trust's assets, on January 10, 2009, Petitioner wrote a letter (annexed hereto as Exhibit I) to her mother stating that "for now, and until further notice, it is my

---

[3] The validity of the sale is at issue in litigation currently pending in Delaware Chancery Court. The parties to the action are Arie Genger, TRI, and various entities affiliated with the Trump Group. The Orly Trust has not appeared in the action. In that action, the Trump Group claims to have bought the shares either from the Sagi Trust or from TPR – thus, the approximately $27 million purportedly paid by the Trump Group either belongs to the Sagi Trust or to TPR, depending on the outcome of the litigation in Delaware.

strong desire to retain all of the shares of TRI that are currently in the Orly Trust, and I direct

you not to sell them." Dalia refused to agree not to dispose of the TRI shares.

## II.     THE EVIDENCE DISCOVERED BY PETITIONER ON JUNE 1, 2009, REQUIRES INJUNCTIVE RELIEF AND THE IMMEDIATE REMOVAL OF DALIA AS TRUSTEE

17.     In February 2008, Orly applied to this Court to designate a Trustee, or in the

alternative to appoint a special trustee, claiming that Dalia and all of the preceding successor

trustees of the Orly Trust were improperly appointed and had no authority to act on behalf of the

Orly Trust. Orly also alleged wrongful dealings by Dalia as Trustee of the Orly Trust. In

denying the application without prejudice, this Court stated that Orly had made allegations

without sufficient supporting evidence and suggested that Orly commence an SCPA § 2201

proceeding to obtain the necessary evidence and then renew her application. (A copy of the

Court's decision is annexed hereto as Exhibit J.)

18.     On May 14, 2009, as a prerequisite to the SCPA § 2201 application, Orly's

counsel sent Dalia Genger a letter (annexed hereto as Exhibit K) requesting documents related to

the Orly Trust's assets. Soon thereafter, Orly's counsel was notified that Dalia had retained

Robert A. Meister, Esq., of Pedowitz & Meister, LLP, and Orly's counsel therefore forwarded a

copy of the May 14th letter to Mr. Meister.

19.     On June 1, 2009, Mr. Meister responded to Orly's document demand by advising

Orly's counsel that the Orly Trust no longer owned any interest in TPR. According to the letter,

Sagi, acting as CEO of TPR, had foreclosed on the Note and had sold D & K's 240 shares of

TPR for $2,220,000. (A copy of the Letter dated June 1, 2009, is annexed hereto as Exhibit L.)

Before that time, Dalia had neither advised nor notified Orly that Sagi had foreclosed on the

Note,[4] nor advised Orly that Sagi had sold the TPR shares at auction. Thus, upon receipt of Mr. Meister's letter, Orly learned for the first time that:

(a)     On August 31, 2008, Sagi, acting as CEO of TPR, notified himself as the general manager of D & K, that D & K was in default of the Note and declared that unless the entire unpaid principal amount of the Note was paid immediately, TPR would sell, at auction, the 240 shares pledged as collateral. (A copy of the Notification dated August 31, 2008, is annexed hereto as Exhibit M.)

(b)     Thereafter, Sagi, again acting as CEO of TPR, purported to notify D & K (of which he remained the managing partner) that D & K's 240 shares of TPR stock would be publicly auctioned to the highest bidder on February 27, 2009, and that the money received from the sale would be used to reduce the outstanding debt. (A copy of the Notification is annexed hereto as Exhibit N.) Sagi purported to notify the interested parties of the sale by publishing notice of the sale in the New York Post in October 2008 and February 2009. Although at all relevant times Sagi had Orly's contact information, he never informed her of the impending sale.

(c)     On February 27, 2009, TPR (still controlled by Sagi) foreclosed on the 240 shares of TPR and "auctioned" the shares. Not coincidentally, the Sagi-controlled TPR purchased the shares at auction for $2,200,000. (See Exhibit O). The proceeds of the sale – i.e., $2,220,000 – were used to decrease D & K's obligations under the Note, leaving a balance of approximately $8,800,000.

20.     On June 11, 2009, Orly's counsel sent Mr. Meister a letter asking that Dalia, in accordance with Orly's January 2009 request and in light of the secretive diminution of the Orly

---

[4] While the Note had not been serviced since 1999, TPR had not foreclosed on the Note between 1999 and 2008 because it previously had agreed not to foreclose on the Note in order not to upset the estate-planning goals underlying the Note.

Trust's interest in TPR, stipulate in writing that she would not, under any circumstances and until all issues were resolved, sell, transfer, or remove the TRI shares from the Orly Trust. (A copy of the Letter dated June 11, 2009, is annexed hereto as Exhibit P.) That same day, Mr. Meister responded to the June 11th letter, but he failed to address the terms of the proposed stipulation. (A copy of Mr. Meister's Letter dated June 11, 2009, is annexed hereto as Exhibit Q.)

A.    **A Temporary Restraining Order ("TRO") Is Necessary To Protect The Remaining Assets Held By the Orly Trust**

21.    It is clear from Dalia's deliberate inaction and complete deferral to Sagi in all matters related to D & K, TPR, and TRI, that without Court intervention Orly's TRI shares will be:  a) sold at a significantly discounted rate so that the proceeds can be used to pay her unpaid portion of the Note, b) used as collateral to secure the Orly Trust's unpaid portion of the Note, or c) used to satisfy a Judgment against the Orly Trust.  Since Orly's address was known to her brother and her mother at all relevant times, publishing notice of the sale of the TPR shares alone was a clear and deliberate attempt to prohibit Orly from intervening in the foreclosure and the sale.  Dalia, who had knowledge of the events as they were transpiring, easily could have given notice of the auction to Orly, but she intentionally chose not to.  There is now reason to believe that Dalia will again remain passive if and when Sagi seeks to hijack, sell, or otherwise meddle with the Orly Trust's TRI shares, even though Orly has specifically advised her mother, in writing, to protect the Trust's ownership of the TRI shares.

22.    There is no reason to trust that Dalia will honor her daughter's wishes and instructions since, from the time of her divorce, she has done nothing but ensure that Sagi has complete control over TPR, D & K, and D & K GP, and has allowed Sagi to do as he pleases.  At this time, approximately $8,800,000 of the Note remains unsatisfied, and Sagi, as CEO of TPR, has not voided the notice of default.  Based upon Dalia's deliberate inaction and failure to protect

the Orly Trust's assets to date, there is strong evidence to reasonably conclude that Dalia will not protect the Orly Trust's interest in the TRI shares, but rather, will act to benefit herself and Sagi, including by allowing Sagi to obtain the TRI shares to satisfy the Orly Trust's unpaid portion of the Note. Without immediate injunctive relief, Orly will have no recourse and the Orly Trust will be vulnerable to complete depletion. The harm caused to the Orly Trust under these circumstances would be irreparable.

23.    Based on the facts and documentary evidence presented herein it is likely that the Orly Trust will succeed on the merits of her Petition. Accordingly, she meets the criteria necessary to obtain a TRO and a preliminary injunction. Petitioner therefore respectfully requests that the Court grant her Petition for a TRO and a preliminary injunction in order to protect the assets held by the Orly Trust, including the TRI shares.

**B.    Dalia Must Be Removed As Trustee Immediately**

24.    Based on the information provided to Orly's counsel on June 1, 2009, which confirms Respondent's lack of diligence and disloyal service as Trustee, there now exists sufficient evidence to have Respondent removed as Trustee of the Orly Trust. While serving as Trustee, Dalia intentionally failed to notify Orly that TPR was taking measures to foreclose on the Orly Trust's 23.52% indirect interest in TPR. It was Dalia's duty as a fiduciary of the Orly Trust to be apprised of all activity concerning the Orly Trust and to ensure that Orly received proper notification of the default and auction. Moreover, Dalia actually knew of the foreclosure and the auction, but took no steps to protect the Orly Trust's interest in TPR. Dalia knew of Sagi's plan to foreclose on the Note and sell the TPR shares as early as August 2008; thus, she withheld information concerning the auction from Orly for almost ten months. Dalia did not disclose the foreclosure and share sale until she received the demand letter from Orly's counsel and realized that legal action was imminent. Instead of protecting the Orly Trust's and its

beneficiary's interests, Dalia sat back and silently watched her son strip the Orly Trust of its indirect interest in TPR.

25.     The corporate structure which has intertwined TPR, D & K GP, and D & K's assets, all of which are in some manner controlled by Sagi as a result of Dalia's actions, permits Dalia and Sagi to engage in self-dealing and does not provide for any accountability on either Sagi's or Dalia's part.  Unfortunately, the Orly Trust is caught in the middle of Dalia's and Sagi's conspiracy to engage in self-dealing intended to benefit their own interests, while Sagi has been permitted to diminish and dissipate the value of the Orly Trust's assets, including its interests in TPR and, potentially, TRI.  By enriching herself and her son at the expense of her daughter, Dalia is in breach of her fiduciary duties as Trustee of the Orly Trust.  It is imperative that Orly have a successor trustee appointed who will unbiasedly and loyally protect the Orly Trust's remaining assets.

**(1)     In Direct Conflict With Her Obligations as Fiduciary of The Orly Trust, Dalia Did Nothing To Stop Sagi From Attempting to Sell His Trust's TRI Shares, Which, If Valid, Would Dilute the Value of the Orly Trust's Assets**

26.     The Sagi Trust's attempted sale of its interest in TRI to the Trump Group for $26,715,416, which occurred after Dalia was appointed successor trustee of the Orly Trust, purportedly transferred control of TRI from Arie to the Trump Group.  As mentioned above, supra paragraph 15, if this purported sale were given effect, then the value of the Orly Trust's assets would be significantly diminished.  If the purported sale were valid and effective, then Arie would no longer own a controlling interest in TRI, and thus the Orly Trust would no longer own a portion of the controlling block of TRI shares.

27.     Dalia, as a fiduciary of the Orly Trust, was obligated to apprise herself of any transactions that could affect the value of the Orly Trust's shares, and, in fact, Dalia was contemporaneously aware of the Sagi Trust sale.  But Dalia made no effort to protect the value of

the Orly Trust's TRI shares by challenging the proposed sale. Moreover, she has taken no position with regard to the current value of the TRI shares and has taken no measures to protect the Orly Trust's interest in TRI since the purported sale, despite Orly's urgings. By remaining passive with respect to the Orly Trust's TRI shares, Dalia is completely ignoring the intent behind the establishment of the Orly Trust – to transfer an equal amount of assets to each of the children. Dalia, through her actions and her inaction alike, may have permitted Sagi to secure substantially more value from the Trusts' assets than Orly.

(2)     **In Direct Conflict With Her Obligations as Fiduciary of The Orly Trust, Dalia Took No Action To Protect the Orly Trust's Interest in TPR**

28.     Pursuant to the August 2006 memorandum assigning the Note to David Parnes – on which Dalia was copied – Sagi, acting as the managing partner of D & K, took the position that the Note was unenforceable. (See Paragraph 4 of Exhibit H annexed hereto.) In the exact same memorandum, however, Sagi, acting as the CEO of TPR, took the directly contrary position that TPR reserved its right to enforce the Note. (See Paragraph 8 of Exhibit H annexed hereto.)

29.     On February 14, 2007, Dalia, who participated in the "sham" transaction between Sagi and Mr. Parnes, and in a clear attempt to clean her hands of any impropriety, admitted in a sworn statement to the Court that no one was ever supposed to foreclose on the Note. (See Paragraph 3 of Exhibit R annexed hereto). Additionally, the unpaid Note was the subject of a post-judgment arbitration proceeding between Dalia and Arie, which took place in September 2007. Dalia, who was present at the proceedings, heard Sagi and Mr. Parnes testify that the Note should not be enforced and that Sagi, as CEO of TPR, had no intention of collecting the unpaid portion of the Note. Thus, Dalia knew long before August 2008 that TPR had effectively disclaimed its right to foreclose on the Note.

30.     As described above, however, in August 2008 (eleven months later), Sagi sought to enforce the Note. Contrary to the position he had taken under oath at the arbitration, and contrary to the position he had taken as the managing partner of D & K (see Paragraph 4 of Exhibit H attached hereto), Sagi issued a default notice to D & K on behalf of TPR. Dalia, who knew the Note was never intended to be enforced and who previously had sworn to as much, should have immediately sought to block Sagi from foreclosing on the Note and selling the TPR shares. Notwithstanding her knowledge and her previous statements, however, Dalia failed to make any effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust had a clear interest in the TPR shares at issue. As a fiduciary of the Orly Trust with prior, as well as continued knowledge, of the TPR foreclosure, TPR's supposed claims against D & K, and D & K's ability to challenge those claims based on prior representations, Dalia had a duty to protect the Orly Trust's indirect ownership of the TPR shares. But instead of taking the proactive measures required of a fiduciary, Dalia did nothing and allowed Sagi to obtain the TPR shares for himself to the detriment of the Orly Trust.[5]

31.     Additionally, Dalia's failure to act in the face of the foreclosure and sale of TPR stock is especially egregious because she has known since August 2008 that the purported sale of TRI stock to the Trump Group is being challenged in Delaware state court. She also has known that in that action the Trump Group is asserting that it bought the TRI stock from *either* the Sagi Trust *or* TPR. Thus, she has known that, depending on the outcome of the litigation in Delaware, the Orly Trust could have an interest in the $27 million paid by the Trumps in August

---

[5] Moreover, in connection with her appointment as successor trustee of the Orly Trust in January 2008, Dalia divested herself of her TPR shares (without informing either the Court or Orly as to when she transferred her interest) in a further attempt to distance herself from any attributable wrongdoing. Dalia has contended to this Court that she sold her TPR shares in order to avoid any appearance of impropriety in connection with her appointment as Trustee. Interestingly, however, Dalia has never informed Orly or this Court whether she continues to maintain a 99% interest in D & K GP, the company that controls D & K and, thus, was obligated to service the Note.

2008 if its interest in TPR were preserved. Accordingly, as trustee of the Orly Trust, she should have been especially vigilant in protecting the Orly Trust's interest in TPR through D & K. But instead, she allowed Sagi to essentially steal the Orly Trust's interest in TPR so that Sagi can attempt to retain the entire $27 million regardless of the outcome in Delaware Chancery Court. Her inaction in this regard is a blatant violation of her fiduciary duties as trustee.

## III. DALIA SHOULD BE SUR-CHARGED IN THE AMOUNT OF THE LOSS OF THE VALUE OF ORLY'S INTEREST IN TPR AS DETERMINED BY THE COURT AND ORLY SHOULD BE AWARDED ATTORNEYS' FEES

32.    By failing to take action on behalf of the Orly Trust to prevent Sagi from foreclosing on the Note and selling D & K's TPR shares, Dalia caused the Orly Trust to lose its interest in TPR. Accordingly, Dalia should be surcharged in an amount of the loss of the value of Orly's interest in TPR as determined by the Court and should be required to reimburse the Orly Trust for its attorneys' fees incurred in connection with bringing this action.

## IV. MICHAEL D. GROHMAN, ESQ. SHOULD BE APPOINTED AS SUCCESSOR TRUSTEE

33.    Based on Dalia's deliberate breach of her fiduciary duties to the Orly Trust, and in light of Dalia's prior nefarious conduct as the Orly Trust's Trustee, this Court should remove Dalia as Trustee and replace her with Michael D, Grohman, Esq. Mr. Grohman is a member of the New York Bar and the head of the Trust and Estates practice group at Duane Morris LLP. Mr Grohman is not acquainted with any members of the Genger family, does not have any interest in TRI, TPR, or D & K, and is willing and prepared to succeed Dalia immediately.

34.    No prior application has been made for the relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, based upon the allegations contained herein, Petitioner requests that this Court provide the following relief:

(a)     Enjoining and restraining Respondent, her agents, and all other persons acting on her behalf from withdrawing, selling, disposing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering, liening, hypothecating, or secreting the Orly Trust's 19.43% interest in TRI and other assets remaining in the Orly Trust;

(b)     removing Respondent as Trustee of the Orly Trust for breaching her fiduciary duties, wasting and dissipating the assets of the Orly Trust, and improvidently managing and injuring the property committed to her charge;

(c)     surcharging Respondent in the amount of the loss cf the value cf Orly's interest in TPR as determined by the Court and awarding Petitioner costs and attorneys' fees;

(d)     appointing Michael D. Grohman, Esq., as successor trustee;

(e)     waiving any requirement that Petitioner post an undertaking; and

(f)     granting Petitioner any other relief it deems necessary and proper.

Dated:   New York, New York
         June 22, 2009

ORLY GENGER
Petitioner


COZEN O'CONNOR

By:

Judith E. Siegel-Baum, Esq.
Attorney for Petitioner
250 Park Avenue
New York, New York 10017
212-986-1116

## VERIFICATION

STATE OF NEW YORK )
                         )ss.:

COUNTY OF NEW YORK )

       The undersigned, the Petitioner named in the foregoing petition, being duly sworn, says: I have read the foregoing petition subscribed by me and know the contents thereof, and the same is true of my own knowledge, except as to the matters therein stated to be alleged upon information and believe, and as to those matters I believe it to be true.

_____

Signature of Petitioner

ORLY GENGER
Print Name

Sworn to before me this
22nd day of June, 2009.

_____
Notary Public
Commission Expires:
(Affix Notary Stamp or Seal)

ANN MEADE
Notary Public, State of New York
No. 01ME4783921
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Sept. 30, 2009