SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER as Trustee of the Orly
Genger 1993 Trust pursuant to SCPA § 711(11)

---

File No.:   0017/2008

[Stamp: New York County Surrogate's Court MISCELLANEOUS DEPT. OCT 23 2014 FILED Clerk]

# BENEFICIARY ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAGI TRUST MOTION TO DISMISS ORDER TO SHOW CAUSE AND THIRD AMENDED PETITION

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS .....................................................................................................3

ARGUMENT:  THE INSTANT MOTION SHOULD BE DENIED BECAUSE
THE SAGI TRUST WAS PROPERLY SERVED WITH PROCESS UNDER
SCPA §307 AND SERVICE BY MAIL IS PERMITTED UNDER ARTICLE
10(A) OF THE HAGUE CONVENTION ..............................................................................5

CONCLUSION......................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                       **Page(s)**

Ackermann v. Levine,
  788 F.2d 830 (2d Cir. 1986) ............................................................................................. 12, 14

Axios Prod., Inc. v. Time Mach. Software, Inc.,
  2010 N.Y. Misc. LEXIS 4843 (N.Y. Sup. Ct. Oct. 4, 2010) ..................................... 10, 12, 14

Bankston v. Toyota Motor Corp.,
  889 F.2d 172 (8th Cir. 1989) ..................................................................................................... 6

Bush v. United States (The Yulu),
  71 F.3d 635 (5th Cir. 1934) ....................................................................................................... 7

Cantarelli S.P.A. v. L. Della Cella Co., Inc.,
  40 A.D.3d 445 (1st Dept. 2007) .............................................................................................. 10

Eli Lilly & Co. v Roussel Corp.,
  23 F Supp 2d 460 (D. N.J. 1998) ................................................................................ 10, 11, 13

Ganelina v. Perchikov,
  2009 N.Y. Misc. LEXIS 620 (N.Y. Sup. Ct. March 11, 2009) ................................................. 6

Genger v. Genger,
  2014 N.Y. App. Div. LEXIS 6204 (1st Dept. Sept. 23, 2014) .................................................. 1

Genger v. Genger,
  Index No. 109749/2009 (N.Y. Sup. Ct. July 3, 2014) ............................................................... 1

Gouiran Family Trust v. Gouiran,
  40 A.D.3d 400 (1st Dept. 2007) ........................................................................................ *passim*

Heredia v. Transport S.A.S., Inc.,
  101 F. Supp.2d 158, 161 (S.D.N.Y. 2000) .............................................................................. 11

M.B.S. Moda, Inc. v. Fuzzi S.P.A.,
  2013 N.Y. Misc. LEXIS 45 (N.Y. Sup. Ct. Jan. 9, 2013) ....................................................... 13

Marcus v. "Five J" Jewelers Precious Metals Industry Ltd.,
  2002 N.Y. Misc. LEXIS 860 (N.Y. Sup. Ct. Feb. 19, 2002) .................................................... 6

Matter of Genger,
  2014 N.Y. Misc. LEXIS 3157 (N.Y. Sur. Ct. July 15, 2014) ............................................... 3, 4

N.Y. State Thruway Auth. v. Fenech,

    94 A.D.3d 17 (3d Dept. 2012) ................................................................................... *passim*

Papir v. Wurms,
    2005 U.S. Dist. LEXIS 2201 (S.D.N.Y. Feb. 15, 2005) ..................................................12, 14

Reynolds v. Woosup Koh,
    109 A.D.2d 97 (3d Dept. 1985) .........................................................................................8, 14

Sardanis v. Sumitomo Corp.,
    279 A.D. 225 (1st Dept. 2001) ......................................................................................... *passim*

Sbarro, Inc. v. Tukdan Holdings, Ltd.,
    32 Misc.3d 217 (N.Y. Sup. Ct. 2011) ........................................................................10, 11, 14

Sumitomo Shoji Am., Inc. v. Avagliano,
    457 U.S. 176 (1982) ............................................................................................................7, 14

Treeline Inv. Partners, LP v. Koren,
    2007 U.S. Dist. LEXIS 47748 .............................................................................................12, 14

**STATUTES**

SCPA § 307(2) .................................................................................................................... *passim*

SCPA § 2201 ................................................................................................................................3

**OTHER AUTHORITIES**

1 *Restatement (Third) of the Foreign Relations Law of the United States*, § 112 cmt. C at
    59 (1987) ..................................................................................................................................7

Hague Service Convention Article 10(a) ............................................................................ *passim*

Hague Service Convention Article 10(b) and (c) ....................................................................6, 11

American Society of International Law, International Legal Materials, *30 I.L.M. 260, *2*
    (1991) .....................................................................................................................................7

*Special Comm'n on the Practical Operation of the Hague, Apostille, Evidence & Service
    Conventions, Conclusions & Recommendations*, Adopted by the Special Comm'n on
    the Practical Operation of the Hague, Apostille, Evidence & Service Conventions at
    11 P 55 (2003) .........................................................................................................................6

Table Reflecting Applicability of Articles 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) of
    the Hague Service Convention .................................................................................... *passim*

## **PRELIMINARY STATEMENT**

Rather than protect the Orly Genger 1993 Trust ("Orly Trust") and beneficiary Orly Genger ("Orly"), Dalia Genger – in collusion with Sagi Genger – has used her time as Trustee of the Orly Trust to harm Orly and the Orly Trust, in deliberate violation of her fiduciary duties. Both the New York Supreme Court (Jaffe, J.) and the Appellate Division, First Department, have recognized that Dalia suffers from fatal conflicts of interest that make her unfit to be trustee of the Orly Trust, and that she and Sagi are working hand-in-hand against Orly. See Genger v. Genger, 2014 N.Y. App. Div. LEXIS 6204, *4 (1st Dept. Sept. 23, 2014) ("In entering into the aforementioned October 2011 and March 2012 settlement agreements with TPR and D & K LP on behalf of Orly Trust, of which she was sole trustee, Dalia had a conflict of interest."); Genger v. Genger, Index No. 109749/2009, (N.Y. Sup. Ct. July 3, 2014) ("Additionally, Dalia, trustee of the Orly Trust, has often sided with her son Sagi in these actions…") (Leinbach Aff., **Exhibit A**).

Orly and the Orly Trust remain in danger so long as Dalia remains trustee of the Orly Trust. This, of course, is fine with Sagi, as Dalia's efforts are concentrated on moving all of the Orly Trust's assets to Sagi's pockets. Accordingly, Sagi (and Dalia, and their agents) will do whatever they can to delay these removal proceedings, and leave the Orly Trust unprotected. This motion by the Sagi Trust is nothing more than another cynical delaying tactic. While Sagi and Dalia fiddle, Orly and the Orly Trust burn.

The Trustee of the Sagi Trust, who has been participating in these proceedings for some time now, conceded during a September 2014 hearing he received the copy of the citation Orly recently served upon him, by registered mail return receipt requested, in Israel. Yet, he still

cynically contests service, seeking to delay any decision on the merits regarding Orly's removal petition. His instant motion is substantively meritless. As discussed below, service by certified or registered mail, return receipt requested, is proper pursuant to both SCPA §307(2) and Article 10(a) of the Hague Service Convention (defined below), and the Sagi Trust's position that the Hague excludes service by mail is incorrect.

The declared purpose of the Hague Service Convention is to simplify and expedite the process of international service of process. See Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 UST 361, TIAS No. 6638 (1969) (the "Hague Service Convention") (R. 42). The Sagi Trust's effort to use the Hague Service Convention instead to complicate matters and engender delay directly contradicts this purpose, and the Hague's express directive that its Service Convention shall not interfere with the "freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Service Convention, Article 10(a). Indeed, as discussed below, both The Hague and the U.S. State Department (which is charged with overseeing treaties such as the Hague Service Convention) agree that service by mail upon persons in Israel is permitted under the Hague Convention. Moreover, the First Department held that service of process by mail pursuant to the Hague Service Convention is proper. See Gouiran Family Trust v. Gouiran, 40 A.D.3d 400, 401 (1st Dept. 2007). Conversely, the principal case upon which the Sagi Trust relies – Sardanis v. Sumitomo Corp., 279 A.D. 225 (1st Dept. 2001) – was decided before the First Department's subsequent ruling in Gouiran Family Trust, and otherwise has been effectively abrogated by subsequent judicial decisions and the actions of the Hague and the U.S. State Department. Accordingly, his motion should be swiftly denied, and the Surrogate Court should quickly proceed to the merits of the removal petition.

## STATEMENT OF FACTS

Orly commenced this case by Order to Show Cause dated July 1, 2009[1] seeking, among other things, to remove Dalia as Trustee of the Orly Trust, and surcharge Dalia for breaching her fiduciary duties as Trustee of the Orly Trust. See Matter of Genger, 2014 N.Y. Misc. LEXIS 3157, *3 (N.Y. Sur. Ct. July 15, 2014). "Orly subsequently amended her petition to name the Sagi Trust as a party." Id. After being made a party, the Sagi Trust was served with Orly's amended removal petition. Id. Despite being served, the Sagi Trust failed to answer or respond to the amended petition. Id.

After serving both Dalia and the Sagi Trust, Orly subsequently amended her petition to address additional Dalia efforts to harm Orly and the Orly Trust, in deliberate violation of her fiduciary duties as Trustee. Orly's current petition, the Third Amended Petition, was filed on or about October 17, 2012. On or about November 19, 2012, Dalia filed a motion to dismiss Orly's Third Amended Petition, which is currently *sub judice*. See Matter of Genger, 2014 N.Y. Misc. LEXIS 3157, at *2.

By decision dated July 15, 2014, the Surrogate's Court held that Orly was required to re-serve the Sagi Trust, as a contingent remainder beneficiary to the Orly Trust. See Matter of Genger, 2014 N.Y. Misc. LEXIS 3157, at *5. In reaching this decision, the Court noted that the Sagi Trust has participated in this case by among other things, appearing at

---

[1] In 2008, Orly objected to Dalia's appointment as Trustee of the Orly Trust and sought her removal before the New York County Surrogate's Court out of fear that Dalia would not protect Orly's interests while serving as Trustee. By decision dated December 31, 2008, the Surrogate's Court held that Orly's prior petition was premature, in that Dalia should be given an opportunity to act as Trustee. See Decision at 7. The Surrogate's Court also suggested that Orly commence an SCPA § 2201 proceeding to obtain evidence necessary to support a future application to have Dalia removed. See id. Orly has done so, and included the evidence she obtained in her current Third Amended Petition.

3

hearings through counsel and filing papers. See id. at *5, n.3. However, the Surrogate's Court found that, despite this prior participation with the case, the Sagi Trust had never formally appeared in the action. See id. at *5.

Pursuant to the Surrogate Court's July 15, 2014 decision, Orly obtained issuance of a citation from the Surrogate's Court (the "Citation") directing the Sagi Trust to appear for a hearing scheduled for September 12, 2014. (Leinbach Aff. ¶ 3.) Orly served the Citation upon the Sagi Trust, by serving its current trustee, Assaf Sternberg, in Israel by registered mail return receipt requested. See Supplemental Citation and Affidavit of Service (Leinbach Aff., **Exhibit B**). After serving the Sagi Trust, Orly filed an affidavit of service with the Surrogate's Court attesting to her service. (Leinbach Aff. ¶ 3.) As set forth below, Orly's service of the Cititaion upon the Sagi Trust by registered mail was proper pursuant to both SCPA §307(2) and Article 10(a) of the Hague Service Convention. See Argument.

On September 12, 2014, the Sagi Trust appeared at a hearing before the Surrogate's Court by counsel. (See Leinbach Aff. ¶ 4.) At the hearing, Sagi Trust counsel conceded that Assaf Sternberg had received the Citation. (Id.) However, Sagi Trust objected to the manner by which it had received service (by registered mail, return receipt requested), contending the Citation should have been served upon the Israeli Directorate of the Courts. (Id.)

When asked why the Sagi Trust did not simply appear in the action, and argue the removal on the merits, when it had in fact received the Citation, Sagi Trust counsel replied that he had been specifically instructed to take this position by his client, essentially acknowledging that the Sagi Trust wanted to delay or prevent the present Surrogate's Court case from moving forward and reaching the merits of Dalia's actions as Trustee. (See Leinbach Aff. ¶ 5.) The

4

Surrogate Court attorney, Ms. Santamarina, than advised Sagi Trust counsel that, if the Sagi Trust insisted upon objecting to the manner of its actual receipt of the Citation, it would need to file a motion to dismiss the Citation. (Id.) On or about, September 19, 2014, the Sagi Trust filed the instant motion. This opposition follows.

## ARGUMENT

### THE INSTANT MOTION SHOULD BE DENIED BECAUSE THE SAGI TRUST WAS PROPERLY SERVED WITH PROCESS UNDER SCPA §307 AND SERVICE BY MAIL IS PERMITTED UNDER ARTICLE 10(a) OF THE HAGUE CONVENTION

New York Surrogate Court Procedures Act § 307(2) provides:

> Service of the process may be made by registered or certified mail, return receipt requested, or by special mail service, upon non-domiciliaries, whether or not they be natural persons.

SCPA § 307(2).[2]

Similarly, Article 10(a) of the Hague Service Convention expressly provides that the Convention shall not interfere with:

> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

Hague Service Convention, Article 10(a). Contrary to the Sagi Trust's contention (Dellaportas Aff. ¶ 6), <u>Israel, a signatory to the Hague Service Convention, has not objected to Article 10(a) of the Hague Service Convention.</u> See Table Reflecting Applicability of Articles 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) of the Hague Service Convention, p. 5 of 10 (identifying that Israel

---

[2] Research has not uncovered any cases finding SCPA § 307(2) to be unconstitutional or challenged on constitutional grounds.

5

has "no opposition" to Article 10(a)) (Leinbach Aff., **Exhibit C**) (hereafter "Hague Table").[3]

Both The Hague and the U.S. State Department agree that Article 10(a) permits service of process by mail. In 2003, a Special Commission convened in The Hague to review the practical operation of various Hague Conventions issued a Final Report stating that Article 10(a) permits service of process by mail. The Final Report, which was unanimously approved by 57 member states, provides as follows:

> The SC reaffirmed its clear understanding that the term "send" in Article 10(a) is to be understood as meaning "service" through postal channels.

*Special Comm'n on the Practical Operation of the Hague, Apostille, Evidence & Service Conventions, Conclusions & Recommendations*, Adopted by the Special Comm'n on the Practical Operation of the Hague, Apostille, Evidence & Service Conventions at ¶ 55 (2003) (Leinbach Aff., **Exhibit D**).[4]

Equally important, the United States State Department has interpreted Article 10(a) of the Hague Service Convention to permit service of process by mail to a defendant in a foreign country. In fact, when the Eighth Circuit issued a decision in Bankston v. Toyota Motor Corp., 889 F.2d 172, 174 (8th Cir. 1989) with a contrary interpretation of Article 10(a), the U.S.

---

[3] The Sagi Trust's reliance upon Marcus v. "Five J" Jewelers Precious Metals Industry Ltd., 2002 N.Y. Misc. LEXIS 860 (N.Y. Sup. Ct. Feb. 19, 2002) and Ganelina v. Perchikov, 2009 N.Y. Misc. LEXIS 620 (N.Y. Sup. Ct. March 11, 2009) is misplaced. Neither case addresses Article 10(a) of the Hague Service Convention at all. The Marcus court addressed service of process under Article 10(b) and (c) of the Hague Service Convention, noting Israel's objection to those specific provisions. However, the Marcus court does not suggest that Israel objected to Article 10(a) of The Hague Service Convention. Id. In Genelina, the court simply reports service upon a party in Israel was done pursuant to Article 2 of the Hague Convention: there is no mention of Article 10(a). Genelina, 2009 N.Y. Misc. LEXIS 620, at *9-10. In any event, the Sagi Trust's contention that Israel has objected to Article 10(a) is wrong, as conclusively demonstrated by the Hague Table. See Hague Table, at p. 5 of 10 (identifying Israel as having "no opposition" to Article 10(a) (Leinbach Aff., Ex. C).

[4] The report of the 2003 Special Commission also is available at http://goo.gl/qhWGQ.

Department of State issued a Official Letter stating that <u>Bankston</u> was wrongly decided:

> We therefore believe that the decision of the Court of Appeals in <u>Bankston</u> is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country.

March 14, 1990 Letter from U.S. State Department, Deputy Legal Advisor; American Society of International Law, International Legal Materials, *30 I.L.M. 260, *2* (1991) (quoting U.S. State Department March 14, 1990 Letter) (Leinbach Aff., **Exhibit E**). Moreover in 2008, when the Hague Conference circulated a questionnaire to member states asking about their implementation of the Hague Service Convention, the United States indicated that it considered service of process by mail an appropriate method of service under Article 10(a).[5]

The U.S. State Department's interpretation of Article 10(a) is particularly significant because of the longstanding proposition that the views of the State Department should be given special weight in construing treaties. <u>See, e.g., Sumitomo Shoji Am., Inc. v. Avagliano</u>, 457 U.S. 176, 184-85 (1982); <u>Bush v. United States (The Yulu)</u>, 71 F.3d 635, 636 (5th Cir. 1934); 1 <u>Restatement (Third) of the Foreign Relations Law of the United States</u>, § 112 cmt. C at 59 (1987); <u>see also</u> <u>N.Y. State Thruway Auth. v. Fenech</u>, 94 A.D.3d 17, 22 (3d Dept. 2012) ("[State Department's] opinion, while not conclusive, 'is entitled to great weight.'") (quoting <u>Avagliano</u>, 457 U.S. at 184-185).

In keeping with the Hague's and U.S. State Department's position that Article 10(a) permits service of process by mail, recent cases interpreting Article 10(a) have held that

---

[5] The U.S. response to the questionnaire is available through http://goo.gl/tCSjV. The answer cited is on page 44.

Article 10(a) permits service by mail. Thus, in 2012, in <u>N.Y. State Thruway Auth.</u>, the Third Department reversed its prior holding in <u>Reynolds v. Woosup Koh</u>, 109 A.D.2d 97 (3d Dept. 1985), and found that Article 10(a) permits service of process by mail:

> <u>[T]he weight of authority--much of it having arisen after *Reynolds* -- persuades us that a departure from our prior holding is appropriate.</u>
>
> The starting point in interpreting any treaty is its text and the context in which its words are used. Article 1 of the Hague Convention states that the treaty applies only "where there is occasion to transmit a judicial or extrajudicial document *for service* abroad" (Hague Convention, 20 UST at 362 [emphasis added].) Indeed, the explicit, limiting effect of article 1 was deliberate, addressing criticisms that language in the draft treaty "suggested that [it] could apply to transmissions abroad that do not culminate in service" (*Volkswagenwerk Aktienesellschaft v Schlunk,* 486 US at 701). As such, article 10 facilitates the service of documents by permitting signatories to consent to alternate service methods, with article 10(b) and (c) both referring to the freedom of specified individuals "to effect *service* of judicial documents." While article 10(a), in contrast, refers to "the freedom to *send* judicial documents" (emphasis added), the express limitation of the Hague Convention's scope to the service of documents renders article 10(a) meaningless if it is interpreted as applying only to documents that are sent, but not served, by mail.
>
> To the extent that the language of article 10(a) is ambiguous—in that reliance upon its obvious meaning would lead to "a result inconsistent with the" treaty's intent as expressed in article 1 (*Maximov v United States*, 373 US 49, 54, 83 SCt 1054, 10 Led2d 184, 1963 CB 689 [1963]; accord *Sumitomo Shoji America, Inc. v Avagliano*, 457 US 176, 180, 102 SCt 2374, 72 Led2d 765 [1982]—we are required to "look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties" in order to ascertain the true meaning of article 10(a) (*Chocotaw Nation v United States*, 318 US 423, 432, 63 SCt 672, 87 Led 877, 97 CtCl 731 [1943]; see *Eastern Airlines, Inc. v. Floyd*, 499 US 530, 535, 111 SCt 1489, 113 Led 2d 569 [1991].) A review of the history of the negotiation reveals that the treaty's drafters "intended the language [of article 10(a)] to include the service of process" (1 Ristau, International Judicial Assistant [Civil and Commercial] Section 4-28, at 167 [1984]). Indeed, the official account of the conference that

8

resulted in the Hague Convention stated that the first paragraph of article 10 "was intended to permit service by mail" (*Brockmeyer v May, 383 F3d at 802*), and the American delegation to the conference agreed that article 10 allowed "alternative channels for the transmission of the documents *for the purpose of service*" (Unification of the Rules of Private International Law; Report of the U.S. Delegation to the 10th Session of the Hague Conference on Private International Law, October 7-28, 1964, Dept St Bull, Feb 22, 1965, at 269 [emphasis added]).

The drafters' view of article 10(a) is reinforced by the subsequent actions of signatories to the Hague Convention, a majority of whom make "no objection to the service of judicial documents coming from abroad directly by mail in their territory" (Permanent Bureau of Hague, Report on the Work of the Special Commission on the Operation of the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *17 ILM 312, 326 [1978]*; see Table Reflecting Applicability of Articles 8[2], 10[a], [b], and [c], 15 [2] and 16[3] of the Hague Service Convention, available at http://www.hcch.net/upload/applicability14e.pdf. [accessed Dec 13, 2011]). Moreover, special commissions convened [by the Hague] to study the operation of the treaty have consistently noted that article 10 (a) preserves the right to serve process by mail, notwithstanding the holdings of "certain courts in the United States of America ... that service of process abroad by mail was not permitted under the Convention" (Permanent Bureau of the Hague Conference on Private International Law, Report on the Work of the Special Commission of April 1989 on the Operation of the Hague Conventions of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters and of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, *28 ILM 1556, 1561 [1989]*; see Permanent Bureau of the Hague Conference on Private International Law, Conclusions and Recommendations of the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions, at 11 [2003], available at http://www.hcch.net/upload/wop/lse_concl_e.pdf [accessed Dec. 13, 2011]). The United States Department of State holds the same view, and its opinion, while not conclusive, "is entitled to great weight" (*Sumitomo Shoji America, Inc. v Avagliano, 457 US at 184-185*).

It is therefore now evident that article 10 (a) of the Hague Convention permits service of process by mail and, as such, plaintiff was free to served defendants [by mail] pursuant to *Vehicle and Traffic Law § 253* . . . [and] we conclude that Supreme

9

> Court acquired jurisdiction over them and their motion to dismiss must be denied.

N.Y. State Thruway Auth., 94 A.D.3d at 22 (emphases added); see also Sbarro, Inc. v. Tukdan Holdings, Ltd., 32 Misc.3d 217 (N.Y. Sup. Ct. 2011) (finding Article 10(a) permits service of process by mail); Axios Prod., Inc. v. Time Mach. Software, Inc., 2010 N.Y. Misc. LEXIS 4843, *11-12 (N.Y. Sup. Ct. Oct. 4, 2010) (same).

In 2007, in Gouiran Family Trust v. Gouiran, the First Department rejected a challenge to service identical to the Sagi Trust challenge to service here, and affirmed service of process by mail pursuant to the Hague Service Convention. The First Department stated:

> There has been no showing by defendants that French law does not permit service by mail under the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (20 UST 361, TIAS No. 6638 [1965]; cf. Sardanis v Sumitomo Corp., 279 AD2d 225, 718 NYS2d 66 [2001]). Indeed, the contrary appears to be true (see Eli Lilly & Co. v Roussel Corp., 23 F Supp 2d 460, 473 [D NJ 1998]).

40 A.D.3d 400, 401 (1st Dept. 2007).[6] As support, the First Department cited to the United States District Court's decision in Eli Lilly & Co. v Roussel Corp., 23 F Supp.2d 460 (D. N.J. 1998). The Eli Lilly court expressly found that service of process by mail was proper under

---

[6] The First Department's ruling in Cantarelli S.P.A. v. L. Della Cella Co., Inc., 40 A.D.3d 445 (1st Dept. 2007) is readily distinguished. In Cantarelli, an Italian company brought suit against a New York company in New York County Supreme Court. Id., Index No. 117651/05 (N.Y. Sup. Ct. October 25, 2006) (Leinbach Aff., **Exhibit F**). The Italian company obtained default judgment against the New York company after serving the New York company through the N.Y. Secretary of State, pursuant to BCL § 306, which requires personal service upon the N.Y. Secretary of State – not mail. Id.; NY BCL § 306. A copy of the summons and complaint was also mailed. Id. The trial court vacated the default judgment based upon a showing of excusable neglect and a meritorious defense. Id. On appeal, the First Department affirmed the trial court's ruling, also noting that the Italian company's contention that service of process by mail was proper under the Hague Service Convention in this particular case was unavailing (id., 40 A.D. 3d. at 446), which is not surprising as BCL § 306 requires personal service. Here, of course, SCPA § 307(2) allows service by certified or registered mail, return receipt requested, which is how Orly served the Sagi Trust. Further, the company in Cantrelli facing the default judgment never actually received notice of the underlying action. Id. at 446. Here, the Sagi Trust not only concedes it received

Article 10(a) of the Hague Service Convention because the court found that France and Italy, like the State of Israel, had not objected to service of process by mail under Article 10(a) of the Hague Service Convention:

> Article 10(a) allows service by mail unless a country has formally objected. However, neither France nor Italy have objected. If France and Italy objected to service by mail under Article 10(a), they should have declared their objection in accordance with Article 21. Moreover, since France did formally object to Article 8, it is obviously familiar with the procedure.

23 F Supp.2d at 474. The First Department's decision in Gouiran is controlling here. As the State of Israel has not formally objected to mail service under Article 10(a) "in accordance with Article 21" (see Hague Table at p. 5 of 10 (Leinbach Aff., Ex. C)), the Sagi Trust's challenge to the service made upon it by Orly under SCPA §307(2) fails. See also Heredia v. Transport S.A.S., Inc., 101 F. Supp.2d 158, 161 (S.D.N.Y. 2000) ("Canada does not object to service by postal channels. Thus, service by registered mail in Quebec is adequate service under the [Hague] Convention") (citations omitted).

Regarding Israel, both New York state courts and federal courts in the Second Circuit recognize Article 10(a) of the Hague Convention permits service of process by mail upon persons in Israel. In Sbarro, Inc. v. Tukdan Holdings, Ltd., 32 Misc.3d 217 (N.Y. Sup. Ct. 2011), for example, defendants, an Israeli resident and an Israeli corporation whose principal place of business was Israel, were properly served with process, as copies of the summons and complaint were mailed to them by registered mail in Israel.

> The use of the Central Authority, however, is not mandatory (see Canizio and Singh, *Service of Process and the Hague Convention*, NYLJ, Aug. 27, 2010). Article 19 of the Hague Convention

---

Orly's service, it has participated in this proceeding.

> permits service by any method permitted by the internal laws of the country in which service is being made (*see Fernandez v Univan Leasing, at 344*). <u>Moreover, article 10 permits service of process by mail directly to the person abroad provided that the state of destination does not object in its ratification to such service</u> (*Id. at 344*).

32 Misc.3d. 217 at 218 (emphasis added). The court went on to find that, although Israel had made express reservations with regard to the application of subsections (b) and (c), <u>Israel had not made any such reservations concerning Article 10(a) of the Hague Convention</u>. Id. at 219; <u>see also</u> Hague Table at p. 5 of 10 (identifying that Israel has "no opposition" to Article 10(a)) (Leinbach Aff., Ex. C).

Similarly, in <u>Axios Prod., Inc. v. Time Mach. Software, Inc.</u>, 2010 N.Y. Misc. LEXIS 4843, *11-12 (N.Y. Sup. Ct. Oct. 4, 2010), service of process upon the defendant in Israel by registered mail was held proper under the Hague Convention because Israel had not expressly objected to Article 10(a) of the Hague Convention. As in <u>Sbarro</u>, the court made clear that "[t]he use of the Central Authority [to effect service]... is not mandatory." Id. at *9.

In <u>Ackermann v. Levine</u>, 788 F.2d 830 (2d Cir. 1986), the Second Circuit Court of Appeals held that service of process by registered international mail upon a person in Israel was appropriate under Article 10(a), finding that the Hague Service Convention's drafters intended "send" to mean "serve" - and that this conclusion was "inescapable." Id. at 839. The Southern District of New York also has expressly found that service of process by mail upon persons in Israel is permitted by Article 10(a) of the Hague Service Convention:

> Since Israel and the United States are both signatories to the Hague Service Convention,... <u>service of process on a defendant in Israel is governed by the convention</u>. Article 10(a) of the Hague Service Convention permits service through mailing of "judicial

12

> documents, by postal channels, directly to persons abroad," provided that the destination state has not objected to this provision. <u>Since Israel has not objected to Article 10(a) of the Convention, service through international registered mail remains an acceptable method of serving Koren, an individual defendant who resides in Israel</u>.

<u>Treeline Inv. Partners, LP v. Koren</u>, 2007 U.S. Dist. LEXIS 47748, **15-16 (S.D.N.Y. July 3, 2007) (emphases added) (internal citations and quotations omitted); <u>see also</u> <u>Papir v. Wurms</u>, 2005 U.S. Dist. LEXIS 2201, *12-13 (S.D.N.Y. Feb. 15, 2005) (finding service of process by mail to person in Israel proper under Article 10(a) of the Hague Service Convention).

Here, Orly properly served the Citation on the Sagi Trust when she served the current Trustee, Assaf Sternberg, by registered mail, return receipt requested, in Israel. Such service – which Assaf Sternberg admits receiving (<u>see</u> Leinbach Aff. ¶3) – is proper under both SCPA § 307(2) <u>and</u> Article 10(a) of the Hague Service Convention, as to which Israel has made no objection. <u>See</u> <u>Gourian</u>, <u>supra</u>; other cases, <u>supra</u>.

Ignoring the express positions of The Hague, the U.S. State Department, and Israel regarding Article 10(a), the Sagi Trust principally relies instead upon a 2001 decision, <u>Sardanis v. Sumitomo Corp.</u>, 279 A.D. 225 (1st Dept. 2001), that held Article 10(a) does not permit service of process by mail. (Dellaportas Aff., ¶ 8). The Sagi Trust's reliance on <u>Sardinis</u> is unavailing for several reasons.

*First*, the Sagi Trust ignores the First Department's subsequent ruling in <u>Gouiran</u> which, relying on <u>Eli Lilly & Co.</u>, expressly found that service of process by mail was proper under the Hague Service Convention. <u>Gourian</u>, 400 A.D.3d at 401 (<u>citing</u> <u>Eli Lilly & Co.</u>, 23 F Supp.2d at 474) ("Since service by mail satisfies due process and is authorized under the Hague

13

Convention, Defendants Opos' and Roussel-France's motion to dismiss for insufficiency of service of process is denied.")).[7]

*Second*, Sardinis relied on the Third Department's 1985 holding in Reynolds v. Woosup Koh, in reaching its decision. Reynolds, however, is not good law; it has been overturned by the Third Department's 2012 ruling in N.Y. State Thruway Auth., 94 A.D.3d at 22, discussed supra. In N.Y. State Thruway Auth., the Third Department recognized the determinations of The Hague Special Commission and the U.S. State Department (determinations the Sagi Trust fails to mention in its motion), in overturning its prior holding in Reynolds v. Woosup Koh, because it is "now evident that article 10 (a) of the Hague Convention permits service of process by mail." Id.

*Third*, the decision in Sardinis was rendered before The Hague Special Commission's Final Report in 2001, which, as unanimously approved the Hague member states in 2003, expressly recognized Article 10(a) as allowing service of process by mail. As discussed above, New York state court and federal court decisions decided after the Hague Special Commission's report have found, in accordance with The Hague and U.S. State Department, that Article 10(a) of the Hague Service Convention permits service of process by mail. See, e.g., Gouiran, 400 A.D.3d at 401; N.Y. State Thruway Auth., 94 A.D.3d at 22; Sbarro, Inc., 32 Misc. 3d 219-220; Axios Prod., Inc., 2010 N.Y. Misc. LEXIS 4843, *11-12; Ackermann, 788 F.2d at 839; Treeline Inv., 2007 U.S. Dist. LEXIS 47748, at *15-16; Papir, 2005 U.S. Dist. LEXIS 2201, at *12-13.

---

[7] The Sagi Trust's reliance upon M.B.S. Moda, Inc. v. Fuzzi S.P.A., 2013 N.Y. Misc. LEXIS 45, * (N.Y. Sup. Ct. Jan. 9, 2013) is similarly unavailing because the trial court decision cites only to Sardinas, overlooking the First Department's subsequent decision in Gouiran Family Trust.

14

*Fourth*, the decision in <u>Sardinas</u> did not consider or address the U.S. State Department's 1990 statement (which was reiterated by the State Department in 2008) that Article 10(a) of the Hague Service Convention permits service of process by mail. It is well-settled that the views of the State Department should be given "great weight" in construing treaties. <u>N.Y. State Thruway Auth.</u>, 94 A.D.3d at 22 (quoting <u>Avagliano</u>, 457 U.S. at 184-185).

Demonstrably, <u>Sardinis</u> is contrary to the First Department's subsequent decision in <u>Gouiran</u>, has been effectively abrogated by subsequent statements by The Hague and the U.S. State Department, and cannot support the Sagi Trust's transparent attempt to delay this proceeding from being decided on the merits. As a result, the Sagi Trust's motion should be denied.

## CONCLUSION

For the reasons and authorities set forth herein, the Sagi Trust has been properly served. Accordingly, the Surrogate's Court should (i) deny the Sagi Trust's motion in its entirely; and (ii) grant Orly such other and further relief as is just and proper.

Dated:  New York, New York
        October 17, 2014

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Yoav M. Griver
    Bryan D. Leinbach
    Attorneys for petitioner Orly Genger
    1211 Avenue of the Americas
    New York, New York 10036
    (212) 223-0400

15