SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

New York County Surrogate's Court
MISCELLANEOUS DEPT.

OCT 23 2014

FILED

Clerk

File No.: 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal of
DALIA GENGER as Trustee of the Orly Genger
1993 Trust pursuant to SCPA § 711(11)

**AFFIRMATION OF
BRYAN D. LEINBACH**

STATE OF NEW YORK,
COUNTY OF NEW YORK.

> BRYAN D. LEINBACH, pursuant to CPLR 2106 and under the penalties of perjury, affirms:

> 1.      I am associated with the firm of Zeichner Ellman & Krause LLP, attorneys for plaintiff Orly Genger in her individual capacity and on behalf of the Orly Genger 1993 Trust (both in its individual capacity and on behalf of D & K Limited Partnership) ("Orly"). I make this affirmation in support of Orly's opposition to the Sagi Trust's motion to dismiss the Order to Show and Third Amended Peitition.

> 2.      Attached as **Exhibit A** is a copy of the July 3, 2014 Decision and Order in a case titled *Orly Genger et al. v. Dalia Genger et al.*, Index No. 109749/2009.

> 3.      Pursuant to the Surrogate Court's July 15, 2014 decision, I obtained issuance of a citation from the Surrogate's Court directing the Sagi Trust to appear for a hearing scheduled for September 12, 2014 (the "Citation"). I served a copy of the Citation upon the Sagi Trust by registered mail, return receipt requested. Attached as **Exhibit B** are copies of: (i) the Citation; (ii)

an Affirmation of Bryan Leinbach dated August 4, 2014 attaching the July 15, 2015 decision; and (iii) Affirmation of Service. A copy of the affirmation of service was filed with the Surrogate's Court. See Ex. B.

4.     On September 12, 2014, the Sagi Trust appeared at a hearing before the Surrogate's Court by counsel. At the hearing, Sagi Trust counsel conceded that Assaf Sternberg had received the Citation my mail. However, Sagi Trust objected to the manner by which it had received service (by registered mail, return receipt requested), contending the Citation should have been served upon the Israeli Directorate of the Courts pursuant to the Hague Service Convention.

5.     When asked why the Sagi Trust did not simply appear in the action, and argue the removal on the merits, when it had in fact received the Citation, Sagi Trust counsel replied that he had been specifically instructed to take this position by his client, essentially acknowledging that the Sagi Trust wanted to delay or prevent the present Surrogate's Court case from moving forward and reaching the merits of Dalia's actions as Trustee. The Surrogate Court attorney, Ms. Santamarina, than advised Sagi Trust counsel that, if the Sagi Trust insisted upon objecting to the manner of its actual receipt of the Citation, it would need to file a motion to dismiss the Citation.

6.     Attached as **Exhibit C** is a copy of the Table Reflecting Applicability of Articles 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) of the Hague Service Convention.

7.     Attached as **Exhibit D** is a copy of *Special Comm'n on the Practical Operation of the Hague, Apostille, Evidence & Service Conventions, Conclusions & Recommendations*, Adopted by the Special Comm'n on the Practical Operation of the Hague,

Apostille, Evidence & Service Conventions (2003).

8.     Attached as **Exhibit E** are copies of (i) a March 14, 1990 Letter from U.S. State Department, Deputy Legal Advisor; and (ii) the American Society of International Law, International Legal Materials, Volume 30, Number 1, *30 I.L.M. 260* (1991), which quotes U.S. State Department March 14, 1990 Letter.

9.     Attached as **Exhibit F** is a copy of the trial court's decision in Cantarelli S.P.A. v. L. Della Cella Co., Inc., Index No. 117651/05 (N.Y. Sup. Ct. October 25, 2006).

Dated:   New York, New York
         October 17, 2014

BRYAN D. LEINBACH

FILED: NEW YORK COUNTY CLERK 07/08/2014 INDEX NO. 109749/2009
NYSCEF DOC. NO. 698                                    RECEIVED NYSCEF: 07/08/2014

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **BARBARA JAFFE**
_J.S.C._
_Justice_

PART **12**

Index Number : 109749/2009
GENGER, ORLY

vs.

GENGER, DALIA
SEQUENCE NUMBER : 034
COMPEL DISCLOSURE

INDEX NO. **109749/09**

MOTION DATE _____

MOTION SEQ. NO. **034**

The following papers, numbered 1 to _____ , were read on this motion to/for ___**Compel**___

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

**DECIDED IN ACCORDANCE WITH ACCOMPANYING DECISION / ORDER**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: **7/3/14**                                      _____, J.S.C.
**BARBARA JAFFE**
_J.S.C._

1. CHECK ONE: ............................................ ☐ CASE DISPOSED ☑ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...................MOTION IS: ☐ GRANTED ☑ DENIED ☐ GRANTED IN PART ☐ OTHER

3. CHECK IF APPROPRIATE: ................................. ☐ SETTLE ORDER ☐ SUBMIT ORDER

☐ DO NOT POST ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK  :   IAS PART 12
------------------------------------------------------------------x
ORLY GENGER, in her individual capacity and on
behalf of the Orly Genger 1993 Trust (both in its
individual capacity and on behalf of D & K Limited
Partnership),

Index No. 109749/2009

Motion seq. nos. 034, 035

                                        Plaintiff,

**DECISION AND ORDER**

                    -against-

DALIA GENGER, SAGI GENGER, LEAH FANG,
D & K GP LLC, and TPR INVESTMENT
ASSOCIATES, INC.,

                                        Defendants.
------------------------------------------------------------------x
BARBARA JAFFE, JSC:

**For plaintiff:**
Yoav M. Griver, Esq.
Brian Leinbach, Esq.
Zeichner, Ellman & Krause, LLP
1211 Avenue of the Americas
New York, NY 10036
212-223-0400

**For TPR/Sagi:**
John Dellaportas, Esq.
Nicholas Schretzman, Esq.
Morgan, Lewis & Bockius LLP
101 Park Ave.
New York, NY 10178
212-309-6000

William Wachtel, Esq.
Wachtel, Missry LLP
885 Second Ave.
New York, NY 10017
212-909-9595

In motion sequence number 034, defendants TPR Investment Associates, Inc. (TPR) and

Sagi Genger (collectively, TPR/Sagi) seek an order compelling plaintiff Orly Genger and

nonparties Arie Genger and Mark Hirsch to attend additional depositions and answer questions

about the settlement agreement entered into by Orly, Arie and the so-called Trump Group in or

about June 2013. (NYSCEF 539).  In motion sequence number 035, Arie seeks a protective order

preventing further deposition of him by TPR/Sagi. (NYSCEF 550).  These motions are

consolidated for disposition.

## I.  BACKGROUND

The background pertinent to these motions is set forth in several opinions of this court and others, including my decision dated December 23, 2013, rendered in the related action, *Genger v Genger*, Index No. 651089/2010. (NYSCEF 700).  In that decision, I denied TPR/Sagi's motion for an order compelling Arie and Orly to disclose the terms of the June 2013 settlement.  TPR/Sagi filed this motion seeking essentially the same relief, and before I issued the December decision.  And, in another decision in that action, dated March 20, 2014, I denied TPR/Sagi's motion for an order enjoining Orly from implementing or accepting the benefits of the settlement, thereby rejecting their contention that Orly should be restrained from enjoying or using the proceeds for her own benefit as the  proceeds belong to the Orly Trust. (NYSCEF 925).

In light of the foregoing, and given the protracted history of these litigations, familiarity with the factual background, rulings, and rationales set forth in the December and March decisions is presumed.

## II.  DISCUSSION

TPR/Sagi allege that as the Orly Trust receives no consideration for releasing its claims against the Trump Group, the party that funded the settlement, and that Orly has pocketed the proceeds for her own benefit, there is "a clear conflict of interest between Orly and the Orly Trust, which would militate for dismissal of Orly's derivative claims against Sagi and TPR on the grounds that she is no longer an adequate representative."  They thus argue that the settlement agreement is relevant to their defenses in this action, as opposed to the 2010 action addressed in my December 2013 decision, and that Orly, as a derivative plaintiff, has no standing to bring claims on behalf of the Orly Trust given the conflict of interest and her inadequate representation

2

of the Trust's interests. (NYSCEF 547).

Having settled claims against the Trump Group in her individual capacity and as beneficiary of the Orly Trust, and absent anything prohibiting the Orly Trust from prosecuting claims against the Trump Group, there is no conflict between Orly and the Trust. And, it is undisputed that TPR/Sagi sought to obtain proceeds of the sale of the Orly Trust shares to the Trump Group, which proceeds are also claimed by the Orly Trust. Moreover, in a recent opinion issued by the Southern District of New York in *TPR Inv. Assoc., Inc. v Pedowitz & Meister LLP*, 2014 WL 1979932, *6 (SD NY, May 15, 2014), although TPR was found to be entitled to the proceeds, the court also observed that nothing therein "should be construed as resolving any question other than whether TPR is the next (but not necessarily last) beneficiary of the sale of the Orly Trust Shares." Consequently, given TPR/Sagi's struggle with the Trust over the proceeds, their bona fides in expressing concern for the Trust is questionable at best.

Additionally, Dalia, trustee of the Orly Trust, has often sided with her son Sagi in these actions, and if Orly is deemed to be an inadequate representative of the Orly Trust, and Dalia declines to pursue the Orly Trust claims against TPR/Sagi, TPR/Sagi could be insulated from the prosecution of such claims. However, after TPR/Sagi filed this motion, the Appellate Division, First Department, held that Dalia had a conflict of interest in releasing herself, as part of settlement agreements entered into in 2011 and 2012 between TPR/Sagi and herself, as trustee. It also adjudged the settlements, which were against Orly's interests, as void and/or voidable. (*Genger v Genger*, 115 AD3d 421, 423 [1st Dept 2014]). Thus, Dalia may no longer be able to serve as trustee, having failed to disclose the conflict to her principal, Orly. And, as noted by the First Department, Orly had petitioned the Surrogate's Court to remove Dalia as trustee and to

3

surcharge her. (*Id.*).

To the extent that there exist any issues as to which claims filed by Orly against the Trump Group belong to Orly individually or are derivative claims of the Orly Trust, and whether the derivative claims were released pursuant to the settlement agreement, as I observed in my March 2014 decision, those are matters for the parties to the settlement agreement.

This action does not involve the Trump Group, the party that is released under the settlement agreement. Rather, this action concerns Orly's allegation of "a sham UCC sale" orchestrated by Dalia and Sagi in 2009 with respect to the so-called 1993 Note that was never intended to be collected or enforced. Thus, TPR/Sagi have not demonstrated that the settlement agreement is relevant to their defenses. (NYSCEF 549 at 1). And it is undisputed that the settlement agreement settles no claims asserted by Orly in this action. Thus, there is no need to depose Orly about the settlement agreement.

As it is also undisputed that neither Arie nor Hirsch, an officer of the Trump Group, are parties to this action, there is no basis for deposing them about the settlement agreement.

TPR/Sagi also rely on a recent pleading filed by the Trump Group in the 2010 action (NYSCEF 888) whereby it raises a defense pursuant to General Obligations Law § 15-108 (b) to the cross claim for contribution asserted against it by TPR/Sagi. They argue that the pleading reflects the divergent positions taken by Orly and the Trump Group as to whether the settlement agreement settled derivative claims and, thus, according to TPR/Sagi, "one of these parties is lying to the Court." (NYSCEF 638 at 2). Per my holding in the December decision, the settlement agreement "has no bearing on anything other than a possible offset at the end of the trial," and that even though the settlement terms may be useful in assessing maximum exposure

4

under §15-108, "such strategizing [to obtain the settlement terms] has no bearing on the underlying issues of fault and damages." (NYSCEF 700 at 1). I thus found that "other than trial strategy, TPR/Sagi fail[ed] to advance a sufficient reason supporting its request for pre-verdict disclosure of the settlement agreement." (*Id*.). The same holds true here.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED, that the relief requested in motion sequence number 034 by TPR Investment Associates, Inc. and Sagi Genger (TPR/Sagi) seeking to compel additional depositions of the named deponents is denied; and it is further

ORDERED, that the relief requested in motion sequence number 035 by nonparty Arie Genger for a protective order to prevent further depositions of him by TPR/Sagi is denied as moot.

ENTER:

_____
Barbara Jaffe, JSC

Dated:     July 3, 2014
         New York, New York

5

SUPPLEMENTAL CITATION

SURROGATE'S COURT, NEW YORK COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

File No. 2008-0017/*B*

**TO:   Assaf Sternberg, as Trustee of the Sagi Genger 1993 Trust**

A petition having been duly filed by Orly Genger, domiciled at 780 Greenwich Street, Apt. 4P, New York, New York 10014.
**YOU ARE HEREBY CITED TO SHOW CAUSE** before the Surrogate's Court, New York County, at 31 Chambers Street, New York, New York 10007, Room _509_ on **September _12_,** **2014,** at **10:00** o'clock in the forenoon of that day, why a decree should not be issued (i) removing Dalia Genger as trustee of the Orly Genger 1993 Trust created under agreement dated December 13, 1993; (ii) suspending Dalia Genger as trustee pending determination of her fitness to serve; (iii) appointing Joel Isaacson as successor trustee of the Orly Genger 1993 Trust; and (iv) awarding to Petitioner such other and further relief as the Court deems equitable and proper.
*IN TESTIMONY WHEREOF*, we have cause the seal of the Surrogate's Court of our said County of New York to be hereunto affixed.

Dated, Attested and Sealed, _August 5, 2014_
  (L.S.)

HON.   ___*Rita Mella*___
Surrogate, New York County

___*Diana Sanabria*___
Chief Clerk

Attorneys for Petitioner:

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, NY   10036
(212) 223-0400
   Attn:  Yoav M. Griver, Esq.
       Bryan D. Leinbach, Esq.

**This citation is served upon you as required by law.   You are not obliged to appear in person.   If you fail to appear, it will be assumed that you consent to the proceedings, unless you file written verified objections thereto.   You have a right to have an attorney-at-law appear for you.**

Proof of Service shall be filed with the Clerk of the Court at least two (2) days before the return date (207.7c).

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No.: 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal of
DALIA GENGER as Trustee of the Orly Genger
1993 Trust pursuant to SCPA § 711(11)

## **AFFIRMATION OF BRYAN D. LEINBACH**

STATE OF NEW YORK,
COUNTY OF NEW YORK.

      BRYAN D. LEINBACH, pursuant to CPLR 2106 and under the penalties of perjury, affirms:

      1.     I am associated with the firm of Zeichner Ellman & Krause LLP, attorneys for petitioner Orly Genger ("Orly"). I make this affirmation to amend Orly's Third Amended Petition to name Assaf Sternberg, Trustee of the Sagi Genger 1993 Trust (then "Sagi Trust"), as a party.

      2.     By Decision and Order dated July 18, 2014, the Court directed Orly "to obtain and serve process on the Sagi Trust in connection with the third amended petition." 7/18/14 Decision at 3. (A copy of the July 18, 2014 Decision is attached hereto as **Exhibit A**.) Orly previously served the Second Amended Petition in this action upon David Parnes as Trustee of the Sagi Trust. See 7/18/14 Decision at 2 and note 2.

      3.     Pursuant to the Court's direction, Orly counsel obtained a Citation for Assaf Sternberg, the current trustee of the Sagi Trust on July 25, 2014. That same day, the Surrogate

Court informed Orly counsel that Orly counsel would be required to file an affirmation to amend Orly's Third Amended Petition to include Mr. Sternberg as an interested party, and provide his address and capacity.

      4.     Upon information and belief, Assaf Sternberg is the current Trustee of the Sagi Genger 1993 Trust.  Paragraph 3 of the Third Amended Petition is hereby amended to add the following information at the end thereof:

> Upon information and belief, Assaf Sternberg, residing at 2 Balfur Street, Kiryat Uno, Israel, is the Trustee of the Sagi Trust.

Dated:    New York, New York
           August 4, 2014

                                    BRYAN D. LEINBACH

2

# Lexis®

Switch Client | Preferences | Help | Sign Out

| My Lexis™ | Search | Get a Document | Shepard's® | More | History | Alerts |

FOCUS™ Terms [genger and "july 18"]     Search Within [Original Results (1 - 2)  ▾] [Go]     Advanced...

View Tutorial

Source: **Legal > States Legal - U.S. > New York > Find Cases > Cases from NYLJ (ALM) from 1989** ⓘ

Terms: **genger and "july 18"**  (Suggest Terms for My Search)

☞Select for FOCUS™ or Delivery
☐

*ESTATE OF ARIE GENGER, Grantor (08/0017); DECISIONS; First Judicial Department; New York County; SURROGATE'S COURT New York Law Journal July 18, 2014 Friday*

Copyright 2014 ALM Media Properties, LLC
All Rights Reserved
Further duplication without permission is prohibited

## New York Law Journal

New York Law Journal

**July 18,** 2014 Friday

**SECTION:** COURT DECISIONS; Pg. p.22, col.5 Vol. 252 No. 12

**LENGTH:** 1314 words

**HEADLINE:** ESTATE OF ARIE **GENGER**, Grantor (08/0017);
DECISIONS;
First Judicial Department;
New York County;
SURROGATE'S COURT

**BYLINE:** Surrogate Anderson

**BODY:**

COURT: Surrogate's Court, New York County

CASE NUMBER: 08/0017

ESTATE OF ARIE **GENGER**, Grantor (08/0017) - Orly **Genger**, the primary beneficiary of an irrevocable inter vivos trust established by her father, Arie **Genger**, on December 13, 1993, seeks removal of her mother, Dalia **Genger**, as trustee. Dalia, in turn, moves to dismiss Orly's third amended petition for failure to state a ground for relief (CPLR 3211 [a][7]) and for failure to join all necessary parties (CPLR 3211 [a][10]).

n1

The trust at issue (the "Orly Trust") provides for discretionary principal distributions to Orly for life, with remainder to her descendants, or, if none, to a trust Arie created for the benefit of Orly's brother, Sagi **Genger** (the "Sagi Trust"). The original and successor trustees served until January 2008, at which time Dalia was appointed pursuant to the terms of the instrument. Orly immediately challenged the validity of her mother's appointment and, in the alternative, sought the appointment of a "special trustee" to investigate alleged "wrongful dealings concerning the assets and income of the trust." The court ruled that Dalia's appointment was valid and that Orly had set forth no grounds that would warrant the appointment of a "special trustee" (Matter of **Genger**, NYLJ, Jan. 9, 2009, at 34, col 2 [Sur Ct, NY County 2009]). Less than seven months later, Orly commenced the instant proceeding to remove her mother as trustee and to appoint Michael D. Grohman, Esq., as successor trustee. After Orly amended the petition for the third time, Dalia made the instant motion to dismiss.

As a threshold matter, we address movant's argument that Orly failed to join the Sagi Trust as contingent remainder beneficiary and to serve it with the third amended petition. The Sagi Trust is unquestionably a proper party to this proceeding. Where removal of a fiduciary is sought on the ground of misconduct, contingent remainder beneficiaries are considered necessary parties, since they have a cognizable interest in the proper administration of the trust (see e.g. Matter of Bellinger, 35 AD2d 1078 [4th Dept 1970]; Matter of Silver, 72 Misc 2d 963 [Sur Ct, Kings County 1973]).

This proceeding was commenced by an order to show cause dated July 1, 2009. Although the trustee of the Sagi Trust, David Parnes, was not initially served with that order to show cause, Orly subsequently amended her petition to name the Sagi Trust as a party. A supplemental order to show cause, which provided for service of process on Mr. Parnes in his capacity as trustee of the Sagi Trust, issued thereafter. An affidavit of service filed with the court confirms that service was effected in the manner directed. On the return date, September 8, 2009, Mr. Parnes did not answer or appear, i.e., the Sagi Trust defaulted. Thereafter, Orly amended her pleading for a second time. Although the changes to the pleading were substantive in nature, Orly provided only informal notice of the new pleading on Mr. Parnes as trustee.

Under these circumstances, the issue is what, if any, notice of the third amended pleading was required. Orly contends that, because Mr. Parnes initially defaulted, she had no obligation to give him any notice of the third amended pleading, but, in the event notice was required, she provided sufficient notice by mailing him a copy.

If an amended pleading does not affect the interests of a defaulting party, service of process, defined in SCPA §103 (43) as a "[c]itation, order to show cause, subpoena and any other mandate of the surrogate's court by which jurisdiction is obtained of a party," is not required. However, where an amended pleading includes "allegations or prayers [for relief that] are modified to any meaningful extent, all parties should be given notice thereof and an opportunity to be heard" (1 Warren's Heaton on Surrogate's Court Practice, §9.04[1], at 9-12 [7th ed]; compare CPLR §3012 [a], providing that "[a] subsequent pleading asserting new or additional claims for relief shall be served upon a party who has not appeared in the manner provided for service of a summons"). In other words, service of process on a party who has defaulted is required if the changes to the pleading, as they relate to the defaulting party, are substantive in nature.

Here, the third amended petition bears little resemblance to the original pleading.[2] Although Orly seeks some of the same relief as in that pleading, i.e., removal of Dalia, she has substantially expanded the grounds for her removal. For example, she has now alleged conduct that occurred in the more than three years between the time of her initial removal petition and the third amended petition. Orly also asks the court to appoint a successor trustee different from the one proposed in the original pleading. The amended pleading thus represents a substantial modification of the prior pleading. As a result, it cannot be said with any degree of certainty that, if the initial pleading had contained the allegations in the third amended pleading, the Sagi Trust would have defaulted. Under these circumstances, Orly's argument that she had no obligation to

give any notice of the third amended petition to the trustee of the Sagi Trust fails.

Similarly, Orly's contention that, in any event, she gave sufficient notice of the third amended pleading is without merit. The record shows that Orly did in fact mail a copy of the pleading to the trustee. However, Orly's provision of informal notice did not confer jurisdiction, since, as shown above, service of process was required. Further, the defect was never cured by the filing of a waiver of service or by the trustee's appearance."[3]

Contrary to movant's contention, however, dismissal of the pleading is not required. The court has authority under SCPA §312 to join "any person necessary or proper to the final determination" through the issuance of supplemental process (see also Matter of Bellinger, 35 AD2d 1078 [failure to cite interested parties in a removal proceeding did not require dismissal of the petition, but issuance of a supplemental citation]). Accordingly, Orly is directed to obtain and serve process on the Sagi Trust in connection with the third amended Petition. The balance of Orly's motion, which seeks dismissal for failure to state a claim (CPLR 3211 [a][7]), is held in abeyance pending completion of jurisdiction. If the trustee of the Sagi Trust appears, the motion to dismiss must be re-noticed and served upon the trustee so that he is afforded the opportunity to respond.

This decision constitutes the order of the court.

Dated: July 15, 2014


   [note 1] Dalia's motion papers do not expressly invoke CPLR 3211 ("Motion to dismiss"). However, since the motion is made preanswer and claims that the petition fails to "state a valid claim for removal" and "fails to name, join and serve all persons interested," the court will treat the motion as one seeking dismissal under CPLR 3211(a)(7) and (a)(10).


   [note 2] Had Orly served process on the trustee in relation to her second amended petition, that pleading would have been the operative one for comparison. In any event, it is noted that the third amended petition bears little resemblance to its immediate predecessor as well.


   [note 3] The trustee's "participation" in the proceeding in connection with Orly's motion for a preliminary injunction did not constitute an appearance within the meaning of SCPA §401. For reasons that are unclear, Orly served the motion upon Mr. Parnes as trustee of the Sagi Trust. The motion was eventually withdrawn, but, before then, Mr. Parnes filed an affidavit in opposition, and his counsel came to court on the motion's return date and participated in a court conference. However, the trustee never attempted to participate formally in the proceeding. For example, his counsel never attempted to file a responsive pleading or a notice of appearance.


**LOAD-DATE: July 18,** 2014

   Source: **Legal > States Legal - U.S. > New York > Find Cases > Cases from NYLJ (ALM) from 1989** [i]
   Terms: **genger and "july 18"**  (Suggest Terms for My Search)
   View: Full
Date/Time: Wednesday, July 23, 2014 - 2:04 PM EDT

SURROGATE'S COURT NEW YORK COUNTY                    File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

# AFFIRMATION OF BRYAN D. LEINBACH

### ZEICHNER ELLMAN & KRAUSE LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
TEL: (212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com

*Office Copy*
8/6/14   10669.002

08-22-14

SURROGATE'S COURT: NEW YORK COUNTY

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER, as Trustee of the Orly
Genger 1993 Trust Pursuant to SCPA § 711(11)

File No.: 2008-0017/B

New York County Surrogate's Court
MISCELLANEOUS DEPT.

AUG 0 8 2014

FILED
Clerk_____

# **AFFIRMATION OF SERVICE**

## AFFIRMATION OF SERVICE

STATE OF NEW YORK
COUNTY OF NEW YORK

      BRYAN D. LEINBACH, an attorney admitted to practice law in New York, pursuant to CPLR 2106 and under the penalty of perjury, states the following: That on the 6th day of August, 2014, I caused to be served **SUPPLIMENTAL CITATION TO ASSAF STERNBERG, AS TRUSTEE OF THE SAGI GENGER 1993 TRUST**, and **AFFIRMATION OF BRYAN D. LEINBACH with attached exhibit** upon the party hereinafter named at the place hereinafter stated by depositing the same, properly enclosed in post-paid, properly addressed wrappers, in an official depository under the exclusive care and custody of the United States Post Office Department within the City and State of New York by registered mail, return receipt requested, directed to said party at their last known addresses given below:

Assaf Sternberg
2 Balfur St.
Kiryat Uno
Israel

Dated: August 6, 2014

                                                _____
                                                BRYAN D. LEINBACH

SUPPLEMENTAL CITATION

SURROGATE'S COURT, NEW YORK COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

File No. 2008-0017/*B*

**TO:   Assaf Sternberg, as Trustee of the Sagi Genger 1993 Trust**

A petition having been duly filed by Orly Genger, domiciled at 780 Greenwich Street, Apt. 4P, New York, New York 10014.

**YOU ARE HEREBY CITED TO SHOW CAUSE** before the Surrogate's Court, New York County, at 31 Chambers Street, New York, New York 10007, Room _509_ on **September 12,** 2014, at **10:00** o'clock in the forenoon of that day, why a decree should not be issued (i) removing Dalia Genger as trustee of the Orly Genger 1993 Trust created under agreement dated December 13, 1993; (ii) suspending Dalia Genger as trustee pending determination of her fitness to serve; (iii) appointing Joel Isaacson as successor trustee of the Orly Genger 1993 Trust; and (iv) awarding to Petitioner such other and further relief as the Court deems equitable and proper.

*IN TESTIMONY WHEREOF*, we have cause the seal of the Surrogate's Court of our said County of New York to be hereunto affixed.

Dated, Attested and Sealed, _August 5, 2014_
(L.S.)

HON.   _Rita Mella_
Surrogate, New York County

_Diana Sanabria_
Chief Clerk

Attorneys for Petitioner:

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, NY   10036
(212) 223-0400
   Attn:  Yoav M. Griver, Esq.
      Bryan D. Leinbach, Esq.

**This citation is served upon you as required by law.   You are not obliged to appear in person.   If you fail to appear, it will be assumed that you consent to the proceedings, unless you file written verified objections thereto.   You have a right to have an attorney-at-law appear for you.**

Proof of Service shall be filed with the Clerk of the Court at least two (2) days before the return date (207.7c).

| Registered No. | | | | | Date Stamp |
|---|---|---|---|---|---|
| | | RE150547634US | | | |

| | Reg. Fee $ | $13.65 | | | 0056 |
|---|---|---|---|---|---|
| To Be Completed By Post Office | Handling Charge $ | $0.00 | Return Receipt $ | $0.00 | 05 |
| | Postage $ | $4.16 | Restricted Delivery $ | $0.00 | 08/06/14 |
| | Received by | | | | |

Domestic Insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

| Customer Must Declare Full Value $ | $0.00 | ☐ With Postal Insurance |
|---|---|---|
| | | ☐ Without Postal Insurance |

**To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed**

FROM
Zeichner Ellman + Krause LLP
1000 Avenue of the Americas
New York, NY 100 0036
USA

TO
Assaf Sternberg
2 Balfur St.
IL Israel
Kiryat Uno
Israel

PS Form **3806**, June 2002   **Receipt for Registered Mail**   Copy 1 - Customer
(See Information on Reverse)

For delivery information, visit our website at *www.usps.com* ®

SURROGATE'S COURT NEW YORK COUNTY        File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

## AFFIRMATION OF SERVICE

### ZEICHNER ELLMAN & KRAUSE LLP

1211 AVENUE OF THE AMERICAS

NEW YORK, NEW YORK 10036

TEL: (212) 223-0400

FAX: (212) 753-0396

www.zeklaw.com

February 2013

## TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Albania | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Antigua and Barbuda | No opposition | No opposition | Additional information | Additional information | | |
| Argentina | No opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Armenia | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Australia | No opposition | Qualified opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment, except where it is determined otherwise by the Court seized by the matter |
| Bahamas | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Barbados | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Belarus | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Belgium | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Belize | No opposition | No opposition | No opposition | No opposition | No opposition | No opposition |

**TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)/(b) AND (c), 15(2) AND 16(3)
OF THE HAGUE SERVICE CONVENTION**

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Bosnia and Herzegovina | No opposition | No opposition | No opposition | No opposition | No opposition | No opposition |
| Botswana | No opposition | No opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Bulgaria | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Canada | No opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of judgment, except in exceptional cases determined by the rules of the Court seized of the matter |
| China, People's Republic of | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| China (Hong Kong) | Opposition | No opposition | Additional information | Additional information | No declaration of applicability | No declaration |
| China (Macao) | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |

# TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3)
## OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 | | | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| | | (a) | (b) | (c) | | |
| Croatia | Opposition | | | | | |
| Cyprus | No opposition | No opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Czech Republic | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Denmark | No opposition | No opposition – Additional information, see practical information chart | No opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment (additional information, see declarations) |
| Egypt | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Estonia | No opposition | No opposition | No opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of three years following the date of the judgment |
| Finland | No opposition | No opposition | Additional information | Additional information | No declaration of applicability | No declaration |
| France | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of twelve months following the date of the judgment |

## TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Germany | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the termination of the time limit which has not been observed |
| Greece | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Hungary | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Iceland | No opposition | No opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| India | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Ireland | No opposition | No opposition | Additional information | Additional information | Declaration of applicability | No declaration |

# TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)/(b) AND (c), 15(2) AND 16(3)
## OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Israel | No opposition | No opposition | Additional information | Additional information | No declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Italy | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |
| Japan | No opposition | No opposition Additional information - See practical information chart | No opposition | Opposition | Declaration of applicability | No declaration |
| Korea, Republic of | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Kuwait | Opposition | Opposition | Opposition | Opposition | Declaration of non-applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of the time fixed by the law of the trial judge or one year following the date of Judgment, whichever is longer |
| Latvia | Opposition | Qualified opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Lithuania | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |

# TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)/(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 | | | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| | | (a) | (b) | (c) | | |
| Luxembourg | Opposition | No opposition | No opposition | No opposition | Declaration that application for relief will not be entertained if it is filed after expiration of one year following the date of the judgment | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of judgment, or a longer period which the judge may deem reasonable (additional information, see declarations) |
| Malawi | No opposition | No opposition | No opposition | No opposition | Declaration of applicability | No declaration |
| Malta | Opposition | Opposition | Opposition | Opposition | No declaration of applicability | No declaration |
| Mexico | Opposition | Opposition | Opposition | Opposition | Declaration of non-applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of twelve months following the date of the judgment |
| Monaco | Opposition | Opposition | No opposition | No opposition | Declaration of applicability | Declaration of applicability |
| Montenegro | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after expiration of one year following the date of the judgment |
| Morocco | No opposition | No opposition | No opposition | No opposition | No declaration of applicability | No declaration |

February 2013

# TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 | | | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| | | (a) | (b) | (c) | | |
| Netherlands | No opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Norway | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed if delivered to the competent Norwegian authorities after the expiration of three years following the date of the judgment |
| Pakistan | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed from ex parte decisions will not be entertained if it is filed after the expiration of the period of limitation prescribed by the law of Pakistan |
| Poland | Opposition | No opposition | Opposition | Opposition | No declaration of applicability | No declaration |
| Portugal | Opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Republic of Moldova | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |

# TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Romania | Opposition | No opposition | No opposition | No opposition | No declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Russian Federation | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Saint Vincent and the Grenadines | No opposition | No opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| San Marino | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Serbia | Opposition | Opposition | No opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Seychelles | Opposition | No opposition | Additional information | Additional information | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Slovakia | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | No declaration |
| Slovenia | Opposition | Qualified opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |

February 2013

# TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| Spain | No opposition | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of sixteen months following the date of the judgment |
| Sri Lanka | Opposition | Opposition | No opposition | Opposition | Declaration of applicability | No declaration |
| Sweden | No opposition | No opposition | | | No declaration of applicability | No declaration |
| Switzerland | Opposition | Opposition | Opposition | Opposition | No declaration of applicability | No declaration |
| The Former Yugoslav Republic of Macedonia | Opposition | Opposition | | Additional information | Declaration of applicability | |
| Turkey | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the expiration of one year following the date of the judgment |
| Ukraine | Opposition | Opposition | Opposition | Opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after the after expiration of one year following the date of the judgment |

# TABLE REFLECTING APPLICABILITY OF ARTICLES 8(2), 10(a)/(b) AND (c), 15(2) AND 16(3) OF THE HAGUE SERVICE CONVENTION

| States Parties | Art. 8(2) | Art. 10 (a) | Art. 10 (b) | Art. 10 (c) | Art. 15(2) | Art. 16(3) |
|---|---|---|---|---|---|---|
| United Kingdom | No opposition | No opposition | Additional information – See declarations and practical information chart | Additional information - See declarations and practical information chart | Declaration of applicability | In relation to _Scotland only_, applications for setting aside judgments on the grounds that the defendant did not have knowledge of the proceedings in sufficient time to defend the action will not be entertained if filed more than one year after the date of judgment. |
| United States of America | No opposition – See Practical Information chart | No opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after: a) after the expiration of the period within which the same may be filed under the procedural regulations of the court in which the judgment has been entered, or b) after the expiration of one year following the date of judgment, whichever is later. |
| Venezuela | Opposition | Opposition | No opposition | No opposition | Declaration of applicability | Declaration that application for relief will not be entertained if it is filed after expiration of the period specified in Venezuelan law |

February 2013

Légalisation / Preuves / Notification
Legalisation / Evidence / Service



Octobre / novembre 2003
October / November 2003

**CONCLUSIONS ET RECOMMANDATIONS ADOPTÉES PAR LA COMMISSION SPÉCIALE SUR LE FONCTIONNEMENT PRATIQUE DES CONVENTIONS APOSTILLE, OBTENTION DES PREUVES ET NOTIFICATION**

**(28 octobre au 4 novembre 2003)**

\* \* \*

**CONCLUSIONS AND RECOMMENDATIONS ADOPTED BY THE SPECIAL COMMISSIONON THE PRACTICAL OPERATION OF THE HAGUE APOSTILLE, EVIDENCE AND SERVICE CONVENTIONS**

**(28 October to 4 November 2003)**

Permanent Bureau | *Bureau Permanent*
6, Scheveningseweg   2517 KT The Hague | *La Haye*   The Netherlands | *Pays-Bas*
telephone | *téléphone* +31 (0)70 363 3303   fax | *télécopieur* +31 (0)70 360 4867
e-mail | *courriel* secretariat@hcch.net   website | *site internet* http://www.hcch.net

**CONCLUSIONS ET RECOMMANDATIONS ADOPTEES PAR LA COMMISSION SPECIALE SUR LE FONCTIONNEMENT PRATIQUE DES CONVENTIONS APOSTILLE, OBTENTION DES PREUVES ET NOTIFICATION**

*(28 octobre au 4 novembre 2003)*

\* \* \*

**CONCLUSIONS AND RECOMMENDATIONS ADOPTED BY THE SPECIAL COMMISSION ON THE PRACTICAL OPERATION OF THE HAGUE APOSTILLE, EVIDENCE AND SERVICE CONVENTIONS**

*(28 October to 4 November 2003)*

**Conclusions and Recommendations
of the Special Commission on the practical operation
of The Hague Apostille, Evidence and Service Conventions
(28 October to 4 November 2003)**

1. A Special Commission met in The Hague from 28 October to 4 November 2003 to review the practical operation of the Hague Conventions of *5 October 1961 Abolishing the Requirement of Legalisation for Foreign Public Documents*, of *15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, and of *18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*. The Special Commission, which was attended by 116 delegates representing 57 Member States, States party to one or more Convention under review, and observers, unanimously approved the following conclusions and recommendations:

## I.   GENERAL COMMENTS

2. The Special Commission (SC) noted and emphasised the *continued importance* of the Hague Apostille, Evidence and Service Conventions.

3. In light of the value of the continued monitoring of the Conventions' practical operation, the need to promote uniform interpretation, foster mutual confidence and enhance the mutual benefits for States party to the Convention to exchange their respective experiences in operating the Conventions, as well as to promote the benefits of the Conventions to non-party States, the SC recommended to have *more frequent meetings* to review the practical operation of the Apostille, Evidence and Service Conventions. The Special Commission recommended that review meetings on the practical operation of these three Conventions be held *every five years*, subject to the availability of the additional resources needed. Also, consideration should be given to the possibility of reviewing the practical operation of the *Hague Convention of 25 October 1980 on International Access to Justice*.

4. The SC emphasised that the Apostille, Evidence and Service Conventions operate in an environment which is subject to important *technical developments*. Although this evolution could not be foreseen at the time of the adoption of the three Conventions, the SC underlined that modern technologies are an integral part of today's society and their usage a matter of fact. In this respect, the SC noted that the spirit and letter of the Conventions do not constitute an obstacle to the usage of modern technology and that their application and operation can be further improved by relying on such technologies. The Workshop held prior to the SC (*i.e.*, on 27 October 2003) clearly revealed the means, possibilities and advantages of using modern technologies in subject matters falling within the scope of the Conventions[1].

---

[1]   The Workshop was structured around the following presentations: MR THOMAS GOTTWALD & MR PETER FRANK (Federal Ministry of Justice, Austria): *eJustice – Datahighway to Austrian Courts – Electronic Legal Communication (ELC) – Transmission of Legal Documents*; MS JULIE NIND (Ministry of Justice, New Zealand): *Taking evidence by video link across Tasman*; MS DORY MCKENZIE & MR JAMES MASON (Foreign and Commonwealth Office, United Kingdom): *The issuance of Apostilles by the Foreign and Commonwealth Office*; MR OZIE STALLWORTH & MR KEVIN MENDELSON (National Notary Association, United States of America): *enjoa – The Electronic Notary Journal of Official Acts*.

## II.   APOSTILLE CONVENTION

*General considerations*

5. Examination of practice under the Apostille Convention confirmed its *very wide use and effectiveness*, as well as the absence of any major practical obstacle. Against this background, the SC recommended strongly that States party to the Convention should continue to *promote* it to other States. In particular, Member States of the Conference which are not already party to the Convention are encouraged to consider actively becoming party to the Convention.

6. The SC also stressed the *usefulness of linking the application of the Hague Adoption Convention of 1993 to the Apostille Convention*. In light of the high number of public documents included in a typical adoption procedure, the SC recommended that States that are party to the Adoption Convention but not to the Apostille Convention consider actively becoming party to the latter.

7. The SC emphasised the *use of information technology (IT) could have a positive impact on the operation of the Convention*, in particular through lowering costs and increasing the efficiency of the creation and registration of Apostilles.

8. The SC noted the difficulties some States face with the recognition of Apostilles issued in States with numerous competent authorities (difficulties in identifying and verifying the competence of individual issuing authorities; differences in Apostilles issued within the same State). With a view to further promoting knowledge about the practical operation of the Convention, the SC recommended that States party send all *relevant information to the Permanent Bureau to be publicised on the Hague Conference's website, and that particular consideration to a FAQ-section be given.*

9. Furthermore, the SC recommended that a *Handbook* on the practical operation of the Convention be prepared by the Permanent Bureau, subject to adequate resources being available for the purpose.

*Scope of the Convention*

10. With regard to *commercial and customs documents*, which are excluded from the scope of the Convention, the SC noted that despite some isolated concerns there were no developments that would justify the need to reconsider this exclusion. The SC suggested that the matter be further explored in the Handbook (see recommendation 9 above).

11. Regarding the application of an Apostille on a *certified copy* of a public document, the SC concluded that Article 1 of the Convention applies. Individual States, however, may decline to issue an Apostille to the certified copy of a document on the grounds of public policy.

*Competent Authorities*

12. In addition to the obligation mentioned in Article 6 (of the Convention), the SC recommended that States party make available to the Permanent Bureau a list of *all* competent authorities to issue Apostilles, including their full contact details (postal address, telephone and fax numbers, e-mail). The SC noted the importance of keeping this information updated.

*Formal requirements*

13. The SC underlined the importance of the *principle that an Apostille that has been established according to the requirements of the Convention in the State of issuance must be accepted and produce its effects in any State of production*. With a view to further facilitating free circulation of Apostilles, the SC recalled the importance of the *Model certificate* annexed to the Convention. The SC recommended that Apostilles issued by competent authorities should conform as closely as possible to this model. However, variations in the form of an Apostille among issuing authorities should not be a basis for rejection as long as the Apostille is clearly identifiable as an Apostille issued under the Convention. *The SC firmly rejects, as contrary to the Convention, isolated practices among States party that require Apostilles to be legalised.*

14. The SC took note of some reports of *successful use of electronically or non-manually reproduced signatures of issuing authorities* and that the use of such signatures has not led to an increased incidence of fraud. At the same time, it was noted that most States party remained reticent towards the use of such signatures. The SC recommended the advantages of increased automation, but stressed the importance of applying appropriate anti-fraud measures to the production of automated signatures.

15. The SC agreed that it was important to maintain *mutual confidence* where electronically or non-manually reproduced signatures are used. In this respect, the SC underlined the important role that the *register* – which up to now has not often been called upon to verify the relevant information contained in a specific Apostille – could play in resolving any doubt in relation to an Apostille. The SC noted that maintenance of electronic registers could facilitate the process of verification.

16. The SC noted the *variety of means for affixing Apostilles* to the public document. These means may include rubber stamp, glue, (multi-coloured) ribbons, wax seals, impressed seals, self-adhesive stickers, etc.; as to an allonge, these means may include glue, grommets, staples, etc. The SC noted that all these means are acceptable under the Convention, and that, therefore, these variations cannot be a basis for the rejection of Apostilles.

17. As regards Apostilles to be issued for a *multi-page document*, the SC recommended that the Apostille be affixed to the signature page(s) of the document. When using an allonge, the Apostille may be affixed to the front or the back of the document.

18. The SC stressed that Apostilles may *not be refused in a State of production on the grounds that they do not comply with that State's national formalities and modes of issuance*. The only relevant consideration in this respect is that referred to in paragraph 13 above.

*Language*

19. The SC concluded that Article 4 of the Convention permitted the *use of more than one language* in the Apostille and that this might well assist in the circulation of documents. In the light of examples given by delegations it was clear that it was possible to create a form of Apostille with a number of languages and yet retain conformity with the model of the Apostille provided in the Convention. The SC recommended that States party give information on this to the PB for inclusion on the Hague Conference's website.

*Costs*

20. The SC recalled that the fees charged in connection with the issuing of the Apostille should be *reasonable*, particularly for situations like cross-border adoptions and maintenance procedures. One way of dealing with this could be to charge a single fee for a cluster of related documents rather than an individual fee for each document in a particular case.

*Retention of records in a Register*

21. As regards the issue of the retention and disposal of records in a register or card index established under Article 7, the SC did not suggest a minimum period during which records in a register should be kept. It concluded that it was a matter for each State party to develop *objective criteria* in this respect. The SC agreed that holding of information in electronic form would assist this process by making it easier to store and retrieve records.

*Effects of an Apostille*

22. The SC recalled that under the Convention, the effect of an Apostille is to "certify the authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which it bears" (Art. 3). In particular, the *effect of an Apostille does not extend to the content of the public document* to which it is attached.

*Use of IT in issuing Apostilles*

23. The SC identified the following four stages in the issuing of an Apostille in respect of which the application of IT might be considered and thought that there was no reason in principle – as far as the use of IT proves to be cost-efficient – why IT should not be applied:

1. maintenance of a secure electronic database of signatures for the purpose of verifying the signatures appearing on public documents for which an Apostille is requested;
2. use of word-processing technology to complete the information to appear on the Apostille;
3. use of electronically reproduced signatures of the issuing authority to be inserted through secure electronic means and printed on the Apostille;
4. maintenance of an electronic register.

*E-Apostille?*

24. The SC recommended that States party and the PB should work towards the development of techniques for the generation of electronic Apostilles taking into account *inter alia* the UNCITRAL model laws on electronic commerce and on electronic signatures, both being based on the principles of non-discrimination and functional equivalence.

*Multi-unit States and Regional Economic Integration Organisations (REIOs)*

25. The SC took note of the position of one Member State that the existence of a Multi-unit State clause might assist that State to accede to the Convention, but there was insufficient priority for this to be the subject of a protocol on its own; if there were to be a Protocol on other issues, then such a clause might be considered.

26. The SC accepted that, at this point, there was no need to consider the application of the Convention to documents issued by REIOs.

## III.  EVIDENCE CONVENTION

*General considerations*

27. The SC recalled the importance of the Evidence Convention as a *bridge between common law and civil law* procedures relating to the taking of evidence in civil and commercial litigation.

28. With a view to overcoming some of the differences that have arisen among States party in interpreting the Convention, in particular the scope of a possible reservation under Article 23, the SC carefully reviewed some of the principles and practices relating to the Convention.

*Reservations under Article 23*

29. The SC recognised that the terms of Article 23, which permits a Contracting State to "declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents", are a continued source of misunderstandings. Having regard to the history of the provision, the SC agreed that Article 23 was intended to permit States to ensure that a request for the production of documents must be *sufficiently substantiated* so as to avoid requests whereby one party merely seeks to find out what documents may generally be in the possession of the other party to the proceeding. The SC noted that the wording of the particularised declaration submitted by the UK (*i.e.,* the proponent of the provision) reflected this purpose more adequately than the wording of Article 23. The UK declaration reads as follows:

> "In accordance with Article 23 Her Majesty's Government declare that the United Kingdom will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents. Her Majesty's Government further declare that Her Majesty's Government understand "Letters of Request issued for the purpose of obtaining pre-trial discovery of documents" for the purposes of the foregoing Declaration as including any Letter of Request which requires a person:
>
> a.  to state what documents relevant to the proceedings to which the Letter of Request relates are, or have been, in his possession, custody or power; or
> b.  to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his possession, custody or power."

30. Equally, the SC noted that Article 16 of the *Additional Protocol of 1984 to the Inter-American Convention on the Taking of Evidence Abroad* also more adequately reflects the concern of the proponents of Article 23 of the Evidence Convention. Article 16 of the Additional Protocol reads as follows:

> "The States Parties to this Protocol shall process a letter rogatory that requests the exhibition and copying of documents if it meets the following requirements:
>
> a.  The proceeding has been initiated;
> b.  The documents are reasonably identified by date, contents, or other appropriate information, and
> c.  The letter rogatory specifies those facts and circumstances causing the requesting party reasonably to believe that the requested documents are or were in the possession, control, or custody of, or are known to the person from whom the documents are requested.

The person from whom documents are requested may, where appropriate, deny that he has possession, control, or custody of the requested documents, or may object to the exhibition and copying of the documents, in accordance with the rules of the Convention.

At the time of signing, ratifying or acceding to this Protocol a State may declare that it will process the letters rogatory to which this article applies only if they identify the relationship between the evidence or information requested and the pending proceeding."[2]

31. The SC noted that in some instances where States have made a general, non-particularised declaration under Article 23, they may have mistakenly believed that they are only objecting to evidence requests submitted prior to the *opening of a proceeding in the State of origin*. In fact, "pre-trial discovery" means evidence requests submitted after the filing of a claim but before the final hearing on the merits.

32. Compounding the misunderstandings that may have prompted Contracting States to make a general declaration under Article 23 denying the "pre-trial discovery of documents", the SC noted that in some cases the judicial authorities of a State of origin have concluded that no requests for the production of documents were permitted under the Convention in a State having made such a general declaration. This may result in the State of origin applying its own domestic law for the taking of evidence against foreign parties.

33. The SC took note of the fact that following the discussion of the same issue during the SC meeting in 1989, some States revised their declaration under Article 23 to reflect the more particularised terms on the UK declaration. At the same time, another State party informed the SC about changes in its internal law to further limit the scope of pre-trial discovery, including by increasing the control of judges over discovery proceedings.

34. Against this background, the SC recommended that States which have made a general, non-particularised declaration under Article 23 *revisit their declaration* by considering an amendment adopting terms such as those contained in the UK declaration or in Article 16 of the Inter-American Protocol. In this connection, the SC further recommended the production of a new edition of the *practical Handbook* on the operation of the Convention.

*Scope of Article 23*

35. The SC noted that Article 23 expressly refers to "documents" and that the scope of the provision should not be extended to oral testimony.

*Article 1(2)*

36. The SC recommended that States party submit information to the Permanent Bureau as to how Article 1(2) was interpreted and, in particular, what national judicial proceedings would be regarded as "contemplated" for purposes of this provision.

*Mandatory and / or Exclusive character of the Convention*

37. The SC noted that there were still differing views among States party as to the obligatory and/or exclusive character of the Convention.

---

[2]  Reference was also made to the treatment of pretrial discovery of documents under Art. 9 of the *Inter-American Convention of 1975 on the Taking of Evidence Abroad*.

*Arbitration*

38. The SC noted that in some instances, and in accordance with the internal law of some States, the Convention has been made available for use in arbitration proceedings. The SC stressed that a request for the taking of evidence under the Convention would have to be presented by the relevant judicial authority of the State where the arbitration proceedings take place.

*Time issues*

39. The SC recommended that requests for evidence be presented as soon as practically possible so as to provide sufficient time for their execution in the State addressed.

40. The SC also urged States party to communicate to their Central Authorities and to the authorities receiving letters of request, the importance of expeditious execution of the requests.

41. With a view to avoiding unnecessary delays where a letter of request is deficient, the SC recommended that Central Authorities or executing authorities encourage the requesting authority to reformulate and resubmit its letter of request. In cases where the request appears to be partially deficient, the executing authorities should, wherever appropriate, execute the portion of a letter that is not deficient rather than to reject the entire request.

*Modern technologies*

42. The SC expressed general support for the use of modern technologies to further facilitate the efficient operation of the Convention. The SC noted that there seems to be no legal obstacle to the usage of modern technologies under the Convention. However, the use of some techniques may be subject to different legal requirements in different States (*e.g.*, obtaining the consent of all parties involved in the execution). In this respect, the SC recommended that States party make relevant information on legal requirements relating to specific techniques available to the Permanent Bureau

43. The SC stressed where a special method or procedure is requested for the taking of evidence (Art. 9(2)), the *exception* for methods that are "incompatible with the internal law of the State of execution or [...] impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties" should be interpreted narrowly to permit, to the greatest possible extent, the use of modern information technology.

44. The SC stressed that early informal contact among appropriate authorities to coordinate the presentation and execution of Letters of request might be facilitated by the use of modern information technology such as e-mail.

*Multi-unit States and Regional Economic Integration Organisations (REIOs)*

45. The SC took note of the position of one Member State that the existence of a Multi-unit State clause might assist that State to accede to the Convention, but there was insufficient priority for this to be the subject of a protocol on its own; if there were to be a Protocol on other issues, then such a clause might be considered.

46. The SC accepted that, at this point, there was no need to consider the application of the Convention in relation to REIOs.

## IV.  SERVICE CONVENTION

*Forwarding Authorities*

47. The SC recalled that it is for the law of the requesting State to determine the competence of the forwarding authorities (Art. 3). Furthermore, the SC took note of information provided by number of experts about the position of forwarding authorities and concluded that most practical problems have been solved.

48. The SC invited all States party to provide information on the forwarding authorities and their competences to the Permanent Bureau for posting on the Conference's website. The SC also accepted a suggestion that such information be included on the Standard Form for a Request for Service[3].

49. The SC recommended that in any question of doubt as to the competence of the forwarding authority, rather than rejecting the request, the authorities in the State requested should seek to confirm that competence by either consulting the Conference's website or by making expeditious informal inquiries of the forwarding authorities, including by way of e-mail.

*Designation of Central Authorities*

50. The SC reaffirmed the requirement on States party to the Service Convention to designate a Central Authority under Article 2 and noted the serious difficulties which can arise in operating the Convention if such a designation is not made known to the depositary at the time of the deposit of the instrument of ratification or accession. The SC urged all States party which have not yet done so to designate, as soon as possible, a Central Authority. If delays may not be avoided in the designation of the Central Authority(ies), the SC urged that such States give full information to the Permanent Bureau about the arrangements provided to facilitate the functioning of the Convention pending such designation.

51. The SC requested all States party to provide to the Permanent Bureau complete contact information (postal address, telephone and fax numbers, e-mail and website addresses) for their Central Authorities, particularly for States that have designated more than one Central Authority or other authorities under Article 18. The SC noted the importance of regularly updating of this information on the Conference's website.

*Functioning of the Central Authorities*

52. The SC reaffirmed that it is for a State party to determine its own model for the organisation of the Central Authority functions. In particular, the SC noted that the terms of the Convention do not preclude a Central Authority from contracting activities under the Convention to a private entity, while retaining its status as Central Authority and ultimate responsibility for its obligations under the Convention[4].

53. The SC reaffirmed that according to Article 12(1), a State party shall not charge for its services rendered under the Convention. Nevertheless, under Article 12(2), an applicant shall pay or reimburse the costs occasioned by the employment of a judicial officer or other competent person. The SC urged States to ensure that any such costs reflect actual expenses and be kept at a reasonable level[5].

---

[3]   The Russian Federation did not support this recommendation and reserved its position.
[4]   The Russian Federation did not support this recommendation and reserved its position.
[5]   The Russian Federation did not support this recommendation and reserved its position.

54. The SC invited States party to make available to the Permanent Bureau all relevant information relating to costs, the availability and modalities of service by delivery under Article 5(2), as well as information relating to the alternative modes of transmission under the Convention, for posting on the Conference's website.

*Alternative channels of transmission*

55. The SC reaffirmed its clear understanding that the term "send" in Article 10(a) is to be understood as meaning "service" through postal channels.

56. The SC considered the increasing use of private courier services for the expeditious transmission of documents in a variety of business settings and heard reports that such couriers have been used to serve process under Article 10(a) of the Convention. In light of that, the SC concluded that for the purposes of Article 10(a) the use of a private courier was the equivalent of the postal channel.

57. The SC noted the further clarification submitted by the Japanese delegation on its position regarding Article 10(a):

"Japan has not declared that it objects to the sending of judicial documents, by postal channels, directly to addressees in Japan. As the representative of Japan made clear at the Special Commission of April 1989 on the practical operation of the Service and Evidence Conventions, Japan does not consider that the use of postal channels for sending judicial documents to persons in Japan constitutes an infringement of its sovereign power.
Nevertheless, as the representative also indicated, the absence of a formal objection does not imply that the sending of judicial documents by postal channels to addressees in Japan is always considered valid service in Japan. In fact, sending documents by such a method would not be deemed valid service in Japan in circumstances where the rights of the addressee were not respected."

58. The SC noted that the UK confirmed its position expressed at the Special Commission meeting of 1989, indicating its preference for the use of direct service through English solicitors on residents of England and Wales.

*Use of IT technology*

59. The SC stressed that the operation of the Convention was to be considered in light of a business environment in which use of modern technology was now all pervasive, and that the electronic transmission of judicial communications is a growing part of that environment. In this light, conclusions could be reached as follows:

60. The Convention does not on its terms prevent or prescribe the use of modern technologies to assist in further improving its operation.

61. The Convention does not on its terms deal with internal procedures but there is a link between domestic law systems and the functioning of the Convention.

62. It can be concluded, however, that the transmission of documents internationally for the purposes of the Convention can and should be undertaken by IT-Business methods including e-mail; this is already happening and the SC recommends that States party to the Convention explore all ways in which they can use modern technology for this purpose.

63. In this light, the SC identified a variety of steps for which the use of electronic means may be immediately explored: communication between a requesting party and a forwarding authority, communication between a forwarding authority and a Central Authority of a requested State, and retransmission of the certificate of execution by the designated authority.

64. The SC also recognised that in many domestic legal systems the relevant legal procedures and technological conditions did not allow for service by electronic means, although in certain systems the use of e-mail and fax was permitted in certain circumstances, particularly where approved by judicial authority in advance or agreed by the parties. Nevertheless, the SC recognised that given the pace of technological developments, existing problems might well be overcome so as to enable service by these methods to become more widely used. States party to the Convention are therefore encouraged to explore ways in which such innovations can be achieved.

*Translation requirements*

65. The SC recognised that no translation is required, under the Convention, for transmission under alternative channels provided by the Convention; the SC noted, however, that in isolated cases such translation requirements are imposed by a State's internal law.

66. The SC noted that the vast majority of States party do not require a translation for service by way of informal delivery (Art. 5(2)).

67. As to the translation requirement for service under Article 5(1), the SC also noted the importance of respecting the various requirements provided in the national laws of States party.

68. The SC invited the States party to make available to the Permanent Bureau all relevant information (incl. any declaration) regarding the extent of any translation requirement for execution of requests under Article 5. The SC also invited States party to provide information as to the consequences under their domestic law when acting as requesting State of a refusal of an addressee to accept service under the Convention.

*Scope of application*

69. As to the meaning of the terms "civil or commercial matters", the SC urged for a broad interpretation of these terms and reaffirmed the following conclusions adopted in 1989:

   a.  The Commission considered it desirable that the words "civil or commercial matters" should be interpreted in an *autonomous* manner, without reference exclusively either to the law of the requesting State or to the law of the requested State, or to both laws cumulatively.

   b.  In the "grey area" between private and public law, the historical evolution would suggest the possibility of a more *liberal interpretation* of these words. In particular, it was accepted that matters such as bankruptcy, insurance and employment might fall within the scope of this concept.

70. In addition, the SC took note of the fact that while in some States tax issues were considered as falling within the scope of the Convention, in others this was not the case.

71. The SC also noted that in some States party, the Convention had been applied in proceedings relating to the recovery of proceeds of crime.

72. Finally, the SC cautioned that the meaning of "civil and commercial" appearing in other instruments should not be relied on for interpretation without considering the object and purpose of such other instruments.

*Mandatory and/or exclusive character of the Convention*

73. Recalling the conclusions and recommendations of 1989, the SC confirmed the prevailing view that the Convention was of a non-mandatory, but exclusive character as described in more detail in the provisional version of the new edition of the Practical Handbook, without prejudice to international law on the interpretation of treaties.

74. The SC recalled the purpose and fundamental importance of Article 15(2), which is designed to ensure actual notice to a defender in sufficient time to organise his or her defence.

*Double-date*

75. The SC considered and rejected a proposal that States party adopt a recommendation to implement a system of double-date, according to which the interests of the plaintiff (*e.g.*, limitation periods) and those of the defendant (*e.g.*, time to file his or her defence) have to be protected by assigning different dates. The SC took note that many legal systems have effective means to protect the interests of the plaintiff without having to rely on the actual date of service.

*Exclusion of the application of the Convention between the parties*

76. The SC took note of the practice reported in one State party to the Convention whereby contractual arrangements were entered into and upheld in the courts of that State which excluded the application of the Convention for service of documents as regards parties to such contracts, including parties outside that State.

77. Several experts commented to the effect that this would not be allowed in their States and be considered as contrary to their internal law. Some experts indicated, however, that a judgment rendered pursuant to service in accordance with any such contractual arrangements would not necessarily be refused execution.

*Exequatur*

78. The SC recalled that the Convention does not address the issue of recognition and enforcement of judgments. In addition, experts reaffirmed the need for the Convention to operate so as to sustain the procedural rights of the defender. In particular, the SC recalled again the principle that the defender should be given actual notice in sufficient time to allow him or her to organise a defence. This was significant notably where in the State addressed consideration was given to the validity of service.

*Reservations and reciprocity*

79. The SC noted that States party do not assert reciprocity against other States party that have made declarations under Articles 8 and 10.

*Regional Economic Integration Organisations (REIOs)*

80. The SC accepted that, at this point, there was no need to consider the application of the Convention in relation to REIOs.

*Future Work: Form and Handbook*

81. The SC accepted that future work on the forms be undertaken by the PB in conjunction with a representative group of experts to be designated by the Secretary General, in particular with a view to assessing the necessity of amending the forms and to develop guidelines for completing those forms.

82. The SC welcomed the draft version of the new edition of the Practical Handbook prepared by the Permanent Bureau. The SC invited the Permanent Bureau to finalise the new edition, taking into account the conclusions and recommendations adopted by the SC and emphasised the desirability of maintaining and enhancing the practical utility of the Handbook in conjunction with the information provided on the Conference's website.

The Hague / 20 November 2003

UNCLASSIFIED

United States Department of State

*The Legal Adviser*

*Washington, D.C. 20520*

RELEASED IN FULL

March 14, 1990

L2

Harry W. Swegle, Esquire
Washington Liaison
National Center for State Courts
444 N. Capitol St., N.W.
Suite 608
Washington, D.C. 20001

Subject: Bankston v. Toyota Motor Corporation, 8th Circuit,
No. 89-1249, November 13, 1989

Dear Mr. Swegle:

I am writing with reference to the interpretation of United
States treaty obligations in the recent Bankston decision. As you
are aware, while courts in the United States have final authority to
interpret international treaties for the purposes of their
application as law in the United States, they give great weight to
treaty interpretations made by the Executive Branch. Rest. 3rd,
Restatement of Foreign Relations Law of the United States §326(2)
(1986).

The United States Government did not have an opportunity to
express its views on the issues before the 8th Circuit Court of
Appeals in Bankston. The November 28 issue of The United States Law
Week first brought the November 13, 1989 decision of the Court of
Appeals in Bankston to the attention of the Office of the Legal
Adviser in the Department of State and the Office of Foreign
Litigation in the Justice Department, which serves as the U.S.
Central Authority under the 1965 Hague Convention on the Service
Abroad of Judicial and Extrajudicial Documents in Civil or
Commercial Matters, 20 U.S.T. 361, T.I.A.S. 6638. The Circuit Court
in Bankston, examining Toyota's motion to dismiss for improper
service on the defendant in Japan by registered mail rather than
under the procedures set out in the Hague Service Convention (to
which both the United States and Japan are parties), concluded that
service of the summons and complaint by registered mail to a
defendant in a foreign country (Japan) is not a method of service of
process permitted by the Hague Convention.

We understand from appellant's/plaintiff's counsel that the time
period for filing a petition for a rehearing in Bankston has
elapsed. We understand further that neither the plaintiff nor the
Court of Appeals was aware of a statement made by the delegate of
Japan in April, 1989 at a meeting of representatives of countries

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: OSCAR J OLSON
DATE/CASE ID: 08 JUN 2010  200902335

UNCLASSIFIED

UNCLASSIFIED

that have joined the Hague Service Convention that appears to be
relevant to the basic question addressed in the Bankston case.   The
Japanese statement in question was the result of efforts by the
Departments of State and Justice to encourage the Government of
Japan to clarify its position with regard to the service of process
in Japan by mail from another country party to the Hague Service
Convention.   Enclosed is a copy of the report of that meeting
prepared by the Permanent Bureau of the Hague Conference on Private
International Law.   The statement and the relevant report language
may be found at pages 9 and 11 of the report and read as follows:

> "Question D:  Have there been any court decisions in your
> country interpreting Article 10 a. of the Hague Service
> Convention which reads as follows:

>> "Provided the State of destination does not object,
>> the present Convention shall not interfere with –

>> a  the freedom to send judicial documents, by postal
>> channels, directly to persons abroad ..."

It was pointed out that the postal channel for service
constitutes a method which is quite separate from service
via the Central Authorities or between judicial officers.
Article 10 a in effect offered a reservation to Contracting
States to consider that service by mail was an infringement
of their sovereignty.   Thus, theoretical doubts about the
legal nature of the procedure were unjustified.
Nonetheless, certain courts in the United States of America
in opinions cited in the "Checklist" had concluded that
service of process abroad by mail was not permitted under
the Convention.

The Japanese delegation explained that their Government
wished the following statement of position to be made known:

> "Japanese position on Article 10 a of the Hague
> Convention on the Service Abroad of Judicial and
> Extrajudicial Documents in Civil or Commercial Matters:

> Japan has not declared that it objects to the sending
> of judicial documents, by postal channels, directly to
> persons abroad.   In this connection, Japan has made it
> clear that no objection to the use of postal channels
> for sending judicial documents to persons in Japan
> does not necessarily imply that the sending by such a
> method is considered valid service in Japan; it merely
> indicates that Japan does not consider it as
> infringement of its sovereign power."

UNCLASSIFIED

UNCLASSIFIED

It was understood that the Japanese position as expressed in this statement would be included in the next revision of the Practical Handbook on the Hague Service Convention." [The Handbook is published by the Hague Conference.]

We consider that the Japanese statement represents the official view of the Japanese Government that Japan does not consider service of process by mail in Japan to violate Japanese judicial sovereignty and that Japan does not claim that such service would be inconsistent with the obligations of any other country party to the Hague Service Convention vis-a-vis Japan. The Japanese statement suggests, however, that it is possible, and even likely, that service in Japan by mail, which may be considered valid service by courts in the United States, would not be considered valid service in Japan for the purposes of Japanese law. Thus, a judgment by a court in the United States based on service on the defendant in Japan by mail, while capable of recognition and enforcement throughout the United States, may well not be capable of recognition and enforcement in Japan by the courts of that country.

We therefore believe that the decision of the Court of Appeals in Bankston is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country.

We believe that it would be useful, in an effort to spare plaintiffs in the United States unnecessary time and expense, for your Center to bring the Japanese statement to the attention of State courts. You may, in doing so, wish to inform them that International Legal Materials, published by the American Society of International Law, reprinted the entire Report of the April session at The Hague in its November, 1989 issue, 28 I.L.M. 1556-1569 (1989). As an additional means of bringing the Japanese Statement and our interpretation of it to the attention of the courts and the private bar, we are sending a copy of this letter to the editor of International Legal Materials with the recommendation that the letter be reproduced in that publication in the near future.

Sincerely yours,

Alan J. Kreczko
Deputy Legal Adviser

Enclosure: Hague Conference Report

UNCLASSIFIED



LexisNexis®

Copyright (c) 1991 American Society of International Law, Washington, D.C.
International Legal Materials

Volume 30, Number 1

January, 1991

*30 I.L.M. 260;* (1991)

**SECTION:** NOTICE OF OTHER RECENT DOCUMENTS

**LENGTH:** 1338 words

**TEXT:**

[*260]   1.   United States Department of State Opinion Regarding the Bankston Case and Service by Mail to Japan under the Hague Service Convention

In the decision of the United States Court of Appeals for the Eighth Circuit, Bankston v. Toyota Motor Company, No. 89-1249, November 13, 1989, the Court concluded that service of summons and complaint by registered mail to a defendant in a foreign country is not a method of service permitted by the Hague Convention.   The United States Department of State has recently stated that it believes the decision to be incorrect.   This view is contained in a March 14 letter from the United States Department of State Deputy Legal Adviser, Alan J. Kreczko, to the Administrative Office of United States Courts and the National Center for State Courts, excerpts of which are reproduced below:

"I am writing with reference to the interpretation of United States treaty obligations in the recent Bankston decision.   As you are aware, while courts in the United States have final authority to interpret international treaties for the purposes of their application as law in the United States, they give great weight to treaty interpretations made by the Executive Branch.   Rest. 3rd, Restatement of Foreign Relations Law of the United States section 326(2) (1986).

"The United States Government did not have an opportunity to express its views on the issues before the 8th Circuit Court in Bankston.   The November 28 issue of the United States Law Week first brought the November 13, 1989 decision of the Court of Appeals in Bankston to the attention of the Office of the Legal Adviser in the Department of State and the Office of Foreign Litigation in the Justice Department, which serves as the U.S. Central Authority under the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. 6638 [4 I.L.M. 341 (1965)].   The Circuit Court in Bankston, examining Toyota's motion to dismiss for improper service on the defendant in Japan by registered mail rather than under procedures set out in the Hague Service Convention (to which both the United States and Japan are parties), concluded that service of summons and complaint by registered mail to a defendant in a foreign country (Japan) is not a method of service of process permitted by the Hague Convention.

"We understand from appellant's/plaintiff's counsel that the time period for filing a petition for a rehearing in Bankston has elapsed.   We understand further that neither the plaintiff nor the Court of Appeals was aware of a statement made by the delegate of Japan in April, 1989 at a meeting of representatives of countries that have joined the Hague Service Convention that appears to   [*261]   be relevant to the basic question addressed in the Bankston case. The Japanese statement in question was the result of efforts by the Departments of State and Justice to encourage the Goverment of Japan to clarify its position with regard to the service of process in Japan by mail from another country party to the Hague Service Convention. . . .   [The section of the report containing the Japanese statement appears at 28 I.L.M. 1561 (1989); the full text of the report from the Hague meeting is reproduced at 28 I.L.M. 1556 (1989).]

"We consider that the Japanese statement represents the official view of the Japanese Government that Japan does not consider service of process by mail in Japan to violate Japanese judicial sovereignty and that Japan does not claim that such service would be inconsistent with the obligations of any other country party to the Hague Service Convention vis-a-vis Japan.   The Japanese statement suggests, however, that it is possible, and even likely, that service in Japan by mail, which may be considered valid service by courts in the United States, would not be considered valid service in Japan for the purposes of Japanese law.   Thus, a judgment by a court in the United States based on service on the defendant in Japan by mail, while capable of recognition and enforcement throughout the United States, may well not be capable of recognition and enforcement in Japan by the courts of that country.

"We therefore believe that the decision of the Court of Appeals in Bankston is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country. . . ."

2.   The United States Supreme Court Allows Texas Supreme Court Decision in Dow Chemical Company v. Alfaro to Stand

On January 7, 1991, the United States Supreme Court allowed the Texas Supreme Court decision in Dow Chemical v. Alfaro [29 I.L.M. 751 (1990)] to stand, refusing to hear an appeal brought by Dow Chemical Company and Shell Oil Company.   The Texas Supreme Court had found that the legislature had abolished the doctrine of forum non conveniens in 1913, and ruled that the Costa Rican plaintiffs could file suit in Texas.   The ruling is expected to permit citizens of foreign countries to bring law suits in the Texas courts.

3.   United Nations Draft Handbook on the Peaceful Settlement of Disputes between States

On December 13, 1984, the General Assembly of the United Nations requested the Secretary-General to prepare a draft handbook on the peaceful settlement of disputes between States on the basis of the outline elaborated by the Special Committee on the Charter of the United Nations and on the Strengthening of the Role of the Organization, and in light of the views expressed in the course of the discussions in the Sixth Committee and in the Special Committee.

[*262]   The 181-page draft handbook is annexed to the Secretary-General's progress report (UN document A/AC.182/L.68 of November 12, 1990), which reviews the program of meetings on the draft document, and which notes that the draft is to be submitted in final form to the 1991 session of the Special Committee, at which time it will include annexes, an index and a bibliography.

As the introduction to the draft handbook notes,

"The purpose of the handbook is to contribute to the peaceful settlement of disputes between States and to help to increase compliance with international law by providing States parties to a dispute, particularly those states which do not have the benefit of long-established and experienced legal departments, with the information they might need to select and apply procedures best suited to the settlement of particular disputes.

"The handbook has been prepared in strict conformity with the Charter of the United Nations.   It is descriptive in nature, it is not a legal instrument and does not commit States in any way."

The contents of the handbook are as follows:

I.   PRINCIPLE OF THE PEACEFUL SETTLEMENT OF DISPUTES BETWEEN STATES
    A.   Charter of the United Nations
    B.   Declarations and resolutions of the General Assembly
    C.   Corollary and related principles
    D.   Free choice of means

II.   MEANS OF SETTLEMENT
    A.   Negotiations and consultations
    B.   Inquiry
    C.   Good offices
    D.   Mediation
    E.   Conciliation
    F.   Arbitration

30 I.L.M. 260, *

    G.  Judicial settlement
    H.  Resort to regional agencies or arrangements
    I.  Other peaceful means

III.  PROCEDURES ENVISAGED IN THE CHARTER OF THE UNITED NATIONS
    A.  Introduction
    B.  The Security Council
    C.  The General Assembly
    D.  The Secretariat

IV.  PROCEDURES ENVISAGED IN OTHER INTERNATIONAL INSTRUMENTS
    A.  Introduction
    B.  Procedures envisaged in the constituent instruments of international organizations of a universal character other than the United Nations
    C.  Procedures envisaged in multilateral treaties creating no permanent institutions

SCANNED ON 10/25/2006

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**
**PRESENT:** **HON. MARYLIN G. DIAMOND** **PART 48**
*Justice*

CANTARELLI, S.p.A.,

Plaintiff,

- v -

L. DELLA CELLA CO., INC.,

Defendant.

**FILED**
OCT 25 2006
NEW YORK
COUNTY CLERK'S OFFICE

INDEX NO. **117651/05**

MOTION DATE

MOTION SEQ. NO. **001**

MOTION CAL. NO.

Cross-Motion:    [ ] Yes    [X] No

**Upon the foregoing papers, it is ordered that:** This is an action to recover $22,663.08 allegedly due on a shipment from Italy of Parma ham by the plaintiff, an Italian company, to the defendant, a company based in Garden City, New York. On January 5, 2006, the summons and complaint were served on the defendant through the Secretary of State, pursuant to BCL § 306. On May 31, 2006, an ex parte default judgment was entered against the defendant. The defendant has now moved to vacate the judgment, pursuant to CPLR 5015(a). A party seeking to set aside a default under this provision must demonstrate a reasonable excuse for the default and a meritorious defense. *See Chisholm v. Hodges*, 277 AD2d 173 (1st Dept. 2000). Here, the defendant has submitted an affidavit from its President, Peter L. Cannizzaro, who states that his company never received a copy of the summons and complaint from the agent whom it had designated to receive service from the Secretary of State and that it was unaware of the lawsuit until it received a copy of the pleadings in the mail in March, 2006. The defendant has also disputed the plaintiff's claim that it is entitled to the monies it seeks, attaching to its motion papers an invoice from a trucking indicating that only 316 cartons of the ham were delivered to the defendant and not the 499 cartons which plaintiff claims to have shipped and for which it seeks payment.

Where service is made through the Secretary of State, the courts have been generous in opening up or denying default judgments. *See Abrahams v. Peddlers Pond Holding Corp.*, 125 AD2d 355 (2nd Dept. 1986); McLaughlin, Practice Commentaries (Cons. Laws of NY, Book 7B, CPLR 317:2 at 477). In view of the defendant's relatively prompt response to the default judgment, its showing of an excusable default and a meritorious defense and New York's strong public policy in permitting parties to litigate on the merits, its motion to vacate the default should be granted and it should be permitted to submit a late answer. *See Delgado v. City of New York*, 245 AD2d 123, 124 (1st Dept 1997).

Accordingly, the defendant's motion is granted and the default judgment entered against it is hereby vacated. The defendant shall have twenty days from service upon its counsel of a copy of this order with notice of entry to serve and file an answer.

Finally, the parties are advised that, in a separate order, this action is being transferred to Civil Court pursuant to CPLR 325(d).

ENTER ORDER

Dated: **10/18/06**

**MARYLIN G. DIAMOND, *J.S.C.***

**Check one: [X] FINAL DISPOSITION**    **[ ] NON-FINAL DISPOSITION**

STATE OF NEW YORK,     AFFIDAVIT OF SERVICE
COUNTY OF NEW YORK.     BY FIRST CLASS MAIL

    CHERYL L. ADEN, being duly sworn, says:  that I am over the age of eighteen years, am not a party herein, and reside in New York County, and that on the 17th day of October, 2014, I served a true copy of the within **BENEFICIARY ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAGI TRUST MOTION TO DISMISS ORDER TO SHOW CAUSE AND THIRD AMENDED PETITION, and AFFIRMATION OF BRYAN D. LEINBACH, WITH EXHIBITS**, upon the attorneys hereinafter named at the places hereinafter stated and set opposite their respective names by depositing the same, properly enclosed in a post-paid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office Department within the City and State of New York, directed to said attorneys at their last known addresses given below.

NAME        ADDRESS

Robert A. Meister, Esq.     570 Lexington Avenue, 18th Floor
Marisa Warren, Esq.      New York, New York 10022
PEDOWITZ & MEISTER LLP

John G. Dellaportas, Esq.    101 Park Avenue
Mary C. Pennisi, Esq.     New York, New York 10178
MORGAN, LEWIS & BOCKIUS LLP

           _____
             CHERYL L. ADEN

Sworn to before me on this
20th day of October, 2014

_____
NOTARY PUBLIC

MICHAEL W. ANTONIVICH
Notary Public, State of New York
No. 01AN4762190
Qualified in Nassau County
Commission Expires June 30, 20__

#782542v1

STATE OF NEW YORK,               AFFIDAVIT OF SERVICE
COUNTY OF NEW YORK.         BY FIRST CLASS MAIL

        CHERYL L. ADEN, being duly sworn, says:  that I am over the age of eighteen years, am not a party herein, and reside in New York County, and that on the 17th day of October, 2014, I served a true copy of the within **BENEFICIARY ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAGI TRUST MOTION TO DISMISS ORDER TO SHOW CAUSE AND THIRD AMENDED PETITION, and AFFIRMATION OF BRYAN D. LEINBACH, WITH EXHIBITS**, upon the attorneys hereinafter named at the places hereinafter stated and set opposite their respective names by depositing the same, properly enclosed in a post-paid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office Department within the City and State of New York, directed to said attorneys at their last known addresses given below.

NAME                    ADDRESS

Robert A. Meister, Esq.        570 Lexington Avenue, 18th Floor
Marisa Warren, Esq.           New York, New York 10022
PEDOWITZ & MEISTER LLP


John G. Dellaportas, Esq.      101 Park Avenue
Mary C. Pennisi, Esq.         New York, New York 10178
MORGAN, LEWIS & BOCKIUS LLP

                                _____
                                CHERYL L. ADEN

Sworn to before me on this
____ day of October, 2014

_____
NOTARY PUBLIC

MICHAEL W. ANTONIVICH
Notary Public, State of New York
No. 01AN4762190
Qualified in Nassau County
Commission Expires June 30, 20___

#782542v1

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No.:     0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the removal
of DALIA GENGER as Trustee of the Orly Genger
1993 Trust pursuant to SCPA § 711(11)

## AFFIRMATION OF BRYAN D. LEINBACH

### ZEICHNER ELLMAN & KRAUSE LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
TEL: (212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com