SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of Orly Genger to
Remove Dalia Genger as Trustee of The Orly Genger
1993 Trust Established on December 13, 1993, by

       ARIE GENGER,

                  Grantor

File No.: 0017/2008

---

> New York County Surrogate's Court
> **MISCELLANEOUS DEPT.**
> OCT **1 3** 2015
> **FILED**
> Clerk_____

# ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAGI GENGER 1993 TRUST'S MOTION TO DISMISS ORLY'S PETITION <u>FOR THE REMOVAL OF DALIA GENGER AS TRUSTEE</u>

**Zeichner Ellman & Krause LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS................................................................................. 8

ARGUMENT..................................................................................................... 8

I.       ORLY'S THIRD AMENDED PETITION CLEARLY SETS
FORTH A CAUSE OF ACTION FOR DALIA'S REMOVAL AS
TRUSTEE OF THE ORLY TRUST. ACCORDINGLY, THE SAGI
TRUST'S MOTION TO DISMISS MUST BE DENIED.......................... 8

II.      THE SAGI TRUST'S FIRST ARGUMENT CONCERNING JOEL
ISAACSON IS MERITLESS AND DOES NOT NEGATE ANY OF
THE PLEADED FACTS SUPPORTING DALIA'S REMOVAL AS
TRUSTEE OF THE ORLY TRUST ...................................................... 14

III.    THE SAGI TRUST'S SECOND ARGUMENT CONCERNING A
CONFIDENTIAL SETTLEMENT BETWEEN ORLY AND THE
TRUMP GROUP IS MERITLESS AND DOES NOT NEGATE
ANY OF THE PLEADED FACTS SUPPORTING DALIA'S
REMOVAL AS TRUSTEE OF THE ORLY TRUST ............................. 19

CONCLUSION ........................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

<u>Ackerman v. 305 E. 40th Owners Corp.</u>,
189 A.D.2d 665 (1st Dept. 1993) ............................................................................. 8

<u>Berrios v. 735 Ave. of the Ams., LLC</u>,
82 A.D.3d 552 (1st Dept. 2011) ............................................................................. 5

<u>Birnbaum v. Birnbaum</u>,
73 N.Y.2d 461 (1989).............................................................................................. 8

<u>Breslin Realty Corp. v. Shaw</u>,
72 A.D.3d 258 (2d Dept. 2010) ............................................................................ 11

<u>CDR Creances S.A.S. v. Cohen</u>,
23 N.Y.3d 307 (2014).................................................................................. 6, 16, 17

<u>Doe v. New York University</u>,
6 Misc.3d 866 (Sup. Ct. N.Y. Cty. 2004) ............................................................ 11

<u>Genger v. Genger</u>,
120 A.D.3d 1102 (1st Dept. 2014) .................................................................... 2, 12

<u>Genger v. Genger</u>,
121 A.D.3d 270 (1st Dept. 2014) .......................................................................... 23

<u>Genger v. Genger</u>,
2013 N.Y. Misc. LEXIS 2304 (Sup. Ct. N.Y. Cty. May 31, 2013), <u>aff'd</u>, 120 A.D.3d
1102 (1st Dept. 2014) ............................................................................................ 11

<u>Genger v. Genger</u>,
2015 U.S. Dist. LEXIS 649 (S.D.N.Y. Jan. 5, 2015) ....................................... 6, 21

<u>Greystone Funding Corp. v Kutner</u>,
121 A.D.3d 581 (1st Dept. 2014) ............................................................................ 8

<u>Guggenheimer v. Ginzburg</u>,
43 N.Y.2d 268 (1977)............................................................................................... 8

<u>In re Estate of Brandt</u>,
81 A.D.2d 268 (1st Dept. 1981) .............................................................................. 9

<u>In re Estate of Saxton</u>,
179 Misc.2d 681 (Sur. Ct. Broome Cty. 1998)....................................................... 8

In re Van Deusen's Estate,
    37 A.D.2d 131 (1st Dept. 1971) ...................................................................9

Landon v Kroll Lab. Specialists, Inc.,
    22 N.Y.3d 1 (2013)......................................................................................8

Marquez v. City of New York,
    48 A.D.3d 241 (1st Dept. 2008) ..................................................................5

Matter of the Estate of Helen Thompson,
    232 A.D.2d 219 (1st Dept. 1996) ..............................................................10

Matter of the Estate of Manny E. Duell, Deceased,
    258 A.D.2d 382 (1st Dept. 1999) ..........................................................9, 10

Matter of Hall,
    275 A.D.2d 979 (4th Dept. 2000) ................................................................9

Matter of the Proceeding to Remove David M. Mergenhagen as Trustee,
    50 A.D.3d 1486 (4th Dept. 2008) ................................................................9

Matter of Stewart,
    2011 N.Y. Misc. LEXIS 6504 (Sur. Ct. N.Y. Cty. Dec. 1, 2011) ..............9

Matter of Wood,
    177 A.D.2d 161 (2d Dept. 1992) .................................................................8

Meinhard v. Salmon,
    249 N.Y. 458 (1928)....................................................................................9

Ryan v. New York Tel. Co.,
    62 N.Y.2d 494 (1984)................................................................................11

Tap Holdings, LLC v Orix Fin. Corp.,
    109 A.D.3d 167 (1st Dept. 2013) ................................................................8

TPR Investment Associates, Inc. v. Pedowitz & Meister, LLP,
    2014 U.S. Dist. LEXIS 67116 (S.D.N.Y. May 15, 2014) ........................23

Ventur Group, LLC v. Finnerty,
    80 A.D.3d 474 (1st Dept. 2011) ................................................................11

Watts v. Swiss Bank Corp.,
    27 N.Y.2d 270 (1970)................................................................................11

Zuckerman v. New York,
    49 N.Y.2d 557 (1980)..................................................................................5

**STATUTES**

CPLR 3211 (McKinney's 2014)...............................................................................................3, 4, 8

**OTHER AUTHORITIES**

http://dictionary.reference.com/browse/acquainted.....................................................................15

## PRELIMINARY STATEMENT

The question before the Court is a narrow one: Are the allegations of petitioner/beneficiary Orly Genger's ("Orly") 96 paragraph, 35 exhibit Third Amended Petition ("TAP"), when taken as true, sufficient to support the judicial removal of Dalia Genger ("Dalia") as sole Trustee of the Orly Genger 1993 Trust ("Orly Trust")? The answer to that question is plainly "Yes." The detailed facts alleged in the TAP, taken as true, demonstrate that Dalia has an inherent and undeniable conflict of interest, and is unwilling or unable to properly discharge her fiduciary duties and act in the best interests of Orly, the sole non-contingent beneficiary of the Orly Trust. Nothing in the Sagi Genger 1993 Trust's ("Sagi Trust") motion papers even addresses these operable facts. As a result, its motion to dismiss should be denied.

Since July 2009 (and before), Orly, the sole lifetime beneficiary of the Orly Genger 1993 Trust ("Orly Trust"), has been seeking to remove her mother, Dalia, as sole Trustee. Orly seeks Dalia's removal because, as detailed in the TAP, Dalia is hostile to Orly, and has used, and continues to use, her position as Trustee to harm Orly in contravention of her fiduciary duties. In this regard, Orly's TAP[1] alleges that Dalia:

- failed to notify Orly that her brother intended to conduct a foreclosure of the Orly Trust's indirect interest in TPR Investment Associates, Inc. ("TPR"), even though she was specifically informed of the foreclosure in advance (TAP ¶¶ 58-65);

- failed to make any effort to protect the Orly Trust's interest in TPR from foreclosure, even though Dalia successfully argued during a marital arbitration that the promissory note Sagi intended to foreclose upon was never intended to be collected (TAP ¶¶ 31-35, 58-65);

- signed agreements that allowed Sagi Genger ("Sagi"), Orly's older brother and established nemesis, to encumber or pledge the Orly Trust's assets, including the Orly Trust's interest in Trans-Resources, Inc., without ever informing Orly (TAP ¶¶ 46-54);

---

[1] For the Court's convenience, a copy of the TAP (without exhibits) is attached as **Exhibit 1** to the accompanying Affirmation of Bryan D. Leinbach ("Leinbach Aff.").

and

- executed a set of secret "settlement agreements" and related promissory notes that – the New York Supreme Court and Appellate Division, First Department, already have held – conflicted with Dalia's role as Trustee of the Orly Trust. These secret agreements improperly saddled the Orly Trust with millions in debt, violated this Court's July 2009 order requiring 10 business days notice to Orly before doing anything that in any way affected the Orly Trust's interest in TRI shares, violated other court injunctions, and imposed multiple poison pills designed to improperly entrench Dalia as Trustee of the Orly Trust against Orly's wishes (TAP ¶¶ 76-93).

The Sagi Trust's motion papers do not address any of these well-pled allegations, which must be accepted as true by this Court on a motion to dismiss.

The Sagi Trust also fails to inform the Court that, since Orly started this proceeding to remove Dalia as Trustee in July 2009, the Appellate Division, First Department, the New York Supreme Court, the United States District Court for the Southern District of New York, and the Delaware Chancery Court, have all found Dalia has a conflict of interest and should not serve as Trustee:

> *In entering into the aforementioned October 2011 and March 2012 settlement agreements with TPR and D & K LP on behalf of Orly Trust, of which she was sole trustee, Dalia had a conflict of interest.* ... Moreover, as previously discussed, *the settlements were entered into in violation of the aforementioned 2010 and 2011 injunctions.* For these reasons, the settlements are voidable and, given the expressed intention of plaintiff (the beneficiary of Orly Trust) to void them, the purported releases they contain are not enforceable.

Genger v. Genger, 120 A.D.3d 1102, 1104 (1st Dept. 2014) (emphases added); 7/3/14 Decision and Order at 3 ("Dalia may no longer be able to serve as trustee, having failed to disclose the conflict to her principal, Orly."); 3/21/14 Decision and Order at 4 ("...having found that 'Dalia – as trustee of Orly's Trust – had a conflict of interest ... the Appellate Division throws doubt on Dalia's standing to complain"); 8/15/12 Hearing Tr. at 4:10-13 ([Judge Feinman] "I mean, unless there is some truth to the conspiracy theories asserted by the plaintiffs, why is she [Dalia]

continuing to serve?  Why doesn't she resign?"); 4/29/14 SDNY Hearing Tr. at 27-28 ([Judge

Keenan] "And as I read Chancellor Strine's – he's chief justice down there, chief judge.  As I

read his remarks, he kept suggesting that she [Dalia] no longer should be trustee, didn't he?");

see also 8/1/13 Delaware Hearing Tr. at 42-43 (Chancellor Strine questioning Dalia's fitness to

serve as Trustee, where "Dalia brings a lawsuit that Orly doesn't want" and "Dalia's aligned with

Sagi").  (Each of these decisions will be more fully addressed below.)

These court determinations that Dalia is adverse to Orly, and the well-pleaded

allegations in the TAP, are sufficient legal grounds to disqualify Dalia and remove her as Trustee

of the Orly Trust, which, of course, means the Sagi Trust's motion to dismiss must be denied.

Clinching the matter, the New York County Supreme Court already has ruled that

Orly's causes of action against Dalia and Sagi for fraud and breach of fiduciary duty arising from

the same fraudulent UCC sale at issue in the TAP were sufficient to survive converted motions[2]

for summary judgment and should proceed to trial:

> Plaintiff alleges that the various defendants [including Dalia and
> Sagi] together committed fraud by, for example, creating
> conditions that resulted in the "sham sale" of the TPR Investment
> assets owed by D&K Ltd. Partnership, and agreeing in the January
> 2009 Meeting Agreement to give power to D&K GP, the company
> controlled by Dalia and Sagi, to pledge the Orly Trust's shares of
> Trans-Resources as security for the promissory note (Am. Ver.
> Compl. [Doc. 46-4] ¶¶ 76-68, 151).  Plaintiff asked repeatedly for
> information about her trust, but because defendant [Dalia] has not
> been forthcoming nor kept her informed, she did not know that
> there was any need to attempt to protect the assets of her trust.
>
> The evidence and arguments provided by both parties show that
> there is a question of fact as to whether Dalia Genger acted with

---

[2]  The defendants filed motions to dismiss.  The New York Supreme Court (Feinman, J.) converted those motions
to ones for summary judgment pursuant to CPLR 3211(c), inviting defendants to file any evidence they had to
support summary judgment in their favor.  Thereafter, following briefing, submission of defendants' purported
evidence, and oral argument, the New York Court denied defendants' motions for summary judgment.

intent to commit fraud against plaintiff's trust, and to lull plaintiff into a false sense of security as to the status of her trust. Accordingly, the branch of defendant's motion to dismiss the 5th cause of action is denied.

7/28/10 Amended Decision and Order at 18-19 (Leinbach Aff., **Exhibit 2**); see also id. at 20-22 (finding Orly sufficiently pled causes of action for fraud against Sagi). Indeed, the Supreme Court upheld Orly's claims against Sagi and D&K GP LLC, an entity controlled by Sagi and Dalia, for aiding and abetting Dalia's breach of fiduciary duty, even as the Court transferred Orly's viable claim for breach of fiduciary duty against Dalia to this Court in the interests of judicial economy.[3] The Sagi Trust, which is in privity with its beneficiary, Sagi, is collaterally estopped from disputing the judicial determination that both Dalia and Sagi are validly alleged to have committed fraud against Orly and the Orly Trust.

For all these reasons, the instant motion to dismiss the TAP should be denied. See Argument, Point I.

As the TAP allegations already have been adjudged sufficient, the Sagi Trust never really contends the TAP's allegations are legally insufficient, or do not adequately plead causes of action against Dalia. Rather, the Sagi Trust tries to advance two legally and factually meritless contentions. *First*, the Sagi Trust contends that Orly committed a "fraud upon the

---

[3] By its July 28, 2010 Amended Decision and Order, the Supreme Court found that the causes of action against Dalia for breach of fiduciary duty should be prosecuted in this Court, in the interests of judicial economy:

As argued by defendant, the claim of breach of fiduciary duty is also at issue in a proceeding currently before the Surrogate's Court entitled *In the Matter of the Application of Orly Genger, as a person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust pursuant to SCPLA § 711(1),* File No. 17/2008 (Surrogate's Court NY County). Plaintiff does not address this argument. Accordingly, in the interest of judicial economy, the branch of defendant's motion seeking summary judgment and dismissal as to the complaint's 1st cause of action, is granted, on the ground that the same claim is pending in another court proceeding (CPLR 3211[a][4]).

7/28/10 Amended Decision at 17 (Leinbach Aff., Ex. 2).

court" by misrepresenting her association with Joel Isaacson, the proposed replacement Trustee. (See Dellaportas Aff. ¶¶ 3-7). *Second*, the Sagi Trust contends that Orly's petition to remove Dalia is nothing more than Orly's attempt to keep from Dalia and the Orly Trust proceeds Orly received from a 2013 settlement agreement in which Orly settled her *individual claims* against a group of persons and entities referred to as the "Trump Group." See Dellaportas Aff. ¶¶ 8-20. Both arguments are meritless for the many reasons discussed below, including that they depend on facts outside the pleadings for which no evidence is proffered.[4] Moreover, both arguments – which simply attack Orly – are irrelevant here; neither argument addresses the well-pled allegations against Dalia, or Dalia's fitness to continue as Trustee against Orly's wishes.[5]

The Sagi Trust's argument regarding Joel Isaacson should fail for at least three independent reasons. *First*, as a matter of fact, Orly's statement that "Mr. Isaacson is not acquainted with any members of the Genger family" (see TAP ¶ 96) is not a "fraud on the court," or even untrue. That statement was part of Orly informing the Court that Mr. Isaacson has no interest in any Genger family entity, or association with any Genger family member, that would or could conflict with his duties as Trustee of the Orly Trust. That Orly briefly hired Mr. Isaacson as a financial advisor in 2007 does not change this fact or make it untrue.[6]

---

[4] The Sagi Trust's motion to dismiss relies entirely on the contentions of Sagi Trust attorney John Dellaportas who has no personal knowledge of the transactions at issue. These attorney contentions are not evidence as a matter of law. See Berrios v. 735 Ave. of the Ams., LLC, 82 A.D.3d 552, 553 (1st Dept. 2011) (attorney affirmation "entitled to no evidentiary weight") (citing Zuckerman v. New York, 49 N.Y.2d 557, 563 (1980) (attorney affirmation "is without evidentiary value and thus unavailing")); Marquez v. City of New York, 48 A.D.3d 241, 241 (1st Dept. 2008) (attorney affirmation insufficient to offer admissible evidence on summary judgment).

[5] In a throwaway paragraph, the Sagi Trust also "adopts," without discussion, the arguments Dalia made to dismiss the TAP, a motion already fully briefed. (See Dellaportas Aff. ¶ 21.) The papers Orly submitted in opposition to Dalia's motion to dismiss and incorporated herein by reference (including the memorandum of law attached as **Exhibit 3** to the Leinbach Aff.) explain why Dalia's motion to dismiss is meritless.

[6] The Sagi Trust fails to inform the Court that Mr. Isaacson was retained because Sagi demanded that Orly change her then accountants to another company before he would provide Orly with any information about her or the Orly Trust's assets. See 3/23/15 Trial Tr. at 2825:15-2827:4 (Leinbach Aff., **Exhibit 4**). Orly changed her

5

*Second*, the Sagi Trust's argument that this one statement rises to the extreme level of a "fraud on the court" fails as a matter of law.  To be a "fraud on the court," Orly must have "acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and [her] adversary's defense of the action," by engaging in such acts as "fabrication of evidence, perjury, and falsification of documents" that destroy "the truth-finding process."  <u>CDR Creances S.A.S. v. Cohen</u>, 23 N.Y.3d 307, 320 (2014).  She did not.  Indeed, the Sagi Trust does not allege (much less provide any evidence) that Orly has engaged in such improper acts, or that the "truth-finding process" somehow has been destroyed.

*Third*, not only is the Sagi Trust's contention factually and legally meritless, it is irrelevant to the central question to be answered – whether the allegations of the TAP, taken as true, are sufficient to justify Dalia's removal as Trustee, and thus survive a motion to dismiss. <u>See</u> Argument, Point II.

The Sagi Trust's argument regarding the settlement between Orly and the Trump Group is equally meritless.  *First*, as a matter of simple logic, Orly's February *2008* petition to remove Dalia cannot be motivated by Orly's 2013 Confidential Settlement Agreement ("CSA"), especially since Orly settled a case that didn't commence until July *2010*.

*Second*, the CSA with the Trump Group settled Orly's individual claims, as the record in Supreme Court clearly demonstrates.  *Indeed, the federal district court and the New York Supreme Court already have found the CSA did not settle Orly Trust claims.*  <u>See</u> <u>Genger v. Genger</u>, 2015 U.S. Dist. LEXIS 649, *9-10 (S.D.N.Y. Jan. 5, 2015) ("The 2013 Settlement

---

accountants, but to no avail.  Sagi still refused to provide Orly with the financial information she wanted.  <u>See</u> <u>id.</u> 2827:14-17; 2828:23-2829:12; 2852:3-6; 2854:2-7; 2855:23-26; 2860:23-2861:12; 3221:21-3222:16; 3234:6-13; 3236:2-7; 3240:3-19 (testimony of Orly Genger and Joel Isaacson).

Agreement does not waive any of the Orly Trust's claims."); 3/20/14 Decision and Order at 4 ("in the settlement agreement, Orly stops short of releasing derivative claims").

The Sagi Trust fails to inform the Court that Sagi and Dalia used the fact that the Orly Trust claims were *not* settled under the CSA to subsequently settle the Orly Trust claims in a sweetheart deal with Dalia's favored son, Sagi, in a Delaware Action commenced by Dalia as Trustee. This deal not only failed to obtain any money for the Orly Trust, it guaranteed that Sagi – not the Orly Trust – would get the $10.3 million the Trump Group paid for the Orly Trust's prior interest in TRI, a closely held Genger family company.[7] That Dalia is now using Orly Trust monies to have her lawyers try to misdirect money from beneficiary Orly to the Orly Trust, so that money can then be dissipated by Dalia to Sagi like all the other Orly Trust assets, further demonstrates Dalia's hostility to Orly.

*Third*, the CSA is irrelevant to the central question to be answered: whether the allegations of the TAP, taken as true, are sufficient to justify Dalia's removal as Trustee, and thus survive a motion to dismiss. If anything, the need to remove Dalia is underscored by her continuing efforts to assert control over purported Orly Trust's assets so she may continue dissipating them. See Argument, Point III.

For these many reasons, the Sagi Trust's motion to dismiss should be denied and Orly's TAP should move forward to trial.

---

[7] An actual example of a "fraud upon the court" is the conflicting positions Sagi and Dalia and their counsel have taken in the Delaware Court – that the Orly Trust claims were not settled by the CSA such that Dalia could subsequently settle those claims – and in this Court and the New York Supreme Court – that the CSA settled the Orly Trust claims.

## STATEMENT OF FACTS

The relevant facts are set forth in paragraphs 13 through 93 of the TAP (attached as Exhibit 1 to the accompanying Leinbach Aff.) and pages 1 to 11 of Orly's memorandum of law in opposition to Dali's motion to dismiss (attached as Exhibit 3 to the accompanying Leinbach Aff.), incorporated here by reference.

## ARGUMENT

Orly's TAP cannot properly be dismissed. On a motion to dismiss, the Court is required to take all fact allegations in the TAP as true, giving Orly the benefit of every inference. Those facts, thus credited, more than adequately state a legal and equitable basis for Dalia's removal as Trustee. See Greystone Funding Corp. v Kutner, 121 A.D.3d 581, 583 (1st Dept. 2014) ("[I]n assessing the adequacy of a complaint under CPLR 3211 (a) (7), the court must give the pleading a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff the benefit of every possible favorable inference.") (quoting Landon v Kroll Lab. Specialists, Inc., 22 N.Y.3d 1, 5 (2013)); Tap Holdings, LLC v Orix Fin. Corp., 109 A.D.3d 167, 174 (1st Dept. 2013) (same); see also Ackerman v. 305 E. 40th Owners Corp., 189 A.D.2d 665, 666 (1st Dept. 1993) (motion to dismiss "should be denied if 'from [the pleading's] four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law'") (quoting Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 275 (1977)).

## I. ORLY'S THIRD AMENDED PETITION CLEARLY SETS FORTH A CAUSE OF ACTION FOR DALIA'S REMOVAL AS TRUSTEE OF THE ORLY TRUST. ACCORDINGLY, THE SAGI TRUST'S MOTION TO DISMISS MUST BE DENIED.

As Trustee, Dalia is obligated to "be as a watchman in the night, ever vigilant and always dedicated to the best interest of the *cestui que trust*." In re Estate of Saxton, 179 Misc.2d

681, 693 (Sur. Ct. Broome Cty. 1998).  She has "the duty of communicating all the material facts to the beneficiary," Matter of Wood, 177 A.D.2d 161, 167 (2d Dept. 1992) (rejecting trustee bank's contention that it had no duty to inform the trust beneficiary of its intent to liquidate the stock and bond portfolio of the trust), and is required to place Orly's interests above her own. Birnbaum v. Birnbaum, 73 N.Y.2d 461, 466 (1989) (fiduciary "is bound to single-mindedly pursue the interests of those to whom a duty of loyalty is owed"); Meinhard v. Salmon, 249 N.Y. 458, 464 (1928) (trustee bound to standard "stricter than the morals of the market place.  Not honesty alone, but the punctilio of an honor the most sensitive"); In re Van Deusen's Estate, 37 A.D.2d 131, 133 (1st Dept. 1971) (same).

A Trustee's violation of her fiduciary duties to a beneficiary, or the existence of a conflict of interest between trustee and beneficiary – irrespective of any resulting harm – is grounds for removal of the Trustee.  See In re Estate of Brandt, 81 A.D.2d 268, 273-274 (1st Dept. 1981) ("acts of self-dealing and other breaches of fiduciary duty alleged would, of course, if established, warrant the trustees' removal, irrespective of whether petitioners' beneficial interests were affected"); Matter of Stewart, 2011 N.Y. Misc. LEXIS 6504, *4 (Sur. Ct. N.Y. Cty. Dec. 1, 2011) (Anderson, J.) (confirming referee's report to remove trustee based on "repeated instances in which [Trustee] put her own personal interests before her fiduciary duty"); Matter of Hall, 275 A.D.2d 979, 980 (4th Dept. 2000) ("If the personal interests of a trustee conflict with her interest as a trustee, the Court may remove her as a trustee.").

Similarly, removal is warranted where a trustee exhibits open hostility to the beneficiary and interferes with the administration of the trust for the beneficiary's benefit.  Thus, in Matter of the Proceeding to Remove David M. Mergenhagen as Trustee, the Trustee was removed because his

> open hostility toward the other beneficiaries directly conflicts with
> his duty to the trust where, as here, that hostility has "interfere[d]
> with the proper administration of the trust" (citing *Matter of Rudin,*
> 15 AD3d 199, 200, 789 NYS2d 123 [2005], *lv denied* 4 NY3d 710,
> 830 NE2d 1146, 797 NYS2d 817 [2005].

50 A.D.3d 1486, 1488 (4th Dept. 2008) (reversing Surrogate's Court). Similarly, in Matter of

the Estate of Manny E. Duell, Deceased, the Appellate Division, First Department, affirmed the

Surrogate Court's decision to remove the co-trustee:

> In light of the demonstrated antagonisms between appellant co-
> trustee and the trust beneficiaries, and between appellant and his
> co-trustee, and the evidence establishing that those antagonisms
> resulted in actions by appellant co-trustee interfering with the
> proper administration of the estate, and upon the proof tending to
> demonstrate that future cooperation was unlikely, the Surrogate's
> determination to remove appellant as co-trustee was a proper
> exercise of discretion. (citations omitted)

258 A.D.2d 382, 383 (1st Dept. 1999). See also Matter of the Estate of Helen Thompson, 232

A.D.2d 219, 219-220 (1st Dept. 1996) ("it is well settled that the Surrogate may disqualify a

person from receiving letters of administration where the friction between such a person and a

beneficiary or co-fiduciaries interferes with the proper administration of the estate and future

cooperation is unlikely") (citations omitted).

Here, the TAP sets forth well-pled allegations of Dalia's clear breaches of

fiduciary duty and open hostility to her daughter. The TAP sets forth how Dalia failed to inform

Orly about the foreclosure of the Orly Trust's indirect interest in TPR Investment Associates,

Inc. through D & K Limited Partnership before that foreclosure sale occurred and made no effort

to stop the foreclosure, even though Dalia had successfully argued only months before that the

promissory note at issue was never intended to be collected. See TAP ¶¶ 31-35, 58-65 (Leinbach

Aff., Ex. 1). The TAP also sets forth how Dalia used her position as Trustee to enter into secret

"defendants-only" settlement agreements and related notes designed to prevent Orly from

removing her as Trustee or appointing a co-trustee, while saddling the Orly Trust with millions of dollars of debt – all without ever informing Orly or any Court prior to executing the agreements. See id. ¶¶ 76-93. Taken as true, the allegations in the TAP set forth a cause of action for Dalia's removal as Trustee.

Indeed, the Supreme Court has twice refused to dismiss the identical allegations in a related Supreme Court action (Index No. 109749/2009), holding that those allegations set forth causes of action that should proceed to trial. See 7/28/10 Amended Decision and Order (Feinman, J.) (Leinbach Aff., Ex. 2); Genger v. Genger, 2013 N.Y. Misc. LEXIS 2304 (Sup. Ct. N.Y. Cty. May 31, 2013) (Jaffe, J.), aff'd, 120 A.D.3d 1102 (1st Dept. 2014). The Sagi Trust, which is in privity with its beneficiary, Sagi,[8] is collaterally estopped from disputing the judicial determination that both Dalia and Sagi are validly alleged to have committed fraud against Orly and the Orly Trust, and that Sagi is validly alleged to have aided and abetted Dalia's breaches of her fiduciary duties as Trustee. See Breslin Realty Corp. v. Shaw, 72 A.D.3d 258, 263 (2d Dept. 2010) (collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in the prior action or proceeding, and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.") (citing Ryan v. New York Tel. Co., 62 N.Y.2d 494, 501-502 (1984)); Ventur Group, LLC v. Finnerty, 80 A.D.3d 474, 475 (1st Dept. 2011) (same).

Moreover, since Orly filed the TAP with the Surrogate's Court in October 2012, numerous courts have examined Dalia's actual actions as Trustee, and recognized that Dalia

---

[8]   See, e.g., Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277-278 (1970) (finding privity between legatees and executor of the estate); Doe v. New York University, 6 Misc.3d 866, 873 (Sup. Ct. N.Y. Cty. 2004) ("[Privity] includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly co-parties to a prior action.") (quoting Watts).

suffers from conflicts of interest, is aligned with Sagi against Orly, and is otherwise unfit to serve

as Trustee. Thus, for example, the First Department held that Dalia has deliberately ignored her

conflicts of interest and placed her personal interests ahead of the Orly Trust and Orly, to benefit

herself at the expense of the Orly Trust:

> In entering into the aforementioned October 2011 and March 2012
> settlement agreements with TPR and D&K LP on behalf of the
> Orly Trust, of which she was sole trustee, Dalia had a conflict of
> interest. The new promissory notes executed by Dalia on behalf of
> the Orly Trust pursuant to the settlement agreements contained
> provisions that were plainly intended to entrench her as sole trustee
> of Orly Trust, notwithstanding the ongoing disputes and litigation
> between herself and plaintiff, the trust's beneficiary. Specifically,
> the replacement notes provided that Dalia's resignation or removal
> as trustee of Orly Trust, or the appointment of any additional
> trustee, would constitute an event of default rendering the notes
> immediately due and payable by Orly Trust. Further, the purported
> settlement of the derivative claims that plaintiff asserts on behalf of
> Orly Trust in this action – which was already pending at the time
> the settlement agreements were executed – required the court's
> approval, which was never sought. Moreover, as previously
> discussed, the settlements were entered into in violation of the
> aforementioned 2010 and 2011 injunctions. For these reasons, the
> settlements are voidable and, given the expressed intention of
> plaintiff (the beneficiary of Orly Trust) to void them, the purported
> releases they contain are not enforceable.

Genger v. Genger 120 A.D.3d 1102, 1104 (1st Dept. 2014) (Leinbach Aff. **Exhibit 5**).

The New York County Supreme Court also recognized Dalia's conflicts of

interest and collusion with her son, Sagi, against Orly make her unfit to act for Orly's benefit:

> Additionally, *Dalia, trustee of the Orly Trust, has often sided with
> her son Sagi in these actions*, and if Orly is deemed to be an
> inadequate representative of the Orly Trust, and Dalia declines to
> pursue the Orly Trust claims against TPR/Sagi, TPR/Sagi could be
> insulated from the prosecution of such claims. However, after
> TPR/Sagi filed this motion, the Appellate Division, First
> Department, held that Dalia had a conflict of interest in releasing
> herself, as part of settlement agreements entered into in 2011 and
> 2012 between TPR/Sagi and herself, as trustee. It also adjudicated
> the settlements, which were against Orly's interests, as void and/or

voidable. (*Genger v Genger*, 115 AD3d 421, 423 [1ˢᵗ Dept 2014]).[9] Thus, *Dalia may no longer be able to serve as trustee, having failed to disclose the conflict to her principal, Orly.* And, as noted by the First Department, Orly has petitioned the Surrogate's Court to remove Dalia as trustee and to surcharge her. (*Id.*).

7/3/14 Decision and Order at 3-4 (emphases added) (Leinbach Aff. **Exhibit 6**).

> Dalia Genger, trustee of the Orly Trust, neither filed nor joined in the instant motion. Instead, she signed an affidavit, dated June 28, 2013, asserting that "an analysis of the claims [filed by Orly against the Trump Group] shows that they are entirely claims of the Orly Trust and that she has no individual rights separate therefrom." (NYSCEF 483, ¶ 2). Dalia's assertion is not supported or accompanied by any analysis of the subject claims, and is fatally conclusory....And *having found that "Dalia – as trustee of Orly's Trust – had a conflict of interest in releasing herself as part of the October 2011 and March 2012 settlement agreements [embodying the proposed transactions]" (Genger v Genger, --AD3d--, 2014 NY Slip Op 01421 *2 (1ˢᵗ Dept 2014), the Appellate Division throws doubt on Dalia's standing to complain.*

3/21/14 Decision and Order at 3-4 (emphasis added) (Leinbach Aff. **Exhibit 7**).

The New York Supreme Court, the Delaware Chancery Court, and the District Court for the Southern District of New York have all questioned Dalia's fitness to serve as a fiduciary for Orly, and questioned her motivation for refusing to resign as Trustee.

> THE COURT: [referring to Surrogate Roth's January 2009 decision] The Surrogate said, you know, basically she should be given a chance to try out, in essence. That's when I reread Judge Roth's decision that at the time of the original objection to her, or the challenge to her, she hasn't been given a chance to serve.
>
> I just don't understand why somebody would want to continue to serve as the trustee of her daughter's trust when the daughter doesn't want her. Why not just say: Okay. I'm out of this. You want to have a fight with your brother, have a fight with your brother. If you want to have a fight with your father, have a fight

---

[9]  In response to Dalia and Sagi/TPR's motions for reconsideration, the First Department replaced the referenced decision with a September 2014 decision (*Genger v. Genger*, 120 A.D.3d 1102 (1st Dept. 2014)), which re-affirmed Dalia's conflicts of interest and expanded upon its prior ruling that Dalia had improperly placed her interests ahead of Orly's interests.

with your father.

> I mean, *unless there is some truth to the conspiracy theories asserted by the plaintiffs, why is she continuing to serve? Why doesn't she resign? Who needs this aggravation?*

8/15/12 Hearing Tr. 3:23-4:13 (Feinman, J.) (emphasis added) (Leinbach Aff. **Exhibit 8**).

> THE COURT: Well how can she be both? She is the trustee for the Orly Trust. Right?...And as I read Chancellor Strine's – he's chief justice down there, chief judge. As I read his remarks, he kept suggesting that she no longer should be trustee, didn't he?

4/29/14 Hearing Tr. at 27-28 (Keenan, J.) (Leinbach Aff. **Exhibit 9**); see also 8/1/13 Hearing Tr. at 42-43 (Leinbach Aff. **Exhibit 10**) (Chancellor Strine questioning Dalia's fitness to serve as trustee, where "Dalia brings a lawsuit that Orly doesn't want," where "Dalia's aligned with Sagi" and Dalia is willing to come to a settlement "on terms that Orly gives up any claim that she has that Sagi didn't exactly cut the pie fairly").

Given the above, Orly's TAP adequately pleads a cause of action for Dalia's removal. Sagi and the Sagi Trust's transparent efforts at delay should end, and this case should proceed.

## II.   THE SAGI TRUST'S FIRST ARGUMENT CONCERNING JOEL ISAACSON IS MERITLESS AND DOES NOT NEGATE ANY OF THE PLEADED FACTS SUPPORTING DALIA'S REMOVAL AS TRUSTEE OF THE ORLY TRUST

The Sagi Trust absurdly contends that Orly's statement that "Mr. Isaacson is not acquainted with any members of the Genger family" is a willful attempt at deceit so egregious as to rise to the level of a "fraud on the court." (See Dellaportas ¶¶ 3-7). The Sagi Trust is wrong. Not only does this argument fail as a matter of fact and law, but it is irrelevant to Dalia's manifest unfitness to be Orly's Trustee.

*First*, the statement in the TAP is not a "fraud on the court." The *complete*

statement at issue is as follows:

> Mr. Isaacson is not acquainted with any members of the Genger
> family, does not have any interest in TRI, TPR or D & K, is
> willing and prepared to succeed Dalia as Trustee immediately and
> has an understanding of the current status of the Orly Trust.

TAP ¶ 96. The statement addresses the truthful and undisputed fact that Mr. Isaacson would be a proper Trustee of the Orly Trust.

The Sagi Trust contends TAP ¶ 96 is incorrect because Mr. Isaacson is "acquainted" with the Genger family in one sense of that word – *i.e.,* Isaacson has some direct, personal knowledge of the interactions between Orly and Sagi because his firm was briefly retained in 2007 by Orly to assess Orly's and the Orly Trust's finances and, in that capacity, he met with Sagi. (See Dellaportas ¶¶ 3-5). The word "acquainted" as used in TAP paragraph 96, however, refers to the undisputed fact that Mr. Isaacson has no social relationship with any Genger family member. See TAP ¶ 96. The dictionary definition of the word "acquainted" is either personal knowledge or social contact. See Dictionary.com (http://dictionary.reference.com/browse/acquainted). As stated in the TAP, Isaacson has no social relationship with any Genger family member, and nowhere does the Sagi Trust even allege otherwise.

In that very same paragraph, the TAP also alleges the fact – again uncontested – that Isaacson has no personal interest in the matters at issue between Orly and Sagi, and would be able (and is willing) to serve in an independent and fiduciary capacity as a replacement trustee. Once again, the Sagi Trust makes no allegation to the contrary. In fact, the movant does not even contend that Isaacson has any current business dealings or personal relationships with any Genger family member, or provide any facts that would make Isaacson an improper trustee

for the Orly Trust.  For this reason alone, the Sagi Trust's argument fails.

      *Second*, the snippet at issues does not constitute a "fraud on the court." as defined by the Court of Appeals.  To show a "fraud on the court," the Sagi Trust must show, *by clear and convincing evidence*, that Orly "has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and [her] adversary's defense of the action," by engaging in *such acts as "fabrication of evidence, perjury, and falsification of documents" that destroy "the truth-finding process*." CDR Creances S.A.S. v. Cohen, 23 N.Y.3d 307, 320 (2014) (emphases added).

      In Creances, plaintiff commenced two actions in 2003 and 2006 in New York County Supreme Court against Maurice Cohen, his son Leon Cohen and several entities engaged in an extensive and intricate conspiracy designed to, among other things, strip Euro-American Lodging Corporation ("EALC"), an entity Maurice Cohen controlled, of its operating income and sell a New York Flatotel hotel to avoid payment of a judgment. 23 N.Y.3d at 313.  Before discovery ended in the consolidated actions, federal authorities arrested the Cohens and charged them with tax evasion and "a conspiracy to commit fraud on the New York court by forging documents and suborning perjury." Id. at 314.  During the federal trial, former associates of the Cohens (the Habibs) testified that the Cohens had orchestrated "an extensive, systematic effort to conceal from the Supreme Court [their] efforts to conceal proceeds from the $33 million dollar sale of the New York Flatotel, and the transfer of the proceeds to offshore accounts to avoid taxes." Id.  After a jury conviction for tax evasion, the federal court found the Cohens had committed a fraud on the New York County Supreme Court. See id. at 315.

      Based upon the federal convictions, plaintiff sought default judgment in the New York Supreme Court action, alleging the Cohens had committed a fraud on the Court.  Creances,

23 N.Y.3d at 315.  After an evidentiary hearing, the New York Supreme Court found the Cohens

had committed a fraud on the Court.  See id. at 316.  The First Department and the Court of

Appeals each affirmed:

> The record reveals *numerous instances of perjury, subornation of perjury, witness tampering and falsification of documents by defendants*.  As Supreme Court and the Appellate Division described in detail, Maurice and Leon Cohen sought to mislead the court about their ownership interests in the defendant corporations, as well as the conversion of the proceeds from the loan agreement and the sale of the New York Flatotel.  The record shows that the Habibs produced the *script provided by Maurice and Leon Cohen, which demonstrated that co-defendants Aich and Maraboeuf were entirely dishonest in their assertions* that Maurice and Leon did not own any of the defendant entities and that neither had a relationship with Maurice Cohen.  Moreover, *the script revealed that defendant Maraboeuf was blatantly lying* about his role at EALC and his assertion that he had no contact with Maurice Cohen for several years.  Additionally, *all of the defendants lied about the payment of their legal fees*, which in fact were paid by entities controlled by Maurice and Leon Cohen.  *Defendant Aich testified regarding her multiple meetings with Jim Cox and conversations with Francois Laville — completely aware that these were fictitious individuals, fabricated by Maurice and Leon Cohen. All this conduct was in furtherance of one goal: to hide Maurice and Leon's connections to the alleged theft, and conceal the location of the funds pursued by the plaintiff.*  Thus, the defendants intended to undermine the New York actions in which plaintiff sought to discover and procure the concealed proceeds of the loan agreement, and committed a fraud on the court.

Id. at 323 (emphases added).

Here, the Sagi Trust accusation – which is nothing more than a quibble over the

use and meaning of the word "acquainted" – is not "clear and convincing evidence" of fraud on

the court, as delineated by the Court of Appeals in Creances.  In this regard, the Sagi Trust does

not, and cannot, provide any evidence showing that Orly intentionally engaged in any of the

improper actions – deliberate fabrication of evidence, perjury, or falsification of documents –

identified by the Court of Appeals in Creances.  Likewise, the Sagi Trust does not, and cannot,

explain how the snippet it takes out of context would undermine or destroy the Court's ability to decide if Dalia is a proper Trustee.

Orly's proposal to replace Dalia with Mr. Isaacson as Trustee cannot rationally be considered a knowing attempt to "hinder the fact finder's fair adjudication of the case" or the Sagi Trust's "defense of the action." Indeed, the Sagi Trust cannot even allege it was unaware of Mr. Isaacson's past retention because, as Sagi concedes, he met with Mr. Isaacson in 2007 and knew all about this limited retention. See Dellaportas Aff. ¶ 4 (admitting Sagi met with Mr. Isaacson in 2007); 7/27/12 Sagi Dep. Tr. at 432:16-434:9; 436:17-439:25 (Leinbach Aff., **Exhibit 11**) (Sagi testifying he met with Mr. Isaacson in 2007); Trial Tr. 1765:4-18 (Leinbach Aff., Ex. 4) (same). For all these reasons, the Sagi Trust's "fraud on the court" argument fails.

This is at least the third time this attorney has insultingly claimed, on Sagi's behalf, that Orly has committed a "fraud on the court." Each time the allegation has been found to be so meritless as to constitute a deliberate waste of the court's time and scarce judicial resources. See 3/18/15 Decision and Order at 3 (Leinbach Aff., **Exhibit 12**) ("Defendants' current argument that no fees should be awarded based on plaintiff's alleged fraud on the court is fatally conclusory and has no bearing on [Orly's] entitlement to costs here"; awarding sanctions against Sagi-controlled TPR); 5/5/14 and 5/4/15 Decisions and Orders (Leinbach Aff., **Exhibit 13**) (denying Sagi and Sagi-controlled TPR's motion to strike complaint based upon Orly's alleged "fraud on the court" and ordering that Sagi would now have to obtain the Court's permission before he would be allowed to file any more motions).[10] As before, there is no fraud on the Court, just another meritless Sagi/Sagi Trust counsel motion specifically intended to delay

---

[10] Although the court applied its order to both parties, all the court's examples of frivolous motions were ones made by Sagi Trust counsel Dellaportas on Sagi's behalf. See 5/4/15 Decision and Order at 5 (Leinbach Aff., Ex. 13).

and waste the Court's valuable time.

*Third*, not only is the Sagi Trust's "fraud on the court" allegation factually and legally meritless, it is irrelevant. The Sagi Trust's contention has no bearing on the central question to be answered – whether Orly's well-pled TAP, taken as true, should survive a motion to dismiss. Nor does the Sagi Trust's meritless allegation affect the numerous judicial determinations that Dalia is unfit to serve as Trustee. See Argument, Point I.

For each and every one of these many reasons, the Sagi Trust's motion to dismiss for "fraud on the court" fails. Its motion to dismiss should be denied.

## III. THE SAGI TRUST'S SECOND ARGUMENT CONCERNING A CONFIDENTIAL SETTLEMENT BETWEEN ORLY AND THE TRUMP GROUP IS MERITLESS AND DOES NOT NEGATE ANY OF THE PLEADED FACTS SUPPORTING DALIA'S REMOVAL AS TRUSTEE OF THE ORLY TRUST

The Sagi Trust next argues that, irrespective of Dalia's past actions, Orly's petition to remove Dalia as Trustee should be dismissed because it is nothing more than an attempt by Orly to prevent Dalia, as Trustee, from taking proceeds Orly received via the June 2013 CSA between Orly individually and the Trump Group. (See Dellaportas Aff. ¶¶ 8-20). The Sagi Trust's argument fails for at least three separate reasons.

*First*, the Sagi Trust's contentions about the CSA are irrelevant because they have no bearing on the central question to be answered – whether Orly's well-pled TAP, taken as true, state a cause of action for Dalia's removal. Nor does the CSA somehow negate the numerous judicial determinations and observations that Dalia has a conflict of interest with Orly and should not be serving as Trustee. For this reason alone, the motion to dismiss should be denied. See Argument, Point I.

*Second*, Sagi's argument fails because, as a matter of basic common sense, Orly did not and could not have commenced this action in 2008 to remove Dalia to prevent Dalia from interfering with a settlement of a legal action that did not come into existence until years later. Orly brought her Petition seeking Dalia's removal in *February 2008*. See TAP ¶ 41.[11] The CSA between Orly and the Trump Group was executed in June 2013 to settle an action that Orly commenced in *July 2010* over a fraud allegedly perpetrated by Sagi, Dalia, and others in *August 2008*. See CSA at 1 (Leinbach Aff., **Exhibit 14**) (FILED UNDER SEAL); TAP ¶ 47, n. 4.

*Third*, the CSA did not settle trust claims. The Sagi Trust's contention is belied by the unambiguous language of the CSA, and the unambiguous language of the So-Ordered Stipulation of Dismissal that resulted from the CSA. Specifically, nothing in the CSA (i) disavows the Orly Trust's rights to the TRI shares; or (ii) re-sells the Orly Trust TRI shares for additional monies. On page 2 of the June 2013 CSA, the Trump Group abandons its claims to the $10.3 million the Trump Group paid for the Orly Trust TRI Shares, leaving the Orly Trust's claims to those monies unimpeded.

The 2013 CSA was entered into as of June 16, 2013. It is executed by the "AG Group," which includes Orly Genger, but only as an individual and Orly Trust beneficiary. See CSA at 1 (Leinbach Aff, Ex. 14). In turn, the Orly Trust is specifically defined in the CSA as a "Sagi Group" member that is *not* a settling party. Id. at 3. The Sagi Trust, which includes the Orly Trust, is *not* included in any release of claims. Id.

---

[11] Surrogate Roth denied Orly's first petition to remove Dalia as premature, because Dalia had not yet been given the chance to act as Trustee. See 12/31/08 Decision and Order at 7 (Leinbach Aff., **Exhibit 15**) (Dalia "has yet to assume the duties of trustee in deference to her daughter's position in this litigation. As a validly appointed trustee, she should be given the opportunity to do what she deems necessary to manage and protect the trust's assets."). Dalia has misused the chance given her by this Court, and has spent her time as Trustee harming Orly and the Orly Trust.

Emphasizing that the CSA does not release Orly Trust claims, the CSA directs the AG Group to try to take action to "cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties" in the future. Id. at 16. *A fortiori*, had the Orly Trust's claims been released in the CSA there would be no reason to include language about "causing" the release of Orly Trust claims in the future.

Both the United States District Court and the New York County Supreme Court have recognized that the CSA does not settle the Orly Trust claims:

> The 2013 Settlement Agreement does not waive any of the Orly Trust's claims.

Genger v. Genger, 2015 U.S. Dist. LEXIS 649, *9-10 (S.D.N.Y. Jan. 5, 2015).

> [I]n the settlement agreement, Orly stops short of releasing derivative claims.

3/21/14 Decision and Order at 4 (Leinbach Aff., Ex. 7).[12]

---

[12] Likewise, Orly repeatedly testified that she did not settle Orly Trust claims:

> Q: And you since settled your claims against the Trump Group; is that correct?
>
> A: I settled with the Trump Group.
>
> Q: And you settled your claims that you brought on your own behalf and on behalf of the trust, correct?
>
> [Objection noted]
>
> A: I settled on behalf of myself as an individual.
>
> Q: You did not settle the claims that were brought on behalf of the trust?
>
> A: Well, if there – if the trustee of my trust decides to file a complaint with the Trumps regarding this matter they can.
>
> ...
>
> Q: Your testimony today is that when you settled your claims against the Trumps you did not settle those claims on behalf of the trust, is that right?
>
> [Objection noted]

After the 2013 CSA was executed, the New York Supreme Court So-Ordered a Stipulation of Dismissal, which only discontinued claims Orly brought individually, and not Orly Trust claims.  See New York Supreme Court So-Ordered Stipulation of Dismissal (Leinbach Aff., **Exhibit 16**).  Importantly, the Stipulation of Dismissal follows the CSA (see CSA at 5-6) by expressly leaving Orly Trust claims un-settled, and lifting the New York Supreme Court injunctions that had previously prevented Dalia from prosecuting an earlier-filed Delaware action Dalia brought on behalf of the Orly Trust, claiming the Orly Trust beneficially owned certain Orly Trust Shares.  See New York Supreme Court So-Ordered Stipulation of Dismissal (Leinbach Aff., Ex. 16).

Taking advantage of the fact that the CSA did not settle Orly Trust claims, on or about August 30, 2013, Dalia, on behalf the Orly Trust, along with her favored son Sagi, engineered a settlement of the Orly Trust's claims in the Delaware courts, by entering into the "So-Ordered" August 30, 2013 Stipulation in the Delaware Chancery Court action that Dalia commenced on behalf of the Orly Trust.  In the Delaware Stipulation (not signed or agreed to by Orly), Dalia, as Trustee of the Orly Trust, not only settled the Orly Trust claims for no money, she stipulated that TPR, an entity Sagi controls – and not the Orly Trust - owned the $10.3 million in proceeds from the sale of the Orly Trust TRI shares.  See 8/30/13 Delaware Stipulation ¶ 2 (Leinbach Aff., **Exhibit 18**). In doing so, Dalia expressly abandoned the Orly Trust claims against TPR and the Trump Group – an Orly Trust asset – and obtained less than

---

A:  I settled with the Trumps on my behalf as an individual.  Not – I am not the trustee of my trust.  So I couldn't settle with them as a trustee of my trust.

If the trustee decides to pursue this matter with the Trumps they can.

10/25/13 Orly Dep. Tr. at 93:25-95:10 (Leinbach Aff., **Exhibit 17**); see also 2/14/14 Orly Dep. Tr. at 70:12-14 ("I settled with the Trumps other than with regards to my trust.  So I settled with them as an individual.") (Leinbach Aff., Ex. 17).

nothing in exchange.  Moreover, the fact that Dalia prosecuted and then "settled" Orly Trust

claims *after* the June 2013 CSA shows that those Orly Trust claims were not settled by the CSA

– as Dalia and Sagi well-know.

The Southern District Court recognized that it was this August 2013 Delaware

Stipulation by Dalia and Sagi – not the June 2014 CSA – that settled the Orly Trust's claims and

determined beneficial ownership of the intended Orly Trust TRI Shares:

> As part of a stipulation dismissing the action in Delaware
> Chancery Court, the parties to that action -- TPR/Sagi, the Trump
> Group, and Dalia, but not Arie or Orly -- agreed that the Trump
> Group is the rightful owner of the Orly Trust Shares. (Dellaportas
> Dec. Ex. B ¶ 2.)

TPR Investment Associates, Inc. v. Pedowitz & Meister, LLP, 2014 U.S. Dist. LEXIS 67116,

*5-6 (S.D.N.Y. May 15, 2014).

The Appellate Division, First Department, similarly recognized that it was the

August 2013 Delaware Stipulation – not the June 2013  CSA – that that settled the Orly Trust's

claims and determined beneficial ownership and ended Orly's claims to the $10.3 million in

proceeds from Sagi/TPR's sale of those shares to the Trump Group:

> Moreover, under the 2008 agreement between TPR and the Trump
> Group, the sale could only take place after a judicial determination
> that TPR is the record and beneficial owner of the Orly Trust's TRI
> shares.  When the complaint was filed, it had only been determined
> that TPR was the shares' record owner, but the Delaware Chancery
> Court has now also ruled that TPR is the shares' beneficial owner
> (Stipulation & Proposed Order of Dismissal, Dalia Genger v TR
> Invs., LLC [Del Ch Ct, Aug. 30, 2013] [C.A. No. 6906-CS]).

Genger v. Genger, 121 A.D.3d 270, 280 (1st Dept. 2014).

Remarkably, Dalia had her lawyer expressly support Sagi-controlled TPR's claim

that TPR – and not the Orly Trust – should receive all proceeds from the sale of the TRI shares

intended for the Orly Trust:

> [Dalia Counsel] Ms. Bachman: ...we [Dalia as Trustee] don't object if this Court would direct that the [$10.3 million in] escrow be given to TPR.

4/29/14 Hearing Tr. at 27 (Leinbach Aff., Ex. 9).

After giving up Orly Trust claims against TPR and the Trump Group by settling in Delaware in August 2013, and assuring that TPR – and not the Orly Trust – received the $10.3 million in proceeds, Dalia then changed her position, as part of her and Sagi's continuing efforts to pauperize Orly. Ignoring Delaware completely, Dalia now claims the Orly Trust claims were settled in June 2013, and that she has a right as Trustee to clawback monies from beneficiary Orly. In other words, Dalia is now using her position as Trustee to try and take even more money from beneficiary Orly.

On August 11, 2014, Dalia, apparently using Orly Trust monies and Orly Trust lawyers, brought a motion in New York Supreme Court seeking to take from Orly any money Orly received for settling her *individual* claims under the CSA. See Dalia Substitution Memo at 6-9 (Leinbach Aff. **Exhibit 19**).[13] By Interim Decision, the Supreme Court held Dalia's motion in abeyance pending the resolution of this proceeding to remove Dalia. See 5/7/15 Interim Order (Leinbach Aff., **Exhibit 20**).

These actions provide yet another showcase of Dalia's hostility towards Orly, and Dalia's misuse of her position as the Orly Trust Trustee. Dalia and Sagi used Dalia's position as Trustee to commence a litigation in Delaware so she could give away $10.3 million to Sagi (via TPR). Not satisfied with that (and her other harmful actions against beneficiary Orly), Dalia is

---

[13] Orly has opposed Dalia's attempt to take Orly's money. See Orly Opp. Memo to Dalia Substitution at 18-21 (Leinbach Aff., **Exhibit 19**).

now fighting to remain Trustee so she can try to take more monies from beneficiary Orly, and dissipate those monies to Orly's detriment and Sagi's benefit, just as she has in the past. Dalia's current actions are not a reason to dismiss the TAP, but another reason to deny the motion to dismiss and proceed with this case.

For each and every one of these many reasons, the Sagi Trust's contentions about the CSA fail, and, its motion to dismiss should be denied.

## CONCLUSION

The TAP adequately pleads causes of action against Dalia that justify her removal as Trustee. Accordingly, the Sagi Trust's motion to dismiss should be immediately denied, and Orly's Third Amended Petition for Dalia's removal as Trustee should proceed forthwith.

Dated:   New York, New York
         October 6, 2015

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Yoav M. Griver
    Bryan D. Leinbach
    Attorneys for Petitioner Orly Genger
    1211 Avenue of the Americas
    New York, New York 10036
    (212) 223-0400

25

STATE OF NEW YORK,                                                AFFIDAVIT OF SERVICE
COUNTY OF NEW YORK.            BY UPS GROUND COMMERCIAL DELIVERY

         JOHN D. DELANEY, being duly sworn, says:  that I am over the age of eighteen years, and am not a party herein, and reside in Jersey City, New Jersey and that on the 6th day of October, 2015, I served a true copy of the within:

> **ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAGI GENGER 1993 TRUST'S MOTION TO DISMISS ORLY'S PETITION FOR THE REMOVAL OF DALIA GENGER AS TRUSTEE**
>
> **AFFIRMATION OF BRYAN D. LEINBACH**
> **with Exhibits;**

by delivering into the exclusive care and custody of a representative of United Parcel Service for ground commercial delivery a true copy of the papers to the attorneys hereinafter named at the places hereinafter stated, which was properly enclosed in a pre-paid addressed wrapper of United Parcel Service and left in the custody of a representative of UPS to be sent by ground commercial delivery, directed to said attorneys at their last known addresses given below:

    Steven Riker, Esq.
    *Guardian Ad Litem*
    LAW OFFICE OF STEVEN RIKER
    110 East 59th Street, 23rd Floor
    New York, New York 10022

    John G. Dellaportas, Esq.
    MORGAN, LEWIS & BOCKIUS LLP
    101 Park Avenue
    New York, New York 10178

    Robert Meister, Esq.
    PEDOWITZ & MEISTER, LLP
    570 Lexington Avenue, 18th Floor
    New York, New York 10022

Sworn to before me this
_____ day of October, 2015

_____
NOTARY PUBLIC

JOHN D. DELANEY

ANTHONY ROSARIO
Notary Public, State of New York
No. 01RO6212071
Qualified in Bronx County
Commission Expires 10/05/20__

#829275

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of Orly Genger to Remove
Dalia Genger as Trustee of The Orly Genger 1993 Trust
Established on December 13, 1993, by

ARIE GENGER,

Grantor

File No.:  0017/2008

---

## AFFIRMATION OF BRYAN D. LEINBACH

STATE OF NEW YORK,
COUNTY OF NEW YORK.

BRYAN D. LEINBACH, pursuant to CPLR 2106 and under the penalties of perjury, affirms:

1.      I am associated with the firm of Zeichner Ellman & Krause LLP, attorneys for petitioner Orly Genger ("Orly").  Orly is the sole non-contingent beneficiary of The Orly Genger 1993 Trust (the "Orly Trust").  I make this affirmation in opposition to The Sagi Genger 1993 Trust's (the "Sagi Trust") motion to dismiss Orly's Third Amended Petition, seeking to remove Dalia Genger as Trustee of the Orly Trust.

2.      Attached as **Exhibit 1** is a copy of Orly's Third Amended Petition (without exhibits) in this case.

3.      Attached as **Exhibit 2** is a copy of a July 28, 2010 Amended Decision and Order in a case currently pending in New York County Supreme Court titled *Orly Genger et al v. Dalia Genger et al.*, Index No. 109749/2009 (the "New York TPR Action").

4.      Attached as **Exhibit 3** is a copy of Orly's memorandum of law in opposition to Dalia Genger's motion to dismiss Orly's Third Amended Petition.

5.      Attached as **Exhibit 4** is a copy of excerpts of the trial transcript in a case currently pending in New York County Supreme Court titled *Orly Genger v. Sagi Genger*, Index No. 100697/2008.

6.      Attached as **Exhibit 5** is a copy of a September 23, 2014 Decision and Order of the Appellate Division, First Department in the New York TPR Action.

7.      Attached as **Exhibit 6** is a copy of a July 3, 2014 Decision and Order in the New York TPR Action.

8.      Attached as **Exhibit 7** is a copy of March 21, 2014 Decision and Order in a case currently pending in New York Supreme Court titled *Arie Genger et al v. Sagi Genger et al.*, Index No. 651089/2010 (the "New York TRI Action").

9.      Attached as **Exhibit 8** is a copy of an August 15, 2012 hearing transcript in the New York TPR Action.

10.     Attached as **Exhibit 9** is a copy of an April 29, 2014 hearing transcript in a case before the United States District Court for the Southern District of New York titled *TPR Investment Associates, Inc. v. Pedowitz & Meister LLP et al.*, Case No. 13-8243 (JFK).

11.     Attached as **Exhibit 10** is a copy of an August 1, 2013 hearing transcript in a case before the Delaware Chancery Court in a case titled *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC et al.*, C.A. No. 6906-CS (the "Dalia Delaware Action").

12.     Attached as **Exhibit 11** is a copy of excerpts of Sagi Genger's July 27, 2012 deposition transcript.

13.     Attached as **Exhibit 12** is a copy of a March 18, 2015 Decision and Judgment in the New York TPR Action.

14.     Attached as **Exhibit 13** are copies of: (i) a May 4, 2015 Decision and Judgment in the New York TPR Action; and (ii) a May 5, 2015 Short Form Order in the New York TPR Action.

15.     Attached as **Exhibit 14** is a copy of a confidential settlement agreement between Orly, individually and as beneficiary of the Orly Genger 1993 Trust, and various individuals and entities known as the "Trump Group" (FILED UNDER SEAL).

16.     Attached as **Exhibit 15** is a copy of a December 31, 2008 decision in this case.

17.     Attached as **Exhibit 16** is a copy of a July 1, 2013 Second Amended Stipulation of Discontinuance With Prejudice in the New York TPR Action.

18.     Attached as **Exhibit 17** are copies of: (i) excerpts from Orly Genger's October 25, 2013 deposition transcript in the New York TPR Action; and (ii) excerpts from Orly's February 14, 2014 deposition transcript in the New York TRI Action.

19.     Attached as **Exhibit 18** is a copy of an August 30, 2013 So-Ordered Stipulation and Order of Dismissal in the Dalia Delaware Action executed by Dalia Genger's counsel and Sagi/TPR/Sagi Trust's counsel.

3

20.     Attached as **Exhibit 19** are copies of: (i) Dalia Genger's memorandum of law in support of her motion to, among other things, pay the proceeds of Orly's settlement with the Trump Group (Exhibit 14) into Court; and (ii) Orly's memorandum of opposition to Dalia's motion.

21.     Attached as **Exhibit 20** is a copy of a May 7, 2015 Interim Order in the New York TRI Action.

Dated:   New York, New York
         October 6, 2015

_____
BRYAN D. LEINBACH

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

File No. 0017/2008

---

## THIRD AMENDED VERIFIED PETITION FOR REMOVAL OF DALIA GENGER AS TRUSTEE

TO THE SURROGATE'S COURT, STATE OF NEW YORK
COUNTY OF NEW YORK

Petitioner, Orly Genger ("Petitioner" or "Orly"), by her attorneys, Platzer, Swergold,
Karlin, Levine, Goldberg & Jaslow, LLP, respectfully alleges as her Third Amended Verified
Petition (the "Third Amended Petition") for Removal of Dalia Genger as Trustee as follows:

1.      Orly, domiciled at 780 Greenwich Street, Apartment #4P, New York, New
York 10014, is the current and sole beneficiary of the Orly Genger 1993 Trust dated December
13, 1993 (the "Orly Trust"). Annexed hereto as **Exhibit "A"** is a copy of the Orly Trust.

2.      Dalia Genger ("Dalia" or "Respondent"), residing at 200 East 65th Street,
Apartment #32W, New York, New York 10021 is Orly's mother and is the current sole Trustee
of the Orly Trust. Dalia was appointed successor Trustee in January, 2008.

3.      The Orly Trust provides for discretionary payments of income and principal
to Petitioner during her lifetime with the remainder to be distributed to her descendants, per
stirpes. If Petitioner dies leaving no descendants, the remainder of the trust property is to be
distributed to the Sagi Genger 1993 Trust (the "Sagi Trust"). Sagi Genger ("Sagi") is Orly's
brother.

4.     For the reasons set forth herein, Petitioner respectfully requests that this Court enter an order:

(a)     Pursuant to Surrogate Court's Procedure Act ("SCPA")
§ 711(2)(3)(7) and/or (8) providing for the immediate removal of Dalia as Trustee of the Orly Trust as a result of her: (i) numerous and continuous breaches of her fiduciary duties to the Orly Trust and Petitioner as its sole beneficiary; (ii) waste and dissipation of the Orly Trust's assets; (iii) repeated and willful engagement in an ongoing fraudulent scheme with Sagi to loot, encumber, pledge and transfer the assets of the Orly Trust; (iv) deliberate and willful violation and contempt of the prior Order of this Court dated July 1, 2009 (the "July 2009 Order") (as well as her deliberate and willful violation and contempt of prior restraining Orders imposed upon her by other New York Courts in related proceedings) as set forth herein; and, (v) imprudent management and injury to the assets of the Orly Trust committed to her charge, all as set forth in this Third Amended Petition;

(b)     Suspending the Letters of Appointment heretofore issued to Dalia;

(c)     Appointing Joel Isaacson as successor trustee; and,

(d)     Granting such other and further relief as this Court deems to be just equitable and proper.

## PRELIMINARY STATEMENT

5.     Petitioner is the sole beneficiary of the Orly Trust. Dalia is Petitioner's mother and is the sole Trustee of the Orly Trust. Petitioner is filing this Third Amended Petition as a result of Dalia's egregious, willful, malicious, deliberate and surreptitious scheme to pledge, encumber, transfer and dissipate all of the assets of the Orly Trust in violation of her fiduciary duties as Trustee and in violation of the July 2009 Order.

6.     As will be set forth further below in this Third Amended Petition, Dalia

and Sagi have continuously engaged in a secretive and machiavellian scheme to loot, encumber, pledge, waste, dissipate and transfer the assets of the Orly Trust for personal gain and/or as punishment of Orly for her maintaining her relationship with her father, Arie Genger ("Arie"), during and after acrimonious divorce proceedings between Arie and Dalia.

7.    In addition to this scheme being an egregious breach of Dalia's fiduciary duties to the Orly Trust, Dalia's actions in this regard also constitute a blatant and willful disobedience of the July 2009 Order by pledging and encumbering the assets of the Orly Trust and completely dissipating their value without any prior notice to Petitioner as required under the July 2009 Order, all in breach of Dalia's fiduciary obligations.

8.    Most recently, the Petitioner discovered that Dalia and Sagi entered into various secretive agreements (as will be set forth in this Third Amended Petition) to loot, dissipate, pledge, encumber and transfer the assets of the Orly Trust by agreeing to allow the potential foreclosure against valuable assets of the Orly Trust by Manhattan Safety Company ("MSCo"), a recently created entity in St. Kitts, which upon information and belief is controlled by a professional gambler. All of these recent secret agreements were entered into by Dalia and Sagi without prior notice to Petitioner as required under the July 2009 Order.

9.    As further set forth below, Dalia and Sagi's secretive scheme to loot, pledge, encumber and transfer the assets of the Orly Trust is so brazen in its nature, constitutes such an egregious breach of Dalia's fiduciary duties as Trustee and Dalia's contempt of the July 2009 Order is so clear, that her immediate removal as Trustee of the Orly Trust is both warranted and necessary in order to prevent any further irreparable harm from occurring to the assets of the Orly Trust and Petitioner, as its sole beneficiary.

10.    Dalia's immediate removal as Trustee is necessary because it is clear that

-3-

the prior Orders and warnings of this Court (and as will be shown in this Third Amended Petition, the prior Orders of other courts as well) mean absolutely nothing to her and Sagi. Thus, as long as Dalia is Trustee, any assets of the Orly Trust will remain vulnerable and subject to immediate irreparable harm as a result of her ongoing scheme with Sagi.

   11. Dalia's ongoing conspiracy and scheme with Sagi in this regard is akin to Dalia "thumbing her nose" at this Court and Petitioner, as sole beneficiary of the Orly Trust.

   12. A summary of the timeline of critical factual and procedural events surrounding this matter as well as the events which precipitated the filing of this Third Amended Petition appears immediately below and will provide the Court with the proper context in which to appreciate the severity of Dalia's misconduct. As set forth below, the lengthy summarization of the factual history is necessary in order to show that Dalia's actions cannot be viewed in a "vacuum" and constitute a pattern of ongoing conduct for approximately the past four (4) years which is specifically intended to harm Petitioner and the Orly Trust.

<b><u>THE FORMATION OF D & K LP AND THE FORMATION<br>AND INITIAL FUNDING OF THE ORLY TRUST FOR<br>PETITIONER'S BENEFIT, AS SOLE BENEFICIARY</u></b>

   13. Dalia and Arie were married in 1967 and their marriage subsequently ended in divorce in 2004.

   14. Prior to 1993, Dalia and Arie formed D & K LP ("D & K") a family owned limited partnership, whose name was shorthand for "Dalia and Kids". At the time of its formation, Dalia was the general partner and held a 4% interest. Petitioner and her brother, Sagi, were the limited partners who each held a 48% interest.

   15. In December, 1993, Dalia and Arie established identical irrevocable inter vivos trusts for the benefit of Petitioner and Sagi, the Orly Trust and the Sagi Trust (jointly, the Orly Trust and the Sagi Trust shall be referred to hereinafter as the "Trusts"). For estate-

-4-

planning purposes, Dalia and Arie funded each trust with a $600,000 gift. The intent behind the Trusts was to ensure that both Petitioner and her brother received property of equal value. Sash A. Spencer and Lawrence M. Small were named Co-Trustees of both Trusts and remained Co-Trustees until Petitioner's parents' divorce in 2004. After the Trusts were funded, Sagi and Petitioner each assigned their 48% interests in D & K to their respective Trusts.

## THE CREATION OF THE D & K NOTE

16.     At the same time in December 1993, D & K purchased 240 shares of common stock (constituting 49% of the outstanding shares) of TPR Investment Associates, Inc. ("TPR"), a closely held family corporation for the sum of $10,200,000. The shares were purchased with $600,000 from each of the Orly Trust and the Sagi Trust and $50,000 from Dalia, totaling $1,250,000. The balance was satisfied with a recourse $8,950,000 Promissory Note (the "D & K Note"). Annexed hereto as **Exhibit "B"** is a copy of the D & K Note.

17.     As set forth further below in this Third Amended Petition, there was never any intention by Arie, Dalia, Sagi and Orly for TPR to collect upon the D & K Note.

18.     Pursuant to the D & K Note, principal, together with accrued interest, was to be repaid by D & K in annual installments over ten years. The D & K Note was secured by a pledge of the 240 TPR shares owned by D & K. (See **Exhibit "B"- Pledge Agreement**) Each of the Trusts and Dalia assumed liability on the D & K Note in proportion to its/her direct interest in D & K. Accordingly, each of the Trusts, assumed a 48% liability on the D & K Note and acquired a 23.52% indirect interest in TPR. Dalia assumed a 4% liability on the D & K Note and acquired a 1.96% indirect interest in TPR.

19.     At the time of the above-described transaction, Arie owned the remaining 51% of TPR, which held investments in various securities including common stock in Trans-Resources, Inc ("TRI"), as well as its interest in the D & K Note. TRI was a successful and

valuable company which was engaged in the business of manufacturing specialty chemical products for agricultural and industrial end uses.

20.     Payments were made on the D & K Note out of dividends paid by TRI until 1999. Thereafter, when TRI stopped paying dividends, D & K stopped making payments under the D & K Note with the consent of the interested parties.

21.     As of March 20, 2001, TPR held a 52.85% interest in TRI. The remaining minority interest in TRI (47.15%) was owned by various entities controlled directly and indirectly by Jules and Eddie Trump (the "Trump Group").

## ARIE AND DALIA'S DIVORCE IN 2004 AND ITS EFFECT ON THE TRUSTS' ASSETS

22.     On October 26, 2004, Dalia and Arie entered into a Stipulation and Agreement of Settlement as a final settlement of their divorce (the "Settlement Agreement"). Pursuant to the Settlement Agreement, Dalia received, *inter alia,* Arie's 51% interest in TPR and retained her 4% interest in D & K. TPR's 52.85% interest in TRI was transferred to Arie and the Trusts as follows: (i) 13.99% to Arie, (ii) 19.43% to the Orly Trust (the "Orly Trust TRI Shares") and (iii) 19.43% to the Sagi Trust. The Orly Trust and the Sagi Trust each granted Arie an irrevocable lifetime voting proxy over their TRI shares (annexed hereto as **Exhibit "C"**). Therefore, after October 29, 2004, Arie and the Trusts held a controlling interest in TRI and TPR no longer owned any TRI common stock.

## DALIA CEDES CONTROL OF D & K AND TPR TO SAGI AND THE FORMATION OF D & K GP LLC

23.     In connection with the divorce settlement, Dalia took measures to cede management of D & K to Sagi. On October 21, 2004, days before signing the Settlement Agreement, Dalia and Sagi formed D & K GP LLC ("D & K GP"). Dalia exchanged her 4% interest in D & K and $1.00 for a 99% membership interest in D & K GP. Sagi purchased a 1%

membership interest in D & K GP for $1.00.  Pursuant to D & K GP's Limited Liability Agreement (annexed hereto as **Exhibit "D"**), Sagi was given the power to select a manager of D & K GP whose function would be to control D & K's assets.  Sagi selected himself to act as manager; thus, Dalia effectively handed Sagi the authority to control D & K and its assets.  Also, by forming D & K GP, Dalia and Sagi shielded themselves from any personal liability stemming from D & K, including any personal liability related to the D & K Note.  This left the Trusts solely liable for any obligations due under the D & K Note.

24.     On October 30, 2004, Dalia entered into a shareholder's agreement with TPR that provided for the management of TPR. Specifically, pursuant to the TPR shareholder's agreement (annexed hereto as **Exhibit "E"**), D & K, which owned 49% of TPR, was given authority to appoint one board member to the TPR board.  Sagi, as the managing partner of D & K appointed himself as a board member of TPR. As the majority owner of TPR, Dalia was named as the other board member. In addition, the shareholder agreement appointed Sagi as Chief Executive Officer ("CEO") of TPR.  Accordingly, Dalia essentially ceded control of TPR to Sagi, just as she had done with D & K.

25.     For the Court's convenience, below is a summary of Arie, Dalia, and the Trusts' interests in TPR both before and after the divorce and Settlement Agreement:

| Person | TPR Interest Before | TPR Interest After |
|--------|---------------------|---------------------|
| Arie Genger | 51.00% | 0% |
| Dalia Genger | 1.96% | 52.96%[1] |
| Orly Trust (indirectly through D & K) | 23.52% | 23.52% |
| Sagi Trust (indirectly through D & K) | 23.52% | 23.52% |
| **Total** | **100%** | **100%** |

26.     In connection with the Settlement Agreement, Dalia required that the Trustees of the Orly Trust and the Sagi Trust (Messrs. Sash and Small) resign and be replaced with friends of Sagi. Numerous successor trustees were appointed to the Orly Trust and the Sagi Trust, all of whom were affiliated with Sagi in one way or another and were controlled by him. David Parnes and Eric Gribetz (Sagi's longtime friends) and Leah Fang (Sagi's sister-in-law) were appointed as successor trustees to the Orly Trust, and Messrs. Parnes and Gribetz, Rochelle Fang (Sagi's mother-in-law), and Mr. Parnes again, were appointed successor trustees of the Sagi Trust.

## THE SHAM ASSIGNMENT AND SALE OF THE D & K NOTE

27.     On or about October 31, 2004, the TPR Board (consisting of Dalia and Sagi) passed a resolution to sell the D & K Note.  Sagi was charged with the responsibility of selling the D & K Note to a "third party".

28.     In December, 2005, Sagi filed amended 2002 and 2003 tax returns for

---

[1] Dalia held a 1.96% indirect interest in TPR prior to the divorce as a result of her 4% interest in D & K. Pursuant to the Settlement Agreement, Dalia received an additional 51% direct interest in TPR from Arie. Just prior to the Settlement Agreement, as stated above, Dalia transferred her 4% interest in D & K (and thus, her 1.96% indirect interest in TPR) to D & K GP.

TPR, writing off the entire D & K Note and declaring it as a loss in the approximate amount of $8,700,000.

29.     On August 2, 2006, Sagi, as part of his managerial role in D & K GP, D & K and TPR, assigned and sold the D & K Note, which then had an approximate value of $11,000,000 as a result of the accrued interest, to Mr. Parnes in his individual capacity for the sum of only $12,000 (a copy of the Memorandum dated August 2, 2006 (the "D & K Note Memorandum"), assigning and selling the D & K Note is annexed hereto as **Exhibit "F"**). The D & K Note Memorandum asserts unspecified claims by D & K against TPR and Sagi expressly memorialized that D & K "denies enforceability of the [D & K Note]". (**See Exhibit "F"**)

30.     Sagi signed the D & K Note Memorandum on behalf of both TPR as the holder and D & K as the maker. Dalia was copied on the D & K Note Memorandum but Petitioner did not receive a copy of same.    At the time of the D & K Note Memorandum, Mr. Parnes was acting as trustee of both Trusts. Shortly after the D & K Note Memorandum, Mr. Parnes summarily resigned as Trustee of the Orly Trust without explanation.

## THE D & K NOTE WAS NEVER INTENDED TO BE ENFORCED

31.     Mr. Parnes testified in Arie and Dalia's matrimonial arbitration (See **Exhibit "G"**, which contains the relevant portions of the transcript of Mr. Parnes' testimony from the arbitration) that:

(i)     As the Trustee of both Trusts, he was a "trusted" person to keep the D & K Note to make sure it would never be collected.  (See Pages 460-461);

(ii)    D & K does not have to make payments to TPR; (Page 452)

(iii)   The D & K Note is uncollectible (Page 453); and,

(iv)    Sagi's job was to "bury the D & K Note in the woods" (Page 461)

32.     Sagi testified in the same arbitration (See **Exhibit "H"**, which contains the relevant portions of the transcript of Sagi's testimony from the arbitration) that:

(i)     The purpose of the D & K Note was for estate planning (Pages 367-380);

(ii)    The D & K Note was never declared in default (Page 370);

(iii)   There was no intention of collecting the D & K Note (Page 370); and,

(iv)    The D & K Note is worth nothing (Pages 375-377)

33.     In addition, Dalia, who was copied on the D & K Note Memorandum,

previously admitted in her Pre-Hearing Memorandum submitted to the Court in connection with

the matrimonial arbitration that the D & K Note was never intended to be collected upon because

the:

> "...collection by TPR of the D & K Note would simply transfer
> wealth from the children, Sagi and Orly, to their parents,
> Arie and Dalia, thus undoing the estate planning scheme which
> had transferred that wealth to the children.
> (See **Exhibit "I"**, excerpt from Dalia's Pre-Trial Memorandum
> Page "26")

34.     Ultimately, the Gengers' matrimonial arbitrator, Judge I. Leo Milonas,

specifically determined that the D & K Note was never intended to be collected from its

inception.

> "The arbitrator finds for Dalia on this issue. The D & K [N]ote
> was part of the estate planning scheme to transfer wealth to the
> children. The parties never intended for this note to be collected
> and to do so would re-transfer wealth back to the parents and
> defeat their estate plan.
> (See **Exhibit "J"**, Final Arbitration Award in Genger divorce
> proceeding, Page "15")

35.     Petitioner was well aware of, and relied upon, the agreement that the D &

K Note would never be enforced. Petitioner was also aware of, and relied upon, Judge Milonas'

award declaring the D & K Note worthless and uncollectible, and Dalia, Sagi and Mr. Parnes'

sworn statements and/or written submissions to that effect.

### THE D & K AGREEMENT IS ENTERED INTO WITHOUT PETITIONER'S KNOWLEDGE AND PURPORTEDLY AUTHORIZES D & K TO PLEDGE AND ENCUMBER THE ORLY TRUST TRI SHARES

36.     On or about November 23, 2007, Leah Fang (Sagi's sister-in-law), the then sole Trustee of both Trusts[2], and Sagi, acting in his capacity as manager of D & K GP, executed an "Amended and Restated Limited Partnership Agreement of D & K Limited Partnership (the "D & K Agreement"). Among other things, the D & K Agreement purported to grant D & K GP authority to "mortgage, hypothecate, pledge, create, a security interest in or lien upon, or otherwise encumber [the Orly Trust TRI Shares] for the benefit of [D & K] or that of third parties, in connection with the [D & K Note]". (See a copy of the D & K Agreement attached hereto as **Exhibit "K"**, Page "11"). There was no legitimate need or purpose for the amendment. It was a preliminary step in Sagi and Dalia's scheme to punish Petitioner and attempt to loot the Orly Trust of this valuable asset.

37.     By its terms, the D & K Agreement, does not require D & K GP (i.e. Sagi) to give notice to anyone, including Petitioner or the Orly Trust, if a decision is made to encumber the Orly Trust TRI Shares in any way.

38.     Upon information and belief, the Orly Trust received no consideration and no direct or indirect benefit in exchange for the substantial concession it gave to D & K GP under the D & K Agreement. Indeed, the D & K Agreement was merely an instrument created for the specific purpose of encumbering the Orly Trust and Petitioner as its beneficiary, with debt.

39.     Leah Fang never informed Petitioner of the existence of the D & K

---

[2] In 2007, Mr. Gribetz resigned as the trustee of both Trusts, without appointing a successor, thereby leaving Mr. Parnes as the sole remaining trustee. Thereafter, as set forth above, Mr. Parnes resigned as trustee of the Orly Trust appointing Leah Fang as successor Trustee.

Agreement. In January, 2008, Dalia was appointed successor trustee of the Orly Trust, despite Petitioner's objections. At that time, Dalia, notwithstanding her knowledge that the D & K Note was not intended to be collected, did nothing to attempt to rescind or nullify the D & K Agreement, nor did she do anything to advise Petitioner as beneficiary that the prior trustee had granted D & K GP authority to encumber the Orly Trust TRI shares. By that time, as a result of Dalia's granting Sagi control of TPR and D & K through the appointment of his friends and relatives as successor trustee of the Trusts, Sagi had effectively obtained control over all of the assets held by D & K, TPR, the Sagi Trust and the Orly Trust.[3]

40.     Through the above-mentioned transactions, Dalia allowed Sagi to obtain direct control over TPR and its interest in the D & K Note to the detriment of Petitioner and the Orly Trust. Notably, Sagi's role as CEO of TPR, (the creditor on the D & K Note) is in direct conflict with his role as manager of D & K (the debtor on the D & K Note), whose role was to repay the D & K Note or contest its enforceability.

## ORLY'S INITIAL APPLICATION TO REMOVE DALIA AS TRUSTEE

41.     In February, 2008, Petitioner filed an initial application with this Court (the "Initial Application") to remove Dalia as Trustee of the Orly Trust on the grounds that she feared Dalia would not protect her interests while serving as Trustee because of Dalia's animosity towards Arie, and her collusion with Sagi.

42.     Surrogate Roth denied the Initial Application as premature, believing

---

[3] In addition, by stock purchase agreement dated January 18, 2007, Sagi as CEO of TPR sold 2% of TPR's shares to his mother-in-law, Rochelle Fang, thereby eliminating Dalia's majority ownership interest of TPR by diluting it to 49%. Around the time that she became sole Trustee to the Orly Trust in January 2008, Dalia purportedly divested herself of the balance of her TPR shares. Thus, in addition to being CEO, Sagi effectively controlled TPR through the 49% owned by D & K, which Sagi controlled and the 2% owned by Rochelle Fang, also controlled by Sagi. (See Exhibit "L", Transcript of Hearing before the Honorable Jane S. Solomon dated August 22, 2011 in the action entitled Orly Genger v. Sagi Genger, Supreme Court of the State of New York, County of New York, Index No. 100697/2008) (Pages "53" to "55" for example)

Dalia should be given the chance to demonstrate whether she intended to act in Orly's interests

or against Orly's interests.  Surrogate Roth gave Dalia the benefit of the doubt based, in part, on

sworn statements by Dalia to the Surrogate Court that she intended to protect the Orly Trust and

its assets.

> "[I]t appears that Dalia (who states that she is ready and able to act as
> fiduciary) has yet to assume the duties of trustee in deference to her
> daughter's position in this litigation. As a validly appointed trustee,
> she should be given the opportunity to do what she deems necessary
> to manage and protect the trust's assets.
>
> Based upon the foregoing, the appointment of a "special trustee" is
> unwarranted at this time and, accordingly, the application is denied,
> <u>without prejudice to renewal if future circumstances warrant such
> relief.</u>
> (See copy of Surrogate Court Decision dated December 31, 2008
> annexed hereto as **Exhibit "M"**, Pages 7-8) (emphasis added).

43.    At the time of the Surrogate's decision, the extent of Dalia's complicity in

the conspiracy with Sagi was not fully understood.

### <u>WITHIN WEEKS OF SURROGATE ROTH'S DECISION, RATHER THAN PROTECT THE ORLY TRUST, DALIA HELPED SAGI STRIP THE ORLY TRUST OF ITS ONLY ASSETS</u>

44.    Sadly, Dalia's every action since Surrogate Roth's decision has proven

Petitioner's fears were well grounded and the benefit of the doubt given to Dalia by Surrogate

Roth was unjustified.  As described below, rather than protecting the Orly Trust, Dalia has used

her position as Trustee to help Sagi Genger strip the Orly Trust of its two assets: (1) 1,102.80

shares of common stock in TRI; and (2) a 23.52% indirect interest in TPR.

45.    As set forth below, Dalia was an active and willing participant in Sagi's

scheme to strip the Orly Trust of its assets, thereby causing harm to Petitioner as the Orly Trust's

sole beneficiary.

## DALIA HELPS SAGI TRY TO STRIP THE ORLY TRUST OF THE
## ORLY TRUST TRI SHARES

46.     Dalia has always understood the true value and importance of the Orly

Trust TRI Shares to Petitioner and to the Orly Trust. Indeed, during the Initial Application to

remove Dalia as Trustee, Dalia's attorney sent Surrogate Roth a letter stating that "the most

valuable asset in the Orly Genger Trust is the shares of TRI" and "the TRI Shares held by the

Orly Trust are potentially worth tens of millions of dollars." See November 11, 2008 Letter to

Hon. Renee R. Roth from J.G. Kortmansky, Esq. annexed hereto as **Exhibit "N"**. (emphasis

supplied)

47.     On August 22, 2008, unbeknownst to Petitioner, Rochelle Fang, (Sagi's

mother-in-law) who had been appointed Trustee of the Sagi Trust, attempted to sell the Sagi

Trust's 19.43% in TRI to the Trump Group who thereafter purported to hold 66.58% of TRI's

outstanding common stock.[4]  In connection with the supposed sale, Sagi and David Parnes were

given seats on TRI's board of directors.  This sale, which was consummated after Dalia was

appointed successor trustee of the Orly Trust, has diluted and diminished the value of the Orly

Trust's interest in TRI since Arie will no longer have a controlling interest in TRI (which he

previously had by virtue of his voting proxy over the Trust's shares, see **Exhibit "C"**) and thus,

the Orly Trust would no longer own a portion of the controlling block of TRI shares.[5]

---

[4] In response to Dalia and Sagi's collusive efforts to sell the TRI shares to the Trump Group, Petitioner, on behalf of herself, individually and the Orly Trust, commenced an action in the Supreme Court for New York County seeking to determine, among other things, the ownership of the Orly Trust TRI Shares.  See Arie Genger and Orly Genger, in her individual capacity and on behalf of The Orly Genger 1993 Trust v. Sagi Genger, TPR Investment Associates, Inc., Dalia Genger, The Sagi Genger 1993 Trust, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, Jules Trump, Eddie Trump and Mark Hirsch, Index No. 651089/2010 (the "New York TRI Action"). The New York TRI Action is still pending before Justice Feinman.

[5] In 2011, without prior notice to Petitioner as required under the July 2009 Order, Dalia, as Trustee of the Orly Trust and in a transparent forum shopping move, commenced an action in the Delaware Chancery Court seeking a declaration that the Orly Trust is the beneficial owner of the Orly Trust TRI Shares. Dalia has been restrained from pursuing this action pursuant to a prior Order of the Court issued in the New York TRI Action.

48.     On or about January 31, 2009, only weeks after making sworn statements to the Surrogate Court that she intended to protect the Orly Trust and its assets, Dalia executed a document entitled "Meeting of Partners of D & K LP- Jan. 31, 2009 & Agreement (the "Meeting Agreement"). Annexed hereto as **Exhibit "O"** is a copy of the Meeting Agreement.  Like the D & K Agreement, the Meeting Agreement purported to grant D & K GP (i.e., Sagi) unfettered authority to encumber the Orly Trust TRI Shares:

> "The partners wish to clarify that the authority vested in the General Partner to make limited partners' assets subject to a pledge shall be done in substantially the same manner in which TPR Investment Associates, Inc. shares were pledged in conjunction with the aforementioned note [the D & K Note]. However, the General Partner shall be authorized to sign for the partnership and/or each individual partner."
> (See **Exhibit "O"**, Paragraph "3")

49.     In another naked act of self-dealing in violation of Dalia's fiduciary duties as Trustee, the Meeting Agreement also purports to:

> "Indemnify and provide a general release from any claim or right at equity, law, or contract or otherwise the current and former general partner, its officers, the partnership's holdings (including TPR Investment Associates, inc.) and the officers of its holdings to fullest extent permitted in connection with any claim by the partnership and/or its partners. Irrespective of the above, nothing herein shall serve to release or indemnify Arie Genger, William Dowd, Lawrence Small or Edward Klimerman." (See **Exhibit "O"**, Paragraph "1")

50.     Upon information and belief, the Orly Trust received no consideration and no direct or indirect benefit in exchange for the substantial concession, Dalia, acting as trustee, gave to D & K GP under the Meeting Agreement.  Indeed, the Meeting Agreement, like the D & K Agreement, was merely another instrument created for the specific purpose of depleting the Orly Trust of its assets.

51.     Both the D & K Agreement and the Meeting Agreement were negotiated

and executed without ever informing Petitioner.  Moreover, Dalia never subsequently informed
Petitioner of the existence of either agreement, even though Petitioner made repeated requests to
Dalia for information about the Orly Trust and its assets during her tenure as Trustee.  The
Meeting Agreement was only disclosed on or about October 2009 in connection with the New
York TPR Action (defined and discussed below) which was commenced by Petitioner in the
Supreme Court for New York County.

      52.    Notably on January 10, 2009, just days before Dalia signed the Meeting
Agreement granting Sagi unfettered authority to dispose of the Orly Trust TRI Shares (and
purporting to indemnify Sagi regardless of any actions he took in connection with same),
Petitioner sent Dalia a letter reminding her (once again) that the Orly Trust TRI Shares needed to
be protected and retained.

> "For now, and until further notice, it is my strong desire to retain all
> of the shares of Trans-Resources., Inc. ("TRI") that are currently in
> the Trust, and I direct you not to sell them. If you are approached,
> or have been approached, with an offer to purchase any of the TRI
> shares in the Trust, please notify me immediately. If, despite my
> wishes, you consider accepting an offer, do not sell any shares until
> I have a reasonable period of time to maximize the benefit to the
> Trust, including possible alternative transactions."
> (See January 10, 2009 letter from Petitioner to Dalia (emphasis
> added), a copy of which is annexed hereto as **Exhibit "P"**)

      53.    Dalia, in violation of her fiduciary obligations refused to agree not to
dispose of the Orly Trust TRI Shares.  To do so would be contrary to the fraudulent scheme
in which Dalia was a willing participant.

      54.    Likewise, although Dalia has given sworn statements to the Surrogate
Court regarding the Orly Trust, she never disclosed the existence of the D & K Agreement or the
Meeting Agreement to either Surrogate Roth or her successor Surrogate Webb.  Basically,
through the D & K Agreement, the Meeting Agreement and by ceding management of D & K

-16-

and TPR to Sagi, Dalia gave Sagi total control to pilfer the Orly Trust assets for his own use and benefit.

## DALIA HELPS SAGI TRY TO STRIP THE ORLY TRUST OF ITS INDIRECT INTEREST IN TPR

55.    In Surrogate Roth's decision, she noted that in the Initial Application, "...petitioner has not alleged that Dalia has refused a request for information, which would warrant relief (SCPA 2102), or has failed as trustee to protect trust assets" (see **Exhibit "M"**, Page "7").

56.    On May 14, 2009, Petitioner's then counsel, Judith Siegel-Baum, sent Dalia's attorney, Robert Meister, a document demand relating to the Orly Trust's assets. (annexed hereto as **Exhibit "Q"**).

57.    On June 1, 2009, Mr. Meister responded to Ms. Sigel-Baum's document demand by advising her that the Orly Trust no longer owned any interest in TPR.  According to the letter, Sagi, acting as CEO for TPR, had foreclosed on the D & K Note and sold D & K's 240 shares of TPR for $2,200,000.  A copy of the letter is annexed hereto as **Exhibit "R"**.  Before that time, Dalia had neither advised nor notified Petitioner that Sagi had foreclosed on the D & K Note, nor advised Petitioner that Sagi had sold the TPR shares at auction.  This news came as a complete and utter shock to Petitioner.

58.    Despite the clear and consistent agreement among the Genger family members that the D & K Note was never to be collected upon or enforced, the sworn testimony and/or Court submissions of Dalia, Sagi and Mr. Parnes, the assignee and purchaser of the D & K Note, and Judge Milonas' award and specific determination to this effect, upon receipt of Mr. Meister's letter, Petitioner learned for the first time that:

(a)     Sagi caused TPR to reclaim the D & K Note from Mr. Parnes.[6]  Then, on

August 31, 2008, Sagi, acting as CEO of TPR, notified himself as the general manager of D & K,

that D & K was in default under the D & K Note and declared that unless the entire unpaid

principal amount of the D & K Note was paid immediately, TPR would sell, at auction, the 240

shares pledged as collateral.  A copy of this purported Notification dated August 31, 2008 is

annexed hereto as **Exhibit "S"**. Dalia, who knew that the D & K Note was never intended to be

enforced and who previously had sworn to as such, in violation of her fiduciary duties as Trustee,

never sought to block Sagi from foreclosing on the D & K Note and selling the TPR shares.

Notwithstanding her knowledge and her previous sworn statement, Dalia failed to make any

effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust

had a clear interest in the TPR shares at issue.

(b)     Thereafter, Sagi, again acting as CEO of TPR, purported to notify D & K

(of which he remained managing partner) that D & K's 240 shares of TPR stock would be

auctioned to the highest bidder on February 27, 2009, and that the money received from the sale

would be used to reduce the outstanding debt under the D & K Note.  A copy of this purported

Notification is annexed hereto as **Exhibit "T"**. Sagi purported to notify the interested parties of

the sale by publishing notice of the sale in the New York Post in October 2008 and February

2009.  At all relevant times, Sagi had Petitioner and Dalia's contact information.  Despite this,

Petitioner was never informed of the impending sale.  At the time that Sagi secretly schemed

with the connivance of Dalia to structure the bogus sale, it was clear that the value of the TPR

shares was significantly higher than any purported value of the D & K Note (although as

previously stated the D & K Note had no value).

---

[6] On or about May 25, 2008, Mr. Parnes rescinded, *ab initio*, the assignment of the D & K Note.  Petitioner was also not notified of that action.

-18-

(c)     On February 27, 2009, TPR (still controlled by Sagi) foreclosed on the 240 shares of TPR and "auctioned" the shares (the "TPR Sale"). Not coincidentally, TPR purchased the shares at auction for $2,200,000, which was substantially less than their estimated value, making no effort to collect on the D & K Note from the Sagi Trust. (See **Exhibit "U"**). The $2,200,000 proceeds of the TPR Sale were purportedly used to decrease D & K's obligations under the D & K Note. The deficiency under the D & K Note was deliberately manufactured by this sham auction in order to provide Sagi and TPR with a future basis to foreclose upon the Orly Trust's only remaining principal asset, the Orly Trust TRI Shares.

59.     TPR and Sagi, with the connivance of Dalia in breach of her fiduciary duty, effectively stripped the Orly Trust of its indirect interest in the TPR shares by improperly foreclosing on the D & K Note and conducting the TPR Sale notwithstanding the fact that the Genger family never intended the D & K Note to be enforced. Notably, this alleged and purported notification process and sham TPR Sale took place without Dalia objecting in any way, taking preventive action of any kind, or notifying Petitioner in any way.     In short, Dalia, allowed the sham TPR Sale to transpire, did not notify Petitioner of same and clearly violated her duties as a fiduciary to the Orly Trust and Petitioner, as sole beneficiary by failing to protect the valuable trust asset.

60.     The forgoing scheme injured Petitioner and the Orly Trust in a number of ways. The Orly Trust's interest in D & K is now worthless, as it purportedly no longer owns any interest in TPR, while Sagi now has control over the foreclosed TPR shares. The scheme also destroyed Arie and Dalia's tax and estate planning intent that both children have equal shares in the family wealth.

61.     Dalia, who knew that the D & K Note was never intended to be enforced, should have immediately sought to block Sagi from foreclosing on the D & K Note and selling

-19-

the TPR shares. Certainly, she should have informed Petitioner so Petitioner could make her own efforts to block the sham TPR sale or, at the least, arrange for other bidders to be at the sale. Notwithstanding her knowledge and her previous sworn statement, Dalia failed to make any effort to stop Sagi when he engaged in this clear act of self-dealing, even though the Orly Trust has a clear interest in the TPR shares at issue.

62.     As if this was not an egregious enough breach of Dalia's fiduciary duties to the Orly Trust, Dalia has made no effort whatsoever to date to seek any contribution from the Sagi Trust for its share of purported amounts due under the D & K Note (although as previously stated at length herein, no such purported sums are due under the D & K Note because it was never intended to be enforced). In other words, if the D & K Note was truly a "liability" of both Trusts, in theory, TPR should have foreclosed on the Sagi Trust's interests as well. Of course, this will never happen as long as Sagi is still the CEO of TPR (the holder of the D & K Note) and the manager of D & K, (the maker of the D & K Note). By ceding management authority of TPR and D & K to Sagi, Dalia deliberately created Sagi's clear and unequivocal conflict of interest and "paved the road" for his self-dealing. This has resulted in Sagi looting the Orly Trust for his own benefit with the tacit or express approval of Dalia.

63.     As a fiduciary of the Orly Trust with prior, as well as continued knowledge, of the TPR foreclosure, Dalia had a duty to protect the Orly Trust's indirect ownership of the TPR shares. Instead of taking proactive measures required of a fiduciary, Dalia did nothing and allowed Sagi to obtain the TPR shares for himself to the detriment of the Orly Trust. Moreover, in connection with her appointment as successor trustee of the Orly Trust in January, 2008, as previously stated above, Dalia purportedly divested herself of her TPR shares for the sum of $5,000,000 (without informing the Court or Petitioner as to when she transferred her interest) in a further attempt to distance herself from any attributable wrongdoing.

-20-

64.     Dalia knew of Sagi's plan to foreclose on the D & K Note as early as August, 2008, thus she withheld information from Petitioner concerning the TPR Sale for almost 10 months. Even then, she only provided the information until she received a demand letter from Petitioner's counsel and realized that legal action was imminent.

65.     In fact, the notice of the TPR Sale in the New York Post was specifically designed by Dalia and Sagi not to provide Petitioner with notice and an opportunity to object to same. Dalia and Sagi were both aware of Petitioner's address at this time but instead of notifying Petitioner, they chose to deceive her by publishing notice in the newspaper.

66.     As a result of the sham TPR Sale, on or about June 9, 2009, Petitioner commenced an action which is pending before the Supreme Court for New York County entitled, Orly Genger et al v. Dalia Genger, Sagi Genger, D & K GP LLC, TPR Investment Associates, Inc. and Leah Fang, Index No. 109749/2009 (the "New York TPR Action"). In the New York TPR Action, Petitioner is seeking, *inter alia*, monetary damages and the return of the TPR shares.[7]

## THE JULY 2009 ORDER AND INJUNCTION AND PETITIONER'S RENEWED APPLICATION WITH THIS COURT TO REMOVE DALIA AS TRUSTEE

67.     Upon learning of the sham TPR Sale, which stripped the Orly Trust of its indirect interest in its shares of TPR, Petitioner renewed her petition with this Court to remove Dalia as Trustee of the Orly Trust by filing same on or about June 22, 2009. Petitioner also filed a Motion with this Court and sought a temporary restraining order which enjoined and prohibited

---

[7] By Decision and Order of the Honorable Paul G. Feinman dated June 28, 2010 in the New York TPR Action, Justice Feinman determined that the Petitioner's claim with respect to Dalia's breach of her fiduciary duty as sole Trustee of the Orly Trust should be decided by the Surrogate's Court. Further, in the same Decision and Order, Justice Feinman denied Dalia's Motion for Summary Judgment and determined that there is a "…question of fact as to whether Dalia Genger acted with intent to commit fraud against plaintiff's trust [the Orly Trust], and to lull plaintiff [Orly] into a false sense of security as to the status of her trust." (See **Exhibit "V"**, Decision and Order of Justice Feinman dated June 28, 2010, Pages "17" and "19")

-21-

Dalia, *inter alia,* and anyone acting on her behalf from attempting to sell, transfer, pledge and encumber or take any act with respect to the Orly Trust TRI Shares without providing Petitioner with at least 10 days prior notice. A copy of the June 22, 2009 Petition (without the exhibits attached to it which are duplicative) is annexed hereto as **Exhibit "W"**.

68.     As a result of the Petitioner's forgoing motion for a restraining order, the July 1, 2009 Order was entered pending the outcome of this proceeding and which imposed certain protective restraints (the "Restraints") upon Dalia as previously set forth above. Dalia declined to attend the hearing.

69.     During counsel's oral argument of Petitioner's motion for a restraining order, Surrogate Webber noted to Dalia's counsel that:

> "They [Dalia and Sagi] are on notice of all of your fears
> [with respect to the dissipation of the Orly Trust's assets].
> So for them now to do something which would obviously
> be against their duties and responsibilities would be
> somewhat glaring in terms of what the surcharge [to be
> imposed against Dalia] would be." (emphasis supplied)
> (See excerpt from transcript from July 1, 2009
> hearing annexed hereto as **Exhibit "X"**, Page "23")

70.     The Restraints were later confirmed by this Court on August 18, 2009, reconfirmed and supplemented with additional restraints by this Court on July 16, 2010 and made a part of a stipulation between Petitioner and Dalia which was entered on September 8, 2010 (see **Exhibit "Y"**).

71.     On or about September 21, 2010, Petitioner filed the Second Amended Verified Petition (the "Second Amended Petition") to remove Dalia as Trustee. Dalia has filed a Motion to Dismiss the Second Amended Petition and the decision on the Motion to Dismiss still remains *sub judice*.

### THE ADDITIONAL RESTRAINTS PLACED UPON DALIA AND SAGI BY THE NEW YORK COURTS IN THE NEW YORK TRI ACTION AND THE NEW YORK TPR ACTION

72.      In addition to the Restraints imposed upon Dalia by the July 2009 Order, on or about July 28, 2010, the Court in the New York TPR Action also restrained Dalia, Sagi and the co-defendants to that action from transferring, selling, pledging, assigning, or otherwise disposing of D & K's 48% ownership interest in TPR. (the "TPR Action Restraints") (See Exhibit "Z" at page "32")

73.      The Court in the New York TRI Action also entered certain restraints against Dalia, Sagi and the other co-defendants to that action with respect to the Orly Trust TRI Shares.[8] (the "TRI Action Restraints") (See Exhibit "AA", December 28, 2011 Order in New York TRI Action, Pages "14" through "15").

### DALIA HAS WILLFULLY AND REPEATEDLY DISOBEYED THE JULY 2009 ORDER BY ENTERING INTO A FURTHER SCHEME TO ENCUMBER AND DISSIPATE THE ORLY TRUST'S ASSETS

74.      Petitioner submits that it could not be any more clear to Dalia, her counsel, Sagi and the other co-defendants to the New York TPR Action and the New York TRI Action that Dalia was forbidden from transferring, pledging, encumbering, assigning, selling and/or dissipating any assets of the Orly Trust without prior notice to Petitioner as a result of: (i) the Restraints set forth in the July 1, 2009 Order; (ii) Surrogate Webb's statement to Dalia's counsel on the return date that Dalia and Sagi are on notice of Petitioner's fears that the Orly Trust's assets will be dissipated (and therefore, any actions taken by Dalia against her duties and responsibilities would obviously be "glaring") (See Exhibit "X", Page "23"); (iii) the Stipulation entered into between Petitioner and Orly further confirming the Restraints (See Exhibit "Y";

---

[8] Both the New York TRI Action and the New York TPR Action are before Justice Paul Feinman.

and, (iv) the restraints imposed by Justice Feinman in the New York TRI Action and New York TPR Action (collectively, the "Supreme NY Restraints"). All these restraints were specifically and expressly intended to preserve the "status quo" until the Courts rendered a final decision.

75.   Notwithstanding the forgoing, rather than honor any of these restraints, subsequent to the Petitioner's filing of the Second Amended Petition, Dalia, Sagi and their cohorts, have continued to conspire together and in secret to render all of these restraints a nullity.

76.   Instead of treating this Court's July 2009 Order and the Supreme NY Restraints as Orders to be obeyed and boundaries to be honored, Dalia, Sagi and their cohorts saw them as obstacles to be hurdled. To that end, Dalia, D & K (through D & K GP), and/or TPR (in other words, Dalia and Sagi) secretly executed eight (8) agreements[9] encumbering the Orly Trust with $4.44 million in new debt, which the Orly Trust has no hope of paying off.

77.   In breach of Dalia's fiduciary duties as Trustee, the Secret Agreements were specifically designed and intended as part of Dalia and Sagi's scheme to encumber the Orly Trust with debt but not to similarly encumber the Sagi Trust with any debt whatsoever.

78.   Petitioner discovered the existence of the Secret Agreements on or about July 6, 2012 solely in response to discovery requests made by Petitioner's counsel in the New York TPR Action. These documents were only first produced on or about July 6, 2012 notwithstanding the fact that: (i) the initial Secret Agreements, namely, the $4,000,000

---

[9] These eight secret agreements (collectively, the "Secret Agreements") will be further described immediately below and are: (i) the $4,000,000 Promissory Note dated October 3, 2011 (See Exhibit "BB"); (ii) the Credit and Forbearance Agreement and Second Amendment and Restatement of Promissory Note executed on May 15, 2012 (See Exhibit "CC"); (iii) the $4,240,000 Amended and Restated Promissory Note dated May 15, 2012 (See Exhibit "DD"); (iv) the $200,000 Promissory Note dated May 15, 2012 (See Exhibit "EE"); (v) the Agreement Amending Terms of Promissory Note dated March, 2012 (See Exhibit "FF"); (vi) the purported TPR Settlement Agreement dated October 3, 2011 (See Exhibit "GG"); (vii) the purported Amended and Restated TPR Settlement Agreement dated March 16, 2012 (See Exhibit "HH"); and, (viii) the Bill of Sale and Note Assignment dated May 15, 2012 (See Exhibit "II").

Promissory Note and the TPR Settlement Agreement were both executed approximately nine (9) months earlier on October 3, 2011; (ii) the July 2009 Order expressly required that Dalia provide Petitioner with prior notice of any and all acts which would affect the Orly Trust TRI Shares; and, (iii) the Supreme NY Restraining Orders expressly required that Dalia provide prior notice of any and all acts which would affect the Orly Trust's respective interests in the Orly Trust TRI Shares and TPR.

## THE 2011 PROMISSORY NOTE

79.     Unbeknownst to Petitioner, on October 3, 2011, Dalia and TPR purported to cancel the $4,500,000 deficiency remaining on the D & K Note after the disputed TPR Sale and replace it with a $4,000,000 promissory note that directly obligated the Orly Trust to pay TPR (the "2011 Promissory Note"). (See Exhibit "BB", copy of 2011 Promissory Note and the TPR Settlement Agreement (defined below), Exhibit "GG").

80.     By so doing, Dalia wrongly attempted to: (i) transfer $4 million dollars of liability from D & K to the Orly Trust (See Exhibit "GG", TPR Settlement Agreement at 5); (ii) replace the unenforceable D & K Note with a putatively enforceable one (id); (iii) acknowledge the legality of the sham TPR Sale and the resulting deficiency (id. at 2-3); and, (iv) ensure that this $4 million dollar liability would not fall within the release that was part of the purported TPR Settlement Agreement reached that same day between Dalia, Sagi and the other defendants to the New York TPR Action, but would continue to burden the Orly Trust (id. at 5).

81.     The 2011 Promissory Note was payable to TPR the earlier of: (a) November 1, 2012; or, (b) the receipt of any proceeds from the sale of the Orly Trust TRI Shares, "notwithstanding anything to the contrary herein or in the parties' accompanying [TPR] Settlement Agreement". See Exhibit "BB" at 1.

82. By executing the 2011 Promissory Note on behalf of the Orly Trust, Dalia (i) obligated the Orly Trust to pay all of TPR's legal fees (See **Exhibit "BB"** at 2); (ii) **made her removal as Trustee an "Event of Default" making the 2011 Promissory Note immediately due and payable** (id. at 1, emphasis added); and, (iii) agreed to the law and jurisdiction of the State of Delaware (id at 2)[10]

## THE 200K PROMISSORY NOTE AND THE CREDIT AGREEMENT

83. In May, 2012, TPR assigned the 2011 Promissory Note to MSCo, a St. Kitts entity. In exchange for an alleged $400,000 received from MSCo, Dalia had the Orly Trust sign another promissory note for $200,000 (the "200K Note") (See **Exhibit "EE"**) and increased the 2011 Promissory Note to $4,240,000.[11] (See **Exhibit "CC"**, Credit and Forbearance Agreement and Second Amendment and Restatement of Promissory Note (the "Credit Agreement" and **Exhibit "EE"**, (the 200K Note).

84. Further, Dalia, purporting to act as Trustee wrongfully attempted to: (i) waive any defenses the Orly Trust would have to payment, including any defenses with respect to MSCo., TPR, or any prior holder of the 2011 Promissory Note (See **Exhibit "CC"**, Credit Agreement, §6.1(c)); (ii) have the Orly Trust broadly indemnify MSCo., should Orly or any future Trustee legally attack the 2011 Promissory Note, the Amended Promissory Note, or the Credit Agreement (id., §7); (iii) make the Orly Trust liable for all costs of collection, including attorneys' fees (See **Exhibit "DD"**, Amended and Restated Promissory Note (the "Amended 2011 Note") § 6); (iv) **make Dalia's replacement as the Orly Trust Trustee an "Event of**

---

[10] In March, 2012, unbeknownst to Petitioner, TPR, D & K and the Orly Trust (i.e. Dalia and Sagi) purported to enter into an "Agreement Amending Terms of Promissory Note" to provide for New York law and jurisdiction in any competent court (See Exhibit "FF"). This Agreement also gave Dalia and Sagi the power to amend the 2011 Promissory Note at will.

[11] In other words, Dalia pledged $440,000 of Orly Trust assets in exchange for a purported $400,000.

**Default" making the Amended 2011 Note and the 200K Note (jointly, the "Notes")
immediately due and payable** (See Exhibit **"CC"**, Credit Agreement, § 6.2, emphasis added);
(v) agree to pay the 200K Note from the sale of the Orly Trust TRI Shares "notwithstanding
anything to the contrary" (**Exhibit "EE"**, 200K Note, §1.3); and, (vi) make the Credit
Agreement and Notes fully assignable without the consent of, or notice to, the Orly Trust (See
**Exhibit "CC"**, Credit Agreement, § 10).

## THE PURPORTED SETTLEMENT AND AMENDED SETTLEMENT

85.     On October 3, 2011, Dalia (supposedly on behalf of the Orly Trust), TPR
and D & K (by Sagi Genger) purported to settle the New York TPR Action.

86.     Petitioner and her counsel in the New York TPR Action were not
informed of this purported settlement nor was Petitioner consulted in any way regarding its
terms.

87.     In violation of the July 2009 Order, the Supreme NY Restraints, Surrogate
Webb's admonishment to Dalia concerning the dissipation of the Orly Trust's Assets, and the
Stipulation entered into between Petitioner and Dalia, the purported settlement agreement (the
"TPR Settlement Agreement", which incorporates the 2011 Promissory Note by reference)
purports to have the Orly Trust transfer all its interests in D & K and disclaim all interest in TPR.
The settlement agreement also has TPR relinquish its claims to the Orly Trust TRI Shares:

> (a) TPR hereby relinquishes in favor of the OG Trust [the Orly Trust] any
> economic interest in the TRI Shares [the Orly Trust TRI Shares] and assigns
> to the OG Trust its right to any economic benefits of the TRI Shares
> including any proceeds from the sale thereof, including but not limited to
> the $10.3 million in proceeds otherwise owing to TPR in the future pursuant
> to the terms of the August 22, 2008 letter agreement; (b) the OG Trust -
> irrespective of any claim made or asserted on its behalf by Orly Genger --
> hereby transfers to TPR its limited partnership interest in DK (the "DK
> Interest"), and disclaims any interest in, any shares of or TPR, either directly

-27-

or indirectly through DK (the "TPR Interest");... and (c) TPR agrees to pay $100,000 for the legal fees of the OG Trust.[12]
(See **Exhibit "GG"**, TPR Settlement Agreement, Paragraph "1")

88.     On March 16, 2012, Dalia (supposedly on behalf of the Orly Trust), TPR, and D & K GP (by Sagi Genger) entered into a purported Amended and Restated Settlement Agreement (the "Amended TPR Settlement Agreement"). Once again, Petitioner was not informed or consulted in any way. The purported "settlement" was restated, and then amended to purportedly cancel and void "the (i) the Amended and Restated Limited Partnership Agreement of D&K Limited Partnership dated as of October 30, 2004 and signed November 22, 2007, and/or (ii) the Meeting of Partners of D&K L.P. January 31, 2009 and Agreement." See **Exhibit "HH"**, March 16, 2012 Amended TPR Settlement Agreement, Paragraph "1").

89.     Importantly, though the Amended TPR Settlement Agreement purported to void these two agreements *ab* initio, the purported settlement did nothing to reverse or unwind the sham TPR Sale that these two agreements purported to enable, or to cancel the supposed deficiency resulting from the TPR Sale.[13]

90.     Demonstrably, these various actions and agreements (agreed to in secret and never revealed to the Court or Petitioner despite numerous Court appearances, filings and outstanding documents requests) in the New York TPR Action and New York TRI Action violated the protective restraints imposed by this Court and the other New York Courts in a

---

[12] Dalia, Sagi, TPR, and D & K also purported to require the Orly Trust to pay D & K and TPR's attorneys' fees, should Petitioner continue to advance claims on the Orly Trust's behalf (see **Exhibit "GG"**, Paragraph "8") and purported to release one another  from all claims, causes of action, lawsuits, demands, liability of any kind, asserted or unasserted, known or unknown, suspected or unsuspected, direct or derivative, in connection with the 1993 Note [D & K Note], the [Orly Trust] TRI Shares, the Share Transfer, the DK Interest, the TPR Interest, the 2008 Letter Agreement, or any other matters, through the date of the Agreement Id. at Paragraph "4")

[13] The parties also made sure that the Release in the TPR Settlement Agreement did not cover anyone on Sagi and Dalia's "enemies list" (See **Exhibit "HH"**, Amended TPR Settlement Agreement, Paragraph "3"), changed the governing law to New York law (id. at Paragraph "6"), and made their agreement to Delaware jurisdiction non-exclusive (id.).

number of independent ways. As to the TPR Settlement Agreement and the Amended TPR Settlement Agreement:

      (a)    Pursuant to the July 2009 Order, Dalia and her counsel were required to give Petitioner 10 days advance notice of any transaction that impacted the Orly Trust TRI Shares, but failed to provide notice of either the TPR Settlement Agreement or the Amended TPR Settlement Agreement;

      (b)    By agreeing in the TPR Settlement Agreement and the Amended TPR Settlement Agreement to have the Orly Trust relinquish its interest in TPR and transfer its interest in D & K to TPR, Dalia, Sagi, D & K GP, and TPR jointly and severally violated the TPR Action Restraints which forbade each of them from "transferring, pledging, assigning or otherwise disposing of the [Orly Trust TPR] Shares." (See **Exhibit "Z"** at 31-32)

    91.    As to the Notes and the Credit Agreement, TPR's assignment of the 2011 Promissory Note to MSCo was an "...act by Respondent, her agents and all other persons acting on her behalf to assign, mortgage, pledge, redeem, encumber, sell or otherwise alter the Orly Trust's interest in TRI..." Accordingly, pursuant to the July 2009 Order, Dalia was required to give Petitioner at least 10 days notice of the transaction but completely failed to do so. This failure to notify Petitioner also violated various provisions of the Supreme NY Restraining Orders.

## THE EVENT OF DEFAULT UNDER THE NOTES HAS BEEN TRIGGERED AS A RESULT OF THE DISMISSAL OF DALIA'S COUNSEL'S FEDERAL INTERPLEADER ACTION

    92.    As a result of Dalia, TPR, D & K (through D & K GP) (i.e, Dalia and Sagi's) actions, the $4.44 million dollars in new debt to MSCo is immediately due and payable because of one of the poison pills that litter the Secret Agreements (in addition to the one that provides an event of default if Dalia is removed as Trustee of the Orly Trust) has already been triggered[14], and thus, MSCo is able to immediately proceed against the Orly Trust's assets in any

---

[14]The resolution of an interpleader action commenced by Dalia's counsel, Pedowitz & Meister LLP ("Pedowitz & Meister") is a triggering Event of Default under the Secret Agreements. Pedowitz & Meister was the

jurisdiction in the world (Delaware, St. Kitts, etc.) without notice or warning to the Orly Trust or to anyone.

93.    Thus, by her actions Dalia has created a situation where the assets of the Orly Trust could be in immediate peril of dissipation.

## DALIA NEEDS TO BE REMOVED AS TRUSTEE IMMEDIATELY

94.    As a result of all of Dalia's forgoing actions and inactions described in this Third Amended Verified Petition, her breach of her fiduciary duties to Petitioner as beneficiary of the Orly Trust, her violation of the terms and conditions of this Court's July 2009 Order and the Supreme NY Restraints, her ongoing conspiracy and scheme with Sagi to loot, transfer, pledge, encumber and dissipate the Orly Trust's assets and the immediate peril to those assets, Petitioner submits that Dalia's should be immediately removed as Trustee of the Orly Trust.

## JOEL ISAACSON SHOULD BE APPOINTED AS SUCCESSOR TRUSTEE

95.    As a result of Dalia's forgoing actions and inactions described in this Third Amended Verified Petition, her breach of her fiduciary duties to Petitioner as beneficiary

---

Escrow Agent with respect to the proceeds of the disputed sale of the Orly Trust TRI Shares and commenced an interpleader action against Petitioner, Dalia as Trustee of the Orly Trust and other parties in the United States District Court for the Southern District of New York, Pedowitz & Meister LLP v. TPR Investment Associates, Inc. Orly Genger, et al (Case No. 11 Civ. 5602) (the "Pedowitz & Meister Interpleader Action) whereby it sought, *inter alia*, a judgment from the Court determining who was entitled to the proceeds of the disputed sale of the Orly Trust TRI Shares.   Petitioner's counsel moved to dismiss the Pedowitz & Meister Interpleader Action on the grounds, *inter alia*, that the District Court lacked subject matter jurisdiction and in any event, all the parties and claims involved in the Pedowitz & Meister Interpleader Action were already pending before Justice Feinman in the New York TRI Action. The Pedowitz & Meister Interpleader Action was recently dismissed by Judge John F. Keenan in the United States District Court for the Southern District of New York by Opinion and Order dated June 14, 2012, due to lack of subject matter jurisdiction and described by him as a "sham".  See Case No.'s 08 Civ. 7140 (JFK), 11 Civ. 5602 (JFK), et al), Docket No. 64).  Thus, the resolution of this sham action has triggered an Event of Default under the Secret Agreements. It is worth noting that Pedowitz & Meister represents both Dalia in her individual capacity and as Trustee of the Orly Trust.

of the Orly Trust and her violation of the terms and conditions of this Court's July 2009 Order, Dalia should be immediately removed as Trustee and replaced with Joel Isaacson.

96.     Mr. Isaacson is the founder and CEO of Joel Isaacson & Co. LLC, which has been a leading independent wealth management firm in New York City for almost 20 years, and which is located at 546 Fifth Avenue, 20th Floor, New York, NY 10036. Mr. Isaacson specializes in financial services and tax planning and has acted as trustee for more than 100 trusts.  He holds a Bachelors of Science Degree in accounting and a Masters of Business Administration degree in financial planning. Mr. Isaacson is not acquainted with any members of the Genger family, does not have any interest in TRI, TPR or D & K, is willing and prepared to succeed Dalia as Trustee immediately and has an understanding of the current status of the Orly Trust.


WHEREFORE, respectfully requests that an Order be entered: (i) immediately removing Dalia Genger as Trustee of the Orly Trust; (ii) suspending the Letters of Appointment heretofore issued to Dalia; (iii) appointing Joel Isaacson as successor trustee; and, (iv) granting such other and further relief as this Court deems to be just equitable and proper.

Dated: New York, New York
        October 15, 2012

                                        _____
                                                ORLY GENGER

-31-

## VERIFICATION

STATE OF NEW YORK )
                        ) ss.:
COUNTY OF NEW YORK )

       ORLY GENGER, the petitioner named in the foregoing Third Amended Verified

Petition, being duly sworn, deposes and says:

       1.      I am the Petitioner in this matter.

       2.      I have read the annexed Third Amended Verified Petition, know the contents
thereof and the same are true to my knowledge, except those matters thereon which are stated to
be alleged upon information and belief, and as to those matters I believe them to be true.


                                               _____
                                                 ORLY GENGER

Sworn to before me this
15th day of October, 2012

_____
Notary Public

**Daniel B Fix**
Notary Public State of New York
New York County, LIC# 02F16239452
Comm Exp 04/18/2015

-32-

FILED: NEW YORK COUNTY CLERK 08/03/2010

INDEX NO. 109749/2009

NYSCEF DOC. NO. 80

RECEIVED NYSCEF: 08/03/2010

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **HON. PAUL G. FEINMAN**     PART **12**

_____ J.S.C.

Orly Genger, etc.

-v-

Dalia Genger, et al.

_____

AMENDED DECISION & ORDER

INDEX NO. 109749/09 E

MOT. DATE _____

MOT. SEQ. NO. 001-006

MOT. CAL. NO. _____

**E-FILE**

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | _____ |
| Answering Affidavits — Exhibits | _____ |
| Replying Affidavits | _____ |

CROSS-MOTION:  ☒ Yes   ☐ No

Upon the foregoing papers, it is

ORDERED that the decision and orders of this court dated June 28, 2010 and filed on July 2, 2010 which resolved motions bearing sequence numbers 001, 002, 003, 004, 005 and 006 are hereby vacated and recalled. This "gray" sheet (short form order) and the annexed Amended Decision and Order shall be substituted in their stead as the decision or order for the motions bearing seq. nos. 001 through 006, inclusive.

So ordered,

Dated: 7/28/2010
7:25 PM

_____
J.S.C.

Check one:  ☐ FINAL DISPOSITION  ☒ NON-FINAL DISPOSITION
Check if appropriate:  ☐ DO NOT POST  ☐ REFERENCE
                        ☐ PC DATE _____  ☐ CC Date _____

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CIVIL TERM: PART 12

----------------------------------------------------------------------X

ORLY GENGER, in her individual capacity and on
behalf of the Orly Genger 1993 Trust (both in its
individual capacity and on behalf of D & K
Limited Partnership),

                    Plaintiff,

            against

DALIA GENGER, SAGI GENGER, D & K GP
LLC, and TPR INVESTMENT ASSOCIATES,
INC.,

                    Defendants.

----------------------------------------------------------------------X

Index No.  109749/2009E
Mot. Seq. Nos.  001 through
                006

***AMENDED***
**DECISION AND ORDER**

| For the Plaintiff: | For Dalia Genger: | For Sagi Genger: |
|---|---|---|
| Zeichner Ellman & Krause LLP | Pedowitz & Meister LLP | McLaughlin & Stern, LLP |
| 575 Lexington Avenue | 1501 Broadway | 260 Madison Avenue |
| New York, NY 10022 | New York, NY 10036 | New York, NY 10016 |
| (212) 223-0400 | (212) 403-7330 | (212) 448-1100 |
| | For D&K GP, LLC: | For TPR: |
| | Finkelstein Newman Ferrara LLP | Lyons McGovern, LLP |
| | 225 Broadway | The Hennessy House |
| | New York, NY 10007 | 16 New Broadway |
| | | Sleepy Hollow, NY 10591 |
| | | (914) 631-1336 |

E-filed papers considered in review of this motion brought by order to show cause for a preliminary injunction,
motions for summary judgment, and motion to amend:

| | Papers: | E-File Number: |
|---|---|---|
| Seq. No. 001 | Order to Show Cause & TRO, Exhibits, Memo of Law in Support | 6, 7, 7-1, 9 |
| | Affidavit & Affirmation in Opposition, Exhibits, Memo of Law | 35, 35-1 - 35-8, 36, 37 |
| | Affidavit & Affirmation in Opposition, Memo of Law, Exhibit | 38, 39, 40, 40-1 |
| Seq. No. 002 | Notice of Motion, Affirmations, Exhibits | 12, 13, 13-1 - 13-6, 18, 18-1 - 18-9 |
| | Pl.'s Omnibus Memo. of Law in Opp. | 52 |
| | Reply Memo of Law (Dalia Genger) | 61 |
| | Reply Memo of Law | 65 |
| Seq. No. 003 | Notice of Motion, Affirmation, Exhibits, Memo of Law | 15, 16, 16-1 - 16-9, 19 |
| | Pl.'s Omnibus Memo. of Law in Opp. | 52, 53 |
| | Memo of Law in Reply, Affirmation, Exhibit | 59, 60, 60-1 |
| | Reply Affirmation, Exhibits, Memo of Law | 62, 62-1, 64 |
| Seq. No. 004 | Notice of Motion, Affirmation, Memo of Law, Exhibits | 20, 21, 22, 22-1 - 22-8 |
| | Pl.'s Omnibus Memo. of Law in Opp. | 52, 54 |
| Seq. No. 005 | Notice of Motion, Affirmation, Memo of Law, Exhibits | 27, 28, 29, 29-1 |
| | Pl.'s Omnibus Memo. of Law in Opp. | 52, 55 |
| Seq. No. 006 | Notice of Motion, Affirmation, Exhibits | 45, 46, 46-1 - 46-7 |
| | Affirmation in Opp., Memo of Law, Exhibits | 47, 48, 48-1 - 48-2 |
| | Affirmation in Reply & Opp | 49 |

| | |
|---|---|
| Affirmation in Opposition | 50 |
| Memo of Law in Reply | 51 |
| Affirmation in Opposition, Memo of Law, Exhibits | 56, 57, 57-1 - 57-2 |
| Memo of Law in Reply | 58 |
| Transcript of Oral Argument | 69 |

## PAUL G. FEINMAN, J.:

The decision and order dated June 28, 2010, and filed on July 2, 2010, resolving the

motions bearing sequence number 001 through 006, is hereby recalled and vacated and the

following decision and order substituted in its stead.[1]

The motions bearing sequence numbers 001 through 006 are consolidated for the purpose

of decision.

In motion sequence number 001, plaintiff moves by order to show cause for a

preliminary injunction and a temporary order restraining defendants from removing from the

State or otherwise disturbing shares of D&K Limited Partnership's 48 percent ownership interest

in the common stock of TPR Investment Associates, until there is a judicial determination as to

who owns these closely held family shares.[2] At oral argument, the court continued the TRO

pending determination of these motions.

In motion sequence numbers 002 through 005, each of the defendants originally moved

to dismiss the complaint on various grounds. By interim order dated October 21, 2009, these

motions were converted pursuant to CPLR 3211 ( c) to motions for summary judgment (Doc. 41,

---

[1] At oral argument held on July 28, 2010 on a related matter, the parties consented to the court's issuance of this revised decision and order without further submissions.

[2] Under the terms of the original TRO signed at the time of the signing of the Order to Show Cause, defendants and their agents are stayed from removing or disposing in any manner the shares at issue. Plaintiff was directed to provide an undertaking in the amount of $150,000.

2

42, 43, 44).[3]

In motion sequence number 006, plaintiff moves for leave to amend the complaint and submits a proposed amended verified complaint containing additional allegations and naming an additional defendant.

All the motions are opposed.

For the reasons set forth below, the motion for a preliminary injunction is granted; the motions by defendants for summary judgment are each granted in part and otherwise denied, and the motion to amend the complaint is granted to the extent indicated.

### Background

The litigants are members of a nuclear family and certain of their family-owned corporations and companies. The central issue concerns the intent behind the signing of a promissory note and pledge agreement in December 1993, executed as part of estate planning tools of the parents of plaintiff Orly Genger and her brother, Sagi Genger, one of the defendants. Plaintiff contends that the note and pledge agreement were part of an entire estate planning scheme by which plaintiff's father, Arie Genger, and plaintiff's mother Dalia Genger, planned to provide for their two children, plaintiff and defendant Sagi Genger, with the greatest amount of funding possible and with minimum tax consequences. Arie and Dalia Genger were divorced in 2004 and the gravamen of this complaint is that in the years following the divorce, plaintiff's mother and brother have deliberately not adhered to the intent behind the promissory note and pledge, and have schemed to seize control of some of the family's closely held companies. Their schemes have been to the detriment of one of the entities, the D&K Limited Partnership,

---

[3]Documents and exhibits are referred herein by their designated e-filing document number in the New York State Court's E-Filing System.

an entity partially owned by the Orly Genger 1993 Trust, and for the benefit of Sagi Genger and for defendant TPR Investment Associates, on which Sagi and Dalia Genger serve as the directors, and of which Sagi Genger is chief executive officer. Among the other relief sought by plaintiff is an injunction restraining further actions that would irreparably harm D&K Ltd. Partnership's ability to recover its interest in the shares originally held by it, that defendants be denied any ability to further erode the holdings of the Orly Genger 1993 Trust, and that shares already sold be returned to the ownership of the Ltd. Partnership.

Plaintiff argues, and none of the defendants dispute her, that as beneficiary of the Orly Genger 1993 Trust, she has a right to assert causes of action on behalf of the trust, citing *Velez v Feinstein*, 87 AD2d 309 (1st Dept. 1982) (where trustee has failed to enforce a claim on behalf of the trust, the beneficiary may do so). She further argues that as the Orly Genger 1993 Trust is a limited partner of D&K Ltd. Partnership, she has the right to assert causes of action on behalf of the Partnership as against TPR Investment and the other defendants, citing among other cases, *CCG Assoc. I v Riverside Assoc.*, 157 AD2d 435, 442 (1st Dept. 1990) ("[t]he right of a limited partner to bring an action on behalf of the partnership to enforce a right belonging to the partnership is beyond dispute") (Pl Memo of Law [Doc. 9:4] p. 1 n. 1).[4]  Defendants' arguments in opposition are not persuasive.

According to the verified complaint (Doc. 7-1), plaintiff and her brother Sagi are individually beneficiaries of irrevocable trusts established in 1993 by their parents. Each trust was funded with a $600,000 gift. As established, the Orly Genger Trust and the Sagi Genger Trust together owned 96 percent in defendant D&K Ltd. Partnership, a family-owned limited

---

[4]Unless otherwise noted, all factual allegations are taken from plaintiff's verified complaint (Doc. 7-1).

4

partnership. Dalia Genger held the remaining four percent interest, and acted as the general manager. Defendant TPR Investment Associates, Inc. is a corporation founded by plaintiff's father, Arie Genger who originally was the sole shareholder, and serves as a holding company for the family's interests. Sagi Genger is presently Chief Executive Officer and a member of the board. Prior to 1993, TPR Investment held a majority interest in non-party Trans-Resources, Inc., a closely held private corporation.[5]

Around the time the two trusts were funded in1993, D&K Ltd. Partnership purchased 240 shares of common stock, comprising 49 percent of all shares, in TPR Investment for $10,200,000. The Orly and Sagi Trusts each paid $600,000, Dalia Genger paid $50,000, and D&K Ltd. Partnership executed a promissory note dated December 21, 1993 for $8,950,000, in satisfaction of the balance (Ver. Compl. [Doc. 7-1] ¶ 16, citing attached Ex. 1 [eFile Doc. 7-1:49 *et seq.*]). The note was signed by Dalia Genger as General Partner of D&K Ltd. Partnership. The note required that D&K Ltd. Partnership repay principal and accrued interest in annual installments over a ten-year period. Both trusts, and Dalia Genger, assumed proportional liability for repayment. The note was secured with a Pledge Agreement dated December 21, 1993, signed by Dalia Genger, in which D&K Ltd. Partnership pledged its 240 TPR Investment shares as collateral for repayment of the note (Ver. Compl. [Doc. 7-1] ¶ 18) According to the September 6, 2007, testimony of Sagi Genger in the arbitration proceeding concerning his parents' divorce, the purpose of the note was "[e]ssentially an estate planning tool, to transfer wealth," with the intent to minimize taxes owed by the family members (Doc. 46-5:150-152 [S.

---

[5]Trans-Resources is the parent company of several subsidiaries that provide growers with specialty fertilizer and industrial chemicals, and is one of the two largest produces of potassium nitrate in the world (Ver. Compl. [Doc. 7-1] ¶ 12).

5

Genger EBT, pp. 366, 368]). As a result of the purchase by D&K Ltd. Partnership of TPR Investment stock, the Orly and Sagi trusts each acquired 23.52 percent indirect interest in TPR Investment, and Dalia acquired a 1.96 percent indirect interest. Arie Genger retained 51 percent ownership.

As alleged in the complaint, each member of the family understood and agreed, in the "desire to ensure equal wealth transfer to Sagi and Orly and with the estate-planning purposes underlying the creation of the Trusts and D&K [Ltd. Partnership]'s purchase of the TPR shares," that the note and Pledge Agreement "would never be enforced by any of them" (Ver. Compl. [Doc. 7-1] ¶ 20). Sagi Genger in particular was charged with ensuring that the promissory note and Pledge Agreement would not be enforced and, in the first years, took "specific steps to fulfill that charge," an example of which follows here (Ver. Compl. [Doc. 7-1] ¶ 20).

D&K Ltd. Partnership made payments on the note until 1999 and then ceased. In November 2002, TPR Investment sent a letter to D&K Ltd. Partnership seeking payment of the past due principal and interest (Doc. 29-1:77-78]). Sagi Genger, TPR's CEO, explained during his testimony in the above-mentioned arbitration proceeding that this November 2002 letter was merely "pro forma," and that there was no intent to collect on the note (Doc. 46-5:153 [S. Genger EBT, p. 370]).

In October 2004, Dalia and Arie Genger were divorced, resulting in certain changes to the ownership of certain family entities, memorialized in the Stipulation and Agreement of Settlement, dated October 26, 2004 (Ver. Compl. [Doc. 7-1] ¶ 22, citing Ex. 2 [Doc. 7-1:66 *et seq.*]). In particular, Dalia Genger received sole ownership of Arie Genger's 250 shares of TPR Investment, the Trans-Resources shares were redistributed such that Dalia Genger owned no shares in that company, and Arie Genger was granted a lifetime voting proxy over the family

6

Trans-Resources shares (Stipulation pp. 5, 8-14 [Doc. 7-1:71, 73-80]). The Stipulation and Agreement of Settlement gave Sagi Genger "full and complete authority" to sell non-liquid assets and distribute them as he saw fit, subject to his fiduciary duties to effectuate the intent of the parties entering the Agreement (Stipulation p. 7 [Doc. 7-1:73]).  However, the net proceeds were to be distributed so as to minimally fund a "basic escrow account" after which monies were to go to TPR Investment "in satisfaction of the parties' indebtedness" (Stipulation p. 8 [Doc. 7-1:74]).

Despite the changes, both the Orly and Sagi trusts continued to have equal ownership interests in Trans-Resources shares as well as in the TPR Investment shares owned by D&K Ltd. Partnership (Ver. Compl. [Doc. 7-1] ¶ 23).

Also on October 26, 2004, TPR Investment, Arie Genger, and Dalia Genger signed an Assumption Agreement which acknowledged the promissory note's existence and noted that at that juncture, approximately $9,980,000, inclusive of interest, was owed by D&K Ltd. Partnership to TPR Investment (Doc. 22-4).

In addition, also on the same date, Sagi and Dalia Genger formed D&K GP LLC to serve as the general partner for D&K Ltd. Partnership (Pl. Mot. 001, Ex. 5 ¶ 5 [Doc. 7-1:151]).  Under the agreement, Dalia Genger transferred her general partnership interest in D&K Ltd. Partnership, in exchange for a 99 percent interest in D&K GP; Sagi Genger was granted power to select the manager.  Accordingly, D&K GP LLC now held a four percent interest in D&K Ltd. Partnership.

Plaintiff alleges that in the years subsequent to the divorce, Dalia Genger has sought, in collusion with her son Sagi Genger, to "destroy" her former husband financially, and their actions have threatened to destroy plaintiff financially as well (Ver. Compl.[Doc. 7-1] ¶ 25).

7

Thus, when Dalia in effect ceded her control over D&K Ltd. Partnership to Sagi, the restructuring left only the two trusts liable to TPR Investment for repayment of the promissory note (Ver. Compl.[Doc. 7-1] ¶ 27). In August 2006, Sagi Genger on behalf of TPR Investment, assigned the promissory note to David Parnes,[6] but stated in writing to Parnes that "D&K LP and its partners have a variety of claims against TPR, and deny the enforceability of the Note." (Ver. Compl. [Doc. 7-1] ¶ 47, citing Ex. 8 [Doc. 7-1:179-*et seq.*]). In 2007, Sagi Genger allegedly stripped Dalia Genger of her majority interest in TPR Investment by selling an interest to his mother-in-law, Rochelle Fang (Ver. Compl. [Doc. 7-1] ¶ 32). In late 2007 or early 2008, Dalia Genger divested herself of the balance of her TPR Investment shares, leaving Sagi Genger in direct control of TPR Investment and its interest in the promissory note (Ver. Compl. [Doc. 7-1] ¶ 33). As a result, Sagi Genger in essence now wore two hats, as CEO of TPR Investment, the creditor of the note, and as manager of D&K Ltd. Partnership, the debtor on the note (Ver. Compl. [Doc. 7-1] ¶ 34).

In November 2007, Sagi Genger and Leah Fang executed an "Amended and Restated Limited Partnership Agreement of D&K Limited Partnership," permitting D&K GP to "mortgage, hypothecate, pledge, create a security interest in or lien upon, or otherwise encumber the L[imited] P[artner] TRI Interests, for the benefit of the Partnership (Doc. 46-5:218). The document was signed by Sagi Genger, managing member of D&K GP LLC, the General Partner, and Leah Fang, as sole trustee for both the Sagi Genger 1993 Trust and the Orly Genger 1993 Trust, the Limited Partners (Doc. 46-5:223). Plaintiff only learned of this document's existence

---

[6] Parnes is a former trustee of the Orly Genger 1993 Trust, the present trustee of the Sagi Genger 1993 Trust, an officer of TPR Investment and director of Trans-Resources (Ver. Compl. [Doc. 7-1] ¶ 46). Parnes testified during the arbitration proceeding that the purpose of the transfer of the note to him was to prevent collection by any others (*Id.*).

8

in 2009.

In January 2008, Dalia Genger was appointed successor trustee to the Orly Genger 1993 Trust (Ver. Compl. [Doc. 7-1] ¶ 39). She succeeded several other individuals, including two long-term friends of her son's and her son's sister-in-law. As trustee, Dalia has "complete control over the assets of the Orly Trust, including its ownership interests in TPR (through D&K) and TRI" (Ver. Compl. [Doc. 7-1] ¶ 41).

In 2008, TPR Investment, through CEO Sagi Genger, reclaimed the promissory note from Parnes, and in August 2008, notified D&K Ltd. Partnership's general manager (Sagi Genger), that it was in default under the note and that if it failed to satisfy the full terms of the note, its shares would be sold at public auction (Ver. Compl. [Doc. 7-1] ¶ 52, citing Ex. 10 [Doc. 7-1:185-186]). As the payment was not made, D&K Ltd. Partnership was informed by TPR Investment that the latter would sell the former's 240 shares of common stock in TPR Investment to the highest qualified bidder on February 27, 2009 (Ver. Compl., Ex. 11 [Doc. 7-1:187-188]). Notice was not provided to either of the trusts, but was published in THE NEW YORK POST in October 2008 and again in February 2009 (Ver. Compl. [Doc. 7-1] ¶¶ 52-53, citing Ex. 12 [Doc. 7-1:189-191]).

On January 31, 2009, the general partner of D&K Ltd. Partnership, that is to say D&K GP, and the limited partners, the Sagi and Orly trusts, and TPR Investment, memorialized a document called "Meeting of Partners of D&K LP - Jan. 31, 2009 & Agreement," in which it was agreed that D&K GP could sign for the Limited Partnership and for each individual partner when making the limited partners' assets subject to a pledge (Doc. 22-4:17-18).[7] This same

---

[7]Plaintiff alleges she first learned of this agreement only when the documents were provided as part of defendants' papers submitted in their motions to dismiss (Am. Ver. Compl.[Doc. 46-4] ¶

9

agreement included the promise of TPR Investment that it would "refrain from enforcing the note against each limited partner for thirty days." (*Id.* [Doc. 22-4:18] ¶ 8).[8]

The note was foreclosed upon on February 27, 2009, less than the 30 days indicated in the Agreement date, and D&K Ltd. Partnership's 240 shares of TPR Investment were purchased back by TPR, decreasing the obligations of D&K Ltd. Partnership under the promissory note, and leaving a balance of approximately $8.8 million that continues to be guaranteed by the Orly and Sagi trusts (Ver. Compl. [Doc. 7-1] ¶ 57, citing Ex. 13 [Doc. 7-1:192-194]). Plaintiff and her attorney only learned in early June 2009 that the note had been foreclosed and that the pledged shares had been sold back to the company (Ver. Compl. [Doc. 7-1] ¶ 65). Plaintiff has made a written demand that TPR Investment return the pledged shares to D&K Ltd. Partnership, but TPR has declined to comply (Ver. Compl. [Doc. 7-1] ¶ 69, citing Ex. 20 [Doc. 7-1:225-227]).

Also in August 2008, Rochelle Fang, as trustee of the Sagi Genger 1993 Trust, and Sagi Genger, sold that trust's interest in Trans-Resources to another group (named "Trump"), which sale divested Arie Genger from control and put the company in the control of the Trump group (Ver. Compl. [Doc. 7-1] ¶ 60, citing Ex.14 [Doc. 7-1:195-207]). The validity of this sale is under challenge in Delaware Chancery Court, although plaintiff Orly Genger has not joined in that action (Ver. Compl. [Doc. 7-1] ¶ 61).

After this purported sale of the Sagi Genger Trust's shares of Trans-Resources, plaintiff feared her trust's shares would not be protected from sale. She requested in writing from her

---

94).

[8]The copy of the document e-filed with the court is not clear enough to discern who signed on behalf of the trusts, although presumably it was Dalia Genger, or on behalf of TPR Investment.

10

mother as trustee in January 2009 and again in June 2009 that the Orly Genger 1993 Trust retain all of its shares of Trans-Resources and that they not be sold, but Dalia Genger has refused to agree, or even to respond (Ver. Compl. [Doc. 7-1] ¶¶ 63, 66, citing Ex. 15, 16 [Doc. 7-1:208-215]). Plaintiff, who had brought a proceeding in Surrogate's Court to remove her mother as trustee at the time of her appointment in January 2008, an application which was denied as being premature (Ver. Compl. [Doc. 7-1] ¶¶ 39-40), brought a second application on June 22, 2009, seeking to enjoin Dalia Genger or her agents from doing anything to affect the Orly Genger 1993 Trust's Trans-Resources shares, to remove Dalia as trustee and appoint another in her stead based on breach of fiduciary duties, and for a surcharge for damages (Ver. Compl.[Doc. 7-1] ¶ 67). At this juncture, the Surrogate's Court has ordered that Dalia Genger provide at least 10 days notice before disposing of any of the trust's Trans-Resources shares (Ver. Compl.[Doc. 7-1] ¶ 68, citing Ex.19 [Doc. 7-1:222- 224]).

Plaintiff contends that Dalia Genger has failed to act in the best interests of the Orly Genger 1993 Trust, that Sagi Genger has acted in a self-dealing manner and together with Dalia Genger has undermined the estate plans that intended for both children to benefit equally from the family's wealth (Ver. Compl. [Doc. 7-1] ¶ 58). Plaintiff fears that through defendants' continued scheming, the Orly Genger 1993 Trust's one remaining asset, its ownership of the Trans-Resources shares, will also be wrongly divested (Ver. Compl. [Doc. 7-1] ¶ 59).

The verified complaint alleged 16 causes of action against the various defendants, including replevin of the shares from TPR Investment back to D&K Ltd. Partnership, and a request for a preliminary injunction.

As stated above, defendants each submitted pre-answer motions to dismiss which, after notice by the Court, have been converted to motions for summary judgment pursuant to CPLR

11

3211 ( c). Subsequent to the filing by defendants of their motions, plaintiff moved to amend her complaint "to address, among other things," the defendants' "scheme regarding the Orly Trust's TRI Shares," and the involvement in the scheme of Leah Fang, the proposed additional defendant (Pl. Mot. 006, Ex. D, Part 1, Proposed First Am. Ver. Compl., [Doc. 46-4] ¶ 95). The proposed first amended verified complaint contains an additional four causes of action, two against Leah Fang, and two seeking additional declaratory relief, and amends certain of the original causes of action to include the new allegations and those against Leah Fang.

## Legal Analysis

For convenience, the motion to amend will be addressed first, and then the preliminary injunction, followed by the motions to dismiss. Because the motion to amend the complaint is granted, the remainder of this decision addresses the claims as alleged in the amended complaint.

A.    Motion to Amend the Verified Complaint (Sequence Number 006)

Leave to amend pleadings is is to be freely given upon terms that may be just (CPLR 3025 [b]). In addition, CPLR 3025 (a) permits any party to amend a pleading once, without court permission provided it is done under one of the following circumstances: within 20 days of the service of the original pleading; at any time before the period for responding to it has expired, or within 20 days after the service of a responsive pleading. Plaintiff proffers a proposed amended complaint to add a new defendant and new causes of action (Doc 46-4).

Contrary to defendants' arguments, case law holds that where a defendant has not answered the complaint but instead interposed a motion to dismiss, as was done here, the plaintiff may amend her complaint once as of right, because defendants, by making pre-answer motions, have extended their time to answer (see, Johnson v Spence, 286 AD2d 481 [2d Dept. 2001]; STS Mgt. Dev., Inc. v New York State Dept. of Taxation & Fin., 254 AD2d 409 [2d Dept.

12

2001]; *Miller v General Motors Corp.*, 99 AD2d 454 [1st Dept. 1984], *aff'd* 64 NY2d 1081

[1985]). Although defendants oppose, plaintiff is entitled to serve and file her amended

complaint without review by the court, although the rulings below on defendants' motions shall

refine the scope of the proposed amended complaint and require her to file and serve a second

amended complaint. Defendants' arguments in opposition, including that there is another action

pending, can be pled as affirmative defenses. Plaintiff's motion to amend her complaint is thus

granted to the extent indicated.

B.      Motion for Preliminary Injunction (Sequence Number 001)

        Among the purposes of a preliminary injunction are maintaining the status quo and

preventing irreparable injury to a party (*see, e.g., Ma v Lien*, 198 AD2d 186 [1st Dept. 1993], *lv*

*dismissed* 83 NY2d 847 [1994]). To prevail, the party seeking injunctive relief must

demonstrate a likelihood of success on the merits; that it will suffer irreparable injury if the relief

is not granted; and that the equities balance in its favor (*Aetna Ins. Co. v Capasso*, 75 NY2d 860,

862 [1990]). A preliminary injunction should generally not be granted where there are issues of

fact (*Lincoln Plaza Tenants Corp. v MDS Properties Dev. Corp.*, 169 AD2d 509 [1st Dept.

1991]; *but see Ma v Lien, supra* at 187 ["even where the facts are in dispute, the nisi prius court

can find that a plaintiff has a likelihood of success on the merits, from the evidence presented"]).

If money damages are an adequate remedy, irreparable harm does not exist and injunctive relief

should be denied (*Sterling Fifth Assoc. v Carpentille Corp., Inc.*, 5 AD3d 328, 330 [1st Dept.

2004]).

        Plaintiff argues that the shares of Ltd. Partnership are unique chattel as contemplated by

CPLR 7109, and that accordingly the court should grant a preliminary injunction restraining

defendants from disposing of the shares until order of the court. She argues that the D&K Ltd.

13

Partnership shares are unique because they are shares of a closely held family company which represents an ownership in another closely held family company, TPR Investment, and that their value is dependent, at least in part, on the outcome of the family litigation currently before the Delaware Chancery Court concerning Trans-Resources (Pl. Memo of Law, 5-6 [Doc. 9:8-9]).

Under CPLR 7109, where the chattel is unique, the court may grant a preliminary injunction or temporary restraining order that it may not be transferred, sold, pledged, assigned or otherwise disposed of until the court orders (CPLR 7109 [a]). Defendants argue that the shares are in essence fungible, and that if appropriate, money damages would fully compensate plaintiff (TPR [S. Genger] Aff. in Opp. [Doc. 39] ¶ 6). Sagi Genger avers that the "TPR shares are currently not for sale and there is no intention to sell them at this time or in the near future." (S. Genger Aff. in Opp. [Doc. 35] ¶ 5). He makes no statements concerning the TRI shares. Plaintiff's argument, however, is that her parents never meant for the promissory note to be enforced, but rather that the trust funds remain intact for the two children. The recent actions taken by defendants concerning the promissory note which have negatively impacted the Orly Genger 1993 Trust, and the sale of the Trans-Resources shares belonging to the Sagi Genger 1993 Trust, possibly foretell defendants' plans to sell her trust's shares of Trans-Resources and thus she seeks court intervention to prevent further dissipation of the trust.

The granting of a preliminary injunction is a discretionary remedy (*Ross v Schenectady*, 259 App. Div. 774, 774 [3d Dept. 1940]; *Dabrinsky v Seagate Assn.*, 239 NY 321 [1925]). Here, where the family shares at issue are intertwined among various family entities, defendants have not offered sufficient evidence to show that the shares of either TPR Investment or Trans-Resources owned by the Orly Genger 1993 Trust are not "unique" and should not be protected from transfer, sale, or assignment until this litigation is ultimately decided. In addition, given

14

that defendant Sagi Genger states there is no immediate plan to sell or otherwise dispose of the TPR Investment shares, an injunction is not likely to cause much harm to defendants. The balance of equities therefore lies in favor of plaintiff. Accordingly, the motion for a preliminary injunction is granted.

## Motions for Summary Judgment

The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Evidentiary proof must be submitted in admissible form (*Zuckerman v City of N.Y.*, 49 NY2d 557, 562 [1980]). Parties in opposition must submit "evidentiary facts or materials, by affidavit or otherwise ... demonstrating the existence of a triable issue of ultimate fact." (*Tortorello v Carlin*, 260 AD2d 201, 204 [1ˢᵗ Dept. 1999]). "Issue finding and not issue resolving" is the proper role of the court in deciding such motions (*Winegrad, supra*, at 853). Regardless of the sufficiency of the opposing papers, in the absence of admissible evidence sufficient to preclude any material issue of fact, summary judgment is unavailable (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

None of the converted motions for summary judgment contains first-person affidavits, and all rely upon documentary evidence and the pleadings for the bases of their motions. Although plaintiff objects to the lack of first-person affidavits, the converted motions are nonetheless considered by the court and decided on their merits.

Plaintiff argues that all of the motions should be preemptively denied based on the doctrines of issue preclusion and judicial estoppel, pointing to the testimony and evidence presented at the arbitration which resulted in the May 6, 2008, award entitled *Dalia Genger v*

15

*Arie Genger*, Case No. 13 170 Y 00996 07 (American Arbitration Assn., Commercial Arbitration Tribunal, NYC). (Doc. 46-5:131 *et seq.*]). The doctrine of issue preclusion serves to bar a party from "relitigating in a subsequent action or proceeding an issue that was raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same" (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]; *see also, Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 349 [1999]). The doctrine of judicial estoppel prohibits a party that has assumed a certain position in a prior legal proceeding and secured a judgment in its favor, from assuming a contrary position in another action simply because the party's interests have changed (*City of N.Y. v College Point Sports Assn., Inc.*, 61 AD3d 33, 44 n. 1 [2d Dept. 2009], citations omitted). Notably, of course, the arbitration concerned issues arising from the divorce of plaintiff's parents, and determined, among other questions, that the promissory note could not be enforced by either parent as against each other. This is not the issue raised by plaintiff in her litigation. Additionally, because the testimony by Sagi Genger, Dalia Genger, and others in that arbitration was offered to answer the questions of whether the note was enforceable, and its value, *as between the former husband and wife*, the witnesses and parties did not address the value or enforceability of the note *as between the children* of Arie and Dalia Genger, *or the family owned companies*. Thus, the testimony adduced in the arbitration may well be admissible in this action, but there is no collateral estoppel effect.

## C.   Dalia Genger's Motion for Summary Judgment (Sequence Number. 002)

The first amended verified complaint alleges three causes of action against Dalia Genger: breach of fiduciary duty (1st cause of action), fraud (5th cause of action), and conspiracy to commit fraud (8th cause of action).

16

As argued by defendant, the claim of breach of fiduciary duty is also at issue in a proceeding currently before the Surrogate's Court entitled *In the Matter of the Application of Orly Genger, as a person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust pursuant to SCPA § 711 (1)*, File No. 17/2008 (Surrogate's Court NY County). Plaintiff does not address this argument. Accordingly, in the interest of judicial economy, the branch of defendant's motion seeking summary judgment and dismissal as to the complaint's 1st cause of action, is granted, on the ground that the same claim is pending in another court proceeding (CPLR 3211 [a] [4]).

The 5th Cause of Action sounds in fraud, while the 8th Cause of Action alleges conspiracy to commit fraud among the four defendants. As an initial matter, it is well established that "a mere conspiracy to commit a fraud is never of itself a cause of action," although allegations of conspiracy are permitted to connect the actions of separate defendants with an otherwise actionable tort (*Alexander & Alexander of N.Y. Inc. v Fritzen*, 68 NY2d 968, 969 [1986] [citation omitted]). As explained in *Brackett v Griswold*, "[t]he allegation that there was a conspiracy to commit the fraud does not effect the substantial ground of action," and "[t]he *gravamen* is fraud and damage, and not the conspiracy." (112 NY 454, 466-467 [1889]). "The allegation and proof of a conspiracy in an action of this character is only important to connect a defendant with the transaction and to charge him [*sic*] with the acts and declarations of his [*sic*] co-conspirators, where otherwise he [*sic*] could not have been implicated." (*Id.*). Accordingly, the 8th cause of action is dismissed as against this defendant, and the others.

To state a claim for fraud, plaintiff must allege "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance . . . and damages" (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). In addition, under

17

CPLR 3016 (b), the circumstances constituting the wrong must be stated in detail.

Defendant Dalia Genger argues that plaintiff's claims are unspecific and general in nature. In particular, she argues that there is no allegation of the manner in which plaintiff relied on any of her statements, or in what manner she, defendant, could have prevented the enforcement of the promissory note and the foreclosure sale. Although plaintiff argues in opposition that Dalia Genger made many statements over the years, including sworn statements, affirming that all interested parties to the note had agreed that TPR Investment would never seek to enforce the promissory note (Am. Ver. Compl. [Doc. 46-4] ¶¶ 62, 145-147), none of defendant's statements *explicitly* make this assertion other than in the context of the divorce proceedings. However, plaintiff also argues that even after she requested that her mother, as trustee, not encumber the remaining assets of the trust, her mother signed the January 2009 Meeting Agreement which gave power to D&K GP - the company controlled by Dalia and Sagi Genger - to pledge the Orly Genger 1993 Trust's shares of Trans-Resources as security for the promissory note, and which indemnified Sagi Genger, among others. There are also the transactions over the years that apparently have given Sagi Genger, and Dalia Genger, potential control over family assets in a way that has harmed plaintiff's share.

When claiming that the defendants together acted to commit a fraud, the plaintiff need not allege and prove that each defendant committed every element of fraud but only facts which support an inference that the defendants knowingly agreed to cooperate in a fraudulent scheme (*Snyder v Puente De Brooklyn Realty Corp*, 297 AD2d 432, 435 [3d Dept.2002], *lv denied*, 99 NY2d 506 [2003]; *LeFebre v New York Life Ins. & Ann. Corp.*, 214 AD2d 911, 912 [3d Dept. 1995]). Plaintiff alleges that the various defendants together committed fraud by, for example, creating the conditions that resulted in the "sham sale" of the TPR Investment assets owed by

18

D&K Ltd. Partnership, and agreeing in the January 2009 Meeting Agreement to give power to D&K GP, the company controlled by Dalia and Sagi, to pledge the Orly Trust's shares of Trans-Resources as security for the promissory note (Am. Ver. Compl. [Doc. 46-4] ¶¶ 76-68, 151). Plaintiff asked repeatedly for information about her trust, but because defendant has not been forthcoming nor kept her informed, she did not know that there was any need to attempt to protect the assets of her trust.

The evidence and arguments provided by both parties show that there is a question of fact as to whether Dalia Genger acted with intent to commit fraud against plaintiff's trust, and to lull plaintiff into a false sense of security as to the status of her trust. Accordingly, the branch of defendant's motion to dismiss the 5th cause of action is denied.

D.    Sagi Genger's Motion for Partial Summary Judgment (Sequence Number 003)

Defendant Sagi Genger seeks summary judgment and dismissal of the 6th, 7th, 8th, and 16th causes of action.[9]

The 6th cause of action sounds in fraud. The elements of fraud are set out above in the discussion of Dalia Genger's motion. The complaint focuses on the statements made by defendant in particular during the 2007 - 2008 arbitration proceeding, which helped form the basis for the arbitrator's decision that the parties never intended for the note to be collected and that it was not an asset to be valued, statements of which the plaintiff was aware and which caused her to believe that her trust fund was secure and that no one would enforce the note.

The 7th cause of action alleges aiding and abetting fraud. The elements of aiding and abetting fraud are that there exists a fraud, the defendant knew of the fraud, and the defendant

---

[9]He does not seek summary judgment as to the 2nd, 3rd, or 4th causes of action, in which he is also named.

provided substantial assistance to advance the fraud's commission (*M&T Bank Corp. v Gemstone CDO VII, Ltd.*, 23 Misc. 3d 1105A; 881 NYS2d 364, 2009 NY Slip Op 50590(U) {Sup. Ct., Erie County 2009], *aff'd in part, mod in part*, 68 AD3d 1747 [4th Dept. 2009], quotation and citation omitted). The complaint contends that defendant and D&K GP knowingly assisted in the "sham sale" of the D&K Ltd. Partnership shares, failed to notify the Partnership members of the foreclosure and sale, the sale of which harmed the Orly Trust, and entered into the Meeting Agreement which now allows defendant and D&K GP to pledge or encumber the Trans-Resources shares owned by the Orly Genger 1993 Trust.

Defendant argues that summary judgment is appropriate based on the documentary evidence. He contends that prior to this litigation, plaintiff never claimed that the note or pledge agreement were invalid. Among the evidence he points to in arguing the note's enforceability, is testimony of Arie Genger acknowledging that payments were made by D&K Ltd. Partnership on the promissory note (Doc. 16-4:3-4]) , the Assumption Agreement signed by Dalia, Arie, and Sagi Genger on October 25, 2004, acknowledging the nearly $10,000,000 due under the note (Doc. 16-6]), the November 19, 2008 letter from plaintiff's counsel to the Surrogate, stating in part that "D&K [Ltd. Partnership]  is indebted on a multi-million dollar note to TPR, which is secured by D&K's 49% stock interest, and which has not been serviced for years" (Doc. 16-8]), and a document signed by plaintiff dated December 27, 2007, in which she states that the trust "is indebted in the amount of approximately $4.5 million" (Doc. 16-9]).

Defendant also argues that the statute of frauds bars plaintiff's 6th and 7th causes of action because plaintiff claims that the promissory note has been orally modified.  General Obligations Law § 5-701 requires that agreements which by their terms are not to be performed within one year, or which are promises to answer for the debt or default of another person, must be in

writing and subscribed by the party to be charged therewith (GOL § 5-7-1 [a] [1]-[2]). The parol evidence rule of the General Obligations Law provides that where a written agreement contains a provision stating that it cannot be changed orally, then such a document cannot be changed by executory agreement unless it is in writing, signed by the party against whom enforcement of the change is sought (GOL § 15-301 [1]). Thus, defendant argues that plaintiff cannot claim that the parties legally agreed, orally, that the note would not be enforceable.

Defendant's arguments are unpersuasive. Courts have also found, specifically in regard to promissory notes, that when parties contest whether a notice is enforceable, there is an issue of fact that survives summary judgment and the statute of frauds will not prevent the court's examination of parol evidence on the issue. For example, in *Greenleaf v Lachman*, the Court examined a promissory note allegedly executed so as to avoid negative income tax treatment, and found an exception to the parol evidence rule in order to allow admission of parol evidence, not to vary the terms of the writing, but to show that a "writing, although purporting to be a contract, is, in fact, no contract at all." (216 AD2d 65, 66 [1st Dept.1995], *lv denied* 88 NY2d 802 [1996]). Similarly, in *Dayan v Yurkowski*, the Court denied summary judgment and held that the defendant's parol evidence should be considered to show that the note, while valid on its face, was not intended to take effect (238 AD2d 541 [2d Dept. 1997]; *see also, Paolangeli v Cowles*, 208 AD2d 1174, 1175 [3d Dept. 1994]).

Here, where plaintiff and all the defendants copiously cite to factual support, a material issue of fact exists regarding the intention of the note's enforceability. While the documents speak for themselves, plaintiff raises material questions of fact concerning the actual intent behind the promissory note. She argues that the promissory note's purpose was to facilitate the estate planning of Arie Genger and the transfer of funds between the family members with

21

lessened tax consequences. Indeed, it is curious that interest payments were made by the Partnership for several years and then ceased, and that Sagi Genger testified that TPR Investment's 2002 notice was "pro forma" and not meant as an actual request that payment be made. It could be found that enforcement of the note's terms was only made after Sagi Genger allegedly came into control of both TPR Investment and D&K Ltd. Partnership. Given the testimonial evidence in particular, there is a question of fact as to whether the promissory note was intended to be an enforceable agreement, and it would be premature to apply a Statute of Frauds analysis to the cause of action. In addition, as plaintiff has established that there are questions of fact as to whether defendant acted with intent to defraud plaintiff and D&K Ltd. Partnership and provided substantial assistance to D&K GP in particular to advance the fraud's commission, the branch of the motion seeking summary judgment and dismissal of the 6th and 7th causes of action is denied.

The 8th cause of action alleges conspiracy to commit fraud. For the same reasons set forth above in discussing Dalia Genger's motion, this branch of defendant's motion is granted.

The 16th cause of action alleges promissory estoppel. This is an equitable cause of action and must allege "a clear and unambiguous promise by defendants upon which [the plaintiff] reasonably and foreseeably relied to [plaintiff's] detriment." (*401 Hotel, L.P. v MTI/The Image Group, Inc.*, 251 AD2d 125, 126 [1[st] Dept. 1998]). Here, plaintiff alleges that it was the promise and intent of Arie Genger and the family as a whole, that the promissory note was not to be enforced, so as to preserve the trust accounts, and that she relied on that promise these many years only to learn that one of the main assets of her trust account had been sold in violation of the promise. Defendant argues not only that the documents state otherwise, but that plaintiff may not assert promissory estoppel in order to avoid the affirmative defense of the statute of

frauds, citing *Cohen v Brown, Harris, Stevens, Inc.*, 64 NY2d 728 (1984), and *Lowinger v Lowinger*, 287 AD2d 39, 45 (1st Dept. 2001), *lv denied* 98 NY2d 605 (2002).

While the assertion of the statute of frauds is often sufficient to cause a dismissal of a claim of promissory estoppel, exceptions include where "the circumstances are such as to render it unconscionable to deny" the promise upon which the plaintiff has relied (*see, Philo Smith & Co. v. USLIFE Corp.*, 554 F.2d 34, 36 [2d Cir. [NY] 1977]).  Here, where there are questions of fact as to whether defendants intentionally breached the family agreement concerning the entirety of the estate planning and unconscionably caused plaintiff to lose a significant amount of her trust funds to their benefit, with the possibility of losing all of the funds, defendant has not established entitlement to summary judgment and dismissal of the claim of promissory estoppel notwithstanding his defense of the statute of frauds (*see, Swerdloff v Mobil Oil Corp.*, 74 AD2d 258, 261 [2d Dept.], *lv denied* 50 NY2d 913 [1980]).  Accordingly, defendant's motion for summary judgment and dismissal of the 16th cause of action is denied.

E.   <u>D&K GP's Motion for Partial Summary Judgment (Sequence Number 004)</u>

Defendant D&K GP seeks summary judgment and dismissal of "all" the causes of action of the complaint as against it, but its motion papers specifically addresses only the 4th, 6th, 7th, and 8th causes of action.[10]

As an initial issue, D&K GP argues that plaintiff, "in her capacity as beneficiary under the Orly Trust and in the Orly Trust's capacity as limited partner in D&K LP, agreed not to bring an action against D&K GP." (Lyons [D&K GP] Aff. [Doc. 21] ¶ 5). Specifically, defendant points to the "Amended and Restated Limited Partnership Agreement of D&K Limited

---

[10]D&K GP did not seek summary judgment as against the 2nd or 3rd causes of action, in which it is also named as a defendant.

23

Partnership," in which Leah Fang as trustee for both the Orly and Sagi trusts, agreed that the trusts expressly waived their right to bring an action against D&K GP, the General Partner; Sagi Genger signed on behalf of D&K GP (Doc. 22-8). Accordingly, D&K GP argues that summary judgment and dismissal of the claims against it should be dismissed in their entirety. However, this agreement provides that its partners, which include the Orly Genger 1993 Trust, may sue for "fraud, bad faith, or willful misconduct." (Doc. 22-8:5). Plaintiff alleges that there has been bad faith and fraud by various family entities as concerns the enforcement of the promissory note, and including various documents signed on behalf of the Genger trusts, as well as D&K Ltd. Partnership. At the very least, there appear to be irregularities. Summary judgment and dismissal on this ground is not appropriate.

The 4th cause of action, brought by the Orly Genger 1993 Trust and D&K Ltd. Partnership against both defendant D&K GP and Sagi Genger, claims defendants prevented the Ltd. Partnership from honoring its obligations under the note, and that it tortiously interfered with the contract.

Tortious interference with contractual relations consists of four elements: a contract between plaintiff and a third party; the defendant's knowledge of the contract; the defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and resulting damages to plaintiff (*Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [1993], citation omitted). Defendant argues that, as the general partner to D&K Ltd. Partnership, it is a party to the contract at issue, that it, too, has also been injured by the nonpayment and resulting foreclosure, and that a party to a contract cannot tortiously interfere with the contract (Def. Memo of Law § IV [Doc. 22:12]). Plaintiff argues that according to Sagi Genger's testimony during the arbitration proceeding, Dalia Genger had repaid her four percent interest in the

24

promissory note, and that therefore D&K GP was not a party to the agreement.

Here, the contract is the promissory note between D&K Ltd. Partnership and TPR Investment. Defendant D&K GP knew of the contract, but was also the general partner of the Limited Partnership from 2004 onward, and thus is understood to be a party to the contract. This is because the management of the property and the business of the partnership are vested exclusively in the general partners (*Durant v Abendroth*, 97 NY 132, 144 [1884]). By law, a general partner in a limited partnership is subject to all the restrictions and liabilities of a partner in a partnership without limited partners, although it may not undertake certain actions without the written consent of the limited partners, as defined in the statute (Limited Partnerships § 98). Thus, plaintiff's argument that Dalia Genger had repaid the interest she owed on the promissory note, does not divest defendant of its rights and duties as general partner. Accordingly, as it was the general partner of D&K Ltd. Partnership, no claim of tortious interference with the contract may lie. Summary judgment and dismissal of the 4th cause of action against defendant is granted.

The 6th and 7th causes of action are fraud, and aiding and abetting fraud. The elements of both causes of action have been previously set forth. There are questions of material fact as to whether defendant engaged in fraud and in aiding and abetting fraud, and accordingly the branch of defendant's motion for summary dismissal of these two causes of action is denied.

The branch of the motion to dismiss the 8th cause of action, claiming conspiracy to commit fraud, is granted, for the reasons stated previously as concerns the other defendants.

F.     TPR's Motion for Summary Judgment (motion sequence no. 005)

Defendant TPR moves for summary judgment and dismissal of the 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, and 16th causes of action as against it. In sum, it argues that the documentary evidence establishes that there are no material questions of fact that would preclude a grant of

25

summary judgment and dismissal of the complaint as against it.

The branch of the motion to dismiss the 8th cause of action, alleging conspiracy to commit fraud, is granted for the reasons set forth above concerning the other defendants.

The 9th cause of action seeks declaratory relief and damages pursuant to NY UCC §§ 9-627, 610, and 611-614, as concerns the notice of foreclosure and the sale. UCC § 9-610 provides that every aspect of the disposition of collateral after a default must be commercially reasonable. UCC § 9-611 ( c) (2) provides that before the disposition of collateral, the secured party shall send an authenticated notification of disposition to "any secondary obligor." UCC § 9-612 (b) provides that for a non-consumer transaction, 10 days is sufficient notice before the disposition. UCC § 9-613 (a) (4) requires that for the notification of disposition to be sufficient, it must include a statement that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for an accounting. UCC § 9-613 (a) (5) requires that for the notification of disposition to be sufficient, it must state the time and place of the public disposition or the time after which any other disposition is to be made. UCC § 9-627 provides that simply because a greater amount could have been obtained is not in itself sufficient to preclude the secured party from establishing that the disposition was made in a commercially reasonable manner, and describes what are commercially reasonable dispositions.

The complaint alleges that TPR Investment failed to properly notify the Orly Genger 1993 Trust or Orly Genger of the sale of the shares of TPR owed by D&K Ltd. Partnership, and that the notice of August 31, 2008 failed to state that D&K Ltd. Partnership is entitled to an accounting of its unpaid indebtedness, or to provide the time and place of the disposition of the collateral. In addition, the $2,200,000 sale price was only a "fraction" of the original $10,200,000 purchase price, and failed to take into consideration certain potential monies

26

received from the sale of TRI shares to the Trump group.

Defendant TPR Investment argues that it fully complied with the UCC requirements when noticing the default and conducting the foreclosure sale. In addition, it argues that even if it could be found that plaintiff never received notice of the default and sale, she has not alleged that she suffered repressible damages, as she makes only a generalized statement that the shares sold for a fraction of their original purchase price (Def. Memo of Law [Doc.29] p. 8, citing Ver. Compl. [Doc. 7-1] ¶ 146]). It also argues that plaintiff does not offer any evidence as to what the fair market value of the TPR Investment shares might have been and, as stated explicitly in the statute, an enforcement will not be found commercially unviable simply because a greater amount could have been obtained (UCC § 9-627 [a]).

An examination of the notice shows that certain of the complaint's allegations have no merit but that others are meritorious (Def. Memo of Law [Doc. 29] p. 7, citing Ex. K [Doc. 29-1:136]). The notice is not addressed to either of the limited partners, the Orly or Sagi Genger trusts, who as guarantors, are secondary obligors, and there is no proof of service provided by defendant establishing notification. The notice indicates that the date of the sale was February 27, 2009, but does not indicate the date of the notice itself, meaning that defendant has not established that the 10-day rule was adhered to. Furthermore, given that the January 31, 2009, Meeting Agreement stated in paragraph 8 that TPR would wait 30 days until selling the shares, it appears that the sale on February 27, 2009 was premature in any event (see Doc. 22-4:17-18]). As for the claimed violation of UCC § 9-627, there remain questions of fact as to whether the sale was itself conducted in a commercially reasonable manner as set forth in the statute, whether or not the shares were sold at a value far lesser value than their worth. However, the notice clearly indicates the date, time, and location of the sale, and also that D&K Ltd.

Partnership is entitled to an accounting and includes the telephone number to call. Accordingly, the branch of defendant's motion seeking summary judgment and dismissal of the 9th cause of action is granted solely to the extent that the claims seeking declarations of violations of UCC § 9-613 (a) (4) and (a) (5), are dismissed. The remainder of the 9th cause of action remains.

The 10th cause of action alleges conversion and seeks replevin, and the 11th cause of action seeks a judgment declaring that D&K Ltd. Partnership has a superior right to possess chattel under CPLR 7101. Conversion is when a person, without authority, intentionally exercises control over the property of another person and interferes with the other person's right of possession (*see, Sporn v MCA Records Inc.*, 58 NY2d 482, 487 [1983]). Replevin, under Article 71 of the CPLR, is a remedy ancillary to an action to recover a chattel (*see Sears Roebuck & Co. v Austin*, 60 Misc. 2d 908, 908 [Civ. Ct., NY County 1969]). Defendant argues that plaintiff does not adequately plead the elements of conversion and thus cannot establish that replevin is appropriate, nor does she show that she is entitled in the 11th cause of action to a declaration that she has a superior right to that of defendant's in the TPR Investment shares. It argues that plaintiff does not establish that its assuming ownership rights to the shares was unauthorized, nor does she show that D&K Ltd. Partnership or any other entity had a superior right.

The claim of conversion and replevin, and the declaration as to whose right is superior, go to the heart of plaintiff's complaint. Because, as set forth in the discussion above, there are disputed questions of fact as to the intent of the promissory note and Pledge Agreement and whether enforcement of them was ever contemplated, there can be no summary determination as to who is entitled to the shares and no declaratory relief granted at this time. Accordingly, the branches of defendant's motion for summary dismissal of the 10th and 11th causes of action are

28

denied.

The 12th cause of action seeks a preliminary injunction to enjoin TPR Investment from in any matter disposing of the TPR shares pending a final determination of the declaratory judgment branch of the complaint. This cause of action is redundant of the motion separately brought by plaintiff and opposed by defendants on grounds similar to those articulated by defendant in its motion for summary judgment. As the plaintiff's motion for a preliminary injunction has been granted as set forth above, summary judgment and dismissal of this cause of action is granted. Of course, if what plaintiff is seeking is a permanent injunction, the cause of action would have to be repleaded.

The 13th cause of action seeks a constructive trust on behalf of D&K Ltd. Partnership. In equity, a constructive trust may be imposed when the movant establishes that there is a confidential or fiduciary relationship, a promise, a transfer in reliance thereon, and unjust enrichment (*Sharp v Kosmalski*, 40 NY2d 119, 121 [1976], citations omitted). Defendant argues that there is no relationship between it and plaintiff, perhaps overlooking that this claim is brought on behalf of D&K Ltd. Partnership, a minority shareholder of TPR Investment. It is disputed as to whether TPR Investment owed a fiduciary duty of care to minority shareholder D&K Ltd. Partnership (*see Alpert v 28 Williams St. Corp.*, 63 NY2d 557, 568 [1984] [fiduciary duty of majority to minority shareholders; *Salm v Feldstein*, 20 AD3d 469 [2d Dept. 2005] [fiduciary duty of managing member of company and co-member to plaintiff]). The parties dispute, of course, whether defendant was among the entities promising that the promissory note would never be enforced. Defendant argues that there was no transfer in reliance, however plaintiff sufficiently argues that D&K Ltd. Partnership pledged its shares of TPR in reliance of the promise that the note would be not enforced, citing *Lester v Zimmer*, 147 AD2d 340, 341-

29

342 (3d Dept. 1989), which notes that the elements of a constructive trust are "flexible," and the "transfer" should be interpreted broadly. Whether defendant was unjustly enriched is a matter to be determined at trial. Accordingly, as there are questions of fact, summary judgment is denied as to the 13th cause of action.

The 14th and 15th causes of action, brought on behalf of the Orly Genger 1993 Trust, allege constructive and actual fraudulent conveyance under New York Debtor & Creditor Law §§ 273, 276, and 277. Section 273 of the Debtor and Creditor Law provides that "every conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Section 276 of the Debtor & Creditor Law provides that a conveyance is actually fraudulent if it was made with actual intent "to hinder, delay, or defraud either present or future creditors." Section 277 provides that a conveyance of partnership property made either when the partnership is insolvent or will be rendered insolvent by the conveyance, is fraudulent as to partnership creditors if the conveyance is made (a) to a partner even if there is a promise by the partner to pay partnership debts, or (b) to a non-partner without fair consideration to the partnership.

None of these statutes apply to the facts here, and defendant's motion for summary judgment and dismissal of the two causes of action must be granted based on failure to state a cause of action. In New York, only creditors may maintain actions for fraudulent conveyance (*Geren v Quantum Chemical Corp.*, 99 F3d 401, 1995 WL 737512, \*\*2 [2d Cir. [NY] 1995], citing *Pappa Bros. v Thompson*, 214 NYS2d 13, 15 [Sup. Ct. Nassau County, 1961]). Although plaintiff argues that the Orly Genger 1993 Trust is a creditor, she is misapplying the statute. A creditor is defined as an entity "having any claim, whether matured or unmatured, liquidated or

30

unliquidated, absolute, fixed or contingent." (Debtors & Creditors Law § 270). The complaint alleges that certain of the assets of the trust were wrongly conveyed to defendant by the actions of Sagi Genger. However, to establish a constructive fraudulent conveyance, plaintiff must demonstrate: (1) that there was a conveyance; (2) that the defendant would become insolvent as a result of the conveyance; and (3) there was no fair consideration for the conveyance (see, *United States v Sweeney*, 418 F. Supp. 2d 492, 498 [SDNY 2006], citation omitted). To establish intentional fraudulent conveyance, plaintiff must show in addition that there was actual intent "to hinder, delay, or defraud . . . creditors" (*Sweeney*, at 498). Not only does plaintiff not establish that she is a creditor who has a claim, but she does not allege that *defendant* became insolvent because of the conveyance of the TPR shares. Furthermore, she offers nothing more than the statement that the shares were bought by TPR Investment for a "fraction" of their original value, to establish that there was no fair consideration. Her reliance on Debtor and Creditor Law § 277 is also misplaced, based on the facts alleged in the pleadings. Accordingly, the 14th and 15th causes of action are dismissed on summary judgment.

The 16th cause of action alleges promissory estoppel on behalf of D&K Ltd. Partnership. Defendant's motion for summary dismissal of this cause of action is denied for the same reasons set forth in the discussion of the branch of Sagi Genger's motion for summary judgment and dismissal of this cause of action.

Therefore,

As to Motion Sequence Number 001, due deliberation having been had, and it appearing to this Court that a cause of action exists in favor of the plaintiff and against the defendants and that the plaintiff is entitled to a preliminary injunction on the ground that the subject of the action is unique and that the defendants threaten to do an act in violation of the plaintiff's rights

31

respecting the subject of the action, tending to render the judgment ineffectual, as set forth in the aforesaid decision, it is

ORDERED that the undertaking is continued in the sum of $150,000.00, conditioned that the plaintiff, if it is finally determined that she was not entitled to an injunction, will pay to the defendants all damages and costs which may be sustained by reason of this injunction; and it is further

ORDERED that defendants, their agents, servants, employees and all other persons acting under the jurisdiction, supervision and/or direction of defendants, are enjoined and restrained, during the pendency of this action, from doing or suffering to be done, directly or through any attorney, agent, servant, employee or other person under the supervision or control of defendant or otherwise, any of the following acts: removing the Shares from the state, or otherwise transferring, selling, pledging, assigning, or otherwise disposing of the Shares; and it is further

ORDERED that as to Motion Sequence Number 002, the motion for summary judgment by Dalia Genger is granted only to the extent of dismissing the 1st and 8th causes of action as against her in the first amended verified complaint, and is otherwise denied; and it is further

ORDERED that as to Motion Sequence Number 003, the motion for partial summary judgment by Sagi Genger is granted only to the extent of dismissing the 8th cause of action as against him in the first amended verified complaint, and is otherwise denied; and it is further

ORDERED that as to Motion Sequence Number 004, the motion for partial summary judgment by D&K GP is granted only to the extent of dismissing the 4th and 8th causes of action against it in the first amended verified complaint, and is otherwise denied, and it is further

ORDERED that as to Motion Sequence Number 005, the motion for summary judgment

32

by TPR Investment Associates, Inc., is granted only to the extent of dismissing the 8th, 12th, 14th, and 15th causes of action in their entirety as against this defendant, and as to the 9th cause of action, dismissing the claims alleging violations of UCC § 9-613 (a) (4) and (a) (5); and the motion is otherwise denied; and it is further

ORDERED that as to Motion Sequence Number 006, the motion to amend the complaint is granted to the extent set forth above; plaintiff shall e-file and serve a second amended complaint incorporating the limitations set forth herein, and serve it on all parties who shall then serve their answers in accordance with the CPLR; and it is further

ORDERED that the parties shall appear for a preliminary conference in Supreme Court, 60 Centre Street, room 212, on September 15, 2010, at 2:15 p.m.

This constitutes the decision and order of the court.

Dated: July 28, 2010
New York, New York

_Pane H. Feinman_
J.S.C.



SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

File No. 0017/2008

In the Matter of the Application of ORLY
GENGER, as a person interested, for the
removal of DALIA GENGER, as Trustee of the
Orly Genger 1993 Trust pursuant to SCPA § 711(11)

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER ORLY GENGER'S
OPPOSITION TO RESPONDENT DALIA GENGER'S MOTION
TO DISMISS PETITIONER'S THIRD AMENDED PETITION
TO REMOVE RESPONDENT AS TRUSTEE**

**Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP**
1065 Avenue of the Americas, 18th Floor
New York, New York 10018
Tel: 212-593-300

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ II

PRELIMINARY STATEMENT ......................................................................................... 1

SUMMARY OF FACTS .................................................................................................... 4

DISCUSSION .................................................................................................................... 4

I.   RESPONDENT DALIA FAILS TO MEET HER HEAVY BURDEN OF
     CONCLUSIVELY PROVING PETITIONER ORLY HAS NO CLAIM
     SUPPORTING DALIA'S REMOVAL AS TRUSTEE ......................................... 4

II.  PETITIONER ORLY HAS MORE THAN SUFFICIENTLY PLED
     CLAIMS SUPPORTING DALIA'S REMOVAL AS TRUSTEE BASED
     UPON DALIA'S VARIOUS BREACHES OF HER FIDUCIARY DUTIES
     AS TRUSTEE ...................................................................................................... 5

III. DALIA AND ORLY'S CONTINUED ESTRANGEMENT, DALIA'S
     DELIBERATE CONCEALMENT OF HER ACTIONS AS TRUSTEE
     FROM ORLY, AND DALIA'S HOSTILITY TO ORLY, CONSTITUTE
     ADDITIONAL GROUNDS TO REMOVE DALIA AS TRUSTEE ..................... 7

IV.  DALIA'S ARGUMENT IN THE MOTION TO DISMISS THAT
     THE D & K NOTE WAS NEVER REVOKED IN WRITING AND
     THEREFORE, IS STILL IN FULL FORCE AND EFFECT FAILS, AND,
     IN ANY EVENT, DOES NOT PREVENT DALIA'S REMOVAL AS
     TRUSTEE ............................................................................................................ 9

CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Birnbaum v. Birnbaum,
    73 N.Y.2d 461, 539 N.E.2d 574, 541 N.Y.S.2d 746 (1989)..................................................5, 6

Estate of Granowitz,
    150, A.D.2d 446, 541 N.Y.S.2d (2d Dept. 1989) ....................................................................10

In re Estate of Saxton,
    179 Misc.2d 681, 686 N.Y.S.2d 573 (Sur. Ct. Broome Cty. 1998)...........................................5

In re Van Deusen's Estate,
    37 A.D.2d 131, 322 N.Y.S.2d 951 (1st Dept. 1971)...................................................................5

Lawrence v. Miller,
    11 N.Y.3d 588 (2008) ..........................................................................................................4, 11

Matter of the Estate of Helen Thompson,
    232 A.D.2d 219, 647 N.Y.S.2d 950 (1st Dept. 1996)...............................................................8

Matter of the Estate of Manny E. Duell, Deceased,
    258 A.D.2d 382, 685 N.Y.S.2d 686 (1st Dept. 1999) ..............................................................8

Matter of the Proceeding to Remove David M. Mergenhagen as Trustee,
    50 A.D.3d 1486, 856 N.Y.S.2d 389 (4th Dept. 2008) ..............................................................8

Matter of Wood,
    177 A.D.2d 161, 581 N.Y.S.2d 405 (2d Dept. 1992) ...........................................................5, 6

Meinhard v. Salmon,
    249 N.Y. 458, 164 N.E. 545 (1928) .........................................................................................5

STATUTES

CPLR 3211(a)(7) .............................................................................................................................4

CPLR § 105(u)..................................................................................................................................4

SCPA § 711(3)..................................................................................................................................5

## PRELIMINARY STATEMENT

Ultimately, petitioner Orly Genger ("Orly" or "Petitioner") seeks the removal of respondent Dalia Genger ("Dalia" or "Respondent") as Trustee of the Orly Genger 1993 Trust (the "Orly Trust"). However, the question currently before the Court on the Dalia's instant Motion to Dismiss (the "Motion to Dismiss") is far narrower: <u>Has Orly pled facts in her Third Amended Petition for Removal of Dalia Genger as Trustee (the "TAP")[1] – facts required to be taken as true by the Court on a motion to dismiss – sufficient to remove Dalia as Trustee of the Orly Trust?</u>   Because the answer to that question is unquestionably "Yes", Dalia's Motion to Dismiss should be entirely denied, and the parties permitted to move quickly to discovery and a removal hearing.

In the TAP, Orly detailed at length how Dalia – still incredibly angry toward her ex-husband Arie, and toward Orly, who she views as a "brainwashed" extension of Arie – has colluded, and continues to collude,[2] with Orly's older brother, Sagi Genger ("Sagi"), to loot the Orly Trust of its interests in two closely-held Genger family businesses – TPR Investment Associates, Inc. ("TPR") and Trans-Resources, Inc. ("TRI"). Dalia has done so in deliberate violation of her fiduciary duties as Trustee, which requires Dalia at all times to place the interests of Orly and the Orly Trust ahead of her own interests, desires, and bitter obsessions. <u>See</u> TAP ¶¶ 1-96 and Exhs. A-II.

---

[1] Orly originally commenced a Petition seeking to remove Dalia as Trustee of the Orly Trust pursuant to Surrogate's Court Procedure Act § 711. Orly's Petition was subsequently amended on two occasions to incorporate newly discovered and previously concealed actions taken by Dalia constituting additional breaches of her fiduciary duties to the Orly Trust and Petitioner.

[2] On February 14, 2013, Orly was forced to bring a Motion by Order to Show Cause to protect the status quo and the Orly Trust from additional harm by Dalia. Specifically, Dalia is trying to spend precious Trust assets bringing an unnecessary Delaware Chancery Action (regarding issues already being litigated in New York). The only true purpose of this Delaware Chancery Action is to ensure the Orly Trust loses all claim and right to its shares of TRI. <u>See</u> Order to Show Cause and related papers.

Dalia should never have become Trustee, and materially misled this Court in 2008, when Orly first sought Dalia's removal as Trustee. Since her appointment as Trustee, Dalia has actively acted, or deliberately failed to act, in ways designed to harm Orly and the Orly Trust. Dalia's many breaches of her fiduciary duties to the Orly Trust and Petitioner – each of which justify her removal as Trustee – include, but are not limited to:

     (a)     Dalia deliberately failed to inform, affirmatively concealed from Orly and others, and failed to try to prevent, the sham foreclosure sale by Sagi of the Orly Trust's valuable stock interests in TPR (the "Sham TPR Foreclosure Sale"), so Sagi could greatly benefit to the detriment and injury of Orly and the Orly Trust. Had Dalia been a true Trustee, she would have acted to enjoin the sale, or at least provided notice to other potential bidders known to her so the best price possible was obtained for the TPR Shares. Instead, Dalia did nothing. This lack of notice prevented Orly from protecting the asset by either trying to enjoin the sale or ensuring additional bidding at the sale;

     (b)     Dalia is attempting to dissipate the Orly Trust's sole remaining asset, the Orly Trust TRI Shares (as previously defined in the TAP), by commencing an action in the Delaware Chancery Court (the "Delaware Chancery Action") in which she sought a declaratory judgment with respect to the beneficial ownership and disposition of the Orly Trust TRI Shares. Dalia's commencement of the Delaware Chancery Action was a calculated strategy on her part to injure the Orly Trust because this same Chancery Court had previously ruled that TPR (which is controlled by Sagi) was the beneficial owner of the Orly Trust TRI Shares, and not the Orly Trust. The Delaware Supreme Court reversed the Chancery Court on the happy technicality that the Chancery Court lacked personal jurisdiction over the Orly Trust, as the Orly Trust was not party to that Delaware *in rem* proceeding. Dalia's action is designed to cure that jurisdictional defect, and give the Chancery Court jurisdiction over the Orly Trust. In other words, Dalia has deliberately chosen to spend precious Trust assets bringing an action in the very Court that already has ruled against the Orly Trust;

     (c)     Dalia commenced the Delaware Chancery Action even though all the parties to Dalia's purported Delaware action (the Orly Trust, TPR, and the Trump Group entities) are located in New York, and Petitioner had previously commenced an action in New York County Supreme Court (previously defined in the TAP as the "New York TRI Action") that will determine the beneficial ownership and disposition of the Orly Trust TRI Shares. Notably, the Court in the New York TRI Action enjoined Trustee Dalia (and all other parties) from prosecuting or otherwise proceeding with the Delaware Chancery Action and further determined that Orly was authorized to seek a determination concerning the ownership of the Orly Trust TRI Shares on behalf of the Orly Trust;

(d)     Dalia's counsel has recently indicated that Dalia intends to continue her prosecution of the Delaware Chancery Action notwithstanding the fact that: (i) the Court's prior Orders and rulings in the New York TRI Action have enjoined Dalia from doing so and have further authorized Orly to proceed on behalf of the Orly Trust; (ii) Dalia, as trustee of the Orly Trust, has been enjoined from prosecuting the Delaware Chancery Action since its initial inception approximately sixteen (16) months ago, without any resulting prejudice to the Orly Trust; (iii) Dalia is seeking the same "beneficial ownership" determination in the Delaware Chancery Action that Orly has been actively litigating on behalf of the Orly Trust in the New York TRI Action for more than the past two (2) years and as such, Dalia's prosecution of the Delaware Chancery Action constitutes duplicative litigation and a waste of the Orly Trust's assets; and (iv) the Chancery Court is certain to rule against the Orly Trust's interests, just as it did before[3];

(e)     Dalia entered into the Secret Agreements (as previously defined in the TAP) on purported behalf of the Orly Trust without prior notice to Petitioner and deliberately concealed same from Petitioner and the New York Supreme Court for almost a year. Dalia's entry into the Secret Agreements has placed $4.44 million dollars and any other remaining assets of the Orly Trust in peril of being foreclosed upon and dissipated by a newly-created and unknown St. Kitts entity;

(f)     Dalia has made the defeat of an interpleader proceeding brought by her counsel; her removal as Trustee; and/or appointment of a co-Trustee, "conditions of default" making the $4.44 million immediately payable to the St. Kitt's entity, and the rest of the Orly Trust assets subject to immediate foreclosure without notice anywhere in the world. Notably, the interpleader action already has been defeated, having been correctly labeled by the United States District Court for the Southern District of New York as a "gratuitous" "sham";

(g)     Dalia violated the restraints and injunctions imposed upon her as provided in this Court's July 2009 Order by commencing the Delaware Chancery Action and entering into the Secret Agreements without prior notice to Petitioner; and,

(h)     Dalia's entry into the Settlement Agreements violated restraints and injunctions imposed upon her in both the New York TRI Action and the New York TPR Action, that were imposed to protect the status quo until those cases were determined on the merits by the New York Supreme Court.

See TAP ¶¶ 1-96 and Exhs. A-II.

---

[3] For all of the forgoing reasons, Petitioner has filed an Order to Show Cause with this Court seeking to enjoin Dalia as Trustee from prosecuting or otherwise proceeding with the Delaware Chancery Action. In addition, the New York Supreme Court has given Orly permission to seek clarification that the Supreme Court's recent Order dismissing Dalia as an individual from the New York TRI Action was not meant to affect the injunction preventing Dalia as Trustee from prosecuting her Delaware Chancery Action.

For all the reasons set forth in Orly's TAP, the exhibits accompanying this opposition, and the other papers and proceedings heretofore had herein, Dalia's Motion to Dismiss the TAP should be quickly and summarily denied, and the parties permitted to proceed to the removal hearing as soon as possible, so the Orly Trust can be protected from Dalia.

## SUMMARY OF FACTS

The facts are fully set forth in the TAP[4] and accompanying exhibits; the Attorney's Statement of Ralph Hochberg and accompanying exhibits ("Hochberg Stmt."), filed contemporaneously with this Memorandum of Law; and the Order to Show Cause seeking to stay Dalia from continuing to prosecute her Delaware Chancery Action on behalf of the Orly Trust, with the accompanying Affidavit of Orly Genger, Attorney's Statement, and exhibits submitted in support thereof. The facts and information contained therein are incorporated herein by reference.

## DISCUSSION

I.    **RESPONDENT DALIA FAILS TO MEET HER HEAVY BURDEN OF CONCLUSIVELY PROVING PETITIONER ORLY HAS NO CLAIM SUPPORTING DALIA'S REMOVAL AS TRUSTEE**

> On a motion to dismiss a petition we [the Court], of course, must accept the facts alleged in the petition as true, petitioner must be afforded every possible favorable inference, and we must determine whether the facts alleged by petitioner fit within any cognizable legal theory (*see Leon v Martinez*, 84 NY2d 83, 87-88, 638 NE2d 511, 614 NYS2d 972 [1994]). Affidavits submitted by a respondent will almost never warrant dismissal under CPLR 3211 *unless* they "establish conclusively that [petitioner] has no [claim or] cause of action" (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 635-636, 357 NE2d 970, 389 NYS2d 314 [1976])

Lawrence v. Miller, 11 N.Y.3d 588, 595 (2008); NY CPLR 3211(a)(7). Respondent Dalia falls far short of meeting her heavy burden of "conclusively" proving that, accepting the facts in

---

[4] Because it is verified, the TAP also functions as a sworn affidavit, and its contents constitute sworn evidence of Dalia's wrongdoing.  See NY CPLR § 105(u) (A "verified pleading" may be utilized as an affidavit whenever the latter is required").

4

Orly's TAP as true and affording Orly every possible favorable inference, Orly has absolutely "no claim" justifying Dalia's removal as Trustee. To the contrary, all of the facts and inferences strongly support Dalia's immediate removal as Trustee of the Orly Trust. Accordingly, Dalia's Motion to Dismiss should be entirely denied.

## II.   PETITIONER ORLY HAS MORE THAN SUFFICIENTLY PLED CLAIMS SUPPORTING DALIA'S REMOVAL AS TRUSTEE BASED UPON DALIA'S VARIOUS BREACHES OF HER FIDUCIARY DUTIES AS TRUSTEE

As Trustee, Dalia is obligated to "be as a watchman in the night, ever vigilant and always dedicated to the best interest of the *cestui que trust*." In re Estate of Saxton, 179 Misc.2d 681, 693, 686 N.Y.S.2d 573, 581 (Sur. Ct. Broome Cty. 1998). She has "the duty of communicating all the material facts to the beneficiary," Matter of Wood, 177 A.D.2d 161, 167, 581 N.Y.S.2d 405, 409 (2d Dept. 1992) (rejecting trustee bank's contention that it had no duty to inform the trust beneficiary of its intent to liquidate the stock and bond portfolio of the trust), and is required to place Orly's interests above her own. Birnbaum v. Birnbaum, 73 N.Y.2d 461, 466, 539 N.E.2d 574, 576, 541 N.Y.S.2d 746, 748 (1989) (fiduciary "is bound to single-mindedly pursue the interests of those to whom a duty of loyalty is owed"); Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (trustee bound to standard "stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive"); In re Van Deusen's Estate, 37 A.D.2d 131, 133, 322 N.Y.S.2d 951, 953 (1st Dept. 1971) (same). Additional grounds to remove a fiduciary exist where he or she "has willfully refused or without good cause neglected to obey any lawful direction of the court contained in any decree or order or any provision of law relating to the discharge of his duty." SCPA § 711(3).

The TAP more than sufficiently pleads that Dalia has breached, and is breaching, her fiduciary duties as Trustee, including her obligation to keep the beneficiary informed; her obligation of undivided loyalty to Orly; her duty to place Orly's interests above her own; and her

duty to honor the language and intent of court orders in discharging her duty to protect Orly and the Orly Trust. See, e.g., Birnbaum, 73 N.Y.2d at 466; Wood, 177 A.D.2d at 167.

Indeed, if anything, Dalia's actions as Trustee support the conclusion that she seeks to deliberately harm Petitioner and dissipate the Orly Trust's assets, as part of her continued attack against Arie and those, like Orly, she views to be on his side. It is respectfully submitted that a deliberate desire to harm Orly and the Orly Trust is the most logical explanation for Dalia's actions in: (i) failing to inform Orly of the August 31, 2008 Notice, the Sale Notice, the Sham TPR Foreclosure Sale, the Meeting Agreement, or the D&K Agreement, in multiple violations of her duty to inform and ensure that the value of Orly Trust's shares of TPR would be maximized; (ii) entering into the Meeting Agreement, which purports to allow D&K GP to loot the Orly Trust at will and tries to indemnify herself and her friends (but not her enemies) from liability, in violation of her duty to place Orly's interests above her own; (iii) failing to make any effort to stop collection of the D & K Note by Sagi-controlled TPR, in violation of her duty of undivided loyalty, and despite her sworn representations to the Surrogate Court that she should be Trustee precisely because she would prevent any enforcement of the D & K Note; (vi) refusing under any circumstances to tell Arie about the Sham TPR Foreclosure Sale so he could bid at the sale, because of her own abiding hatred of Arie, in violation of her duty to place Orly's interests above her own and ensure the value of Orly Trust's interest in TPR would be maximized; (v) commencing an action before a Delaware Chancery Court that had already ruled Sagi-controlled TPR, and not the Orly Trust, owned the Orly Trust TRI Shares (and by bringing the action intentionally providing the Delaware Chancery Court with the personal jurisdiction over the Orly Trust the Delaware Chancery Court had previously lacked); (vi) pledging over $4 million of Orly Trust assets in Secret Agreements to an unknown, newly-created St. Kitts entity, and risking the

rest of the Orly Trust's assets to foreclosure by this mysterious St. Kitts entity in the event of default; (vii) making the failure of a "sham" and "gratuitous" interpleader action a "condition of default" under the Secret Agreements; (viii) making her removal as Trustee, or the appointment of a co-trustee, a "condition of default" under the Secret Agreements; (ix) violating multiple orders to maintain the status quo in giving up all of the Orly Trust's valuable interest in TPR to Sagi, encumbering the Orly Trust's TRI assets, releasing all of the Orly Trust's claims against Sagi and Dalia, and making the Orly Trust liable to pay everyone's attorneys fees if it continued to press its legal claims in Court; and (x) releasing the Orly Trust's prior Trustee, Leah Fang, from all possible claims, including fraud claims, while making no investigation, despite knowing Orly was unhappy with Leah Fang's service as Trustee. See TAP; accord Hochberg Stmt.

In sum, the TAP sets forth in great detail how Dalia's actions as Trustee have helped cause, and continue to threaten, the complete dissipation and looting of the Orly Trust's assets, in manifest violation of Dalia's fiduciary duties as Trustee.   Accordingly, Dalia's Motion to Dismiss should be entirely denied.

## III.   DALIA AND ORLY'S CONTINUED ESTRANGEMENT, DALIA'S DELIBERATE CONCEALMENT OF HER ACTIONS AS TRUSTEE FROM ORLY, AND DALIA'S HOSTILITY TO ORLY, CONSTITUTE ADDITIONAL GROUNDS TO REMOVE DALIA AS TRUSTEE

Dalia and Orly have been estranged for many years.  In violation of her fiduciary duty as Trustee, Dalia has never informed Orly of any of her actions as Trustee (and has deliberately hidden those actions from her).  Every agreement has remained hidden; every action revealed only when it was too late.  See TAP.  The simple truth of the matter is that Dalia does not want Orly informed because Dalia does not want Orly to intervene and prevent further harm to the Orly Trust.

Dalia's hostile attitude toward Orly is apparent from her actions, but also crystallized for

7

the Court by Dalia's recent testimony. Specifically, in her recent December 13, 2012 deposition, Dalia failed to identify Orly as part of her "family." (She did, however, include co-conspirators Sagi and Leah Fang as family members.) See Dalia Dep. Tr. (Ex. JJ) at 41-48. Dalia also called Orly "brainwashed." Id. at 207; Ex. LL, at 237-239. Conveniently, if Orly is brainwashed, Dalia remains free to continue ignoring Orly's wishes and concerns (as they are not really Orly's concerns).

In Matter of the Proceeding to Remove David M. Mergenhagen as Trustee, the Appellate Division, Fourth Department reversed the Surrogate's Court's decision and removed the Trustee, noting the Trustee's

> open hostility toward the other beneficiaries directly conflicts with his duty to the trust where, as here, that hostility has "interfere[d] with the proper administration of the trust" (citing Matter of Rudin, 15 AD3d 199, 200, 789 NYS2d 123 [2005], lv denied 4 NY3d 710, 830 NE2d 1146, 797 NYS2d 817 [2005].

50 A.D.3d 1486, 1488, 856 N.Y.S.2d 389, 391 (4th Dept. 2008). Similarly, in Matter of the Estate of Manny E. Duell, Deceased, the Appellate Division, First Department, affirmed the Surrogate's decision to remove the co-trustee and held:

> In light of the demonstrated antagonisms between appellant co-trustee and the trust beneficiaries, and between appellant and his co-trustee, and the evidence establishing that those antagonisms resulted in actions by appellant co-trustee interfering with the proper administration of the estate, and upon the proof tending to demonstrate that future cooperation was unlikely, the Surrogate's determination to remove appellant as co-trustee was a proper exercise of discretion. (citations omitted)

258 A.D.2d 382, 383, 685 N.Y.S.2d 686 (1st Dept. 1999). See also Matter of the Estate of Helen Thompson, 232 A.D.2d 219, 647 N.Y.S.2d 950 (1st Dept. 1996) ("it is well settled that the Surrogate may disqualify a person from receiving letters of administration where the friction between such a person and a beneficiary or cofiduciaries interferes with the proper administration of the estate and future cooperation is unlikely") (citations omitted).

In this case, Dalia, the Trustee and Orly, the sole present beneficiary, have long been estranged, and, given Dalia's actions, will likely remain estranged for some time to come. Moreover, Dalia has allowed her hostility and antagonism toward Arie and Orly, and her (misplaced) love and confidence toward Sagi, to interfere with her proper administration of the Orly Trust.  See TAP; Hochberg Stmt.  Finally, all of Dalia's actions in this regard were concealed from Petitioner in violation of this Court's July 2009 Order and the prior Orders of the other Courts in both the New York TPR Action and the New York TRI Action.  See TAP; see also Hochberg Stmt.

All of the foregoing provides additional well-pled and readily inferred grounds for removing Dalia as Trustee of the Orly Trust, and additional grounds for denying Dalia's Motion to Dismiss.

## IV.   DALIA'S ARGUMENT IN THE MOTION TO DISMISS THAT THE D & K NOTE WAS NEVER REVOKED IN WRITING AND THEREFORE, IS STILL IN FULL FORCE AND EFFECT FAILS, AND, IN ANY EVENT, DOES NOT PREVENT DALIA'S REMOVAL AS TRUSTEE

In the Motion to Dismiss, and in direct contrast to Dalia's prior sworn pleadings and testimony, Dalia asserts that the D & K Note was always intended to be enforced.  Dalia's belated attempt to justify the Sham TPR Foreclosure Sale, and her serial failures as Trustee, are unpersuasive.

As set forth in the TAP and the Hochberg Stmt., pursuant to prior sworn testimony and pleadings submitted to the Court, Dalia, Sagi, and David Parnes (Sagi's lawyer and business partner) all testified in the Genger divorce arbitration that the D & K Note was never to be enforced because to do so would destroy the Genger family estate plan to distribute Arie and Dalia's wealth equally to both Orly and Sagi.

Dalia's counsel also contends the D & K Note was never cancelled or renounced in

9

writing as purportedly required under the Uniform Commercial Code and the Statute of Frauds and, therefore, is purportedly still enforceable.   This argument already has been rejected. Specifically, Justice Feinman denied Dalia's Motion for Summary Judgment in the New York TPR Action with respect to this issue of the D & K Note's enforceability, determining that:

> a material issue of fact exists regarding the intention of the note's [the D & K Note's] enforceability.  While the documents speak for themselves, plaintiff raises material questions of fact concerning the actual intent behind the promissory note. **Given the testimonial evidence in particular, there is a question of fact as to whether the promissory note was intended to be an enforceable agreement, and it would be premature to apply a Statute of Frauds analysis to the cause of action.** (emphasis added)
> (See **Exhibit "Z"** to TAP Pages "21" and "22")

Dalia never appealed the New York Supreme Court's decision, and Justice Feinman was absolutely right that issues of fact remain regarding the enforceability of the D & K Note.  Dalia successfully argued before Justice Milonas (see **Exhibit "J"**, Final Arbitration Award in Genger divorce proceeding, Page "15" and TAP, **Exhibit "I"**, excerpt from Dalia's Pre-Trial Memorandum Page "26"), and submitted a sworn Affidavit to this Court (**Exhibit "KK"**), that enforcing the D & K Note was not intended or appropriate, because doing so would un-do the Genger estate planning scheme to equally distribute the family wealth to the children.  Now, Dalia (and Sagi) shamelessly try to take the exact opposite position.   Dalia's convenient "epiphany" that the D & K Note is suddenly enforceable (now that she allowed it to be enforced) is contrary to her and Sagi's prior sworn statements and testimony,[5] and is still an issue which is being litigated by the parties and will ultimately be determined by the Court in the New York TPR Action.  See, e.g., Estate of Granowitz, 150 A.D.2d 446, 541 N.Y.S.2d 66 (2d Dept. 1989)

---

[5] Since these litigations started, Dalia has sometimes advanced the curious position that, while she and Arie could not collect on the D & K Note, Sagi was free to do so.  This newly-minted excuse cannot withstand Dalia's March 11, 2008 Affidavit to the Court (Ex. KK): By March 11, 2008 Dalia had sold her shares in TPR, and Sagi controlled TPR.  Yet, Dalia still argued to the Surrogate Court that she should be trustee, so she could prevent Sagi-controlled TPR from enforcing the D & K Note.  See Ex. KK at ¶ 8.  Of course, Dalia materially misled Surrogate Roth, and did nothing to prevent Sagi-controlled TPR from wrongly enforcing the D & K Note.

(In familial dispute, Appellate Division affirmed Surrogate Court's denial of Motion to Dismiss because there were issues of fact concerning the validity of the familial agreement and agreed value of decedent's shares).

More importantly, for purposes of the instant motion, whether or not the D & K Note is enforceable (it isn't), Dalia remains a materially inadequate trustee. In this regard, Dalia remarkably testified her only basis for believing the Sham TPR Foreclosure Sale was proper is because Sagi told her so ("It is based on the fact that I have trust in whatever Sagi told me") (Dalia Dep. Tr. 334-337) (Ex. LL). Dalia never even asked her attorneys to investigate if the auction was proper or improper. Id. pg. 337. Dalia never told Orly about the auction because "I don't think it is one of my roles to tell her about the auction." Id. at 242. Dalia also "had no interest" in telling Arie about the auction so he could bid at the sale and maximize the value of the TPR Shares, arguing that "it is not my role to tell him and inform him about the UCC sale." Id. at 240. Plainly, Dalia does not understand what it means to be a trustee, how to act as a trustee, or how to place Orly's interests above her own. Certainly, Dalia cannot properly claim she has conclusively demonstrated no claim exists supporting her removal. Miller, supra, 11 N.Y.3d at 595. Accordingly, the Motion to Dismiss must be entirely denied.

## CONCLUSION

For each and every one of the foregoing reasons, respondent Dalia Genger has failed to "conclusively prove" there is "no claim" justifying Dalia's removal as Trustee. To the contrary, petitioner Orly Genger has more than sufficiently pled claims to remove Dalia as Trustee. Accordingly, it is respectfully submitted that Dalia Genger's Motion to Dismiss should be quickly and entirely denied.

Dated: New York, New York
      February 26, 2013

PLATZER, SWERGOLD, KARLIN, LEVINE, GOLDBERG, & JASLOW, LLP

By: _____
     Ralph R. Hochberg
     Mitchell L. Kaplan
     For the Firm
     1065 Avenue of the Americas – 18th Floor
     New York, New York 10018
     (212) 593-3000

ZEICHNER ELLMAN & KRAUSE, LLP
Yoav M. Griver
Bryan D. Leinbach
575 Lexington Avenue – 10th Floor
New York, New York 10022
(212) 223-0400

Attorneys for Petitioner Orly Genger

12