stock to the Trump Group and two new entities – TR I and TR II – for $26,715,416.00. ("2008 Stock Purchase Agreement", attached hereto as Exhibit **F**).

125.    When combined with the Trump Parties' minority share of 47.15 %, this Sagi Trust sale would give the Trump Parties a 66.575% majority and controlling voting interest in TRI, in direct derogation of the intent of the Court–Ordered Stipulation of Settlement and the Putative Irrevocable Proxies and 2004 Voting Trust Letter Agreement.

126.    The Trump Parties acknowledged the existence of the Putative Irrevocable Proxies and 2004 Voting Trust Letter Agreement in the 2008 Stock Purchase Agreement, representing and warranting that:

> "Such Purchaser hereby acknowledges receipt of copies of the
> irrevocable proxy dated as of October 29, 2004, issued by Seller
> ["Sagi Trust"] in favor of Arie Genger with respect to the shares
> (the "Proxy"), a backup form of voting trust agreement and voting
> trust certificate delivered in connection with the Proxy and the
> Letter Agreement dated October 29, 2004 [2004 Voting Trust
> Letter Agreement] with respect to the transfer of shares from TPR
> to Seller"

127.    The 2008 Stock Purchase Agreement also states that if the 2004 transfer of TRI shares by TPR to the Sagi Trust were determined to be void and the shares returned to TPR then **TPR** would be deemed the seller of the Sagi Trust Shares to the Trump Parties for $26.7 million, even though this $26.7 million would have already been paid to the Sagi Trust controlled by Sagi through his mother-in-law Fang. There was no provision with respect to the reallocation of the sales proceeds to TPR.

128.    The 2008 Stock Purchase Agreement violated the terms of the 2001 Stockholders Agreement, including, but not limited to, Section 3.2 of that Agreement.

33

129. By entering into the 2008 Stock Purchase Agreement, the Trump Group voluntarily and intentionally waived any right to purchase the Sagi Trust Shares under the 2001 Stockholders Agreement.

130. Also through its intentional conduct, including its violation of the 2001 Stockholders Agreement, the Trump Group is estopped from utilizing any purported right to purchase under the 2001 Stockholders Agreement.

131. In addition, Sagi, ostensibly acting for TPR, but without authority and in violation of his contractual, legal and fiduciary duties owed to Arie and Orly, signed a side letter on the very same day as the 2008 Stock Purchase Agreement that provides that if the 2004 transfer by TPR of TRI Shares to Arie and the Orly Trust under the Stipulation of Settlement and 2004 Transaction Documents were declared void, then Sagi, purportedly on behalf of TPR, would transfer the Arie Shares and Orly Trust Shares to the Trump Parties at a price per share 60% per share lower than the Sagi Trust was to receive under the 2008 Stock Purchase Agreement, which would then be deemed a sale by TPR ("2008 Stock Purchase Side Letter Agreement", attached hereto as Exhibit G).

132. The terms of both the 2008 Stock Purchase Agreement and the Side Letter violated the 2001 Stockholders Agreement, including, but not limited to Section 3.2 of the 2001 Stockholders Agreement.

133. The Trump Group defendants waived, and are estopped from asserting, any right under the 2001 Stockholders Agreement to purchase the Arie and Orly Trust TRI Shares from TPR.

34

134.    Neither Arie on behalf of TRI or the Board of Directors of TRI approved the transaction set forth in the 2008 Stock Purchase Agreement and Side Letter.

135.    This Side Letter was not only an insidious requirement mandated by the Trump Parties to get a majority interest in TRI for the first time, but was tantamount to a $26.7 million bribe offered by the Trump Parties to Sagi, the estranged son of Arie, to betray his father and rob his sister of the true value of their respective legal and equitable interests in the TRI stock previously owned by TPR in order for the Trump Group to completely squeeze out Arie and the Orly Trust at unconscionably low prices.

136.    At the time the Trump Parties, TR-I and TR II, the Sagi Trust and Sagi purportedly on behalf of TPR, executed the 2008 Stock Purchase Agreement, the Trump Parties also knew that if the 2004 transactions were voided, TPR, Sagi, the Sagi Trust and the Trump Parties would all be unjustly enriched by the 2008 Stock Purchase Agreement and Side Letter.

137.    The Trump Parties also knew that if the 2004 TPR Transfers of TRI shares to Arie, the Sagi Trust and the Orly Trust were voided, that these TRI shares recovered by TPR would be the subject of a constructive trust established for the benefit of Arie, the Orly Trust and the Sagi Trust.

138.    The Trump Parties, Sagi, and the Sagi Trust knew that Sagi, as an officer and director of TPR, owed a fiduciary duty to Arie, the Orly Trust, and the Sagi Trust, not to devalue or alienate Arie's and the Orly Trust's beneficial ownership of TPR insofar as TPR's ownership of the TRI shares was concerned, and not to strip Arie of his voting rights with respect to these TRI Shares.

139.    The Trump Parties, Sagi and the Sagi Trust knew at the time they executed the 2008 Stock Purchase Agreement that pursuant to the Court –Ordered Stipulation of Settlement, Arie had a contractual right to seek to reform the terms of the Stipulation of Settlement in order to give full effect to the intent of the parties with respect to his relinquishment of control in TPR in exchange for Arie's continuing control of 52.85% of TRI shares and outright ownership of 14% of TRI's stock, as a permitted transferee.

140.    The Trump Parties, Sagi, and the Sagi Trust knew at the time they executed the 2008 Stock Purchase Agreement and Side Letter that Arie was entitled to rescission for failure of consideration of that part of the Stipulation of Settlement that transferred his 51% of TPR to Dalia, in exchange for Dalia's agreement to have TPR concurrently transfer 14% of TRI's shares to Arie outright, and  that Arie would maintain voting control, or 52.85% of TRI for the duration of his life.

141.    In connection with the 2008 Stock Purchase Agreement and in furtherance of the plan and scheme to wrest control of TRI from Arie's control, the Trump Parties aided and abetted the preparation of a sworn affidavit swearing that the Sagi Trust shares had been lost, when the Trump Parties knew that was not a true statement.

**J.    The Trump Parties Declare Themselves The Majority Owners Of TRI, and Commence An Action In The Delaware Chancery Court To Determine The Composition of TRI's Board of Directors**

142.    On August 25, 2008, only three days after the 2008 Stock Purchase Agreement and 2008 Stock Purchase Side Letter Agreement were executed, the Trump Group asserted that it was in control of TRI through the acquisition of 1102.80 shares that were purportedly transferred to them by the Sagi Trust.

143.     On August 25, 2008, the Trump Parties commenced a Chancery Court in rem summary proceeding in the State of Delaware pursuant to 8 Del.C § 225(a) to determine the composition of the Board of Directors of TRI ("The Delaware Action") and to declare, inter alia that:

    i.     the Trump Parties are the majority shareholders of TRI and have the right to vote all of its shares including the shares which were allegedly purchased pursuant to the Stock Purchase Agreement;

    ii.    the 2004 transfers to Arie Genger, the Sagi Trust and the Orly Trust are void and continue to belong to TPR; and

    iii.   that the Putative Irrevocable Proxies do not apply to the shares transferred pursuant to the Stock Purchase Agreement.

144.     Neither TPR, the Sagi Trust, nor the Orly Trust were a party to the Delaware Action, although TPR was given an opportunity to participate in that action, and refused to do so.

145.     The Trump Group as interested Directors in control of TRI had a fiduciary and legal duty to authorize the appointment of separate, independent counsel for TRI in connection with the Delaware proceeding and otherwise with respect to determining the beneficial and record ownership of the Arie, Orly Trust and Sagi Trust TRI shares.

**K.     The July 23, 2010 Opinion of the Delaware Chancery Court**

146.     On July 23, 2010 the Delaware Chancery Court issued a lengthy written decision which held that the transfers of TPR's TRI shares to Arie, the Sagi Trust and the Orly Trust pursuant to the Stipulation of Settlement and 2004 Transaction Documents were void and ownership reverted to TPR and that TPR's sale of the Sagi Trust TRI Shares to the Trump Group pursuant to the 2008 Stockholders Agreement was valid.

147.    The Chancery Court also held that the Sagi Trust Irrevocable Proxy was not valid under New York or Delaware law.  The Chancery Court in this § 225 proceeding held that the Trump Group was entitled to elect a majority of TRI Board members.

148.    While voiding the 2004 Transfers, however, the Chancery Court in this July 23 decision also held that because Arie was a "permitted transferee" under the 2001 TRI Stockholders Agreement, the transfer of the TRI shares to him did not warrant a forfeiture of Arie's TRI Shares.

149.    Because Arie was a permitted transferee of the TRI shares owned by TPR (a Genger family holding company that Arie had created) the Trump Group would have no right to stop the transfer of these TPR TRI shares to Arie once it received contractual notice and Arie agreed to be personally bound by the TRI Stockholders Agreement.

150.    Under the Delaware Chancery Court's July 23 decision, Arie would retain his TRI shares once he gave formal notice of TPR's 2004 transfer and agreed to be bound by the 2001 TRI Stockholders Agreement, which Arie promptly agreed to do shortly thereafter.

151.    In its July 23, 2010 decision, the Court of Chancery also held that because neither Orly nor the Orly Trust were parties to the Delaware Chancery Court action, the Delaware Court declined to issue any ruling with respect to the Orly Trust TRI Shares.

**L.    The July 26, 2010 TRO in this New York Action**

152.    Based on the July 23, 2010 Chancery Court decision, Arie and Orly sought and obtained a temporary restraining order from this Court, restraining Sagi and TPR from selling or encumbering the Arie and Orly Trust TRI shares.  This temporary restraining order was granted on July 26, 2010 and extended by this Court on July 28, 2010.

**M.**   **The August Opinion of the Delaware Chancery Court**

153.   After being advised by the Trump Group of plaintiff being granted a TRO in this New York Action, the Delaware Chancery Court indicated that it would reexamine its rulings with regard to the Arie and Orly Trust TRI shares, and expressed concern about whether the New York TRO was designed to undermine its ruling in the Delaware Court, which it was not.

154.   On August 3, 2010, to allay the Court of Chancery's concerns, Arie's counsel in this case wrote to this Court advising that because defendants Sagi and TPR had agreed to abide by a *status quo order* entered by the Delaware Chancery Court, which provided that Arie would be given notice in the event TPR or Sagi intended to sell the Arie and Orly TRI Shares to the Trump Group, it was agreed among counsel for TPR, Sagi, Dalia and the plaintiffs, that the temporary restraining order would be vacated and plaintiffs in this action would accordingly withdraw their application for a preliminary injunction, without prejudice.

155.   On August 9, 2010, the Chancery Court made an abrupt "about face" regarding its determination earlier relating to the Arie and Orly Trust TRI Shares. In this second opinion, the Delaware Chancery reversed itself regarding the ownership of the Arie and Orly Trust Shares, and held that the Trump Group had the right to purchase the Arie and Orly Trust TRI shares from TPR under the 2008 Side Letter Agreement, even though the Court had held only two weeks earlier that Arie was a permitted transferee under the Stockholders Agreement and should be permitted to keep his shares, and that the Orly Trust was never a party to the § 225 proceeding. The Chancery Court also held that Arie and the Orly Trust had no beneficial interest in the Arie and Orly Trust TRI shares—even though TPR, Sagi, the Sagi Trust and the Orly Trust were never parties to the Delaware § 225 proceeding.

39

N.    **The Delaware Chancery Court's Final Judgment Order of August 18, 2010**

156.    On August 18, 2010, the Delaware Chancery Court entered a Final Judgment

Order which found (i) that TPR's 2004 transfers of the Arie TRI Shares, and the Orly Trust TRI

shares were void under the 2001 TRI Stockholders Agreement, (ii) that title to the Sagi Trust

TRI Shares, the Orly Trust TRI Shares and the Arie TRI Shares, all reverted to TPR; (iii) that the

Irrevocable Proxy for the Sagi Trust was not valid; (iv) that the sale of the Sagi Trust TRI shares

by Sagi on behalf of TPR was valid; (v) that the Side Letter was a valid agreement; and (vi) that

Arie and the Orly Trust had no beneficial or legal ownership interest in the Arie and Orly Trust

TRI shares.

157.    There was no discussion or finding in the Chancery Court Decision as to whether

Sagi was authorized to sell the Arie, Orly and Sagi Trust TRI Shares out of TPR.

158.    In addition to these holdings, the Chancery Court entered an anti-lawsuit

injunction, which prohibited Arie from "commenc[ing] or prosecut[ing] any legal proceeding . .

. in any [state] court [including the action in this Court which had already been commenced]

constituting a collateral attack on, attempt to prevent implementation of, or relitigation of any of

the [Chancery] Court's holdings set out in paragraphs 2 through 16 inclusive (summarized

above), of this final judgment order" pending a determination of an appeal to the Delaware

Supreme Court, with certain limited exceptions, but even the Chancery Court specifically

recognized Arie's right to apply to this Court to seek to escrow the proceeds from TPR's

impending sale of the Arie TRI Shares to the Trump Group, as follows:

> "Arie Genger shall have the right to seek an order from a court of
> competent jurisdiction requiring TPR Investment Associates, Inc.
> and its officers and directors to place in escrow the proceeds of
> sale of the shares of TRI referenced in paragraph 14 of this Order.
> [the "Arie TRI Shares"]."

40

**O.     Arie Appeals From the Chancery Court's Final Judgment Order**

159.    Arie timely appealed from the Chancery Court's rulings, arguing, inter alia, that (i) the Trumps ratified the 2004 transfers, as a matter of law; (ii) the Irrevocable Proxy was valid under New York law; and (iii) the Delaware Chancery Court had no jurisdiction to determine the ownership of the Arie and Orly TRI shares or the validity of the Side Letter.

160.    Under threat of contempt, Arie agreed to stay this case pending a final determination by the Delaware Supreme Court.

**P.     The Purported Sale by TPR of the Arie and Orly Trust TRI Shares**

161.    While Arie's appeal was pending, Arie was informed that TPR, without Arie's consent or approval, intended to sell the Arie TRI shares to the Trump Group for $7,424,994.

162.    While the Trump Group and TPR agreed to hold $5,924,944 of these sale proceeds in escrow pending a determination by the Delaware Supreme Court relative to the ownership of the Arie and Orly Trust TRI shares, Sagi, as the CEO of TPR, insisted that TPR was entitled to keep and spend the $1.5 million of the proceeds from the sale of the Arie TRI shares, notwithstanding the pending appeal challenging the Chancery Court's rulings relating to the ownership of the Arie and Orly Trust TRI Shares.

163.    While the appeal to the Delaware Supreme Court was pending, TPR, without the consent or approval of Arie or Orly, also entered into an agreement to sell the Orly Trust TRI Shares to the Trump Group for $10,314,005, with the proceed to be held in escrow by counsel for Dalia as the nominal trustee of the Orly Trust.

164.    The Trump Group as interested Directors in control of TRI had a fiduciary and legal duty to authorize the appointment of separate, independent counsel for TRI in connection with the Delaware proceeding and otherwise with respect to determining the beneficial and

record ownership of the Arie, Orly Trust and Sagi Trust TRI shares prior to TRI recording the

transfer of the Arie and Orly Trust Shares to the Trump Group in 2010.

165.    Neither Sagi nor TPR had any authority to sell the Arie or Orly Trust Shares to

the Trump Group.

**Q.    This Court Enjoins TPR and Sagi From Taking or Using the $1.5 million Sale Proceeds From the Purported TPR Sale of the Arie Shares to the Trump Group**

166.    Arie moved by Order to Show Cause to restrain and enjoin Sagi and TPR from

using or disposing of the $1.5 million sale proceeds that were about to be released to TPR, and

requested that these specifically identified funds be placed in an acceptable escrow account or

paid into Court.  This Court by its February 17, 2011 Decision and Order decreed as follows:

> "ORDERED that the defendants Sagi Genger and TPR
> Investment Associates, Inc., and their agents, servants, employees
> and all other persons acting under the jurisdiction, supervision
> and/or direction of the defendants, are enjoined and restrained,
> during the pendency of this action, from doing or suffering to be
> done, directly or through any attorney, agent, servant, or employee
> or other person under the supervision or control of the defendants,
> from taking, using, or spending or converting to their own use
> otherwise, the $1.5 million proceeds from the sale of certain
> common stock in Trans-Resources, Inc. in which plaintiff claims
> an interest"

**R.    The Decision of the Delaware Supreme Court**

167.    On July 18, 2011, the Delaware Supreme Court reversed that part of the Delaware

Chancery Court's Judgment that held that Arie and the Orly Trust were not the beneficial owners

of the Arie and Orly Trust TRI Shares.

168.    On Arie's appeal the Delaware Supreme Court described the limited nature of the

§225 proceeding as follows:

> A Section 225 proceeding is not an *in personam* action.
> Rather, it is "in the nature of an *in rem* proceeding," where the

42

"defendants" are before the court, not individually, but rather, as respondents being invited to litigate their claims to the *res* (here, the disputed corporate office) or forever barred from doing so.

\* \* \*

[For example] in a Section 225 proceeding the court "cannot go further and actually rescind a transaction procured through such unlawful behavior or award money damages to those harmed by that behavior." That type of ultimate relief can only be obtained in a plenary action in a court that has *in personam* jurisdiction over any necessary or indispensable parties.

169.    Further explaining the limited holding of the Delaware Chancery Court, the Delaware Supreme Court held:

Given the jurisdictional limitations that inhere in a Section 225 action, we affirm the judgment of the Court of Chancery insofar as it determines the *record* [emphasis in original] ownership of the disputed Trans-Resources shares in the Side Letter Opinion and the Final Judgment Order.

\* \* \*

An adjudication of who has the right to vote disputed corporate shares for Section 225 purposes cannot constitute a binding adjudication of who beneficially owns those shares, because a Section 225 action is by its nature an *in rem*, not a plenary, proceeding. **Only in a plenary proceeding before a court that has *in personam* jurisdiction over the litigants may the court adjudicate the litigants' property interest in disputed corporate shares.**

(Emphasis added)

170.    The Delaware Supreme Court also held that the issue of ultimate beneficial ownership of the Arie TRI Shares and the Orly Trust TRI Shares was beyond the equity jurisdiction of the Chancery Court in the summary § 225 *in rem* proceeding, and that the issue of the beneficial ownership of those shares needed to be adjudicated in a plenary action in a jurisdiction where the Court has *in personam* jurisdiction over all indispensable parties. These

43

necessary parties -- Arie, TPR, Sagi, Orly, the Orly Trust and the Trump Group -- are all parties to this New York action , and have been served and have appeared in this case.

171.    The Delaware Chancery Court's holdings were limited to an in rem proceeding to determine who held the record ownership of the shares at a point in time in order to determine voting rights to elect members of the TRI Board based on the record owners of those shares at the time of the election.

172.    The Delaware Chancery Court was without jurisdiction to determine the ultimate ownership of the Arie and Orly Trust TRI shares or any of the tort claims asserted by Plaintiffs in this action.  Nor did the Delaware Chancery Court have jurisdiction to determine Arie's claims for rescission, unjust enrichment, constructive trust or reformation arising from and in connection with the Court-ordered Stipulation of Settlement, the 2004 Transaction Documents, or the authority of Sagi to act on behalf of TPR.

173.    The Delaware Supreme Court affirmed that portion of the Chancery Court ruling that held that TPR's 2004 transfers of TRI shares pursuant to the Stipulation of Settlement in the Genger divorce and implementing 2004 TPR Transaction Documents violated the 2001 TRI Stockholders Agreement and were void ab initio, for the purpose of the Delaware § 225 proceeding to determine composition of the TRI Board.

## FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF ARIE GENGER

### (For a Declaratory Judgment Under CPLR 3001 that the Stipulation of Settlement Entitles Plaintiff Arie to a Court-Ordered Reformation of the Terms of the Stipulation of Settlement as Against All Defendants)

174.    Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 173.

44

175.    Article XVI of the Stipulation of Settlement provides that the parties to the
Stipulation of Settlement have a right to seek court-ordered reformation in a New York court in
order to reflect the parties' original intent in the event a portion of the "So-Ordered" Stipulation
of Settlement is held to be invalid for any reason.

176.    The concurrent transfer of Arie's ownership of his 51% interest in TPR in
consideration of receiving a 14% interest in TRI and the right to control the voting rights of
52.85% of TRI Shares for the duration of Arie's life was an essential, fundamental condition of
the transfers of TPR and TRI shares set forth in the  Court-Ordered Stipulation of Settlement.

177.    The Delaware Chancery Court, as affirmed by the Delaware Supreme Court, held
that TPR's 2004 transfers of 52.85% of the shares of TRI Stock under the Stipulation of
Settlement and 2004 TPR Transfer Documents were invalid and void *ab initio*, and that the
Putative Irrevocable Proxies were invalid.

178.    The provisions of the Court-Ordered Stipulation of Settlement relating to the
transfer of ownership of TPR in consideration of the 2004 Transfers were based upon the mutual
mistake of Dalia and Arie that the 2004 Transfers and Irrevocable Proxies were valid.

179.    The Court-Ordered Stipulation of Settlement specifically provides that the parties
agree that if any of the terms of the Stipulation of Settlement is declared invalid by any court of
competent jurisdiction for any reason, Arie is entitled to seek an Order from this Court to reform
the Stipulation of Settlement, or obtain such other equitable or legal relief as is necessary to give
full meaning and expression to the original intent of the parties to the Court–Ordered Stipulation
of Settlement.

45

180.   Arie is entitled to an Order of the New York Supreme Court to reform the terms of the Court-Ordered Stipulation of Settlement to reflect the parties' original intent to the greatest extent possible.

181.   Accordingly, Arie seeks an Order and declaratory judgment to reform the Court-Ordered Stipulation of Settlement to provide as follows:

(i)   That the transfer by Arie of his 51% interest in TPR to Dalia and the concurrent transfer of the 3000 shares of TRI stock to Arie, the Orly Trust and the Sagi Trust, respectively, as originally set forth in the Stipulation of Settlement is voided *ab initio* as a result of the Delaware Court finding that the 2004 Transfers are invalid;

(ii)   that all the assets of TPR, other than the 3000 Arie, Orly Trust and Sagi Trust TRI shares, remain the property of TPR or any successor in interest to those assets;

(iii)   that pursuant to a further order of this Court the Court-Ordered Stipulation of Settlement is modified *ab initio* to provide that the 3000 shares of TRI common stock that were returned to TPR as a result of the Delaware Court Action voiding the original 2004 Transfers be placed in a newly formed single purpose entity controlled by Arie ("TPR2");

(iv)   that Arie be declared the 51% owner of TPR2, which in turn shall be declared, *ab initio* the record and beneficial owner of all of such 3000 TRI shares, as though no 2004 Transfers were consummated under the original terms of the Stipulation of Settlement;

(v)   that the Orly Trust and Sagi Trust each be declared the owner of 24.5% of TPR2 so that together they own the remaining 49% of TPR2;

(vi)    that TPR2 shall not sell or transfer the 3000 TRI shares prior to Arie's death, unless such sale would be otherwise permitted and would not violate the terms of the 2001 Stockholders Agreement including, but not limited to, Article 2 of such agreement;

(vii) upon Arie's death, 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Sagi Trust TRI Shares") will be transferred by TPR2 outright to the Sagi Trust, and 1102.8 of TRI shares plus any stock dividends relating thereto ("the Orly Trust TRI Shares") will be transferred outright to the Orly Trust;

(viii)   All cash dividends relating to the Sagi Trust and the Orly Trust TRI Shares received by TPR2 during Arie's lifetime will be distributed, after payment of taxes and expenses to the Shareholders of TPR2, as if (a) Arie owned 794.40 shares, representing 13.99468% of the common stock of TRI, and (b) the Sagi Trust and the Orly Trust each owned 1102.8 shares, representing 19.42766% of TRI common stock;

(ix)    Arie through his 51% control of TPR2 will retain all voting rights to the 3000 TRI shares and any additional TRI shares issued to TPR or TPR2 as stock dividends or otherwise for the duration of his life.

(x)    The Trump Group shall deliver to TPR2 the 1102.8 shares of TRI common stock purportedly purchased under the 2008 Stock Purchase Agreement.

182.    The $26,715,416.00 paid by the Trump Group to the Sagi Trust under the 2008 Stock Purchase Agreement will be returned to the Trump Group by TPR and the Sagi Trust.

183.    The Trump Group shall deliver to TPR2 the 794.40 Arie and the 1102.8 Orly Trust TRI shares purportedly sold to TPR under the Side Letter Agreement and 2010 Transaction.

47

184.   The purported sales by TPR of the Arie and Orly Trust TRI shares to The Trump Group, while the Delaware Supreme Court appeal was pending, will be declared null and void, and the proceeds from these purported sales now held in escrow will be released to The Trump Group.

185.   TRI shall record on its books that TPR2 is the record owner of 3000 shares of TRI Common Stock, representing 52.85% of the issued common stock of TRI.

186.   TPR2 will consent to the terms of the 2001 Stockholders Agreement.

187.   Arie, Orly, Dalia, Sagi, TPR and TRI shall be directed to take all other necessary action and to execute all documents necessary to give full meaning to the intention of the parties to the Court Ordered Stipulation of Settlement in light of the ruling of the Delaware court that the 2004 Transfers were invalid.

188.   There is a justiciable controversy.

189.   There is no adequate remedy at law.

## SECOND CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

### (For the Imposition of a Constructive Trust against Sagi, TPR, Dalia, the Sagi Trust, Fang, and the Trump Parties)

190.   Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 189, and incorporate the allegations contained in paragraphs 209-219.

191.   Upon the Delaware Court voiding TPR's 2004 transfer of 52.85% of TRI shares to Arie, the Sagi Trust and the Orly Trust, legal title to such TRI shares reverted to TPR subject to Arie's rights as a constructive beneficial owner of 51% of the shares of TPR with respect to TPR's ownership of 52.85% of TRI shares.

48

192.   TPR is not entitled, in equity or good conscience, to retain any direct or indirect benefit resulting from the record ownership of the 3000 shares of TRI stock reverting to TPR as a result of the ruling of the Delaware courts .

193.   TPR would be unjustly enriched at the expense of Arie if it were permitted to retain any direct or indirect ownership or benefit from the sale of the 3000 shares of TRI stock because record ownership of such TRI shares reverted to TPR as a result of the Delaware court rulings.

194.   Upon TPR becoming the record owner of Arie's 794.4 shares of TRI stock as a result of the Delaware Court rulings, such shares were immediately held in a constructive trust by TPR for the benefit of Arie as the beneficial owner of those shares.

195.   Upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Orly Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Orly Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Orly Trust's right to receive the Orly Trust TRI Shares upon Arie's death.

196.   Upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Sagi Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Sagi Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Sagi Trust's right to receive the Sagi Trust TRI Shares upon Arie's death.

197.    Upon TPR becoming the record owner of all 3000 shares of TRI stock comprising the Orly Trust Shares, the Sagi Trust Shares and the Arie Shares, TPR held the voting rights to such 3000 shares in a constructive trust for the benefit of Arie.

198.    Arie's beneficial ownership and voting rights with respect to the 3000 TRI shares, which were held by TPR in a constructive trust for his benefit, were protected from further transfer to The Trump Group from the moment record title reverted to TPR.

199.    TPR was not authorized to transfer any of the 3000 TRI shares as to which it became the record owner, without the consent of Arie as the beneficial owner of such TRI Shares.

200.    TPR is not authorized to vote any of the 3000 TRI shares that reverted to TPR as record owner as a result of the Delaware Court rulings, except at the direction of Arie.

201.    The Trump Group are not bona fide purchasers of any of the 3000 TRI shares that reverted to TPR.

202.    The Trump Group was on notice of Arie's ownership and voting right claims with respect to the 3000 TRI shares that reverted to TPR, as record owners.

203.    The Trump Group knew and were on notice that TPR was not authorized to sell TPR's TRI shares without the prior consent of Arie.

204.    The Trump Group knew and was on notice that Arie objected to the sale to The Trump Group of any of the 3000 TRI shares that reverted to TPR, as record owner under the 2008 Stock Purchase Agreement, the Side Letter Agreement or the 2010 purported sale of the Arie and Orly Trust TRI shares.

50

205.   The Constructive Trust in favor of Arie imposed upon the Arie, the Orly Trust and the Sagi Trust TRI shares existed at the moment record ownership reverted to TPR, and attaches to any purported sale of these shares to The Trump Group, who were not bona fide purchasers.

206.   The Trump Group, in addition to TPR, would be unjustly enriched if they were permitted to keep the benefit of the purported sale by TPR of the 3000 TRI shares to The Trump Group, which sale Sagi was not authorized to enter into on behalf of TPR without the prior consent of Arie because, inter alia,

   (i)   the Trump Group would become the owner of the Arie, Sagi Trust and Orly Trust Shares, over the objection of Arie and without Arie's required prior permission and consent;

   (ii)   the Trump Group would obtain Arie's right to vote these shares for the duration of his lifetime, without Arie's required prior permission and consent; and

   (iii)   these shares would be acquired substantially below their true value without Arie's required prior permission and consent;

   (iv)   the purported transaction by TPR was in derogation of Arie's beneficial ownership and voting rights appurtenant to such shares; and

   (v)   the Trump Group are not bona fide purchasers of such shares.

207.   Plaintiffs have no adequate remedy at law.

51

## THIRD CAUSE OF ACTION
## ON BEHALF OF ARIE AND ORLY

**(Claim for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty Against Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI)**

208.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 207.

209.    Sagi, individually and as an officer of TPR, owed a fiduciary duty of trust, confidence and loyalty to Arie and the Orly Trust because, among other things, (i) he was entrusted to manage TPR's ownership of the TRI shares for the benefit of Arie and the Orly Trust upon the Chancery Court voiding the 2004 TPR transfers of TRI shares to Arie, the Sagi Trust and the Orly Trust, and the resulting ownership of such 52.85 % of TRI shares by TPR; (ii) he was entrusted to manage TPR's record ownership of the TRI shares for the benefit of Arie and the Orly Trust upon the Delaware Chancery Court voiding the 2004 TPR transfer of TRI shares to Arie, the Sagi Trust and the Orly Trust; (iii) pursuant to the 2004 TPR Transfer Agreement, Sagi was entrusted to take all actions necessary to ensure that Arie would maintain voting control of 52.85% of the stock of TRI in accordance with the express intent of all parties to the Stipulation of Settlement and 2004 TPR Transaction Documents; (iv) through Fang and the Sagi Trust, as his co-agents and alter egos, Sagi owed a duty of trust and confidence to Arie under the 2004 Voting Trust Agreement; and (v) as the successor to the rights and liabilities of Dalia under the Stipulation of Settlement and the manager of TPR, as a family holding company, Sagi owed a fiduciary duty to protect the assets of the Orly Trust for the benefit of his sister Orly and his father, Arie, in connection with the ownership of TPR, TPR's ownership of the TRI shares and D&K's minority ownership of TPR.

52

210.    As a fiduciary Sagi, individually, and as an officer of TPR, owed a duty of fidelity and undivided loyalty to Arie, Orly, and the Orly Trust regarding the TRI shares.

211.    Fang, individually and as the trustee of the Sagi Trust, owed a fiduciary duty to Arie under the 2004 Voting Trust Agreement and Side Letter.

212.    The Trump Group, on becoming the majority shareholder of record in TRI, owed a fiduciary duty of fidelity and loyalty to Arie as the known beneficial owner of record of the Arie TRI shares.

213.    Jules Trump and Mark Hirsch, each individually and on behalf of the Trump Group, and as Directors of TRI owed a fiduciary duty to TPR, and Arie as the beneficial owner of TRI shares to read TRI corporate documents presented to him in their entirety and have knowledge of the shareholders of record of TRI, a close corporation.

214.    Sagi, TPR, the Sagi Trust, Fang, the Trump Parties each breached their respective fiduciary duties as a result of the conduct set forth in the allegations of this complaint, including, but not limited to their respective conduct in connection with the negotiation, execution and implementation of the 2008 Stock Purchase Agreement and the Side Letters and the subsequent transfer of the Arie and Orly Trust TRI Shares.

215.    Sagi, TPR, the Sagi Trust, Fang, and the Trump Parties also knowingly aided, abetted, induced, participated in, enabled and substantially assisted each other to breach each of the other's respective fiduciary duties to Arie, Orly and the Orly Trust by the conduct alleged herein, including but not limited to misrepresenting to the Delaware Chancery Court that the share certificates for the Sagi Trust TRI shares were lost despite having actual knowledge that

such share certificates were held by Arie, and had not been delivered to the Sagi Trust, Sagi or Fang.

216.    TRI also knowingly aided, abetted, induced, participated in, enabled and substantially assisted the respective breaches of fiduciary duties owed to Arie, Orly and the Orly Trust by Sagi, TPR, the Sagi Trust, Fang and the Trump Parties.

217.    Sagi, TPR, the Sagi Trust, Fang, and the Trump Parties, each acting in conspiracy with, and as the co-agent of one another, entered into an illegal scheme, agreement, plan, and artifice to breach each other's respective fiduciary duties owed to Arie, Orly, and the Orly Trust by the conduct alleged herein in furtherance of this conspiracy.

218.    As a result of such breaches of fiduciary duty, aiding and abetting of breaches of fiduciary duties and conspiracies to breach fiduciary duty, by Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI, and each of them, Arie suffered compensatory damages in an amount to be determined.

219.    As a result of such breaches of fiduciary duty, aiding and abetting of breaches of fiduciary duty and conspiracies to breach fiduciary duty, by Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI, and each of them, Orly, individually and as the beneficiary of the Orly Trust, suffered compensatory damages in an amount to be determined.

### FOURTH CAUSE OF ACTION
### ON BEHALF OF ARIE AND ORLY

**(Claim for Unjust Enrichment and Rescission Against Sagi, TPR, Dalia, the Sagi Trust, Fang, and the Trump Parties)**

220.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 219.

221.    As a result of the Delaware Chancery Court holding, Dalia, TPR, Sagi, the Sagi Trust and the Trump Parties would each be unjustly enriched at the expense of Arie and the Orly

Trust if each or any of them were allowed to retain any direct or indirect benefit or consideration received by each of them from TPR's ownership of TRI Shares, which none of them are entitled, in equity or good conscience, to retain.

222.    Plaintiff Arie is entitled to rescind the transfer of his 51% interest in TPR to Dalia pursuant to the Stipulation of Settlement and 2004 Transaction Documents based on failure of consideration because, as a result of the holding by the Delaware Chancery Court, Arie did not receive any of the consideration that was due to him pursuant to such Agreements, including and not limited to (a) his 14% interest in the Arie TRI Shares, and his right to vote 52.85% of the TRI Shares that he controlled prior to the Delaware Court voiding the 2004 Transfers.

223.    Plaintiff the Orly Trust, is entitled to rescind the 2004 Transaction Documents based on failure of consideration because as a result of the holding by the Delaware Court the Orly Trust did not receive any of the consideration due to the Orly Trust pursuant to the 2004 Transfers.

224.    Arie and the Orly Trust are each also entitled to rescission because of failure of consideration based on mutual mistake as to the enforceability of the 2004 TPR Transfers of TRI stock to Arie, the Sagi Trust and the Orly Trust pursuant to the Stipulation of Settlement and the 2004 Transaction Documents.

225.    Arie and the Orly Trust are each entitled to an accounting.

226.    Arie and the Orly Trust have no adequate remedy at law.

### FIFTH CAUSE OF ACTION

**(Claim for Permanent Injunction Against Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties)**

227.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 226.

228.    Plaintiffs are entitled to the issuance of a permanent injunction enjoining and restraining Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties, and each of them, from directly or indirectly transferring, selling, acquiring, pledging, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or encumbering the 3000 shares of TRI stock that reverted to TPR's control as a result of the Delaware Court rulings.

229.    The failure to grant such permanent injunction will result in irreparable injury to the Plaintiffs.

230.    There is no adequate remedy at law.

231.    The balance of equities favor the Plaintiffs.

## SIXTH CAUSE OF ACTION

### (Claim for Breach of Contract against TPR on Behalf of Arie and Orly)

232.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 231.

233.    TPR entered into the 2004 TPR Transfer Agreement with Arie.

234.    TPR entered into the 2004 TPR Transfer Agreement with the Orly Trust.

235.    TPR breached its express and implied covenants and representations thereunder in connection with the transfer of TRI shares to Arie.

236.    TPR breached its express and implied covenants and representations thereunder by purporting to agree to transfer the Arie, Sagi Trust and Orly Trust TRI Shares to the Trump Parties.

237.    Arie and the Orly Trust performed their respective obligations under the 2004 TPR Transfer Agreement.

238.    As a result of such breach of contract, Arie lost the benefit of his bargain and suffered damages in an amount yet to be determined.

239.    TPR breached its express and implied covenants and representations under the 2004 Transaction Documents in connection with the transfer of TRI shares to the Orly Trust.

240.    The Orly Trust performed its obligations under the 2004 TPR Transfer Agreement.

241.    As a result of such breach of contract, the Orly Trust lost the benefit of its bargain and suffered damages in an amount yet to be determined, but believed to be in an amount to be determined.

## SEVENTH CAUSE OF ACTION
## ON BEHALF OF ARIE

### (Claim for Breach of Contract against the Sagi Trust)

242.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 241.

243.    The Sagi Trust entered into the 2004 Voting Trust Agreement with Arie.

244.    The Sagi Trust breached its express and implied covenants and representations thereunder in connection with Arie's voting rights and control of TRI shares.

245.    Arie performed his obligations under the 2004 Voting Trust Agreement.

246.    As a result of such breach of contract, Arie lost the benefit of his bargain and suffered damages in an amount yet to be determined.

## EIGHTH CAUSE OF ACTION
## ON BEHALF OF ARIE AND ORLY

### (Claim for Tortious Interference with Contract Against the Trump Parties)

247.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 246.

57

248.    The Trump Parties, and each of them, tortiously interfered with, among other things, (i) the Stipulation of Settlement between Arie and Dalia, (ii) the 2004 TPR Transfer Documents between Arie and the Orly Trust and TPR, (iii) the 2004 Voting Trust Agreement between Arie and the Sagi Trust, and (iv) the 2004 Voting Trust Agreement between Arie and the Orly Trust.

249.    The Trump Parties, and each of them, intentionally caused such breaches of contract without justification, as a result of the conduct set forth herein.

250.    As a result of the Trump Parties' tortious interference with contract, Arie suffered damages in an amount yet to be determined.

251.    As a result of the Trump Parties' tortious interference with contract, Orly and the Orly Trust suffered damages in an amount yet to be determined.

## NINTH CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

### (Claim for Aiding and Abetting Tortious Interference with Contract Against Sagi, Fang, and the Sagi Trust)

252.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 251.

253.    Sagi, Fang, and the Sagi Trust each had knowledge of the Trump Parties' tortious interference with the 2004 TPR Transaction Agreement and the Stipulation of Settlement, and each such defendant caused, encouraged and substantially assisted the Trump Parties in the commission of the foregoing acts of tortious interference with 2004 TPR Transaction Agreement and the Stipulation of Settlement.

254.    Sagi, Fang, and  TPR each had knowledge of the Trump Parties' tortious interference with the 2004 Voting Trust Agreement, and the Stipulation of Settlement, and each such defendant caused, encouraged and substantially assisted the Trump Parties in the

commission of the foregoing acts of tortious interference with the 2004 Voting Trust Agreements.

255.    By reason of the foregoing, Arie has been damaged in an amount to be determined.

256.    By reason of the foregoing, Orly, individually and as the beneficiary of the Orly Trust has been damaged in an amount to be determined.

## TENTH CAUSE OF ACTION ON BEHALF OF ARIE AND ORLY

### (Claim for Preliminary Injunction Against the Trump Parties, Sagi Genger TPR and the Sagi Trust Under CPLR 7109)

257.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 256.

258.    The Arie and Orly Trust TRI shares are unique chattel.

259.    By virtue of the facts set forth above, Arie is the beneficial owner of the Arie TRI shares.

260.    Sagi is not authorized to take any action on behalf of TPR to sell, transfer, pledge, dilute, or take any action on behalf of TPR relating to or concerning the 3000 TRI shares that reverted to TPR, without the prior written consent of Arie and Sagi is not authorized to exercise any and all rights, including TPR's voting rights with respect to such 3000 TRI shares, except as so directed by Arie as the beneficial owner of such shares and the voting rights appurtenant thereto.

261.    Sagi is not authorized to take any action on behalf of TPR to sell, transfer, pledge, dilute, or take any action on behalf of TPR relating to or concerning the Orly Trust TRI shares.

262.    By virtue of the facts set forth above, the Orly Trust is entitled to the benefits provided to it under the Stipulation of Settlement.

59

263.    The Arie TRI shares, the Orly Trust TRI shares, and the Sagi Trust shares are wrongfully being held by the Trump Parties.

264.    Plaintiffs are entitled to a preliminary injunction, under CPLR 7109, that the Arie TRI shares, the Orly Trust TRI shares, and the Sagi Trust TRI shares shall be restrained and enjoined from transferring, selling, diluting, pledging, assigning or otherwise disposing of or removing such shares from the State until the further order of the Court.

**WHEREFORE**, Plaintiffs demand Judgment in favor of Plaintiffs against the Defendants as follows:

(a) on the **First Cause of Action against all Defendant**s: that this Court find and declare that Arie is entitled to an Order from this Court to reform the terms of the Court-Ordered Stipulation of Settlement to provide as follows:

(i)    that the transfer by Arie of his 51% interest in TPR to Dalia and the concurrent transfer of the 3000 shares of TRI stock to Arie, the Orly Trust and the Sagi Trust, respectively, as originally set forth in the Stipulation of Settlement is voided *ab initio* as a result of the Delaware Court finding that the 2004 Transfers are invalid;

(ii)    that all the assets of TPR, other than the 3000 Arie, Orly Trust and Sagi Trust TRI shares, remain the property of TPR or any successor in interest to those assets;

(iii) that pursuant to a further order of this Court the Court-Ordered Stipulation of Settlement is modified *ab initio* to provide that the 3000 shares of TRI common stock that were returned to TPR as a result of the Delaware Court Action voiding the original 2004 Transfers be placed in a newly formed single purpose entity controlled by Arie (hereinafter, "TPR2");

60

(iv) that Arie be declared the 51% owner of TPR2 which in turn shall be declared, ab initio, the record and beneficial owner of all such 3000 TRI shares, as though no 2004 Transfers were consummated under the original terms of the Stipulation of Settlement;

(v) that the Orly Trust and Sagi Trust each be declared the owner of 24.5% of TPR2 so that together they own the remaining 49% of TPR2;

(vi) that TPR2 shall not sell or transfer the 3000 TRI shares prior to Arie's death, unless such sale would otherwise be permitted and would not violate the terms of the 2001 Stockholders Agreement, including, but not limited to, Article 2 of such Agreement;

(vii) upon Arie's death, 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Sagi Trust TRI shares") will be transferred by TPR2 outright to the Sagi Trust, and 1102.8 of TRI shares, plus any stock dividends relating thereto ("the Orly Trust TRI Shares") will be transferred outright to the Orly Trust;

(viii) all cash dividends relating to the Sagi Trust and the Orly Trust TRI Shares received by TPR2 during Arie's lifetime will be distributed, after payment of taxes and expenses to the Shareholders of TPR2, as if (a) Arie owned 794.40 shares, representing 13.99468% of the common stock of TRI, and (b) the Sagi Trust and the Orly Trust each owned 1102.8 shares, representing 19.42766% of TRI common stock;

(ix) Arie through his 51% control of TPR2 will retain all voting rights to the 3000 TRI shares and any additional TRI shares issued to TPR or TPR2 as stock dividends or otherwise for the duration of his life.

(x) The Trump Group shall deliver to TPR2 the 1102.8 shares of TRI common stock purportedly purchased under the 2008 Stock Purchase Agreement.

(xi) The $26,715,416.00 paid by the Trump Group to the Sagi Trust under the 2008 Stock Purchase Agreement will be returned to the Trump Group by TPR and the Sagi Trust.

(xii) The Trump Group shall deliver to TPR2 the 794.40 Arie and the 1102.8 Orly Trust TRI shares purportedly sold to TPR under the Side Letter Agreement and 2010 Transaction.

(xiii) The purported sales by TPR of the Arie and Orly Trust TRI Shares to the Trump Group, while the Delaware Supreme Court appeal was pending, will be declared null and void and the proceeds from these purported sales now held in escrow will be released to the Trump Group.

(xiv) TRI shall record on its books that TPR2 is the record owner of 3000 shares of TRI Common Stock, representing 52.85% of the issued common stock of TRI.

(xv)    TPR2 will consent to the terms of the 2001 Stockholders Agreement.

(xvi) Arie, Orly, Dalia, Sagi, TPR and TRI shall be directed to take all other necessary action and to execute all documents necessary to give full meaning to the intention of the parties to the Court-Ordered Stipulation of Settlement in light of the rulings of the Delaware Court that the 2004 Transfers were invalid.

(xvii) Any other declaration as the Court may deem fair and reasonable to give effect to the Original Intent of the parties to the Stipulation of Settlement.

(b) on the **Second Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties**, that the Court find and declare that:

(i) upon the Delaware Court voiding TPR's 2004 transfer of 52.85% of TRI shares to Arie, the Sagi Trust and the Orly Trust, legal title to such TRI shares reverted to TPR subject to Arie's rights as a constructive beneficial owner of 51% of the shares of TPR with respect to TPR's ownership of 52.85% of TRI shares;

(ii) upon TPR becoming the record owner of Arie's 794.4 shares of TRI stock as a result of the Delaware Court rulings, such shares were immediately held in a constructive trust by TPR for the benefit of Arie as the beneficial owner of those shares;

(iii) upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Orly Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Orly Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Orly Trust's right to receive the Orly Trust TRI Shares upon Arie's death;

(iv) upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Sagi Trust TRI shares, a constructive trust was immediately created in favor of Arie with respect to the Sagi Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Sagi Trust's right to receive the Sagi Trust TRI Shares upon Arie's death;

(v) upon TPR becoming the record owner of all 3000 shares of TRI stock comprising the Orly Trust Shares, the Sagi Shares and the Arie Shares, TPR held the voting rights to such 3000 shares in a constructive trust for the benefit of Arie;

(vi) TPR was not authorized to transfer any of the 3000 TRI shares as to which it became the record owner, without the consent of Arie as the beneficial owner of such TRI Shares;

(vii) TPR is not authorized to vote any of the 3000 TRI shares that reverted to TPR as record owner as a result of the Delaware Court rulings, except at the direction of Arie;

(viii) The Constructive Trust in favor of Arie imposed upon Arie, the Orly Trust and the Sagi Trust TRI shares existed at the moment record ownership reverted to TPR, and attaches to any purported sale of these shares to the Trump Group, who were not and are not bona fide purchasers of any of the 3000 TRI shares that reverted to TPR.

(c) on the **Third Cause of Action against Defendants Sagi, TPR, the Sagi Trust, Fang, the Trump Parties and TRI, jointly and severally,** as follows:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly Genger individually and as the beneficiary of the Orly Trust in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys fees and costs incurred in connection with this action;

(d) on the **Fourth Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang, and the Trump Parties:**

(i) rescinding Plaintiff Arie's transfer of his 51% interest in TPR to Dalia pursuant to the Stipulation of Settlement and 2004 Transaction Documents;

64

(ii) rescinding the 2004 Transaction Documents;

(iii) Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties must account to Arie and Orly, individually and as the beneficiary of the Orly Trust, for 3000 TRI Shares and/or their respective value that are now or ever have been in their respective possession, custody or control; and

(iv) such other equitable relief as the Court may deem fair and reasonable;

(e) on the **Fifth Cause of Action against Defendants Sagi, TPR, Dalia, the Sagi Trust, Fang and the Trump Parties**, permanently enjoining and restraining these Defendants, and each of them, from directly or indirectly transferring, selling, acquiring, pledging, assigning, diluting, voting, valuing, replacing, conveying, using, removing from the jurisdiction, or otherwise disposing of, or encumbering the 3000 shares of TRI common stock that reverted to TPR as a result of the Delaware court rulings.

(f) on the **Sixth Cause of Action against Defendant TPR**:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action; and

(ii) awarding compensatory damages to the Plaintiff Orly individually and as the beneficiary of the Orly Trust in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action.

(g) on the **Seventh Cause of Action against Defendant Sagi Trust**, a money judgment awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus Plainitiff's attorneys' fees and costs incurred in connection with this action;

(h) on the **Eighth Cause of Action Against the Defendant Trump Parties, jointly and severally**:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly individually and as the beneficiary of the Orly Trust in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(i) on the **Ninth Cause of Action Against Sagi, Fang, and the Sagi Trust**:

(i) awarding compensatory damages to the Plaintiff Arie in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(ii) awarding compensatory damages to the Plaintiff Orly, individually and as the beneficiary of the Orly Trust, in an amount to be determined, plus an additional award of punitive damages in an amount to be determined, plus Plaintiff's attorneys' fees and costs incurred in connection with this action;

(j) on the **Tenth Cause of Action for a Preliminary Injunction Against the Trump Parties, Sagi Genger, TPR and the Sagi Trust Under CPLR 7109**, and each of them for an injunction or temporary restraining order under CPLR 7109, restraining and enjoining each of them from transferring, selling, diluting, pledging, assigning or otherwise disposing of or

removing the Arie TRI Shares, the Orly Trust TRI shares, and the Sagi Trust TRI shares from the State until the further Order of the Court.

(k)     **On all causes of action set forth in this Complaint**,  such other relief as this court may deem just, together with the costs and disbursements incurred by plaintiffs in this action, including the recovery of plaintiffs' reasonable attorneys' fees.

67

DATED: New York, New York
      September 20, 2011

MITCHELL SILBERBERG & KNUPP LLP

By: _____

Paul D. Montclare (PM 4454)
Lauren J. Wachtler (LW 4205)
12 E. 49th Street, 30th Floor
New York, New York 10017
(212) 509-3900

Attorneys for Plaintiff ARIE GENGER

ZEICHNER ELLMAN & KRAUSE LLP

By: _____

Yoav M. Griver
Bryan D. Leinbach
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400
Facsimile: (212) 753-0396

Attorneys for Plaintiff ORLY GENGER, in
her individual capacity and on behalf of the
ORLY GENGER 1993 Trust

68

SUPREME COURT: NEW YORK COUNTY

| | |
|---|---|
| ARIE GENGER and ORLY GENGER, in her individual capacity and on behalf of the ORLY GENGER 1993 Trust,<br><br>               Plaintiffs,<br><br>      -against-<br><br>SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST, ROCHELLE FANG, Individually and as Trustee of THE SAGI GENGER 1993 TRUST, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP and MARK HIRSCH,<br><br>               Defendants. | Index No. 651089/10<br><br>(Justice Paul G. Feinman) |

**PLAINTIFF ORLY GENGER'S SECOND REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION TO ENJOIN DEFENDANTS DALIA GENGER, THE TRUMP GROUP AND TPR INVESTMENT ASSOCIATES, INC. FROM PROSECUTING DUPLICATIVE LITIGATION IN DELAWARE CHANCERY COURT**

ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................. 5

    I.     THE COURT SHOULD EXERCISE ITS BROAD AUTHORITY
           AND STAY THE DELAWARE DJ ACTION TO PREVENT
           UNNECESSARY PROSECUTION OF DUPLICATIVE
           LITIGATION ...................................................................... 5

    II.    ORLY HAS DEMONSTRATED HER RIGHT TO PRELIMINARY
           RELIEF .............................................................................. 10

    III.   A PURELY NOMINAL UNDERTAKING IS APPROPRIATE
           HERE ................................................................................. 12

CONCLUSION ......................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**NEW YORK CASES**

Ackerman v. Ackerman,
631 N.Y.S.2d 657 (1st Dept. 1995) .......................................................................6, 7

Arie Genger v. Sagi Genger et al.,
Index No. 651089/2010 (N. Y. Sup. Ct. Feb. 17, 2011).......................................10, 11

Arpels v. Arpels,
8 N.Y.2d 339 (1960) ..................................................................................................6

Browne v. Browne,
53 A.D.2d 134, 385 N.Y.S.2d 983 (4th Dept. 1976) ...................................................7

Bryan v. Bryan,
275 A.D.2d 688, 713 N.Y.S.2d 348 (1st Dept. 2000)..................................................5

Chayes v. Chayes,
180 A.D.2d 566, 580 N.Y.S.2d 269 (1st Dept. 1992)..............................................6, 7

Cooperstown Capital, LLC v. Patton,
60 A.D.3d 1251, 876 N.Y.S.2d 186 (3d Dept. 2009) ...............................................13

E.B. Latham & Co. v. Mayflower Industries,
278 A.D. 90, 103 N.Y.S.2d 279 (1st Dept. 1951)....................................................6, 7

Fernandez v. Fernandez,
39 Misc.2d 471, 240 N.Y.S.2d 926 (Sup. Ct. Bronx Cty. 1963) .................................7

Four Seasons Solar Products Corp. v. Solarium Products of Florida, Inc.,
102 A.D.2d 757, 477 N.Y.S.2d 291 (1st Dept. 1984)..................................................6

Four Times Square Associates, LLC v. Cigna Investments, Inc.,
306 A.D.2d 4 (1st Dept. 2003)...................................................................................11

George Hyman Constr. Co. v. Precision Walls, Inc.,
517 N.Y.S.2d 263 (2d Dept. 1987) .............................................................................6

Hon v. Hon,
164 Misc.2d 806, 624 N.Y.S.2d 553 (Sup. Ct. Queens Cty. 1995) ..........................12

Indosuez Int'l Fin. v. National Reserve Bank,
263 A.D.2d 384, 693 N.Y.S.2d 33 (1st Dept. 1999)...................................................6

Interested Underwriters at Lloyd's v. H.D.I. III Associates,
213 A.D.2d 246, 623 N.Y.S.2d 871 (1st Dept. 1995)...............................................5, 7

IRB-Brasil Resseguros S.A. v. Portobello Int'l Ltd.,
    59 A.D.3d 366, 874 N.Y.S.2d 79 (1st Dept. 2009).........................................................8

Jay Franco and Sons Inc. v. G Studios, LLC,
    34 A.D.3d 297, 825 N.Y.S.2d 20 (1st Dept. 2006)........................................................5

Jay Franco and Sons Inc. v. G Studios, LLC,
    Index No. 602236/05, 2006 WL 5110770 (Sup. Ct. N.Y. Cty. June 14, 2006).........................5

Jones v. Park Front Apartments, LLC,
    73 A.D.3d 612 (1st Dept. 2010)...........................................................................10

Lafferty v. Lafferty,
    243 A.D.2d 541, 663 N.Y.S.2d 108 (2d Dept. 1997) ...............................................6, 7

Martin v. Martin,
    62 Misc.2d 703, 309 N.Y.S.2d 477 (Sup. Ct. Nassau Cty. 1970) .................................12

Miller v. Wincott,
    2005 WL 1388847 (Sup. Ct. June 7, 2005) .............................................................6

Orly Genger v. Dalia Genger et al.,
    Index No. 109749/2009 (N.Y. Sup. Ct. July 28, 2010) ...................................4, 10, 11

Pereia v. Pereria,
    272 A.D. 281, 70 N.Y.S.2d 763 (1st Dept. 1947)......................................................12

R&R Capital v. Merritt,
    63 A.D.3d 565, 881 N.Y.S.2d 96 (1st Dept. 2009)......................................................6

Roman v. Sunshine Ranchettes, Inc.,
    98 A.D.2d 744, 469 N.Y.S.2d 449 (2d Dept. 1983) ...................................................6

Sarepa S.A. v. Pepsico, Inc.,
    225 A.D.2d 604, 639 N.Y.S.2d 128, (2d Dept. 1996) ................................................6

Velez v. Feinstein,
    87 A.D.2d 309 (1st Dept 1982)..........................................................................11

Wright v. Lewis,
    21 Misc. 3d 1120(A), 873 N.Y.S.2d 516 (Sup. Ct. Kings Co. 2008) ..............................13

**NEW YORK STATUTES**

CPLR 6301.............................................................................................6, 8

CPLR 6312.............................................................................................4, 12

## PRELIMINARY STATEMENT

The question before this Court is a narrow one: should the Court continue enjoining the duplicative declaratory judgment action recently begun by Dalia[1] in Delaware Chancery Court?  The answer is yes, for all the reasons that led the Court to enjoin the Delaware DJ Action in the first place.  This Court remains the only Court with jurisdiction over all the parties and issues, and the only Court Orly has chosen to hear her claims and to protect her interests in the Orly Trust (interests that are being actively dissipated by Dalia, in dereliction of her duties as Trustee of the Orly Trust).

The few contentions offered by Dalia and the Trump Group defendants[2] in opposition to preliminary injunction are unpersuasive.  *First,* the July 20, 2010 New York TRI Action, Dalia's October 4, 2011 Delaware DJ Action, and the Trump Group's October 26, 2011 Counterclaim in the Delaware DJ Action, all seek the same determination – who beneficially owns the Orly Trust Shares.  See, e.g., Trump Group Opp. at 5 (conceding that "Orly Genger, purporting to act in this case on behalf of the Orly Trust, seeks a declaration that the Orly Trust is the beneficial owner of the [Orly Trust Shares] – precisely the same relief in respect to the [Orly Trust Shares] as the relief sought by the Trustee in the [Delaware DJ Action]").  Thus, while the New York TRI Action also raises other important and significant issues not present in Delaware – for example, the New York TRI Action includes all parties (e.g., Eddie Trump and Mark Hirsch and Rochelle Fang) and all claims (e.g., defendants' fraudulent conduct), and protects Orly's ability to wield the Orly Trust shares as part of a control block with Arie Genger,

---

[1] Capitalized terms not defined herein were defined in the prior motion papers submitted by Orly in support of injunctive relief.  Those papers and annexed exhibits are fully incorporated herein by reference.  Also incorporated herein by reference is the accompanying Attorney's Statement of Bryan D. Leinbach.

[2] The opposition papers submitted by defendant TPR and third-party Sagi Trust are essentially limited to irrelevant *ad hominem* attacks upon Orly and her counsel.  The Court likely wasted enough of its valuable time just wading through all that pointless hyperbole, and non-substantive material requires no substantive response here.

thereby increasing its monetary value) – the Delaware DJ Action is still entirely subsumed within it.

The Court has every right and authority to stay such duplicative litigation, without a showing of anything more, such as "fraud or gross wrong." Duplicative litigation leads to conflicting results, waste of judicial resources, and unnecessary legal expenses. Conversely, enjoining duplicative litigation protects the dignity and authority of this Court, prevents forum-shopping, and avoids unseemly races to judgment. This is why the cases cited by defendants where injunctions were denied involve failed attempts to enjoin first-filed cases where there were good and sufficient reasons for bringing a case outside of New York. Here, of course, the Delaware DJ Action is a second-filed case brought by in Delaware, a forum with no connection of any kind to either Dalia or the Orly Trust. It remains uncontroverted that (i) Dalia resides in New York; (ii) Orly resides in New York; (iii) the Orly Trust is governed by New York law; (iv) the question raised by the Delaware DJ Action is already before this Court; (v) this is the only action where all the parties are present; and (vi) this is the only Court that can and should decide whether Sagi/TPR had the authority to sell the Orly Trust Shares under the Stipulation and Agreement of Settlement that memorialized the end of Arie and Dalia's New York marriage and the distribution of their marital property. That is why these issues should be decided here, not in Delaware.

Importantly, given every opportunity to explain, and even while submitting an affidavit in opposition, defendant Dalia remains conspicuously silent about why she has spent time and Orly Trust assets retaining Delaware counsel and bringing a duplicative Delaware DJ Action, instead of filing a simple cross-claim in this action (if a cross-claim is even needed). Nor does she respond in any way to the fact that, in bringing the Delaware DJ Action, Dalia ignored

Orly's express wishes and an Order from the Surrogate Court requiring her to provide Orly with ten days notice before doing anything to affect the Orly Trust's interest in its TRI shares. Dalia's silence on these matters underscores what is already apparent on its face – the Delaware DJ Action is nothing more than Dalia and the other defendants' transparent attempt to rob Orly of her chosen forum, so they may complete fraudulently dissipating the Orly Trust's assets.

Under these circumstances, even if a showing of some deliberate "wrong" is required (it is not), Orly would still be entitled to an injunction. New York Courts have recognized that forum-shopping, such as defendants' blatant attempts to wrest this case from Orly's chosen forum of this New York Court, is enough to justify an injunction. Equally supportive of an injunction is Dalia's remarkable decision to bring an action in Delaware, before a court that has already found against the Orly Trust (even if said findings were later vacated on appeal) and in a jurisdiction that otherwise has no personal jurisdiction over the Orly Trust (and still has no jurisdiction over Orly). Little wonder, that the Trump Group – purported defendants adverse to Dalia in the Delaware DJ Action – so desperately support Dalia in her choice of forum. Finally, Orly's verified complaint (and her verified complaint in the other Orly Trust matter before Your Honor) describes how Dalia, Sagi, and the other defendants have worked together to fraudulently divest the Orly Trust of its assets. The Delaware DJ Action is plainly an effort in service to that fraudulent end.

*Second*, Orly easily meets the standard for a preliminary injunction. Orly has reasonably demonstrated a likelihood of success on the merits of her motion by showing that the Delaware DJ Action is an unnecessary and duplicative drain on party and judicial resources. Further, this Court already has found Orly demonstrated a sufficiently reasonable likelihood of success on her underlying claims when it granting a previous injunction to protect the Orly

Trust's interest in its TRI shares.[3]   The current injunction merely prevents defendants from circumventing that injunction (and this Court's authority) by seeking another forum.

The irreparable harm to Orly is also readily apparent.  By its very nature, the Delaware DJ Action, if not enjoined, irreparably impugns this Court's authority, generates unnecessary legal expenses, and risks conflicting results that will irreparably harm Orly's ability to prosecute and prove her claims in her chosen forum.  The irreparable harm is particularly acute here, as Orly is not a party to the Delaware action and cannot defend her interests in that action.  In this regard, Dalia has already taken multiple positions adverse to Orly, and manifestly cannot be trusted to defend Orly and her interests in any jurisdiction.

As to the equities, the balance clearly favors enjoining the Dalia DJ Action.  Any argument the defendants might have made in Delaware can be made here.  Conversely, allowing the Delaware DJ Action to continue would completely foreclose Orly from her day in court, as Orly is not a party to the Delaware DJ Action.

*Third*, there is no basis for anything other than a nominal undertaking in this case. NY CPLR 6312 limits any undertaking to the "damages or costs which may be sustained" by defendants from the requested injunction.  Here, defendants face no possible harm.  The Delaware DJ Action seeks only a declaration as to the ownership of the Orly Trust TRI Shares, not damages.  If the action is enjoined, the defendants are free to make the same arguments and seek the same declaration in this action.  Indeed, if anything, the injunction saves defendants from the cost of prosecuting an unnecessary litigation in Delaware.   Accordingly, any undertaking in this case should be for a nominal amount.

---

[3] Likewise, in denying defendants summary judgment in the other Orly Trust action before the Court involving the sham UCC sale, the Court recognized the substantive merit of Orly's claim that Dalia, Sagi, TPR and others have been attempting to fraudulently strip the Orly Trust of its assets, to Orly's detriment.  See Orly Genger v. Dalia Genger et al., Index No. 109749/2009, *10-11 (N.Y. Sup. Ct. July 28, 2010).

Over fifteen months ago, Orly chose this Court as her desired forum for deciding who beneficially owns the TRI Shares, and it is this Court that should decide that issue. To achieve that end, and prevent defendants from cynically stripping that choice from Orly, TPR and the Trump Group Defendants should continue to be enjoined from continuing to litigate that issue in Delaware through the conclusion of the New York TRI Action.

## ARGUMENT

I.   **THE COURT SHOULD EXERCISE ITS BROAD AUTHORITY AND STAY THE DELAWARE DJ ACTION TO PREVENT UNNECESSARY PROSECUTION OF DUPLICATIVE LITIGATION**

"The court has the authority to grant injunctive relief in order to protect the integrity of its jurisdiction and to prevent the parties from engaging in duplicative litigation." Jay Franco and Sons Inc. v. G Studios, LLC, Index No. 602236/05, 2006 WL 5110770 (Sup. Ct. N.Y. Cty. June 14, 2006); Jay Franco and Sons Inc. v. G Studios, LLC, 34 A.D.3d 297, 298, 825 N.Y.S.2d 20 (1st Dept. 2006) (trial court may invoke its "equity power" and enjoin duplicative litigation in another state in "the interest of preventing duplicative litigation that might lead to conflicting results, and to prevent the waste of judicial resources and unnecessary legal expenses"; affirming stay of duplicative, second-filed California action); Interested Underwriters at Lloyd's v. H.D.I. III Associates, 213 A.D.2d 246, 247, 623 N.Y.S.2d 871, 873 (1st Dept. 1995) (affirming order staying duplicative, second-filed Colorado action where "New York action was properly placed, ... a contrary decision in Colorado would interfere with the New York court's ability to resolve the issues before it, ... the facts indicate that the defendant may have engaged in forum-shopping ... [and] significant New York contacts existed") (internal citations omitted); Bryan v. Bryan, 275 A.D.2d 688, 689, 713 N.Y.S.2d 348, 349 (1st Dept. 2000) (enjoining duplicative, second-filed Texas action where "New York has the greater interest in and contacts with the ... litigation" because "most, if not all, of the marital property is

5

located in New York; the antenuptial agreement was entered into in New York; the parties lived together in New York as husband and wife ... and the wife continues to reside in New York"); Lafferty v. Lafferty, 243 A.D.2d 541, 541, 663 N.Y.S.2d 108, 109 (2d Dept. 1997) (affirming decision enjoining defendant from prosecuting duplicative, second-filed action in Connecticut; Connecticut action would "violate the plaintiff's rights 'respecting the subject of the action' (CPLR 6301) and tend to render her New York judgment ineffectual"); see generally Orly Moving Br. at 3-6 (and cases cited); Orly Reply Br. at 3-6 (and cases cited).

As the cases cited above affirm, the Trump Group and Dalia are wrong when they claim the Court's equitable power to enjoin duplicative litigation is narrowly limited to instances involving fraud or similar wrongdoing. Indeed, not one of the cases cited in either defendant's opposition (Trump Opp. at 6-12; Dalia Opp. at 2-5) decline to enjoin a second-filed action on that basis. The cases cited by defendants generally involve attempts to enjoin first-filed actions in other states with a clear nexus to the action, where the traditions of comity and deference to a plaintiff's choice of forum strongly apply. See, e.g., Ackerman v. Ackerman, 631 N.Y.S.2d 657 (1st Dept. 1995) (Trump Group Opp. at 9) (refusing to enjoin Connecticut action where Connecticut action was first-filed action and husband-plaintiff was Connecticut resident).[4] Here,

---

[4] The other cases cited by the Trump Group, Dalia, or both, are readily distinguishable. See, e.g., Arpels v. Arpels, 8 N.Y.2d 339, 342 (1960) (declining to enjoin French divorce action entitled to no full faith and credit in New York, but noting that Arpels would have received her injunction if the duplicative action had been brought in another state); Four Seasons Solar Products Corp. v. Solarium Products of Florida, Inc., 102 A.D.2d 757, 477 N.Y.S.2d 291 (1st Dept. 1984) (refusing to enjoin first-filed action in favor of second-filed action); George Hyman Constr. Co. v. Precision Walls, Inc., 517 N.Y.S.2d 263 (2d Dept. 1987) (same); Indosuez Int'l Fin. v. National Reserve Bank, 263 A.D.2d 384, 693 N.Y.S.2d 33 (1st Dept. 1999) (refusing to enjoin first-filed action in Russia); Roman v. Sunshine Ranchettes, Inc., 98 A.D.2d 744, 469 N.Y.S.2d 449 (2d Dept. 1983) (no indication two actions were duplicative); Chayes v. Chayes, 180 A.D.2d 566, 580 N.Y.S.2d 269 (1st Dept. 1992) (refusing to enjoin Massachusetts proceeding where New York action had resulted in divorce decree and was no longer ongoing); Sarepa S.A. v. Pepsico, Inc., 225 A.D.2d 604, 639 N.Y.S.2d 128 (2d Dept. 1996) (no indication New York action was first-filed action); Miller v. Wincott, 2005 WL 1388847 (Sup. Ct. June 7, 2005) (table) (case did not involve enjoining a duplicative, second-filed action); E.B. Latham & Co. v. Mayflower Industries, 278 A.D. 90, 103 N.Y.S.2d 279 (1st Dept. 1951) (same); R&R Capital v. Merritt, 63 A.D.3d 565, 881 N.Y.S.2d 96 (1st Dept. 2009) (refusing to enjoin other state actions which did not seek same relief or issues as New York action).

of course, those same traditions support a stay of the Delaware DJ Action in favor of Orly's first-filed New York TRI Action.

Even assuming, *arguendo*, something more is required, not much more is required. Reasons for enjoining foreign proceedings include not just fraud, but bad-faith, intent to harass, or if the purpose of the foreign state proceeding was "an attempt to evade the law or public policy of this state." E. B. Latham & Co. v. Mayflower Indus., 278 A.D. 90, 103 N.Y.S.2d 279 (1st Dept. 1951); Ackerman v. Ackerman, 219 A.D.2d 515, 631 N.Y.S.2d 657 (1st Dept. 1995) (same); Chayes v Chayes, 180 A.D.2d 566, 580 N.Y.S.2d 269 (1st Dept. 1992) (same). In other words, the forum shopping engaged in by Dalia, and the risk of inconsistent rulings engendered thereby, provides sufficient reason to issue the requested injunction. See Interested Underwriters, 213 A.D.2d at 246-47, 623 N.Y.S.2d at 872-73 (trial court properly enjoined second-filed, duplicative Colorado action to prevent forum shopping; the "New York action was properly placed, the defendant caused the numerous delays herein, [and] a contrary decision in Colorado would interfere with the New York Court's ability to resolve the issues before it."); Fernandez v. Fernandez, 39 Misc.2d 471, 240 N.Y.S.2d 926, 927 (Sup. Ct. Bronx Cty. 1963) (enjoining defendant from prosecuting subsequent action in Mexico because "defendant, if not enjoined, may get a divorce decree in Mexico, and then among other action, may move to amend his answer to plead the divorce as a defense. The action pending here should not be complicated in this fashion"); Browne v. Browne, 53 A.D.2d 134, 385 N.Y.S.2d 983, 986 (4th Dept. 1976) (preventing defendant from prosecuting action in Texas where a Texas judgment would prejudice plaintiff's rights in New York proceeding); Lafferty, 243 A.D.2d at 541 (injunction proper given defendant's "motivation" for commencing action in other state and fact that judgment of other state would "violate the plaintiff's rights 'respecting the subject of the

7

action' (CPLR 6301) and tend to render her New York judgment ineffectual").

In <u>IRB-Brasil Resseguros S.A. v. Portobello Int'l Ltd.</u>, a case cited by Dalia at page 9 of her opposition brief, the First Department held that the trial court properly enjoined prosecution of an action in Brasil for reasons equally applicable here:

> The court properly invoked its equity power to enjoin defendants from prosecuting the action they commenced in Brazil in about April 2008, in order to prevent the waste of judicial resources, unnecessary legal expenses, and duplicative litigation that might lead to conflicting results (*Jay Franco & Sons Inc. v. G Studios, LLC*, 34 A.D.3d 297, 825 N.Y.S.2d 20 [2006] ). An injunction may be issued "where it can be shown that the suit sought to be restrained is not brought in good faith, or that it was brought **\*367** for the purpose of vexing, annoying and harassing the party seeking the injunction" (*Paramount Pictures v. Blumenthal*, 256 App.Div. 756, 759, 11 N.Y.S.2d 768 [1939], *appeal dismissed* 281 N.Y. 682, 23 N.E.2d 15 [1939]). The instant action to collect on unpaid notes was properly placed in New York because the Global Note and related documents at issue explicitly provide that they are governed by New York law, and the parties agreed to submit to the jurisdiction of the courts of this state. This action was commenced in 2006, and defendants delayed commencement of their Brazilian action until about a year and a half later, which is evidence of their bad faith. Their motivation in that action was to avoid the application of New York law, which is yet another indication of bad faith. Since "a contrary decision in [the foreign court] would interfere with the New York court's ability to resolve the issues before it," it is entirely appropriate for the New York court to exercise its discretion to enjoin the action in the foreign court (*Interested Underwriters at Lloyd's v. H.D.I. III Assoc.*, 213 A.D.2d 246, 623 N.Y.S.2d 871 [1995]). Comity does not require our courts to defer to the foreign jurisdiction under such circumstances (*Certain Underwriters at Lloyds, London v. Millennium Holdings LLC*, 52 A.D.3d 295, 861 N.Y.S.2d 3 [2008]).

59 A.D.3d 366, 366-67, 874 N.Y.S.2d 79, 80 (1st Dept. 2009).

Indeed, even if fraud is required (it is not), an injunction is still appropriate here. By her verified complaint, Orly alleges that Dalia, Sagi, TPR and the Trump Group are working together to defraud Orly of her beneficial interest in the Orly Trust TRI Shares. See Third

8

Amended Complaint ¶¶ 89-141. The Delaware DJ Action is simply another affirmative action in furtherance of that conspiracy. In this regard, Dalia's assertion that her Delaware DJ Action will protect the Orly Trust (or that such is her aim and intent) cannot withstand the slightest scrutiny.

Entirely missing from Dalia's affidavit or briefing is any discussion of her prior acts as Trustee – fraudulent and self-serving acts which render the limited declaratory relief purportedly sought by Dalia in her Delaware DJ Action entirely illusory. Specifically, on or around January 31, 2009, Dalia executed a document entitled "Meeting of Partners of D&K LP – Jan. 31, 2009 & Agreement" (the "Meeting Agreement"). The Meeting Agreement purported to grant D&K GP (i.e., Sagi Genger) unfettered authority to encumber the Orly Trust's TRI Shares:

> The partners wish to clarify that the authority vested in the General Partner to make limited partners' assets subject to a pledge shall be done in substantially the same manner in which TPR Investment Associates, Inc. shares were pledged in conjunction with the aforementioned note. However, the General Partner shall be authorized to sign for the partnership and/or each individual partner.

Meeting Agreement ¶ 3 (copy attached as **Exhibit I** to the Attorney's Statement of Judith Seigel-Baum, previously submitted). The Meeting Agreement also purports to:

> Indemnify and provide a general release from any claim or right at equity, law, or contract or otherwise the current and former general partner, its officers, the partnership's holdings (including TPR Investment Associates, Inc.) and the officers of its holdings to fullest extent permitted in connection with any claim by the partnership and/or its partners. Irrespective of the above, nothing herein shall serve to release or indemnify Arie Genger, William Dowd, Lawrence Small or Edward Klimerman.

Id. ¶ 1.[5] In other words, the Meeting Agreement grants Sagi the unfettered authority to dispose

---

[5] Tellingly, Dalia entered the Meeting Agreement only weeks after making sworn statements to the Surrogate Court that she would protect the Orly Trust and its assets and would "take no action" that might affect the value or ownership of the TRI Shares. Seigel-Baum Stmt. ¶¶ 6-7. Similarly, the Meeting Agreement was negotiated and executed without ever informing the Orly Trust's beneficiary, Orly (again in contradiction to Dalia's sworn statements to the Surrogate Court that she was making sure Orly was being kept "aware of what was going on"). Id. ¶ 9.

of the TRI shares in any way he desires (and indemnifies him whatever he does) – rendering any "declaration" pursuant to the carefully circumscribed metes and bounds of the Delaware DJ Action an immediate nullity.[6] Only this New York Court, which has before it all the issues and all the parties, can the propriety and enforceability of the Meeting Agreement and the other fraudulent actions of Dalia, Sagi, TPR, and Trump Group, be properly considered, and Orly's rights truly protected.[7]

## II.   ORLY HAS DEMONSTRATED HER RIGHT TO PRELIMINARY RELIEF

A court may grant a preliminary injunction where the movant shows: "(1) a likelihood of success on the merits of the parties underlying claims; (2) an irreparable harm to the party if the relief requested is withheld; and (3) a balance of the equities tips in favor of the party." Arie Genger v. Sagi Genger et al., Index No. 651089/2010, at *6 (N. Y. Sup. Ct. Feb. 17, 2011) (citing Jones v. Park Front Apartments, LLC, 73 A.D.3d 612, 612 (1st Dept. 2010)). Here Orly readily meets all three elements.

*First*, Orly demonstrates a likelihood of success on the merits.  In this regard, certainty is not required; just a reasonable likelihood of success.  Arie Genger, supra, at *7-8

---

[6] Perhaps unintentionally, Dalia's sudden belated efforts on behalf of the Orly Trust call into question the Meeting Agreement she signed; Sagi's authority to try to sell the Orly Trust Shares to the Trump Group pursuant to the Side-Letter Agreement; and her current arguments against reformation of the Stipulation and Agreement of Settlement that memorialized the end of Arie and Dalia's New York marriage and the distribution of their marital property.

[7] The Meeting Agreement and similar acts by Dalia render her assertion that the Delaware DJ Action is somehow superior (Dalia Opp. at 2-3), or an example of Dalia protecting the Orly Trust (id. at 10-11), entirely perverse.  By her Third Amended Complaint, Orly seeks a reformation of the Stipulation of Settlement, which would result in the Orly Trust continuing to have the same beneficial interest in its TRI shares that it was intended to have as a result of Arie and Dalia's divorce.  Arie would have a life-tenancy over some of the rights attendant to those shares, but the Orly Trust would remain the beneficiary of its value – a value enhanced by being part of a voting block with Arie. See Third Amended Complaint, Prayer for Relief.  By contrast, Dalia has already given away the store.  She has supported, and continues by her Delaware DJ Action to support, Sagi's efforts to sell the Orly Trust Shares at a fire-sale price millions of dollars less than Sagi received for the Sagi Trust Shares.  These actions are of a piece with Dalia's past efforts to help Sagi loot the Orly Trust of its D&K shares (see Orly Genger v. Dalia Genger et al., Index No. 109749/2009, *10-11 (N.Y. Sup. Ct. July 28, 2010)), and conclusively demonstrate Dalia's bad faith and the fact that Dalia has not, is not, and will not look after Orly's interests or protect the Orly Trust's assets from dissipation.

(citing Four Times Square Associates, LLC v. Cigna Investments, Inc., 306 A.D.2d 4, 5 (1st Dept. 2003) ("a likelihood of success on the merits may be sufficiently established even where the facts are in dispute and the evidence inconclusive")). Here, Orly has reasonably demonstrated a likelihood of success on the merits of her motion by showing that the Delaware DJ Action is an unnecessary and duplicative drain on party and judicial resources. Further, this Court already has found Orly demonstrated a sufficiently reasonable likelihood of success on her underlying claims when it granting a previous injunction to protect the Orly Trust's interest in its TRI shares. Arie Genger, supra, at *7-8. Nothing has changed since then that should alter the Court's determination (indeed, if anything, the Delaware Supreme Court's decision overturning much of the Chancery Court's finding enhances Orly's likelihood of success on her claims).[8]

*Second*, Orly has demonstrated irreparable injury. As Orly is neither a party to the Delaware DJ Action nor subject to personal jurisdiction in Delaware, Orly would be foreclosed from protecting her rights or the rights of the Orly Trust in that proceeding, and her right to prosecute this action in her chosen forum could be prejudiced (in whole or in part) by contrary rulings in Delaware:

> The failure of equity to act at the earliest opportunity when called upon to do so might result in irreparable harm to the domiciliary party who invokes its protection. Certainly there is every reason for a wife in plaintiff's position to fear the result of a foreign divorce proceeding prosecuted by the husband. It is difficult for her to determine whether she should go to Nevada, if possessed of means to do so and there contest the *bona fides* of her husband's claim of domicile. Such procedure would entail the risk of

---

[8] Dalia's claim that Orly lacks standing to sue (Dalia Opp. Br. at 10-11) has already been considered and rejected by this Court. Orly Genger v. Dalia Genger et al., Index No. 109749/2009, *4 (N.Y. Sup. Ct. July 28, 2010) (citing Velez v. Feinstein, 87 A.D.2d 309, 315 (1st Dept 1982) ("Where a claim exists in favor of the trust...against third persons and the trustees are under a duty to enforce that claim and have improperly and unjustifiably failed to do so, the beneficiaries may bring a suit on behalf of the trust..."). Here, Orly is suing Dalia for fraud, a claim Dalia cannot pursue on Orly or the Orly Trust's behalf. Dalia's contention that Arie cannot seek reformation of the So-Ordered Stipulation of Settlement (Dalia Opp. Br. at 12-13) was addressed in Arie's opposition to defendants' motion to dismiss this action. Orly incorporates those arguments into the instant brief as if fully set forth herein.

> acquiescing in the jurisdiction of the Nevada courts. The
> alternative risk in staying quiescent at home involves the possible
> inability to procure later the proof she now has to establish the
> husband's lack of bona fide domicile in the foreign jurisdiction.

Pereia v. Pereria, 272 A.D. 281, 70 N.Y.S.2d 763, 768 (1st Dept. 1947) (emphasis added); see

also Martin v. Martin, 62 Misc.2d 703, 309 N.Y.S.2d 477, 479-480 (Sup. Ct. Nassau Cty. 1970)

(allowing husband to institute divorce proceedings in Nevada would "place his wife in an unfair

position of imminent peril. ... she would then be placed on the horns of a dilemma ... of either

sitting idly by [and] keeping for herself what may be an illusory right to attack the decree at a

later time, or of appearing in" the foreign jurisdiction she did not choose).

By filing the claim and counterclaim and seeking to litigate in Delaware, the

defendants improperly seek to "engage [Orly] in an unseemly race to judgment in the two

courts" (Hon v. Hon, 164 Misc.2d 806, 624 N.Y.S.2d 553, 554 (Sup. Ct. Queens Cty. 1995)) and

irreparably prejudice her rights in this proceeding (Pereia, 70 N.Y.S.2d at 768). As prior events

conclusively demonstrate, irreparable risk to Orly exists so long as the defendants are not

enjoined from further adjudicating Orly's rights to the Orly Trust Shares in Delaware Chancery

Court.

*Third*, a balancing of the equities clearly favors Orly. If Dalia, TPR, and the

Trump Group are enjoined from prosecuting the Delaware DJ Action, they can still bring all their

arguments and claims before this Court. However, if defendants are permitted to prosecute the

Delaware DJ Action, Orly would be foreclosed from defending her rights in that action and could

be prejudiced in prosecuting her case before this Court. See Martin, supra; Pereia, supra.

## III.   A PURELY NOMINAL UNDERTAKING IS APPROPRIATE HERE

An undertaking in connection with a preliminary injunction is limited to the

"damages or costs which may be sustained" by Dalia, TPR, and the Trump Group from the

requested injunction.  NY CPLR 6312(b).  Here, of course, none of the defendants identify any such damages or costs to them from the requested temporary restraining order (see Dalia Opp. at 15-16; Trump Opp. at 13); nor could they if they tried.

Neither Dalia nor the Trump Group seeks damages in the Delaware DJ Action; the only relief sought by them is a judicial determination of who owns the Orly Trust TRI Shares.  Such a determination, however, is already at issue, and will be decided, in this Court. Given the lack of damage to defendants, no undertaking beyond a truly nominal amount (e.g., $500) should be required here.  See, e.g., Cooperstown Capital, LLC v. Patton, 60 A.D.3d 1251, 1253, 876 N.Y.S.2d 186, 189 (3d Dept. 2009) (amount of the undertaking should "be rationally related to the potential damages' that defendants could recover if an injunction is ultimately deemed unwarranted"); Wright v. Lewis, 21 Misc. 3d 1120(A), 873 N.Y.S.2d 516 (Sup. Ct. Kings Co. 2008) ("Courts, in exercising their discretion, have set nominal undertakings in cases in which the defendant's potential damages, if the defendant prevails, are minimal . . .").

If anything, the injunction prevents defendants from wasting money prosecuting duplicative claims in two jurisdictions.  Certainly, enjoining the Delaware DJ Action does not damage defendants.   Indeed, defendants essentially admit this, given the Trump Group's purported pledge to voluntarily "take no action in either of the Genger-related actions in Delaware" (Trump Opp. at 2) and Dalia's newly-minted motion to have the Southern District Court stay her own Delaware action.  See accompanying Attorney's Statement of Bryan Leinbach at Exhibit J.  (Of course, Dalia's effort to stay her own action conclusively demonstrates she corruptly commenced her Delaware action purely to divest Orly of her chosen forum.)

## CONCLUSION

For each and every one of the foregoing reasons and the reasons set forth in her prior papers, this Court should grant Orly's motion for an Order: (i) enjoining Dalia, TPR, and the Trump Group from prosecuting the Delaware Action; and (ii) enjoining them from commencing any new actions concerning the subject-matter of the operative Complaint in this action. Plaintiff Orly Genger also respectfully requests the Court grant her such further and different relief as the Court deems just and proper.

Dated:   New York, New York          Respectfully submitted,
         December 9, 2011            ZEICHNER ELLMAN & KRAUSE LLP

                                     By: _____
                                         Yoav M. Griver
                                         Bryan D. Leinbach
                                         Attorneys for plaintiff Orly Genger
                                         575 Lexington Avenue
                                         New York, New York 10022
                                         (212) 223-0400

Of Counsel
William B. Wachtel
Wachtel & Masyr LLP
One Dag Hammarskjold Plaza
885 Second Avenue
New York, New York 10017
(212)909-9595

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| ARIE GENGER and ORLY GENGER, in her individual capacity and on behalf of the ORLY GENGER 1993 Trust, | Index No. 651089/2010 |
| Plaintiffs, | |
| v. | |
| SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST, ROCHELLE FANG, Individually and as Trustee of THE SAGI GENGER 1993 TRUST, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, and TRANS-RESOURCES, INC., | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ORLY GENGER'S MOTION FOR A PRELIMINARY INJUNCTION

**PEDOWITZ & MEISTER, LLP**
**1501 Broadway, Suite 800**
**New York, NY 10036**
**Tel: (212) 403-7330**
**Fax: (212) 354-6614**
**robert.meister@pedowitzmeister.com**
**Attorneys for Defendant**

**Table of Contents**

Page

Preliminary Statement.................................................................................1

I.   An Equitable Stay Is Only Warranted When There Is Clear Evidence that a
     Duplicative Action Was Not Brought in Good Faith, or Was Brought for the Purposes
     of Vexing, Annoying and Harassing the Party Seeking the Injunction..................2

     A.  The Delaware Action Does Not Duplicate this Action...............................2

     B.  New York Courts Do Not Lightly Enjoin Prosecution of Other Actions............5

     C.  Orly Genger Has Failed to Demonstrate a Clear Right to Preliminary
         Injunction....................................................................................8

                 a.  Orly Has Failed To Demonstrate a Likelihood of Success on the
                     Merits...................................................................................9

                 b.  Orly Has Failed To Demonstrate Irreparable Injury.................13

                 c.  Orly Has Failed to Prove that the Balance of Equities Weighs in
                     Her Favor............................................................................14

II.  Orly Must Post a Substantial Undertaking for any Preliminary Injunction............15

III. The Federal Court May Enjoin the Delaware Action in Favor of the Interpleader
     Action Pending Before Judge Keenan....................................................16

Conclusion................................................................................................18

# Table of Authorities

## Cases

*1234 Broadway LLC v. W. Side SRO Law Project*, 86 A.D.3d 18 (1ˢᵗ Dep't 2011)........... 9, 13, 15

*Aetna Ins. Co. v. Capasso*, 75 N.Y.2d 860, 862 (1990)............................................................. 8, 13

*Amend v. Hurley*, 293 N.Y. 587, 595 (1944) .............................................................................. 12

*Arie Genger & Orly Genger v. Sagi Genger et al.,* Index No. 651089/2010 (N. Y. Sup. Ct., N.Y. Co.)............................................................................................................................................ 2, 17

*Arie Genger et al. v. Sagi Genger et al.*, Index No. 651089/2010 Decision and Order (Feb. 17, 2011) .......................................................................................................................................... 2, 12

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 10 CIV. 8630 RWS, 2011 WL 3847376 (S.D.N.Y. Aug. 30, 2011) ..................................................................................................... 6, 10, 14

Chayes v. Chayes, 180 A.D.2d 566 (1ˢᵗ Dep't 1992)....................................................................... 5

*Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC et al.* (Del. Ch. 6906-CS. filed Oct. 4, 2011) ............................................................................................... 4, 11, 17

*Doe v. Axelrod*, 73 N.Y.2d 748 (1988) .......................................................................................... 9

*E. Air Lines, Inc. v. Trans Caribbean Airways, Inc.*, 29 A.D.2d 379 (1ˢᵗ Dep't. 1968) .............. 12

*E.B. Latham & Co. v. Mayflower Indus.*, 278 A.D. 90 (1ˢᵗ Dep't. 1951) ................................ 5, 6, 7

*Genger v. TR Investors, LLC*, 592, 2010, 26 A.3d 180 (Del. July 18, 2011) ........................ 10, 13

*Glenclova Investment Co. v. Trans-Resources, Inc.*, 08 civ 7140 (JFK) (S.D.N.Y.) .................. 17

*Greater New York Mut. Ins. Co. v. United States Underwriters Ins. Co.*, 36 A.D.3d 441 (1ˢᵗ Dep't. 2007)........................................................................................................................... 13

*Grant Co. v. Srogi*, 52 N.Y.2d 496, 517 (1981)............................................................................. 8

*Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank*, 263 A.D.2d 384 (1ˢᵗ Dep't 1999).................... 8

*IRB-Brasil Resseguros S.A. v. Portobello Int'l Ltd.*, 59 A.D.3d 366 (1ˢᵗ Dep't. 2009)............... 8

*Jay Franco & Sons, Inc. v. G Studios, LLC*, Index No. 602236/05, 2006 WL 5110770 (N.Y. Ct. Sup. Ct. June 14, 2006)................................................................................................................... 7

*Koultukis v. Phillips*, 285 A.D.2d 433 (1ˢᵗ Dep't. 2001)............................................................... 8

*Leif B. Pederson, Inc. v. Weber*, 128 A.D.2d 453 (1ˢᵗ Dep't 1987) ....................................... 14, 15

*Margolies v. Encounter, Inc.*, 42 N.Y.2d 475 (1977) .................................................. 15, 16

*Matter of the Trust Established on December 13, 1993 by ARIE GENGER for the benefit of ORLY GENGER*, file no. 0017/2008, (Surrg. Ct., N. Y. Co. Dec. 31, 2008). ........................... 6

*McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co., Inc.*, 114 A.D.2d 165 (2d Dep't. 1986) ... 14

*Merrell Benco Agency, Inc. v. Safrin*, 231 A.D.2d 614 (1ˢᵗ Dep't 1996) ........................................ 9

*Miller v. Wincott*, 8 Misc. 3d 1002(A) (Sup. Ct., Nassau Co. 2005) .............................................. 6

*Orly Genger v. Dalia Genger et al.*, Index No. 109749/09 (N.Y. Co. Sup. Ct. filed August 11, 2010) ........................................................................................................................... 4, 16

*Paramount Pictures v. Blumenthal*, 256 App.Div. 756 (1st Dept.1939) .................................... 7, 8

*Pedowitz & Meister v. TPR Inv. Assoc., Inc. et al*, 11 civ. 1502 (JFK) (S.D.N.Y. filed Nov. 1, 2011) ......................................................................................................................... 11, 16

*Price Paper & Twine Co. v. Miller*, 182 A.D.2d 748 (2d Dep't 1992) ......................................... 9

*R & R Capital LLC v. Merritt*, 63 A.D.3d 565 (1ˢᵗ Dep't. 2009) ..................................................... 5

*Reynolds Metals Co. v. Colonial Realty Corp.*, 41 Del. Ch. 183, 190 A.2d 752, 756 (Del. Sup. Ct. 1963) ........................................................................................................................... 4

*Rosenthal v. Burry Biscuit Corp.*, 30 Del. Ch. 299, 60 A.2d 106 (Del. Ch. Ct. 1948) .................. 4

*Sarepa, S.A. v. Pepsico, Inc.*, 225 A.D.2d 604 (2d Dep't. 1996) *denied* 91 N.Y.2d 801 (1996) .... 6

*TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 3279385 (Del. Ch. Aug. 9, 2010) ............................................................................................................. 12

*Uniformed Firefighters Ass'n of Greater New York v. City of New York*, 79 N.Y.2d 236 (1992) ............................................................................................................. 15

*Velez v. Feinstein*, 87 A.D.2d 309 (1ˢᵗ Dep't. 1982) ......................................................... 6, 10, 14

*Village of Honeoye Falls v. Elmer*, 69 A.D.2d 1010 (4ᵗʰ Dep't. 1979 ) ....................................... 13

**Statutes**

8 Del. C. § 220…………………………………………………………………………………..4

8 Del. C. § 262 ...................................................................................................................... 4

8 Del. C. § 327 ...................................................................................................................... 4

CPLR § 6301............................................................................................................................ 8

CPLR § 6312.......................................................................................................................... 15

N.Y. BCL § 626(a)................................................................................................................... 4

**Treatises**

6 N.Y. Jur., Reformation of Instruments, s 49 ............................................................................. 12

Defendant Dalia Genger, sued here solely in her individual capacity, respectfully submits this memorandum in opposition to the motion of Co-Plaintiff Orly Genger for a preliminary injunction restraining Dalia Genger from prosecuting the Delaware court action she commenced as Trustee of the Orly Genger 1993 Trust (Orly Trust) to declare that the Orly Trust is the beneficial owner of the 1,102.8 shares of common stock of Trans-Resources, Inc. (TRI) that TPR Investment Associates, Inc. (TPR) sold to the Orly Trust in 2004 ("the Delaware litigation").

## **Preliminary Statement**

Orly Genger is not entitled to a preliminary injunction.

As a preliminary matter, the Delaware litigation is not "duplicative" of Orly's action in this court. *Nowhere* in Orly's 68-page Third Amended Complaint does she seek a declaration that the Orly Trust is the beneficial owner of the 1,102.8 shares of TRI stock. In fact, Orly's complaint seeks to have Arie Genger declared the beneficial owner of the Orly Trust's TRI shares. Thus this action in this Court is an entirely different action—an action which would strip the Orly Trust of substantial legal and monetary rights. Therefore, to protect the Orly Trust's rights, the court should *not* enjoin the Delaware action.

Second, even if it were duplicative, in order to join the Delaware ligation Orly would have to prove by clear evidence that the Delaware ligation was not brought in good faith, or was brought for the purposes of vexing, annoying and harassing Orly, who is not a party in that suit. No such evidence exists and none has been submitted in support of this motion.

Finally, Orly has not demonstrated that she is entitled to the drastic remedy of a preliminary injunction as she has not shown any of the three elements that must be proved by clear evidence 1) a likelihood of success on the merits, 2) danger of irreparable injury, and 3) a

1

balance of equities in her favor.    Orly's motion is premised on the first count in the Third

Amended Complaint — a reformation claim brought by *Arie* and not Orly — that <u>this Court has

already recognized is unlikely to succeed on the merits</u>.  In granting a preliminary injunction

against TPR, the Court stated:

> Clearly, if the Delaware Supreme Court affirms the ruling of the Chancery Court,
> the TRI shares purchased by the Trump Group will no longer be owned by TRP
> [*sic.*, TPR], and Arie's request to rescind or reform the 2004 transfers such that he
> can be reinstated retroactively as the indirect owner of the TRI shares (through
> TPR) will be rendered impossible. . . .

*Arie Genger et al. v. Sagi Genger et al.*, Index No. 651089/2010 Decision and Order (Feb. 17,

2011); Meister Ex. A. Accordingly, for all of these reasons, the Court must deny the issuance of

a preliminary injunction.

## I.  An Equitable Stay Is Only Warranted When There Is Clear Evidence that a Duplicative Action Was Not Brought in Good Faith, or Was Brought for the Purposes of Vexing, Annoying and Harassing the Party Seeking the Injunction

### A.  The Delaware Action Does Not Duplicate this Action

*Nowhere* in its 68 pages does the Third Amended Complaint seek a declaration that the

Orly Trust is the beneficial owner of the 1,102.8 shares of TRI Stock or other relief based on that

premise.  At the October 26, 2011 hearing at the presentation of the Order to Show Cause for this

motion, Orly's counsel misspoke when he told the Court that "[i]f you compare the first count of

the third amended complaint before your Honor and the first count of Dalia's case in Delaware,

they're the same.  They both make claims as to who owns the beneficial ownership of the exact

same shares." *Arie Genger et al. v. Sagi Genger*, Index No. 651089/2010, TRO Hr'g Tr. at 3:21-

25 (Oct. 26, 2011) (hereinafter "TRO Hr'g") Meister Ex. B.  First, the first count of the Third

Amended Complaint was brought only by Arie Genger and *not by Orly*,[1] and it does *not* seek a declaration that the Orly Trust is the beneficial owner of the TRI shares. In fact, the complaint expressly requests that <u>Arie and not Orly or the Orly Trust</u> should be declared the beneficial owners of the 1,102.8 shares that TPR sold to the Orly Trust. The Third Amended Complaint specifically pleads:

> 181.    Accordingly, <u>Arie</u> seeks an Order and declaratory judgment to reform the Court-Ordered Stipulation of Settlement to provide as follows:
>
> . . .
>
> (iv)    that **Arie** be declared the 51% owner of TPR2, which in turn shall **be declared, *ab initio* the record and beneficial owner of all of such 3000 TRI shares**,[2] as though no 2004 Transfers were consummated under the original terms of the Stipulation of Settlement.

Thus the Third Amended Complaint seeks to put all of the 3,000 TRI shares that TPR sold in the 2004 transfers (including those sold to the Orly Trust) into a new entity that it refers to as "TPR2," which would be 51% owned by Arie Genger and 24.5 percent owned by the Orly Trust until Arie's death.[3] At the October 26th hearing, Orly's counsel explained that:

> The reformation that they're[4] seeking will protect the Orly Trust because the TRI shares will be put back into TPR and then the Orly Trust . . . will be given the equivalent shares of TPR so that they will own the same amount of TRI shares. In a different way, they are asking that the Orly Trust be given the TRI shares back. So it is the exact same lawsuit . . . .

TRO Hr'g Tr. 21:26-22:4; Meister Ex. B. Thus if Arie Genger's cause of action were successful, the Orly Trust would *not* be declared the beneficial stock owner of the 1,102.8 TRI shares and thus the Trust would forfeit *substantial* rights. The Orly Trust would not be able to alienate this

---

[1] Orly should not be able to obtain a preliminary injunction based on the claims that she has not brought!
[2] This includes all 1,102.8 TRI shares sold to the Orly Trust.
[3] The motion contains no evidence that TPR2 exists, other than in Arie Genger's fantasies.
[4] Counsel misspoke since this claim is only brought on behalf of Arie Genger.

beneficial interest which could be extremely valuable.[5] It would not be until Arie Genger's death

that the Orly Trust would obtain beneficial ownership of the TRI shares.[6]

On the other hand, the Delaware action Dalia brought on behalf of the Orly Trust

explicitly demand Judgment:

a) Declaring that the Orly Trust is a protected purchaser and beneficial owner of
the 1,102.80 shares of common stock of TRI sold to it by TPR;

b) Declaring that the Orly Trust is entitled to all dividends declared or paid
attributable to such shares since October 29, 2004;[7]

Therefore, if the Delaware action is successful the Orly Trust would be declared the

beneficial owner of the 1,102.8 shares of TRI stock now and would not have to wait until Arie

Genger's death. This would give the Orly Trust an *immediate* right to any dividends, stock

splits, and to attempt to capitalize on any appreciation in the value of the stock. As beneficial

owner now, the Orly Trust will also have other valuable rights, including the ability to exercise

appraisal rights on any merger,[8] the right to inspect the corporate records,[9] and to bring a

derivative action on behalf of the corporation.[10] Additionally, if the Orly Trust is declared the

beneficial owner of the TRI shares now, that ownership interest would be alienable, allowing the

---

[5] In her Second Amended Complaint (¶ 114) in her companion action, *Orly Genger v. Dalia Genger, et al.*, Sup. Ct., N. Y. Co., Index No. 109749/09, Orly Genger contends that the Orly Trust TRI shares are worth hundreds of millions of dollars.

[6] Third Amended Compl. ¶ 181(vii) upon Arie's death, 1102.8 of TRI shares, plus any stock dividends relating thereto. . . will be transferred by TPR2 . . . outright to the Orly Trust." During Arie's lifetime, it is requested that the Orly Trust receive "[a]ll cash dividends relating to the . . .the Orly Trust TRI Shares". Compl. At ¶ 181(viii).

[7] *Dalia Genger v. TR Inv., LLC et al.* p. 8 (Del. Ch. 6906-CS. filed Oct. 4, 2011). Meister Aff. Ex. C.

[8] 8 Del. C. § 262; *See also* Reynolds Metals Co. v. Colonial Realty Corp., 41 Del. Ch. 183, 190, 190 A.2d 752, 756 (Del. Sup. Ct. 1963)(Permitting a beneficial owner to seek appraisal rights as "[t]his is the recognition of the realities of modern stock practices and the necessity to afford such protection to stock beneficially owned as is not inconsistent with protection of the corporation's rights.") The beneficial owner may have additional rights pursuant to TRI's bylaws.

[9] 8 Del. C. § 220.

[10] 8 Del. C. § 327. *See* Rosenthal v. Burry Biscuit Corp., 30 Del. Ch. 299, 313, 60 A.2d 106, 113 (Del. Ch. Ct. 1948) ("[A]n equitable owner of stock can maintain a stockholder's derivative action.") *See also* N.Y. BCL § 626(a) "An action may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor, by a holder of . . .a beneficial interest in such shares or certificates."

Orly Trust to sell this interest for valuable consideration, and thereby put money into the Trust, which then could be invested to create income for the beneficiaries and diversified prudently.

### B.  New York Courts Do Not Lightly Enjoin Prosecution of Other Actions

"The general rule is that the courts of this State will decline to interfere by injunction to restrain its citizens from proceeding in an action commenced in the courts of a sister State." *E.B. Latham & Co. v. Mayflower Indus.*, 278 A.D. 90, 94 (1st Dep't. 1951).  Therefore, even if the Delaware action were found to duplicate this action, "[t]he rule of comity forbids our courts from enjoining an action in a sister State 'unless it is clearly shown that the suit sought to be enjoined was brought in bad faith, motivated by fraud or an intent to harass the party seeking an injunction. . . .'" *Chayes v. Chayes,* 180 A.D.2d 566, 566 (1st Dep't 1992) (internal citation omitted).  *See also, R & R Capital LLC v. Merritt*, 63 A.D.3d 565 (1st Dep't. 2009) (reversing an order enjoining actions in Delaware and Pennsylvania courts as this "improperly intrudes on the jurisdiction of [these] courts, in violation of established principles of comity. . ." and there was "no basis for the court's finding that the Delaware and Pennsylvania actions were brought in bad faith or with an intent to harass defendant.");  *E.B. Latham & Co.*, 278 A.D. at 94 ("It is only in extreme and extraordinary cases that the court will break the rule of comity which forbids the granting of an injunction to stay proceedings which have been commenced in a foreign court of competent jurisdiction.").

There has been no evidence that the Delaware litigation was brought in bad faith.  As discussed above, the actions commenced by Dalia Genger, as Trustee, seek to maximize the Orly Trust's recovery of the TRI shares.   Dalia is litigating on behalf of the Orly Trust to see to it that the Orly Genger Trust has assets—assets that it can actually use and enjoy *immediately.* "'Where a claim exists in favor of the trust . . . the trustees are under a duty to enforce that claim'" *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 10 CIV. 8630 RWS, 2011 WL 3847376

at *8 (S.D.N.Y. Aug. 30, 2011) *quoting Velez v. Feinstein*, 87 A.D.2d 309 (1ˢᵗ Dep't. 1982).
Dalia is doing just that.

By requesting that this Court issue a preliminary injunction to prevent Dalia from acting
on behalf of the trust, Orly is seeking to undermine the Trust by controlling its assets without
permission of the Surrogate's Court, which has rejected Orly Genger's petition to replace Dalia
from her position as Trustee.[11] Orly's moving papers are riddled with conclusory statements
regarding Dalia's intentions—none of which have been proven or accepted by this Court or any
other Court.   These statements are not sufficient to clearly show that the Delaware litigation
was brought in bad faith. *See E.B. Lathem*, 278 A.D. at 94, (reversing the lower court's
injunction for failing to since there was "no allegation . . .[that the] action was instituted in bad
faith" since "[t]he mere averment" of a conspiracy among the parties "does not suggest any
wrongful purpose."); *See e.g., Sarepa, S.A. v. Pepsico, Inc.*, 225 A.D.2d 604 (2d Dep't. 1996) *lv.
denied* 91 N.Y.2d 801 (1996) (reversing the Supreme Court's issuance of an injunction since
there had been "been no such clear showing" that the foreign suit sought to be enjoined was
brought in "bad faith, or motivated by fraud or an intent to harass the party seeking the
injunction.") *Miller v. Wincott*, 8 Misc. 3d 1002(A) (Sup. Ct., Nassau Co. 2005) (denying the
issuance of a preliminary injunction as where the party failed to establish that "the suit was
brought to harass the party seeking the injunction" or that "the foreign suit was motivated by
fraud."). Rather than "pauperizing" Orly, the evidence shows that Dalia is litigating on behalf of
the Orly Trust to enable the Trust to receive the benefits her mother intended to provide for Orly
in the Divorce Stipulation Agreement.

---

[11] *Matter of the Trust Established on December 13, 1993 by ARIE GENGER for the benefit of ORLY GENGER,*
Surrg. Ct., N. Y. Co. file no. 0017/2008, December 31, 2008.

Contrary to the assertion of Orly's counsel on October 26, 2011, there mere existence of duplicative litigation is not sufficient to enjoin another proceeding in a sister state. In oral arguments and in her brief, Orly relies heavily on *Jay Franco & Sons, Inc. v. G Studios, LLC*, Index No. 602236/05, 2006 WL 5110770 (N.Y. Ct. Sup. Ct. June 14, 2006) *aff'd* 34 A.D.3d 297, 298 (1ˢᵗ Dep't. 2006).[12] But in recounting the facts of that case, orally and in her brief, Orly's Counsel omitted to note that in *Franco*, the court concluded that the defendant had "'not brought [the other action] in good faith." *Id.* In that case, the defendant had filed an action in California 10 weeks after the New York Court denied the defendant's application for a stay. In the California action, the defendant submitted a certification required by California law disclosing the pendency of the New York action, but stating that its "claims in the instant case are not at issue in the New York action." The New York Supreme Court found that this representation was "clearly false as the facts alleged in the complaint [in California] were raised in support of its motion for a stay [in New York]. . ." *Id.* (emphasis added). The New York Supreme Court concluded that because "the defendant has clearly misrepresented to the California court that the two actions were not related," an injunction was appropriate as the California action was "'not brought in good faith, or [ ] was brought for the purposes of vexing, annoying and harassing the party seeking the injunction.'" *Id. quoting Paramount Pictures, Inc. v. Blumenthal*, 256 App. Div. 756, 759 (1ˢᵗ Dep't. 1939). Accordingly, the New York court granted an injunction as, *inter alia*, it was "clearly established" that this course of action was "'necess[ary] [ ] equitable inference [used] to prevent a failure of justice.'" *Id., quoting E.B. Latham & Co.*, 278 App. Div. 90, 94 (1ˢᵗ Dep't. 1951).

---

[12] *Arie Genger et al., v. Sagi Genger et al.*, Index No. 651089/10, TRO Hr'g, Statements of attorney for Orly Genger, Yoav Griver, Esq., Tr. at 28:21 – 29:7 (Meister Aff. Ex. B).

Therefore, the *Franco* case exemplified that duplicative litigation in another jurisdiction may only be enjoined "where it can be shown that the suit sought to be restrained is not brought in good faith, or that it was brought for the purpose of vexing, annoying and harassing the party seeking the injunction." *IRB-Brasil Resseguros S.A. v. Portobello Int'l Ltd.*, 59 A.D.3d 366, 366-67 (1st Dep't. 2009) *quoting Paramount Pictures v. Blumenthal,* 256 App.Div. 756, 759 (1st Dept.1939), *appeal dismissed* 281 N.Y. 682 (1939). *See also Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank,* 263 A.D.2d 384, 384 (1st Dep't 1999) (affirming the denial of a preliminary injunction "since the doctrine of comity militates against staying proceedings previously commenced in a foreign court of competent jurisdiction. . . and the additional expense and trouble of litigating in a foreign court is insufficient to warrant an injunction."). There has been no such showing in this case and therefore, the preliminary injunction must be denied.

## C. Orly Genger Has Failed to Demonstrate a Clear Right to Preliminary Injunction

"Preliminary injunctive relief is a drastic remedy and will only be granted if the movant establishes a clear right to it under the law and the undisputed facts found in the moving papers." *Koultukis v. Phillips*, 285 A.D.2d 433, 435 (1st Dep't. 2001) (citation omitted)(emphasis added). As the Court of Appeals explained, "in order to be entitled to a preliminary injunction, plaintiffs ha[ve] to show [1] a probability of success, [2] danger of irreparable injury in the absence of an injunction, and [3] a balance of the equities in their favor." *Aetna Ins. Co. v. Capasso*, 75 N.Y.2d 860, 862 (1990) *citing Grant Co. v. Srogi,* 52 N.Y.2d 496, 517 (1981). *See also* CPLR § 6301. *Nowhere* in Orly Genger's brief does she address these criteria. And nowhere in her motion papers is there evidence that meets those standards.

8

### a. Orly Has Failed To Demonstrate a Likelihood of Success on the Merits

"[T]he threshold inquiry is whether the proponent has tendered sufficient evidence demonstrating ultimate success in the underlying action." *1234 Broadway LLC v. W. Side SRO Law Project*, 86 A.D.3d 18, 23-24 (1st Dep't. 2011) *citing Doe v. Axelrod*, 73 N.Y.2d 748 (1988). "[A] party seeking the drastic remedy of a preliminary injunction must [nevertheless] establish a clear right to that relief under the law and the undisputed facts upon the moving papers." *Id.*

In this action, Orly brings three claims against Dalia:

1. an action for the imposition of a constructive trust on the 1,102.80 shares of TRI stock that TPR sold to the Orly Trust *in favor of Arie* (the Second Cause of Action)[13],

2. a claim for Unjust Enrichment and Rescission (the Fourth Cause of Action), and

3. a Preliminary Injunction (the Fifth Cause of Action).

In this case, "the plaintiff[ ] offered nothing more than conclusory allegations concerning [her] claim[s] . . . . When 'there are key facts in dispute, the motion for a preliminary injunction [should be] denied.'" *Merrell Benco Agency, Inc. v. Safrin*, 231 A.D.2d 614 (1st Dep't 1996) *quoting Price Paper & Twine Co. v. Miller*, 182 A.D.2d 748 (2d Dep't 1992). The legal deficiencies in Orly's claims were fully briefed in Dalia Genger's Motion to Dismiss, which is pending before this court.[14] We incorporate the arguments raised in our motion to dismiss herein

---

[13] *Arie Genger et al., v. Sagi Genger et al.*, Index No. 651089/10, Third Amended Compl. (filed Sept. 20, 2011):

> 195.    Upon TPR becoming the record owner of the 1102.8 shares of TRI stock comprising the Orly Trust TRI shares, **a constructive trust was immediately created in favor of Arie** with respect to the Orly Trust TRI Shares, including, but not limited to, the voting rights appurtenant to such shares, all of which were held by TPR for the benefit of Arie, subject to the Orly Trust's right to receive the Orly Trust TRI Shares upon Arie's death.

*Emphasis added.*

[14] Motions to Dismiss setting forth similar arguments were also raised by the other defendants in this action: The Trump Group, TPR, and Sagi Genger.  Since this is *Orly's* motion for a preliminary injunction we will address the claims that *Orly* has brought since Arie's claims should not be a basis for the issuance of a preliminary injunction on Orly's behalf.

9

to demonstrate that this action is unlikely to succeed on the merits.

Further, Orly's claims are unlikely to succeed in this action as she lacks standing. Orly purportedly brings these claims on behalf of the Orly Genger Trust, however, Orly, as beneficiary, is not authorized to bring such an action. The First Department has held that:

> In an action brought by a beneficiary on behalf of the trust, the beneficiary must show why he has the right to exercise the power, which the law and the trust agreement in the first instance confide in the trustees, to bring a suit on behalf of the trust. This will normally require either a showing of a demand on the trustees to bring the suit, and of a refusal so unjustifiable as to constitute an abuse of the trustee's discretion, or a showing that suit should be brought and that because of the trustees' conflict of interest, or some other reason, it is futile to make such a demand.

*Velez v. Feinstein*, 87 A.D.2d 309, 315 (1st Dep't 1982). In addition, the Delaware Supreme Court acknowledged that Orly is not an "authorized representative of the Orly Trust." *See Genger v. TR Investors, LLC*, 592, 2010, 26 A.3d 180, 202-03 (Del. July 18, 2011) ("A separate consent, by an authorized representative of the Orly Trust, was required to accomplish [*in personam* jurisdiction over the Trust], and there is no evidence or claim that such consent was ever obtained.").

Dalia is the Trustee of the Orly Genger Trust. "'Where a claim exists in favor of the trust . . . the trustees are under a duty to enforce that claim and [when they] have improperly and unjustifiably failed to do so, the beneficiaries may bring a suit on behalf of the trust. . . .'" *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 10 CIV. 8630 RWS, 2011 WL 3847376 at *8 (S.D.N.Y. Aug. 30, 2011) *quoting Velez*, 87 A.D.2d at 314. There is no evidence and thus can be no finding that Dalia, as Trustee of the Orly Trust, has failed to act on the Orly Trust's behalf. Indeed, Dalia, as Trustee of the Orly Trust, has commenced an action to declare that the Orly Trust is the beneficial owner of the TRI shares transferred by TPR. *Dalia Genger v. TR*

10

*Investors, LLC et al.* (Del. Ch. 6906-CS, filed Oct. 4, 2011) Meister Aff. Ex. C.  Similarly, in the interpleader action commenced by Escrow Agent Pedowitz & Meister pending before Judge Keenan in the Southern District of New York, Dalia has vigorously defended the Orly Trust's rights by bringing a crossclaim against all defendants seeking to have the Orly Trust declared the beneficial owner of the 1,102.8 shares of TRI.  *See* Answer & Crossclaim of Dalia Genger, *Pedowitz & Meister v. TPR Inv. Assoc., Inc. et al.,* 11 civ. 1502 (JFK) (S.D.N.Y. filed Nov. 1, 2011); Meister Aff. Ex. D.  And Dalia Genger also commenced a separate action against Arie Genger to get damages for the Orly Trust for Arie Genger's breach of his divorce settlement agreement if it is ultimately held that he did not successfully cause TPR to transfer the TRI shares to the Orly Trust.  Dalia Genger Aff., ¶5.

Although Orly is purportedly suing on behalf of the Orly Trust in this action, her complaint tells a much different story: that of a daughter in thrall to her father and his interests.[15] The complaint seeks to *divest* the Orly Trust of substantial rights and give these rights to her father, Arie.  The complaint seeks a declaration that Arie, through his ownership of what they call TPR2, is the beneficial owner of the Orly Trust's TRI stock and seeks a constructive trust of these shares *against* the Orly Trust in Arie Genger's favor.[16]

During the proceedings before the Delaware Chancery Court, it was noted that Orly Genger was "clearly working in concert with [her father, Arie Genger] on a joint legal strategy."

---

[15] Significantly, at the October 26, 2011 hearing before the Court, Orly Genger's Counsel, Yoav Griver, Esq., referred to the time consumed by this case by stating "My wife asked how my marriage to *Arie Genger* was going."

[16] Significantly, Orly takes a completely different position with respect to the $10.3 million placed in escrow on the Trump Group purported purchase of these same TRI shares.  Her counsel notified the Escrow Agent of Orly's position that "Orly Genger maintains that the [Orly] Trust (and Orly Genger, as beneficiary) has a beneficial interest in" those funds, see Meister Aff. Ex. E, which could interest only arise if the Trump Group had validly purchased the TRI shares. (That notice led to the federal interpleader action that will determine who is entitled to the $10.3 million based on who has the beneficial interest in the shares.)

*TR Investors, LLC v. Genger*, CIV.A. 3994-VCS, 2010 WL 3279385 (Del. Ch. Aug. 9, 2010) *rev'd,* 592, 2010, 26 A.3d 180 (Del. July 18, 2011). Here it is no different.

Additionally, although the first count of the Third Amended Complaint, the reformation claim, was brought solely by <u>Arie</u> and not Orly, Orly's Counsel told this Court that this action was same as the suit Dalia commenced on behalf of the trust in the Delaware. But the Arie's first count, seeking reformation of the Divorce Stipulation Agreement, is unlikely to succeed on the merits. This Court has expressly stated that Arie's reformation claims are unlikely to succeed on the merits. In your Honor's decision granting a preliminary injunction against TPR, he stated:

> Clearly, if the Delaware Supreme Court affirms the ruling of the Chancery Court, the TRI shares purchased by the Trump Group will no longer be owned by TRP [*sic.*], and Arie's request to rescind or reform the 2004 transfers such that he can be reinstated retroactively as the indirect owner of the TRI shares (through TPR] will be rendered impossible. . . .

*Arie Genger et al. v. Sagi Genger et al.*, Index No. 651089/2010 Decision and Order (Feb. 17, 2011); Meister Ex. A. As we now know, the Delaware Supreme Court affirmed the Chancery Court's ruling. Thus, Arie's reformation claim is "impossible."

Although additional reasons why Arie's reformation claim is unlikely to succeed were articulated in our motion to dismiss pending before this Court, to which we respectfully refer, it is important to note that

> Before [a party] 'can be granted reformation, (it) must establish (its) right to such relief by clear, positive and convincing evidence. Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error' *Amend v. Hurley*, 293 N.Y. 587, 595, 59 N.E.2d 416, 419; 6 N.Y. Jur., Reformation of Instruments, s 49, p. 598).

*E. Air Lines, Inc. v. Trans Caribbean Airways, Inc.*, 29 A.D.2d 379, 382 (1st Dep't. 1968) *aff'd* 23 N.Y.2d 709 (1968). Further, it is unlikely that Arie can prove "by clear, positive, and convincing evidence" that there was a mutual mistake of fact as to the transfers of TRI stock in the Divorce Stipulation Agreement. See Dalia Genger Aff. ¶2.

12

The Delaware Supreme Court found "[w]hen [Arie] effectuated the 2004 Transfers, [he] knew that neither Trust was a 'Permitted Transferee' of the [TRI] shares under the Stockholders Agreement." *Genger v. TR Investors, LLC,* 592, 2010, 26 A.3d 180, 202-03 (Del. July 18, 2011). Therefore when Arie warranted in the Divorce Stipulation Agreement that no consents were needed, "[t]hat representation was false." *Id.*

"The burden upon a party seeking reformation is a heavy one since it is presumed that a deliberately prepared and executed written instrument accurately reflects the true intention of the parties: '[T]he proponent of reformation must show in no uncertain terms not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.'" *Greater New York Mut. Ins. Co. v. United States Underwriters Ins. Co.,* 36 A.D.3d 441 (1st Dep't. 2007) (citation omitted). As shown in our motion to dismiss it and in Dalia Genger's Aff., ¶2, it is highly unlikely that Arie will succeed on this claim. Since this claim is the basis of Orly's Counsel's argument that the Delaware ligation is duplicative, the court should not grant the preliminary injunction as it is first, not bought by Orly and second, unlikely to succeed.

### b.  **Orly Has Failed To Demonstrate Irreparable Injury**

Orly, as the party seeking the preliminary injunction, has the burden of proving irreparable injury. *See e.g. Aetna Ins. Co. v. Capasso,* 75 N.Y.2d 860, 862 (1990) ("*plaintiffs* had to show a. . . danger of irreparable injury") (emphasis added). "Conclusory statements lacking factual evidentiary detail warrant denial of a motion seeking a preliminary injunction." *1234 Broadway LLC v. W. Side SRO Law Project,* 86 A.D.3d 18, 23-24 (1st Dep't. 2011) *citing Village of Honeoye Falls v. Elmer,* 69 A.D.2d 1010 (4th Dep't. 1979 ).

"Where the threatened harm is a competing legal proceeding, a preliminary injunction may be denied if the same legal claims or defenses can be asserted in that proceeding." 13

Weinstein, Korn, & Miller ¶ 6301.15 *See also Leif B. Pederson, Inc. v. Weber*, 128 A.D.2d 453,

454-55 (1st Dep't. 1987) (reversing the issuance of a preliminary injunction as "CPLR 6301

allows a preliminary injunction only when defendant might violate plaintiff's rights regarding the

subject of the action, or when plaintiff might do something to interfere with or render a judgment

ineffectual. . . . absent sound reasons, a court generally should not deprive a plaintiff of the right

to sue in a forum of her choice").   Here, the claims asserted by Dalia, in her capacity as Trustee

of the Orly Genger Trust are the only claims that are seeking to declare the Trust the beneficial

owner of the TRI shares.  Bearing this in mind, there is no threat of irreparable injury that

warrants issuing this injunction.  The only potentially serious injury posed to the Orly Trust is

permitting the Trust's beneficiary, Orly Genger, to forfeit the Trust's substantial rights in favor

of her father.

### c. **Orly Has Failed to Prove that the Balance of Equities Weighs in Her Favor**

Orly has not met her burden in demonstrating that the balance of equities weigh in her

favor.  It "must be shown that the irreparable injury to be sustained . . . is more burdensome [to

the plaintiff] than the harm caused to defendant through imposition of an injunction."

*McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co., Inc.*, 114 A.D.2d 165, 174 (2d Dep't.

1986).  Orly, in this action, is not seeking a declaration that the Orly Trust is the beneficial owner

of the TRI shares.  "'Where a claim exists in favor of the trust . . . the trustees are under a duty to

enforce that claim. . . .'" *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 10 CIV. 8630 RWS,

2011 WL 3847376 at *8 (S.D.N.Y. Aug. 30, 2011) *quoting Velez*, 87 A.D.2d at 314.  By

commencing the Delaware litigation, Dalia is fulfilling her duties as trustee.

Public Policy weighs against the granting of this injunction.  "A preliminary injunction

substantially limits a defendant's rights and is thus an extraordinary provisional remedy requiring

14

a special showing." *1234 Broadway LLC v. W. Side SRO Law Project*, 86 A.D.3d 18, 23 (1st Dep't 2011) *quoting Margolies v. Encounter, Inc.,* 42 N.Y.2d 475, 479 (1977). "[A] court generally should not deprive a plaintiff of the right to sue in a forum of her choice." *Leif B. Pederson, Inc. v. Weber*, 128 A.D.2d 453, 454-55 (1st Dep't 1987).

Moreover, if the Court does not issue a preliminary injunction enjoining the Trump Group from prosecuting their counterclaims in the Delaware action that would withstand an immediate appeal, the Orly Trust would be enjoined from responding to those counterclaims which could allow the matter to be decided on default or other motion, to the great detriment of the Orly Trust.

## II.    Orly Must Post a Substantial Undertaking for any Preliminary Injunction.

A preliminary injunction is "a drastic remedy because it requires a party either to refrain from certain conduct or to perform certain acts before the party's obligations have been definitively adjudicated. Thus, a preliminary injunction "should be issued cautiously and in accordance with appropriate procedural safeguards." *Uniformed Firefighters Ass'n of Greater New York v. City of New York*, 79 N.Y.2d 236, 241 (1992). "To afford reasonable protection to the defendant against an erroneous or improper grant of this special provisional remedy, the plaintiff as beneficiary thereof is *required* to post an undertaking in an amount fixed by the court." *Margolies v. Encounter, Inc.,* 42 N.Y.2d 475, 479 (1977)(emphasis added). Accordingly, CPLR § 6312(b) requires that:

> prior to the granting of a preliminary injunction, the plaintiff shall give an undertaking in an amount to be fixed by the court, that the plaintiff, if it is finally determined that he or she was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of the injunction

Therefore, "[i]f it is later finally determined that the preliminary injunction was improperly granted there will then be a ready source from which the defendant may recover for damages which he may have sustained." *Margolies*, 42 N.Y.2d at 479.

The undertaking in this case should be at least equal to the value of the TRI shares at issue[17] plus an amount sufficient to reimburse the Orly Trust in the event the order is determined to have been improvidently issued.

III.     **The Federal Court May Enjoin the Delaware Action in Favor of the Interpleader Action Pending Before Judge Keenan.**

In addition to the Delaware action, there is a federal statutory interpleader to determine who is entitled to the $10.3 million that the Trump Group paid in escrow for the TRI shares that TPR sold to the Orly Trust, which moneys have been paid into the federal court. *Pedowitz & Meister v. TPR Inv. Assoc., Inc. et al,* 11 civ. 1502 (JFK) (S.D.N.Y. filed Nov. 1, 2011); Meister Aff. Ex. F.

In that action, Dalia, as Trustee of the Orly Trust, has asserted a crossclaim seeking a judgment:

A.     Declaring that the Orly Trust is a protected purchaser and beneficial owner of the 1,102.80 shares of common stock of TRI sold to it by TPR;

B.     Declaring that the Orly Trust is entitled to all dividends declared or paid attributable to such shares since October 29, 2004; and

C.     Alternatively, awarding the Orly Trust the interpleaded funds, all interest thereon and any dividends paid to TPR attributable to such shares since October 29, 2004, if the Court declares that the Orly Trust is not the beneficial owner of such shares.[18]

---

[17] In her Second Amended Complaint, Orly Genger contends that the Orly Trust TRI shares are worth hundreds of millions of dollars. *See* Orly Genger v. Dalia Genger et al., Index No. 109749/09 Comp. ¶ 114 (N.Y. Co. Sup. Ct. filed August 11, 2010). At a bare minimum, the undertaking should be equal to the amount the Trump Group agreed to pay TPR for the Orly Trust's TRI shares, $10,314,005.

[18] Answer & Crossclaim of Dalia Genger p. 5, *Pedowitz & Meister v. TPR Inv. Assoc., Inc. et al,* 11 civ. 1502 (JFK) (S.D.N.Y. filed Nov. 1, 2011); Meister Aff. Ex. D.

If the Orly Trust's crossclaim in the interpleader action are successful, the Orly Trust will be declared the beneficial owner of the TRI shares; if they are *unsuccessful*, the Orly Trust will be entitled to the 10.3 million dollar escrowed fund, because TPR admitted that "TPR has relinquished in favor of the Orly Trust any economic interest in the TRI Shares, which includes any right to the interpleaded funds that might otherwise belong to TPR", "except for any rights that may exist by virtue of TPR being a creditor of the Orly Trust". Answer and Crossclaim of Dalia Genger, as Trustee, ¶4 and Reply thereto of TPR, ¶4.[19] Therefore, under <u>any</u> of the scenarios in the interpleader, the Orly Trust would obtain substantial rights immediately. This is significantly more than whatever speculative benefit the Orly Trust sought in this action.

On Friday, November 18th, we served a motion in the interpleader action asking that court to enjoin the defendants in that action, who included Orly Genger, from

A    from prosecuting the following actions: *Glenclova Investment Co. v. Trans-Resources, Inc.,* 08 civ. 7140 (JFK)(S.D.N.Y.); *Arie Genger & Orly Genger v. Sagi Genger et al.,* Index No. 651089/2010 (N. Y. Sup. Ct., N.Y. Co.); and *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors LLC et al.,* Del Ch. Ct., C.A. 6906 – CS (Del. Ch. Ct.) until further order of this Court, except those parties may participate in any oral arguments in those actions of pending motions to dismiss such actions; and

B    from commencing any new action affecting the property, instrument or obligation involved in the statutory interpleader action.

Meister Aff. Ex. H.

---

[19]    Meister Aff. Ex. G.

## Conclusion

For the foregoing reasons, this Court should deny the motion for a preliminary injunction enjoining Dalia Genger.

Dated: November 21, 2011

Respectfully submitted,

PEDOWITZ & MEISTER LLP

By: _____

Robert A. Meister
Marisa Warren
1501 Broadway, Suite 800
New York, NY 10036
212.403 .7330
Robert.meister@pedowitzmeister.com
Marisa.warren@pedowitzmeister.com
Attorneys for Dalia Genger

18

1

2   SUPREME COURT OF THE STATE OF NEW YORK

3   COUNTY OF NEW YORK : TRIAL TERM:   PART 12
    - - - - - - - - - - - - - - - - - - - - - - - X
4   ARIE GENGER and ORLY GENGER, in her
    individual capacity and on behalf of
5   THE ORLY GENGER 1993 TRUST,

6                           Plaintiffs,

7                    - against -

8   SAGI GENGER, TPR INVESTMENT ASSOCIATES,
    INC., DALIA GENGER, THE SAGI GENGER 1993
9   TRUST, ROCHELLE FANG, individually and
    as trustee of THE SAGI GENGER 1993
10  TRUST, GLENCLOVA INVESTMENT COMPANY,
    TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
11  NEW TR EQUITY II, LLC, JULES TRUMP,
    EDDIE TRUMP and MARK HIRSCH,

12
                          Defendants.
13  - - - - - - - - - - - - - - - - - - - - - - - X

14  Index No. 651089/2010

15                          October 26, 2011
                            60 Centre Street
16                          New York, New York 10007

17  B E F O R E:   HON.  PAUL G. FEINMAN, Justice

18

19  A P P E A R A N C E S:

20

    MITCHELL SILBERBERG & KNUPP, LLP
21  Attorneys for Arie Genger
    12 East 49th Street
22  New York, New York 10017
    BY:  LAUREN J. WACHTLER, ESQ.
23        PAUL D. MONTCLARE, ESQ.

24  ZEICHNER ELLMAN & KRAUSE, LLP
    Attorneys for Orly Genger
25  575 Lexington Avenue
    New York, New York 10022
26  BY:  YOAV M. GRIVER, ESQ.

                Debra Salzman, Official Court Reporter

2    A P P E A R A N C E S:   (Cont'd)

3

4

5    PEDOWITZ & MEISTER, LLP
     Attorneys for Dalia Genger
6    1501 Broadway
     New York, New York 10036
7    BY:   ROBERT A. MEISTER, ESQ.
           MARISA H. WARREN, ESQ.
8

9

10

11                                      Debra Salzman, RMR
                                        Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

```
 1                          Proceedings

 2              A F T E R N O O N   S E S S I O N

 3              THE COURT:  Back so soon.

 4              MS. WACHTLER:  Apologize for that.

 5              THE COURT:  So what's happening?

 6              Dalia has gone to court.

 7              MR. GRIVER:  Dalia has gone to court, but not

 8      here; she's gone to court in Delaware.  And we are asking

 9      the Court to put in a temporary restraining order and to

10      enjoin Dalia from continuing to prosecute her duplicative

11      action.

12              In my papers I cite cases and it's is clear that

13      the Court has the equitable power to enjoin Dalia in order

14      to protect Orly, protect the court and preserve this

15      court's jurisdiction.  And so I think I'm going to spend a

16      little time talking to you about why the Court should

17      impose a TRO.

18              First, there's no question that the case that

19      Dalia started is duplicative.  It has the exact same legal

20      issue as what's before the Court in the 2010 matter, the

21      beneficial ownership of the TRI shares.  That's it.  If you

22      compare the first count of the third amended complaint

23      before your Honor and the first count of Dalia's case in

24      Delaware, they're the same.  They both make claims as to

25      who owns the beneficial ownership of the exact same shares.

26              More importantly, there's no reason that the case
```

Debra Salzman, Official Court Reporter

```
 1                        Proceedings
 2    should be in Delaware.  Everything is in New York and this
 3    is where this issue should be decided.  Dalia isn't a
 4    resident of Delaware.  She lives in New York.  Orly lives
 5    in New York.  The Orly Trust is a New York trust.
 6              THE COURT:  There aren't too many places in
 7    Delaware -- I shouldn't say this on the record -- there are
 8    a couple of beautiful places in Delaware along the shore,
 9    Bethany, I think, is the name of the town, and Rehoboth,
10    Delaware and some of the towns up along that coastline are
11    beautiful.  And other than the credit cards, you like to be
12    in Wilmington, there's not too many places to --
13              MS. WACHTLER:  You're not convincing me.
14              THE COURT:  The shoreline is beautiful.  But any
15    way, you're right, they don't live in Delaware.
16              MR. GRIVER:  They don't.  The Orly Trust, it
17    calls for the application of New York law.  TPR is located
18    in New York.  All the contracts at issue are located in New
19    York.  The stipulation and divorce decree is New York.  The
20    divorce is a New York divorce.  The marriage was a New York
21    marriage.  All the parties necessary for determination of
22    this issue are before this Court.
23              THE COURT:  If they had gone to a bet din in
24    Israel then maybe we wouldn't have had all these problems.
25              MR. GRIVER:  Maybe.  But Orly chose to be here.
26    All kidding aside, Orly chose to be here and she chose to
```

| | |
|---|---|
| 1 | Proceedings |
| 2 | be here 15 months ago.  She asked this court to decide |
| 3 | this.  Dalia is in this court.  The Orly Genger Trust is in |
| 4 | this court.  There are parties that should be part of this |
| 5 | decision, a part of this adjudication that are not in |
| 6 | Delaware.  Orly, for example, is not part of that suit. |
| 7 | Arie is not part of that suit. |
| 8 | You know, I made a list of all of the reasons |
| 9 | that this case should be in New York and then I made a list |
| 10 | of why this case is now in Delaware and I came up with one, |
| 11 | and that's Chancellor Strine.  Delaware should be the last |
| 12 | place that the Orly Trust would want to be because |
| 13 | Chancellor Strine, as you know from the papers, or perhaps |
| 14 | you don't, already ruled on this issue and ruled against |
| 15 | the Orly Trust. |
| 16 | The Orly Trust actually has that as part of her |
| 17 | complaint in the action that she's brought.  She actually |
| 18 | talks about the fact that the court that she chooses to be |
| 19 | in front of has already ruled against her.  That's |
| 20 | paragraph 34 of her complaint.  And she's absolutely right, |
| 21 | because this court ruled in paragraph 8 of its final |
| 22 | judgment that TPR owned the trust, not -- that TPR owned |
| 23 | the TRI shares, not the Orly Trust.  And what this case is |
| 24 | designed to do, your Honor, is get this case in front of a |
| 25 | judge that has already decided this issue against the |
| 26 | trust. |

Proceedings

1

2          Now, granted, it should not have made that

3   decision.  It made that decision as part of an in rem

4   proceeding.  It had no right to make that decision.  The

5   Delaware Supreme Court reversed it and they reversed it

6   saying, look, you don't have, among other things,

7   jurisdiction over the Orly Trust.

8          So Dalia did that.  And just last night, your

9   Honor, the Trump Group filed an answer to a motion to

10  dismiss.  And on page 31 of their brief --

11          THE COURT:  Motion to dismiss in Delaware.

12          MR. GRIVER:  Yes, the motion to dismiss the

13  Delaware action.  They tried to bring a plenary proceeding

14  and that's being opposed because --

15          MR. MEISTER:  Excuse me.  That's not the Orly

16  action.

17          MR. GRIVER:  This is another case in Delaware.

18          THE COURT:  Okay.

19          MR. GRIVER:  That involves the Trump Group and

20  the attempt to sue TPR and Arie Genger over the Arie Genger

21  portion of the TI shares.

22          THE COURT:  Okay. Arie Genger.

23          MR. GRIVER:  Yes.  And Arie Genger has moved to

24  dismiss saying, among other things, "You don't have

25  jurisdiction over me.  You don't have personal jurisdiction

26  over me."

```
 1                          Proceedings
 2           But the Trump Group filed papers there and they
 3   said -- and this is on page 31.  I'll give a copy to you
 4   and your Honor, if you'd like -- they say the Orly Trust is
 5   now before this court.  And they drop a footnote and they
 6   say, "On October 4, 2011, Dalia Genger, as trustee, filed
 7   an action in this court on the Orly Trust behalf seeking a
 8   determination as to beneficial ownership and, accordingly,
 9   this court now has the power to make these decisions."
10           This could not have been an accident.  This has
11   to have been the intent.  And, your Honor, the cases are
12   clear that in a situation like this, the first filed
13   authority, that is you, protects its authority and the
14   desire --
15           THE COURT:  It's about time I won something,
16   right?
17           MR. GRIVER:  And the desire of Orly Genger.
18           And, finally, you have to ask yourself, why is
19   Dalia doing this?  And more importantly, is Dalia really
20   going to protect the Orly Trust?
21           THE COURT:  Better going into it having the judge
22   on your side, right?  She knows that.
23           MR. GRIVER:  I think the Court has to ask itself
24   who is more likely to protect the assets of the Orly Genger
25   Trust; is it Orly Genger, the beneficiary, or is it Dalia
26   Genger as trustee?
```

```
 1                         Proceedings
 2              And the Court knows because we've put it out
 3       before you --
 4              THE COURT:  Well, let me ask you.  I haven't
 5       asked this before.  But if you are so convinced that Dalia
 6       is set about ruining her daughter financially or helping
 7       the brother ruin the daughter financially, why not go back
 8       to the Surrogate's Court and renew your application to
 9       remove her?
10              MR. GRIVER:  You know, we thought about that, but
11       there's differences between the two actions.  There's a
12       reason why there are two actions.  We are seeking to remove
13       Dalia.  What Dalia has done is going to be placed on top of
14       everything else she has done as a reason that she needs to
15       be removed.  But the issue of the beneficial ownership of
16       the shares is before this Court and the issue of the
17       beneficial ownership of the shares Dalia is now trying to
18       place in front of the Delaware court.
19              THE COURT:  I understand the issue.  I was just
20       wondering.
21              MR. GRIVER:  We will make this known to the
22       Surrogate Court.  The Surrogate Court is in the midst of
23       its application.  It is moving at its own speed.  What we
24       need is we need a TRO to protect --
25              MS. WACHTLER:  December.
26              MR. GRIVER:  -- there's been a motion to dismiss
```

Debra Salzman, Official Court Reporter

| | |
|---|---|
| 1 | Proceedings |
| 2 | pending since, I believe, December 12th of 2010, with all |
| 3 | deliberate speed. |
| 4 | THE COURT:  The 60-day rule doesn't apply there. |
| 5 | MS. WACHTLER:  I don't think any rules apply in |
| 6 | the Surrogate's Court. |
| 7 | MR. GRIVER:  Mr. Meister practices there more |
| 8 | than I do. |
| 9 | THE COURT:  120 is on the outside. |
| 10 | MR. MONTCLARE:  That court is very overworked, |
| 11 | Judge, really, truthfully. |
| 12 | MR. GRIVER:  There are only two surrogates. |
| 13 | THE COURT:  They have a staff that I tell you is |
| 14 | unrivaled.  It is what it is.  Okay. |
| 15 | MR. GRIVER:  It is what it is. |
| 16 | THE COURT:  The bottom line is you have the |
| 17 | application pending.  I didn't remember that or maybe I |
| 18 | didn't know that and that's why I didn't remember that. |
| 19 | MR. GRIVER:  Right.  We do have an application |
| 20 | pending and we actually put in an affidavit from Judith |
| 21 | Seigel-Baum, who is Orly's lawyer in the surrogate |
| 22 | proceeding, to explain the difference between the two |
| 23 | actions and why this is the only court who can protect Orly |
| 24 | in this case.  She can't go to Delaware without placing |
| 25 | herself under the jurisdiction of that court, which she |
| 26 | does not want to do. |

| | |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT:  She doesn't want to do it for the |
| 3 | same reason they want to do it.  I understand that. |
| 4 | MR. GRIVER:  But she's faced with a Hobson's |
| 5 | choice. |
| 6 | THE COURT:  Who was it who said, you know, the |
| 7 | goal here is to get everything in one court with |
| 8 | jurisdiction.  Was that the Southern District who dropped |
| 9 | that footnote? |
| 10 | MR. GRIVER:  That was the Delaware Supreme Court |
| 11 | suggested New York. |
| 12 | THE COURT:  Right. |
| 13 | MR. GRIVER:  Justice Solomon a few weeks ago -- |
| 14 | THE COURT:  I think they actually suggested the |
| 15 | Southern District. |
| 16 | MR. MONTCLARE:  Like a court in New York like the |
| 17 | Southern District.  And the reason for that, Judge, just so |
| 18 | you know, is that in the briefing that was brought up by |
| 19 | the other side that there's already a case in the Southern |
| 20 | District. |
| 21 | MR. GRIVER:  Right.  But all of the cases that I |
| 22 | cite stand for the proposition that a court has equitable |
| 23 | power to do this and must do this because it should not |
| 24 | permit another court proceeding to interfere with its |
| 25 | determination of issues that are already before it. |
| 26 | THE COURT:  The question is, whether it would |

| | Proceedings |
|---|---|
| 1 | |
| 2 | render any order that I might issue ineffectual. |
| 3 | So what say you? |
| 4 | MR. MEISTER:  Let me answer in similar aspects. |
| 5 | First, just to apprise the Court, this morning, |
| 6 | in the Delaware action, the Trump Group and TRI filed an |
| 7 | answer and counterclaim seeking a determination from that |
| 8 | court.  The Orly Trust does not beneficially own the |
| 9 | shares.  So issue is joined, addressed to the question of |
| 10 | the stay, which would prohibit Dalia from prosecuting the |
| 11 | Delaware action.  If that stay were granted, presumably she |
| 12 | wouldn't respond to the counterclaim. |
| 13 | So I think starting with a balance of harms -- |
| 14 | THE COURT:  Well, wait a minute. |
| 15 | There's a stay in effect.  It's not like she's |
| 16 | going to lose her right to reply if and when such stay is |
| 17 | vacated.  I mean I'm not expert on Delaware civil |
| 18 | procedure, but I can't imagine a code that would -- |
| 19 | Delaware is a great court of equity, the chancellor's |
| 20 | court, that's going to say you lose your right to reply to |
| 21 | a counterclaim because you were stayed. |
| 22 | MR. MEISTER:  I don't know, your Honor.  We just |
| 23 | found out about it literally this morning. |
| 24 | THE COURT:  That may not be your strongest |
| 25 | argument, that she's going to lose her right to respond to |
| 26 | the counterclaim because I find that hard to believe. |

| | |
|---|---|
| 1 | Proceedings |
| 2 | MR. MEISTER:  Let me then answer on the |
| 3 | question -- |
| 4 | THE COURT:  If necessary, you could always |
| 5 | fashion a stay such that "but for her right to file her |
| 6 | reply to a counterclaim," you know. |
| 7 | MR. MEISTER:  Let me answer then on, if you will, |
| 8 | the points under the heading of probability of success of |
| 9 | this motion. |
| 10 | First, my colleague says that this action before |
| 11 | your Honor seeks the determination of the beneficial |
| 12 | ownership and cites the first count in the complaint.  The |
| 13 | first count -- I have it in front of me -- Orly is not a |
| 14 | party to.  It's a claim by Arie that seeks, in effect, to |
| 15 | undo the whole kit and caboodle from the divorce. |
| 16 | Arie and Orly are parties on the second count. |
| 17 | The second count, even more tellingly, doesn't seek to |
| 18 | recover the TRI shares for the Orly Trust any more than the |
| 19 | first does.  The second count seeks to recover the TRI |
| 20 | shares, if you will, for Arie.  They seek a constructive |
| 21 | trust against the Orly Trust in favor of Arie. |
| 22 | And what that seeks in those two counts is that |
| 23 | the TRI shares go back to TPR and that TPR shares go back |
| 24 | to Arie for his life.  In other words, this is an attempt |
| 25 | to renegotiate the seven-year-old divorce settlement |
| 26 | agreement. |

```
 1                           Proceedings
 2              But what it isn't is, it isn't a claim seeking to
 3     recover for the Orly Trust the TRI shares, as Orly in her
 4     affidavit in support of the motion here says.  Those
 5     issues, with much respect, are not before your Honor.  They
 6     haven't been brought before your Honor.  In fact, the Orly
 7     Trust is not before your Honor.
 8              Dalia Genger is a defendant in the action in her
 9     capacity as, if you will, former wife and party to the
10     separation stipulation and the attempt to undo seven years
11     of whatever, due to Arie's concealing the fact that there
12     was a consent needed from the Trumps.
13              I would add as further evidence of this that TRI,
14     the issuer of the shares in question, was not even added to
15     this action as a party until the supplemental summons was
16     filed on September 20th of this year.
17              Now, as to Orly Trust not being a party, I
18     emphasize that Dalia is a party in her individual capacity
19     and, respectfully, Orly, although she is a beneficiary, she
20     is not the sole beneficiary, as one of the affidavits says,
21     I think it's Ms. Seigel-Baum, who should know better
22     because my first motion to dismiss her complaint --
23     petitioner, I should say -- in the Surrogate Court, was the
24     failure to join the other beneficiary, which is a
25     contingent beneficiary coming into existence if she doesn't
26     have children during her life.
```

| | |
|---|---|
| 1 | Proceedings |
| 2 | But it's a basic question of trust law.  The |
| 3 | trustee has discretion to do things with the corpus of the |
| 4 | trust of which the attempts to get these shares declared |
| 5 | beneficially owned by the trust is quintessentially a right |
| 6 | of the trustee.  It's not the beneficiary. |
| 7 | The fact that the trust agreement says it's |
| 8 | governed by New York law is interesting but irrelevant.  It |
| 9 | doesn't affect who owns the shares.  The fact that the |
| 10 | beneficiary happens to live here and in fact the trustee |
| 11 | happens to live here is also irrelevant. |
| 12 | In essence -- oh, the last thing I should say is |
| 13 | to the degree that there are claims asserted in this action |
| 14 | before your Honor, all of the defendants have moved to |
| 15 | dismiss those claims.  And at the request of counsel for |
| 16 | Arie, the briefing on that was extended so that those |
| 17 | motions won't be fully briefed until December 9th. |
| 18 | Respectfully, I can't speak for the other ones. |
| 19 | We feel pretty confident about our motion to dismiss the |
| 20 | motion to, in effect, undo the divorce, which is what Dalia |
| 21 | is being sued for in this action. |
| 22 | Some of the moving affidavits, particularly |
| 23 | Ms. Seigel-Baum's, talks about the other action -- |
| 24 | THE COURT:  Why the rush in Delaware? |
| 25 | MR. MEISTER:  Why the rush? |
| 26 | THE COURT:  Yes. |

| 1 | Proceedings |

2   MR. MEISTER:  I don't know --

3          THE COURT:  Why not let this work its way through

4   and why, at the end of the day, if Delaware needs to rule,

5   let them.

6          MR. MEISTER:  Well, the end of what day, your

7   Honor?  The issues aren't before your Honor.

8          THE COURT:  The end of the case -- well, so say

9   you, not so say them.

10          MR. MEISTER:  Well, that's true.  They don't say

11   that but their pleading does.  Your Honor, respectfully, is

12   bound by the pleading, not by what my colleague across the

13   way suddenly says is before your Honor and is not before

14   your Honor.  It is before Judge Keenan in the Southern

15   District of New York where they have made an application

16   for permission to make a motion to dismiss or stay.  That

17   will be discussed with Judge Keenan November 3rd.

18          MR. MONTCLARE:  That's a motion to stay based on

19   abstention.

20          MR. MEISTER:  Among other grounds -- that's

21   solely?  Okay.  I haven't seen your motion yet.

22          MR. GRIVER:  It's abstention based on the fact

23   that this is a New York divorce proceeding and federal

24   courts generally give deference to a New York court.

25          MR. MONTCLARE:  And even under Colorado River

26   abstention, Judge, which is basically there's two exact set

| | Proceedings |
|---|---|
| 1 | |
| 2 | of motions filed in both courts on the same day with the |
| 3 | same return dates, you're going to have two courts -- and |
| 4 | they're very complicated motions -- it's just senseless to |
| 5 | proceed in two courts. |
| 6 | THE COURT:  What if the other judge is smarter |
| 7 | than I am, should I let him do it or her? |
| 8 | MR. MEISTER:  He's probably wondering the same |
| 9 | question in the obverse. |
| 10 | MR. MONTCLARE:  We're sitting with Judge Keenan |
| 11 | on, I think, next Thursday. |
| 12 | MS. WACHTLER:  On November 3rd. |
| 13 | MR. MONTCLARE:  And he's going to address our |
| 14 | abstention motion and a briefing schedule generally on the |
| 15 | motions to dismiss. |
| 16 | MR. MEISTER:  So returning to the question you |
| 17 | put to me.  Frankly, the reason to get this decided is to |
| 18 | get it decided, you know, this has been hanging around now |
| 19 | since 2008 when the Trumps first filed their first action. |
| 20 | I think the federal case has been pending since 2008. |
| 21 | If we can defeat the Trumps' argument that the |
| 22 | Orly Trust is precluded by collateral estoppel or |
| 23 | res judicata from contending that the shares belong to the |
| 24 | trust, and we hope we can, it puts us in a position to |
| 25 | negotiate with them because, when all is said and done, |
| 26 | there are two ways this can wind up. |

```
1                           Proceedings
2               The shares can wind up --
3               THE COURT:  Now Dalia is going to stand up to the
4     Trumps on behalf of Orly's beneficial interest?
5               MR. MEISTER:  Yes.
6               THE COURT:  Okay.
7               MR. MEISTER:  I mean the action down there is not
8     to find out who owns the shares as they characterize it.
9     It seeks a declaration that the Dalia -- that the Orly
10    Trust is the beneficial owner of the shares.
11              Now, that may be a tough argument, even apart
12    from the collateral estoppel issues, which we feel a little
13    bit better about, and it may be a tough argument, but we're
14    entitled to try to make it.
15              If we make it, then the Trumps Group beneficially
16    own the shares and the trust does, which I think would
17    strengthen any hand in negotiation.  If for some reason it
18    loses, then we have an action, an interpleader action, as
19    your Honor knows, dealing with the $10.3 million which was
20    paid by the Trump Group, assuming they had the right to
21    purchase the shares.  And that would put at least
22    $10.3 million to the benefit of the trust, which at the
23    moment is sitting, you know, with a corpus solely of this
24    possible right, which we hope it is a right, to the TRI
25    shares.
26              If it gets the TRI shares, they will be sitting
```

Debra Salzman, Official Court Reporter

1          Proceedings

2      with shares which don't pay a significant dividend.  Any

3      dividends that have been paid have been held in escrow, I'm

4      told, shares that can't be sold to anyone, shares that are

5      pieces of paper, if in fact they're pieces of paper now as

6      opposed to bookkeeping, which would only have value to the

7      organization, the trust, if someone buys them and as a

8      practical matter, there ain't nobody going to buy these

9      things but the Trumps.

10          So the name of the game seems to be either to

11     increase our leverage with the Trumps, on the one hand, or

12     to get the shares and sit there and hold them in the hopes

13     that the Trumps, in fact, do what counsel have represented

14     in court is their hidden intention, not the Trumps' counsel

15     mind you, of taking the company public for a billion

16     dollars $2 billion.  I've heard various figures thrown out.

17          But sitting around here and litigating in -- I

18     can't think of how many courts -- one, two, three, four,

19     five courts is not in anyone's interest and the Delaware

20     court seems able to move the case quickly and hopefully

21     with a favorable result.  Either way the trust will

22     benefit.

23          MR. MONTCLARE:  Just on behalf of Arie, and it's

24     very important that just --

25          MR. MEISTER:  Can I just object here because

26     Arie, with much respect, shouldn't be a party to this

| | Proceedings |
|---|---|
| 1 | |
| 2 | argument.  Arie is trying to take the shares away from -- |
| 3 | MR. MONTCLARE:  We have an interest in these |
| 4 | shares as well.  We have a voting interest in these shares |
| 5 | and I do have an interest and I have to correct absolute |
| 6 | mistakes you've just made. |
| 7 | The caption in this case is Orly individually in |
| 8 | her capacity as a beneficiary of the Orly Trust.  She's a |
| 9 | plaintiff in this case.  She's not a defendant in this case |
| 10 | and Dalia is in this case for the reasons that Mr. Meister |
| 11 | mentioned, but the main target here is the Trumps.  And the |
| 12 | idea is that in this constructive trust we believe that |
| 13 | Arie has a beneficial interest in the voting rights to |
| 14 | these shares.  He has a beneficial interest in his own |
| 15 | shares obviously. |
| 16 | In terms of the matrimonial case, again it's |
| 17 | skewed.  If you take a look at the relief we're requesting |
| 18 | in the first claim, in the reformation cases, we want to |
| 19 | put everything back to status quo ante, with the trust |
| 20 | having its percentages that it had indirectly before |
| 21 | through D & K, which the Court is aware, and that there be |
| 22 | distributions during the lifetime of Mr. Genger equal to |
| 23 | the exact percentage of the Orly Trust shares as they exist |
| 24 | now 19 percent and that only on death it's going to go to |
| 25 | Orly, and TPR is going to go back to being unowned by a |
| 26 | majority by Mr. Genger without any other assets in it but |

|   |   |
|---|---|
| 1 | Proceedings |
| 2 | TRI. |
| 3 | It's a little complicated, Judge, but the reality |
| 4 | is, is that the issue of beneficial ownership is going to |
| 5 | be determined here.  The constructive trust issues are |
| 6 | going to be determined here.  To suggest that it's a smart |
| 7 | move because it's quicker to go to Delaware and that |
| 8 | they're going to defeat a collateral estoppel decision by |
| 9 | the judge who is reversed by the Delaware Supreme Court is |
| 10 | unlikely. |
| 11 | And what concerns me is -- and we can't prove |
| 12 | this here and I'm not blaming Mr. Meister -- but we think |
| 13 | that Sagi is behind all this with his little puppeteer |
| 14 | strings saying, "Okay, I'll fix all these problems.  We'll |
| 15 | get back to Delaware by, one, having TPR, who I control, |
| 16 | bringing a separate action in Delaware."  The Trump say, |
| 17 | "Oh yeah, and we'll sue Arie in Delaware."  And now |
| 18 | Mr. Meister's client Dalia, all of a sudden, says the trust |
| 19 | is going to go into Delaware. |
| 20 | And now all of a sudden they push everything back |
| 21 | to Delaware in a court which is an equity court.  It's not |
| 22 | dealing with issues relating to reformation.  It's not |
| 23 | dealing with the constructive issues that we're bringing |
| 24 | up.  And now we have this pleading where they're claiming |
| 25 | on the other side collateral estoppel.  And you know what |
| 26 | it sounds like to me, Judge.  It sounds like to me that |

Proceedings

1
2    there is no adversary proceeding here.

3            And you know -- and then what -- and the question

4    arises to me -- I'll be quiet -- is to why anybody

5    representing the Orly Trust interest or Orly's interests as

6    a beneficiary would intentionally select the court, the

7    only court in the world that has already formed an opinion

8    that she was not truthful in some way or another in her

9    testimony, which he rejected in the case there down in

10   Delaware, and who's made specific rulings adverse to her,

11   which have been reversed by the Delaware Supreme Court.

12           It's just very confusing to me.

13           MR. MEISTER:  Your Honor, may I just respond to

14   that?

15           THE COURT:  In a moment.  Let me hear Mr. Griver.

16           MR. GRIVER:  Let me just address some of the

17   things that Mr. Meister said so that Mr. Meister can

18   respond to both of us at once.

19           The reason I pointed out the first cause of

20   action in the third amended complaint before your Honor,

21   there's a second cause of action where Orly is asking for a

22   constructive trust on behalf of her trust, but if you look

23   at paragraph 181(5), it asks that Orly Trust and Sagi Trust

24   each be declared the owner of 24.5 percent of TPR, so

25   together they own the remaining 49 percent of TPR.

26           The reformation that they're seeking will protect

| | |
|---|---|
| 1 | Proceedings |
| 2 | the Orly Trust because the TRI shares will be put back into |
| 3 | TPR and then the Orly Trust and the Sagi Trust will be |
| 4 | given the equivalent shares of TPR so that they will own |
| 5 | the same amount of TRI shares. |
| 6 | In a different way, they are asking that the Orly |
| 7 | Trust be given the TRI shares back.  So it is the exact |
| 8 | same lawsuit except we have more people and we have more |
| 9 | issues and we actually have context in New York. |
| 10 | As for the Orly Trust not being here because |
| 11 | Dalia is the trustee, this court already decided in the |
| 12 | 2009 action before your Honor that Orly has the right to |
| 13 | bring an action on behalf of her trust as the sole actual |
| 14 | non-contingent beneficiary. |
| 15 | And Mr. Meister says that this is a situation of |
| 16 | trust law.  I would say it's simpler than that.  It's a |
| 17 | question of who do you trust.  And is Dalia really going to |
| 18 | be in Delaware fighting tooth and nail the way Orly is |
| 19 | fighting here to protect the Orly Trust?  I would suggest |
| 20 | to you that based on past is prologue, the answer is |
| 21 | absolutely not, not just in her choice to go to the worst |
| 22 | jurisdiction and get this case before the worst possible |
| 23 | judge in the United States of America, but if you think |
| 24 | about it look about what happened -- |
| 25 | THE COURT:  Be careful what you say.  These |
| 26 | transcripts are put up on the Web. |

| 1 | Proceedings |

2    MR. GRIVER:  They're going up on the Web and

3  they're being sent directly to Judge Strine.

4    MR. MONTCLARE:  They've already been sent to

5  Judge Strine.

6    MS. WACHTLER:  Everything we say in this court on

7  the record is put before Judge Strine too.

8    THE COURT:  Well, let him know that I actually

9  have vacationed many times in Delaware and think it's a

10  beautiful state on the coastline.

11    MS. WACHTLER:  Thank you for that help.

12    MR. GRIVER:  Mr. Meister said that the trust

13  doesn't really have anything except these potential

14  interests.  That's true.  But when Dalia became the trustee

15  of the trust, the trust had a corpus, it had assets.  Those

16  have been given away.  And the lawsuits about that where

17  the court has held that there are issues of fact as to

18  whether Dalia is acting with fraudulent intent in the

19  things that she do, you denied motions for summary judgment

20  brought by the defendants in the 2009 case.  Dalia has

21  acted to dissipate those assets and povertize Orly.

22    With regard to the TPI shares, she allowed Sagi

23  to enforce a D & K note that she had successfully argued to

24  another judge was never to be enforced.  With the TRI

25  shares she signed a piece of paper.  And what fiduciary

26  does this?  She signs a piece of paper that says the

Debra Salzman, Official Court Reporter