21.     Thereafter, on August 30, 2013, the Delaware Chancery Court found that: "the Trump Group had the right to buy all of the improperly transferred [TRI] stock from TPR" and "[t]he Trump Group, having closed on the purchase of the [TRI] Shares (representing 1102.8 shares of [TRI] stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of [TRI] purportedly transferred by TPR to the Orly ...Trust." The Chancery Court directed that the TRI Share Sale Proceeds shall remain in escrow "until such time as a court in New York shall direct the[ir] disposition." *Id.*

22.     Accordingly, TPR is entitled to the TRI Share Sale Proceeds.

23.     The Pedowitz firm, as the escrow agent, has nevertheless declined to release the TRI Share Sale Proceeds to TRI absent an order from a Court in New York. Accordingly, it should be instructed to release the TRI Share Sale Proceeds in the Escrow Account, along with any interest accrued thereon, to TPR.

24.     TPR does not seek monetary damages and has no adequate remedy at law.

WHEREFORE, TPR requests this Court to issue an Order: (a) permanently enjoining and directing the Pedowitz firm to release to TPR all of the TRI Share Sale Proceeds held in the Escrow Account, plus any and all accrued interest earned thereon, and (b) granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      November 18, 2013

MORGAN, LEWIS & BOCKIUS LLP

*/s/ John Dellaportas*

John Dellaportas
jdellaportas@morganlewis.com
Nicholas Schretzman
nschretzman@morganlewis.com
Mary C. Pennisi
mpennisi@morganlewis.com
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000

*Attorneys for Plaintiff*
*TPR Investment Associates, Inc.*

```
                          E4TATPRA
                                                 1
     E4TATPRAps
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   -----------------------------x
 2
 3   TPR INVESTMENT ASSOCIATES, INC.,
 3
 4
 4                 Plaintiff,
 5
 5            v.                         13-cv-8243 (JFK)
 6
 6   PEDOWITZ & MEISTER LLP,
 7   as escrow agent,
 7   et al.,
 8
 8                 Defendants.
 9
 9   -----------------------------x
10
10                                  New York, N.Y.
11                                  April 29, 2014
11                                  3:00 p.m.
12
12
13   Before:
13
14                 HON. JOHN F. KEENAN
14
15                                  District Judge
15
16
16                 APPEARANCES
17
17   MORGAN, LEWIS & BOCKIUS, LLP
18        Attorneys for Plaintiff
18   BY:  JOHN DELLAPORTAS, ESQ.
19        MARY C. PENNISI, ESQ.
19
20   ZEICHNER, ELLMAN & KRAUSE, LLP
20        Attorneys for Defendant Orly Genger
21   BY:  YOAV M. GRIVER, ESQ.
21        BRYAN LEINBACH, ESQ.
22
22   PEDOWITZ & MEISTER, LLP
23        Defendant Pro Se
23   BY:  ROBERT A. MEISTER, ESQ.
24
24   JUDITH BACHMAN, ESQ.
25        Attorney for Defendant Dalia Genger
                 SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                                                 2
     E4TATPRAps
 1            (In open court)
 2            THE COURT:  Good afternoon.
 3            Before we get to the argument on the three motions, I
 4   wanted to find out something.  Mr. Meister?
 5            MR. MEISTER:  Yes, your Honor.
 6            THE COURT:  How are you?  All right.  Now, you
 7   represent your firm as Pedowitz & Meister, right?
 8            MR. MEISTER:  Yes, your Honor.
                          Page 1
```

E4TATPRA
```
 9          THE COURT:  Do you any longer represent the Orly
10   Trust?
11          MR. MEISTER:  Not in this action.  I do in other
12   actions.
13          THE COURT:  OK.  Because I was concerned about the
14   possibility of a conflict.
15          MR. MEISTER:  We did get waiver letters at the very
16   outset, your Honor.
17          THE COURT:  All right.  You did.  But in this action,
18   Ms. Bachman, you're representing --
19          MS. BACHMAN:  Ms. Genger, Dalia Genger, correct, as a
20   trustee of the Orly Trust.
21          THE COURT:  You're representing Dalia Genger as
22   trustee of the Orly Trust?
23          MS. BACHMAN:  That's correct, your Honor.
24          THE COURT:  All right.  Fine.  I just wanted to make
25   sure I understood you.
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                                3

E4TATPRAps
```
 1          But you filed the briefs in this, Mr. Meister.
 2          MR. MEISTER:  I did, your Honor.
 3          THE COURT:  You did.  All right.  I just wanted to
 4   make sure I knew who was where.
 5          All right.  So first we're going to have argument on
 6   behalf of the motion that is being made to dismiss the action.
 7   And that's by Orly.  And, Mr. Leinbach, you're going to argue
 8   that, or Mr. Griver?
 9          MR. GRIVER:  Mr. Griver, your Honor.
10          THE COURT:  All right.  I'll hear you.
11          MR. GRIVER:  Thank you, your Honor.  And I'll be
12   seeking today to dismiss the action of TPR as well as the
13   crossclaims and interpleader action filed by Dalia Genger and
14   by Pedowitz & Meister as escrow agent.
15          Your Honor, on June 14th, 2012, you told the parties
16   before you in no uncertain terms that this Court would not
17   allow itself to be strongarmed into haling Orly into federal
18   court.  You reiterated that message on November 12, 2013, where
19   you stated, "It is inaccurate for TPR to suggest that the issue
20   of beneficial ownership is conclusively resolved."  Yet, only
21   six days later, on November 18th, TPR came in and brought an
22   action, followed by the actions and claims of the other
23   respondents.
24          So we are here again despite your instruction.  And we
25   are here on the flimsiest of grounds.  There is a specific
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                                4

E4TATPRAps
```
 1   September 1 escrow agreement that expressly sets forth five and
 2   only five enumerated rights in which proceeds -- and that's --
 3          THE COURT:  How do you fit this under subdivision 2 of
 4   that escrow agreement?  I don't see how you fit under that.
 5          MR. GRIVER:  Section 2 of the escrow agreement, your
 6   Honor, there is no way that TPR fits within section 2 of that
 7   escrow agreement.  I absolutely agree with you.
 8          THE COURT:  All right.
 9          MR. GRIVER:  And that's a whole point.  They come to
10   this Court and they ask you to direct the escrow agent to
11   disburse the escrow funds to it, $10.6 million.  But section 2
12   says, "No funds shall be disposed from escrow, from the escrow
13   account except in accordance with section 2."  And there is no
```
                              Page 2

E4TATPRA
14    question that TPR --
15              THE COURT:   Their argument is section 2, and you say
16    it doesn't apply.
17              MR. GRIVER:   It does not apply.   But that's not really
18    the argument, your Honor, because in their opposition brief,
19    they say, well, we kind of almost sort of applied.   But "kind
20    of almost sort of" is not what you look for in escrow
21    agreements.   You have to scrupulously adhere to the specific
22    terms.   This was a negotiated agreement.   Every one counts, and
23    section 2 has to be met, and they don't do it.
24              So instead they say to you this:   TPR asks you not to
25    enforce the escrow agreement but to help them breach it.   They
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              5
      E4TATPRAps
1     ask you to ignore it.   Respectfully, your Honor, this is not
2     what courts do.   Courts do not amend or ignore agreements.
3     They enforce them.
4               TPR's argument is that there are final judicial
5     findings which conclusively established TPR's entitlement to
6     those funds.   TPR is gone.   One of those findings that they
7     claim exists is something that you said.   "TPR takes one
8     statement out of this Court's 52-page opinion."
9               THE COURT:   That's what all of you do.
10              MR. GRIVER:   Excuse me?
11              THE COURT:   I say, that's what all of you do in this
12    litigation, not just TPR.   Everybody does it in this
13    litigation.   I read the minutes.   What was it?   75 pages or 77
14    pages from the Delaware Chancery Court by the Judge who now, as
15    I understand it, is the Chief Judge of Delaware.   And he points
16    out that everybody picks words here.
17              Let me ask you a couple of questions.   All right.   The
18    state action claim, you're asserting an unjust enrichment claim
19    against TPR arising from a sale of the Orly Trust shares to the
20    Trump Group.   Am I right so far?
21              MR. GRIVER:   That's correct.
22              THE COURT:   All right.   Is that claim still viable, or
23    did Justice Jaffe dismiss it?
24              MR. GRIVER:   No, Justice Jaffe did not dismiss it.   It
25    is viable.
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              6
      E4TATPRAps
1               THE COURT:   Now.   As I understand it, you have an
2     interlocutory appeal of certain rulings by the New York Supreme
3     Court.   There are two New York cases, right?
4               MR. GRIVER:   The two New York cases involving the
5     trust.
6               THE COURT:   OK.   One is on its way to the Court of
7     Appeals, I'm told?
8               MR. GRIVER:   No.   There is a motion seeking a leave to
9     appeal the unanimous decision of the Fourth Department.
10              THE COURT:   In other words, you would like to get to
11    the Court of Appeal.
12              MR. GRIVER:   TPR would like to get to the Court of
13    Appeal, Dalia Genger --
14              THE COURT:   It's not a done deal yet.
15              Now, the second thing that's in the state court, as I
16    understand it, that's your interlocutory appeal.   Right?
17              MR. GRIVER:   That's correct.
18              THE COURT:   All right.   Now, is that still extant?
                            Page 3

                              E4TATPRA
19          MR. GRIVER:   It is still extant.  We are going to be
20   arguing that shortly, your Honor, in about a month.
21          THE COURT:  Should I defer ruling on the motions here
22   until after the First Department rules?  Did the First
23   Department case ever have anything to do with this situation
24   here?
25          MR. GRIVER:  What Justice Jaffe did was, she dismissed
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                          7

     E4TATPRAps
1    some of our claims, but not others, including unjust enrichment
2    claims against Sagi Genger and TPR.  TPR was cross-moved to
3    dismiss everything.  So we have that the Court, in the
4    alternative, stay, and that is certainly something that the
5    Court can do, and that is to stay matters until the end of the
6    appeal process.
7           THE COURT:   OK.  Why does it matter whether I direct
8    the escrow agent, in other words, Pedowitz & Meister, to
9    release the 10.3 million to TPR?  Even if I do that, don't you
10   still have your claims for money damages?
11          MR. GRIVER:  We do have our claims for money damages,
12   your Honor, but --
13          THE COURT:   Well, what difference does it make?
14          MR. GRIVER:  Well, for one thing it would be violating
15   the escrow agreement.  For another thing, there's no basis for
16   the Court to take that action.  There has been no finding that
17   would permit the Court to do that.  TPR has moved for summary
18   judgment, but there are issues of fact as to whether TPR has
19   the right to those moneys.
20          I'll give you one example.  TPR is in the First
21   Department right now seeking leave to appeal to argue that they
22   have absolutely no right to those proceeds because they entered
23   into a settlement agreement in 2011 that gave all those
24   proceeds to the Orly Trust.
25          I'll give you another example.  We have a special
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                          8

     E4TATPRAps
1    proceeding before Justice Jaffe right now where we claim that,
2    under the escrow agreement, because of the failure to timely
3    object under the specific express terms of the escrow
4    agreement, the escrow agent shall disburse those moneys to
5    Orly.
6           THE COURT:   You've been litigating in New York State
7    Supreme for years, right?
8           MR. GRIVER:  Correct.
9           THE COURT:   Does the escrow agreement even mention New
10   York Supreme?
11          MR. MEISTER:  It does not, your Honor.
12          THE COURT:   I know it doesn't.  That's why I asked the
13   question.
14          MR. GRIVER:  Right.  It does not, your Honor.
15          THE COURT:   Yes.  But you're saying to me that I can't
16   rewrite the escrow agreement, that I should read it strictly.
17   And it's your position that -- is it your position that New
18   York doesn't have the power to litigate the dispute over the
19   money?
20          MR. GRIVER:  No, your Honor.  This is not the first
21   time that we've been in front of you saying that the New York
22   State Court should be the one to decide it.  There is no
23   question that it is a court of competent jurisdiction.  The
                            Page 4


E4TATPRA
24  interpleader before your Honor, which was another attempt by
25  Pedowitz & Meister to give this Court jurisdiction, if you look
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    9

E4TATPRAps
1   at section 2.C.3 of the escrow agreement, it says that the only
2   thing that the escrow agent can do is to interplead the funds
3   in a court of competent jurisdiction in order to, quote, obtain
4   an order from such court requiring the other parties hereto to
5   commence an arbitration proceeding pursuant to the purchase
6   agreement to resolve all issues arising pursuant to this escrow
7   agreement, period, end quote.
8          Pedowitz & Meister cannot come in here and interplead
9   and ask you to decide who gets the proceeds.  That's not what
10  the interpleader is for.  That's the specific language of this
11  agreement.  Nor can they come in and ask you to release them as
12  escrow agents.  They can, under 2.C.2, resign.  But the relief
13  that they seek is outside the specific language of the escrow
14  agreement.  They simply can't do that under the escrow
15  agreement.
16         And, your Honor, I helped negotiated this escrow
17  agreement.  This was a hard-fought document.  And for them to
18  just say, well, now that we don't like the terms of that
19  agreement, why don't you, your Honor, ignore them, that's
20  unacceptable.  That's not correct.  That's not what this Court
21  should do.
22         And look, your Honor, they talk about your opinion as
23  giving TPR the right to the proceeds.  Now, certainly your
24  Honor didn't think so when it issued its decision on November
25  12th, 2013, when you said that the issue of who beneficially
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    10

E4TATPRAps
1   owns the Orly Trust shares has not been decided.  But look what
2   you said about the escrow agreement, in the opinion that they
3   cite as you having determined that they have the right to the
4   proceeds.  On page 24, you note the fact that in the state
5   court the plaintiffs have, quote, privately contracted with the
6   potential plaintiffs in the form of an escrow agreement which
7   specifies the circumstances under which and to whom the escrow
8   funds are to be released.  And then you go on to say, "Once a
9   court enters judgment on this issue, the escrow agent can
10  disburse the escrow funds to the prevailing plaintiffs in
11  accordance with guidance set forth in the escrow agreement."
12         So this opinion, the Delaware stipulation, none of
13  that gives TPR or Dalia or the escrow agent the authority to
14  ignore the escrow agreement, which is exactly what they do.
15         So TPR argues that dicta in your opinion somehow was a
16  determination of beneficial ownership.  That's simply not true.
17  If you look at page 50 to 51 of your decision, you say exactly
18  what your finding is.  And that is that the claims, the
19  Pedowitz interpleader is dismissed for lack of subject matter
20  jurisdiction or pursuant to the Court's discretion to abstain.
21  And then you say, the pending action is stayed pending
22  resolution of the beneficial ownership of the Arie shares and
23  Orly Trust shares in the state courts.  Your Honor, the state
24  courts have not decided that.  If you look at the Delaware
25  stipulation, which is their attempt to say that that happened,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    11

Page 5

E4TATPRA
E4TATPRAps
1   you'll see that that's not true at all.  First of all, the
2   stipulation proposed an order of dismissal involved a case that
3   did not involve Orly Genger, and she was not a party to this
4   stipulation.  Second of all, if you look at paragraph 5 of that
5   stipulation -- and that's Exhibit B to the TPR complaint -- TPR
6   claims that this Delaware stipulation conclusively establishes
7   TPR's rights to the proceeds.  But look what Section 5 says.
8   "The claims brought by TPR for the sale of proceeds against the
9   trustee of the Orly Trust and the Trump Group have already been
10  dismissed without prejudice."  As a matter of simple logic,
11  your Honor, this stipulation cannot determine TPR's rights to
12  the proceeds, when TPR's claims were previously dismissed.
13          We go on to say how paragraph 1 only talks about
14  findings that were actually canceled as to the Orly shares by
15  the Delaware Supreme Court.  Paragraph 2 does not answer the
16  question who has the right to the proceeds or who was the
17  appropriate seller of those TRI shares.  There's no question
18  now, because of the settlement between Orly as beneficiary and
19  the Trump Group, that the fact that they had the right to buy,
20  we no longer have any claims as to that.  But we certainly are
21  claiming that TPR had no right to sell.  That's what our unjust
22  enrichment claims are, your Honor.  That's why we have a 2010
23  action that has been there for four years.
24          Unless the Court has --
25          THE COURT:  You reserve how much time for rebuttal?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              12
E4TATPRAps
1           MR. GRIVER:  Five minutes.
2           THE COURT:  All right.  Thank you.
3           MR. GRIVER:  Thank you.
4           THE COURT:  All right.  So next, we'll hear from,
5   Mr. Dellaportas is going to argue, right?
6           DELLAPORTAS:  Thank, your Honor.
7           THE COURT:  Would you use the lectern.  That way the
8   people behind you can hear you.  Thank you.
9           DELLAPORTAS:  Hopefully I'll be able to balance all
10  this.
11          THE COURT:  Put it on the rail there.
12          DELLAPORTAS:  Thank you, your Honor.
13          And this is essentially my opposition to the motion to
14  dismiss, and also my -- in support of the cross-motion for
15  summary judgment.
16          THE COURT:  Maybe I ought to take something up with
17  you right at the beginning before you get into your argument.
18  Not as long as you people but for some while I've had something
19  to do with this, and as I understood it, back when some of
20  these other cases were filed, TPR admitted that its principal
21  place of business was in New York City.  Now, nobody has raised
22  this, not anybody before me here has raised it.  But
23  jurisdiction is always something that's before me.
24          Now, as I read part of the 08 Civil 7140, that the
25  address for notice to TPR is care of Sagi Genger at 1211 Park
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              13
E4TATPRAps
1   Avenue.  Also, in the decision at 910 F.Supp.2d 657 -- I got
2   this from the papers, I didn't make it up -- Sagi Genger is a
3   joint United States and Israeli resident residing at 1211 Park
4   Avenue.
                              Page 6

                                E4TATPRA
 5              Now, at this point, you're saying that the reason that
 6    I have jurisdiction is because there is diversity and that
 7    TPR's principal place of business is in Connecticut, right?
 8              DELLAPORTAS:  Yes, your Honor.  And I can explain.
 9              THE COURT:  What?
10              DELLAPORTAS:  I can explain, if you'd like.
11              THE COURT:  All right.  Because we did a little
12    checking ourselves, and as I understand it -- and if I'm wrong
13    you correct me, and I'll certainly give you an opportunity to
14    say anything you want here -- as I understand it, Mr. Sagi
15    Genger put his house up, or the house, on Juniper Hill Road up
16    in Connecticut, in Greenwich, he put it up for sale.  Where is
17    he living?
18              DELLAPORTAS:  Connecticut, your Honor.
19              THE COURT:  What?
20              DELLAPORTAS:  Connecticut, your Honor.
21              THE COURT:  Is he still at Juniper Hill, or is he
22    somewhere else?
23              DELLAPORTAS:  I believe he's still at Juniper Hill.
24    This was never a home owner.  That was a rental.  Essentially
25    TPR has always been a Delaware corporation.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                14
      E4TATPRAps
 1              THE COURT:  I know that.  The question I'm asking you
 2    about is the principal place of business.
 3              DELLAPORTAS:  Until last summer his principal place of
 4    business was 1211 Park Avenue, in New York.  Now TPR, the
 5    president is Mr. Genger and he maintains a home office, which
 6    is the principal place of business.  Last summer, Mr. Genger,
 7    who has five children, two of his children have special needs.
 8    And so they found a special school in Connecticut.  And so the
 9    entire family moved there.  Over the last summer they moved
10    their house there and they moved the home office there.  And
11    all the correct filings were made with the state of Connecticut
12    to make sure that's right.  Now, we're still registered to do
13    business in New York.  But the principal place of business is
14    now Connecticut.  And before filing this we researched it, and
15    the case law says that you look to diversity questions and
16    citizenship at the time of the onset of the complaint.
17              THE COURT:  OK.  Go ahead.  That's fine.
18              DELLAPORTAS:  And the move has nothing to do with this
19    complaint or anything else.  It had to do with the special
20    needs.  We're happy to put in an affidavit to that effect.
21              As far as Mr. Genger being -- you asked something
22    about him being a joint U.S.-Israeli citizen?
23              THE COURT:  Yes -- joint New York or U.S. and Israeli
24    citizenship is not what concerns me.  It's the question of the
25    place of business.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                15
      E4TATPRAps
 1              DELLAPORTAS:  So we're satisfied that we have proper
 2    diversity jurisdiction and we're properly before this Court,
 3    your Honor.
 4              If I can proceed to the substance.
 5              THE COURT:  Go ahead.
 6              DELLAPORTAS:  So essentially, your Honor, we're here
 7    to enforce and implement the June 14th, 2012 order on its
 8    terms.  And I've read that it's dicta.  We don't believe that
 9    it's dicta.  Your Honor, we were all before your Honor some
                                Page 7

E4TATPRA
10   time ago.  And at the time, it was right after the Delaware
11   Supreme Court had ruled, somewhat ambiguously.  And Mr. Meister
12   came at that time and said, there are adverse claimants, there
13   is vexation litigation.  And your Honor said no.  And I think,
14   you know, it wasn't the position we took, but in retrospect we
15   didn't appeal it.  We think it was pretty common sense and the
16   legally correct decision, which is, there is no real adversity
17   here and thus no subject matter jurisdiction here under 28
18   U.S.C. 1335 because, as your Honor wrote, "All potential
19   claimants acknowledge that if Arie and the Orly Trust are
20   deemed -- if the 2004 transfer of shares to Arie and the Orly
21   Trust is found to be invalid, then TPR had the right to sell
22   the shares to the Trump Group and TPR would be entitled to the
23   interpleader funds".
24          Now, what's significant about this ruling is, this was
25   after the Delaware Supreme Court ruled how it did, because
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              16
     E4TATPRAps
1    they're taking the position that once the Delaware Supreme
2    Court didn't affirm under the escrow agreement all bets are
3    off.  Section 2.B.3 which talks about -- 2.B.2 -- which talks
4    about affirming, that doesn't count any more.  But that's not
5    what your Honor ruled.  What your Honor said is that any court
6    of competent jurisdiction can decide the beneficial ownership
7    and that will automatically determine who gets the shares.  And
8    your Honor said that the New York courts are well equipped to
9    do so and the Delaware courts are well equipped to do so and
10   probably New York is better, but you're going to leave that to
11   the parties to figure it out.  And you sent us all on our way.
12          So what happened next?  Well, TPR didn't file any
13   suits.  But this being it the Gengers, TPR didn't get sued just
14   in New York and didn't get sued just in Delaware.  We got sued
15   in both.  And I just heard that no court has made a finding of
16   beneficial ownership of the shares.  Absolutely incorrect.
17   Both courts have made a finding of beneficial ownership of the
18   shares.  Both are conclusive and final.
19          So let me just very briefly go through what happened
20   after your Honor made that ruling.  Your Honor knows some of it
21   from one of the prior skirmishes, but let me take you all the
22   way through it just again.
23          First, there was only one claim about beneficial
24   ownership of the shares -- that's what we're talking about
25   here -- in the 2010 action.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              17
     E4TATPRAps
1           It's important to note, by the way, that the 2010
2    action that they're asking you to stay for, that was filed
3    before the escrow agreement was signed.  So Orly understood and
4    contracted that the determination of beneficial ownership of
5    the shares wasn't going to be determined by the 2010 action; it
6    was going to be determined by Delaware.  The 2010 action
7    already existed when she signed that agreement.
8           THE COURT:  Well, you were down in Delaware, right?
9           DELLAPORTAS:  I was, your Honor.
10          THE COURT:  Didn't the chancellor down there,
11   Chancellor Strine, didn't he tell you that once the stipulation
12   was signed in Delaware, that the place to go was New York
13   Supreme, not -- he didn't say anything about filing a new
14   action before me.  Isn't that why the stipulation in Delaware
                             Page 8

E4TATPRA

15 reads, quote, a court in New York, close quote?
16          DELLAPORTAS:  Chancellor Strine said a court in New
17 York.  It did not say a state court in New York or a federal
18 court in New York.
19          THE COURT:  He knows the difference between a federal
20 court and a state court.  Come on.  He referred twice in that
21 proceeding specifically to me.  And I read the minutes.  I read
22 them yesterday and I read them again this morning.  And both
23 place -- he talks about federal court and me, and he even
24 mentions something about the Constitution.  If he meant federal
25 court, he would have said federal court.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              18
E4TATPRAps

1           DELLAPORTAS:  He expressed the concern that perhaps
2 there wouldn't be diversity jurisdiction.  There is.  And even
3 if he meant state court, Chancellor Strine is a great judge but
4 he doesn't have the authority to tell us which court to go to.
5 He kicked us all out of his court and after that --
6           THE COURT:  He certainly did.
7           DELLAPORTAS:  After that it's up to us.
8           THE COURT:  He didn't express a great deal of pleasure
9 with any of you that I read.
10          DELLAPORTAS:  Yes.  And I think he's had his fill of
11 the Gengers, as have many judges.  But before he did, he
12 entered a final order saying that beneficial ownership of the
13 shares was TPR's and TPR properly sold them.
14          Let's compare what your Honor ruled versus what he
15 then ruled.  Your Honor said, "If the 2004 transfer of shares
16 to Arie Genger to the Orly trust is found to be invalid, then
17 TPR has the right to sell the shares to the Trump Group and TPR
18 would be entitled to the interpleader funds."
19          Now we did to what Chancellor Strine ruled.  He ruled
20 that the shares were invalid.  He used the term "void" but it's
21 the same thing.  The transfers were void and the stock reverted
22 to TPR and the Trump Group had the right to buy all of the
23 improperly transferred Trans-Resources stock from TPR.  And
24 then he said, it's now -- that transaction is complete.  These
25 are paragraphs 1 and 26 his ruling.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              19
E4TATPRAps

1           So his ruling gave exactly the ruling that your Honor
2 said we would need to obtain in order to satisfy the
3 interpleader the last time around.
4           Now, he didn't rule that we're entitled to the money.
5 He didn't want to rule that.  He said go to New York to figure
6 out who's entitled to the money.  But that doesn't stop the res
7 judicata or collateral estoppel effect on which the Court
8 ruled, on which your Honor ruled.
9           Just to be clear, we don't say Chancellor Strine said
10 we're entitled to the money.  We say this Court said under
11 express conditions we would be entitled to the money.
12          THE COURT:  You make a big point here, as I understand
13 it, as I read this, that Orly filed a state court action last
14 December and that she never claimed the funds in the original
15 Supreme Court action.  Right?  You make a point about that,
16 don't you?
17          DELLAPORTAS:  She never claimed ownership of them.
18 What she claimed was that by our obtaining them --
19          THE COURT:  Isn't that what the unjust enrichment
                              Page 9

E4TATPRA
20    claim is?
21              DELLAPORTAS:  Your Honor said exactly the opposite.
22    With respect to Arie's shares, which is the same shares, when
23    this was before your Honor last time -- and this is on page 24
24    of your Honor's decision -- your Honor noted the difference.
25    You said, "Well" -- and this is about Arie but it's the same
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    20

E4TATPRAps
1     shares -- "Well, Arie asserts a beneficial ownership in the
2     underlying Trans-Resources shares.  In no case does he have a
3     claim against the interpleaded funds themselves.  Instead,
4     Arie's numerous counterclaims seek money damages for a breach
5     of fiduciary duties that are ancillary to and beyond the scope
6     of the Skadden interpleader."
7              That is the same thing here.  They have money damages
8     claims.  Your Honor asked exactly the right question:  If they
9     give us the money, do they still have money damages claims?
10    Absolutely.  Absolutely they still have money damages claims.
11    And maybe they'll win and maybe they will be worth more than
12    10.3, maybe they will be less than 10.3.  But what's been
13    noted, that the first element of a claim for unjust enrichment
14    is that we were enriched.  And so far we're being sued for
15    unjust enrichment and we haven't been enriched.  So our point
16    is, at least allow us to be enriched.  And then we can have a
17    trial over whether it was just or unjust.
18              THE COURT:  Let me ask you one more question and I'll
19    wrap it up.  Are you saving time for rebuttal too?
20              DELLAPORTAS:  I will save a couple minutes.  But I
21    have a couple of great points, your Honor.
22              THE COURT:  Let me ask you this.  You're arguing that
23    the Delaware stipulation satisfies section 2.B.2 of the escrow
24    agreement, right?
25              DELLAPORTAS:  It does, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    21

E4TATPRAps
1              THE COURT:  OK.  Well, I don't know whether that's
2     technically true.  Aren't you really making a different
3     argument?  Aren't you really making an argument that there's a
4     drafting error here and that it would be consistent with the
5     spirit of the agreement, not with the verbiage?  Isn't that
6     what you're preliminarily saying?
7              DELLAPORTAS:  We're arguing two things, your Honor.
8     We make both points it our papers.  Number one is that this has
9     been litigated.  And once it's been litigated it doesn't matter
10    that somebody comes up with a clever argument after the fact.
11    They had an obligation.  If they thought it could only be the
12    Delaware Supreme Court, they had to speak up again, because if
13    that were the case, then we should have been before your Honor
14    two years ago and had this resolved.  But they said no.  They
15    took the opposite position.  They said it's impossibly to be
16    vexatious because everybody agrees how this thing should be
17    read.  Now they are saying, never mind, it actually should be
18    read some other way.
19              In the courts we only get to litigate things once,
20    your Honor.  And whether it's res judicata or collateral
21    estoppel --
22              THE COURT:  Not in this case.
23              DELLAPORTAS:  Well, there's a first time for
24    everything, your Honor.  And that's how it was interpreted by
                              Page 10

```
                                E4TATPRA
25    the Court.  And it was absolutely a necessary finding to the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                22
      E4TATPRAps
 1    decision, but it's on what the Court pinned its finding of lack
 2    of diversity.  That's where lack of subject matter jurisdiction
 3    came from.  If they had said then that, oh, you can only have
 4    the Delaware Supreme Court -- the Delaware Supreme Court had
 5    already dismissed the case at that point.  But your Honor
 6    said -- and they agreed, they urged this result -- that any
 7    court of competent jurisdiction can decide it.
 8          So now we haven't had one, we've had two courts, your
 9    Honor, who have ruled on beneficial ownership.  And that's, I
10    think, something we're missing here.
11          Justice Jaffe, on January 3rd, 2012, issued her
12    decision where they only had one count of beneficial ownership.
13    If you look at the third amended supplemental complaint, Count
14    One is their count seeking beneficial ownership of the shares,
15    which is what we're talking about here.  And in it they sought
16    the following relief:  The 2004 transfer should be undone.  All
17    the shares should come back to TPR.  TPR should give them to
18    TPR2, a new company.  Arie should be put in control of TPR2.
19    And then 50 other ridiculous events.
20          This goes before Justice Jaffe, and Justice Jaffe
21    dismisses it.  Justice Jaffe rules, quote, Arie seeks to undo
22    the Delaware court's adverse findings against him and the Trump
23    Group's right to buy the invalidly transferred shares
24    notwithstanding the fact that they were transferred as a result
25    of his misrepresentation in the divorce.  In any event, any
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                23
      E4TATPRAps
 1    equitable or contractual right in favor of Arie to reform the
 2    diverse stipulation does not override the preexisting
 3    contractual right of the Trump Group to purchase the invalidly
 4    transferred shares."  So she threw out their only claims of
 5    beneficial ownership.
 6          It goes up on appeal, your Honor -- and your Honor
 7    asked before it.  It doesn't go up on appeal on that issue.
 8    I'd like to read to you, because this is very important -- and
 9    this happened after the last time we were here before your
10    Honor.  Last time your Honor said the beneficial ownership
11    claim is on life support or almost dead but not quite dead.
12    Since your Honor made that ruling, both Arie and Orly have
13    pulled the plug on that.  And so this is from her suit, this is
14    from her brief.  She says, "In June 2013, Orly and Arie entered
15    into a settlement agreement with the Trump Group that resolved
16    all issues between them in this case.  By this settlement, Orly
17    settled her individual claims and, as a result, is no longer
18    seeking beneficial ownership of the Orly Trust GRI shares."
19          Now, she says she still wants the money.  Good for
20    her.  But the shares, that's no longer pending in any court.
21    It was conclusively decided by Justice Jaffe.  It was
22    conclusively decided by Chancellor Strine.
23          Now, Chancellor Strine read a decision.  He thinks
24    she's got -- Orly's got a good unjust enrichment claim.  Maybe
25    he'll come and testify for her.  I don't know.  But that's not
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                24
      E4TATPRAps
```

                              E4TATPRA
1   what we're here for today.  We're not here on Orly's money
2   damages claims.  Your Honor said time and again, this Court is
3   not going to hear money damages claims again.  Those are in the
4   state court for better, for worse.  We respect that decision.
5   We're not seeking to challenge it.  All we're seeking to do is
6   implement the very strict ruling of this Court on June 12th
7   that if we satisfied certain conditions, that we would be
8   entitled to the funds.  We have satisfied those conditions.
9            THE COURT:  OK.  You saved time for rebuttal.
10           DELLAPORTAS:  Very briefly, your Honor?
11           THE COURT:  Very briefly, if you're going to do
12  rebuttal.
13           DELLAPORTAS:  You asked if we proceed under 2.B.2.
14  And we do proceed under 2.B.2.  We don't think it's a drafting
15  error.  We think that, inconsistent with the case we cited in
16  our brief, that it needs to be read that every provision of an
17  escrow agreement needs to be read to fulfill the overall
18  purpose.  And the overall purpose of this agreement was, if we
19  owned the shares and we sold the shares, to give us our
20  proceeds from selling the shares.  It's not complicated.
21           We also proceed under 2.B.5.  We made a written
22  request under 2.B.5.  We said, why don't we all just agree, why
23  don't we all not be Gengers for once in our life and agree just
24  to release this, subject to all your money damages claims.  And
25  we made that on November 18th.  That's Exhibit C to our papers.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                            25
    E4TATPRAps
1   They responded, no, we object.  That's Exhibit D to their
2   papers.
3            When you get a written letter --
4            THE COURT:  All right.  Come on.
5            DELLAPORTAS:  Yes.  When you get a written request and
6   you have an objection --
7            THE COURT:  Thank you.  Save your time for rebuttal.
8            DELLAPORTAS:  -- the only way for the escrow agent to
9   release the funds is by order of the court.  So at this point
10  we need an order of some court, and we believe this court is
11  the correct court.  Thank you, your Honor.
12           THE COURT:  Thank you.
13           All right.  Now, who is going to argue here on behalf
14  of Pedowitz & Meister?
15           MR. MEISTER:  I would, your Honor, but I think it may
16  make sense that Ms. Bachman argue briefly on behalf of
17  Ms. Genger.
18           THE COURT:  All right.
19           MS. BACHMAN:  Good afternoon, your Honor.
20           THE COURT:  Good afternoon.
21           MS. BACHMAN:  I do not believe I'll need any time for
22  rebuttal because I'll be very brief.
23           As I understand it, Ms. Genger's crossclaim,
24  counterclaim here was pursuant to the settlement agreement that
25  the parties have made that the Orly Trust was entitled to the
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
                                                            26
    E4TATPRAps
1   proceeds, which are currently being held in escrow.  As this
2   Court is aware from the numerous papers that have been filed,
3   Justice Jaffe tells us that settlement agreement was either
4   void or voidable, and subsequently on appeal to the First
5   Department, the First Department affirmed that decision.
                              Page 12

E4TATPRA

6          Accordingly, it seems that the logic behind
7  Ms. Genger's claims is now in jeopardy and therefore we don't
8  object if this Court would direct that the escrow be given to
9  TPR.  TPR has represented to the Court and there is an oral
10 understanding, to my knowledge, that if on further appeal of
11 the First Department decision the settlement agreement is
12 deemed to be valid, then TPR will act in accordance with the
13 settlement agreement and return the money to the trust.
14          THE COURT:  Let me ask you this question.  You
15 represent Dalia now, right?
16          MS. BACHMAN:  That is correct, your Honor.
17          THE COURT:  Personally, right?
18          MS. BACHMAN:  As the trust -- her role here, I
19 believe, is as the trustee of the trust.
20          THE COURT:  Well, how can she do both?  She is the
21 trustee for the Orly Trust.  Right?
22          MS. BACHMAN:  That is correct.
23          THE COURT:  And as I read Chancellor Strine's -- now
24 he's chief justice down there, chief judge.  As I read his
25 remarks, he kept suggesting that she no longer should be
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              27
E4TATPRAps
1  trustee, didn't he?  Did you read that?
2          MS. BACHMAN:  I am familiar with that.  To my
3  knowledge, your Honor, the surrogate court in New York has, at
4  least to date, deemed that Dalia is an appropriate
5  representative of the trust.
6          THE COURT:  Aren't she and Arie estranged?
7          MS. BACHMAN:  They are clearly at odds, your Honor.
8  But that does not -- that's not, if you will -- in the
9  structure that we have of trusts, I believe that a beneficiary
10 does not necessarily have the discretion to choose the trustee.
11 It's the trust document itself that determines who should be
12 the trustee and how that trustee is appointed.  And until the
13 surrogates court rules otherwise, I believe that she is the
14 appropriate representative of the trust.
15          THE COURT:  All right.
16          Anything else you want to say?
17          MS. BACHMAN:  That's all, your Honor.
18          THE COURT:  Thank you.
19          MS. BACHMAN:  Thank you.
20          THE COURT:  I'll hear from you, Mr. Meister, briefly.
21          MR. MEISTER:  Your Honor, Robert Meister for Pedowitz
22 & Meister, pro se.
23          I also will be brief.  I don't think I will need any
24 time for rebuttal.
25          First, as trustee -- escrow agent, I should say -- we
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              28
E4TATPRAps
1  received multiple claims for the same proceeds.  We didn't
2  commence an interpleader action.  Rather, we filed an answer
3  using rule interpleader, defense of interpleader.
4          I heard my colleague, Mr. Griver, say that the escrow
5  agreement says we can't do that.  But I've read the escrow
6  agreement many times.  In fact, I blush to say I drafted it.
7  And it doesn't say that.  It says that if there are conflicting
8  claims, the escrow agent can, among other things, do nothing.
9  It also says other things that it may do.  It doesn't say
10 anything that it can't do, in terms of the interpleader.
                            Page 13

E4TATPRA

11          So while the escrow agent could have started an
12    interpleader seeking arbitration, we didn't.  We didn't start
13    any interpleader.  And I don't believe that even if the
14    agreement purported to prevent the escrow agent from taking
15    advantage of federal law, that that would be lawful.  But we
16    don't have to worry about that.  It didn't.
17          Why do we like interpleader as opposed to your Honor
18    just saying, here's judgment, here's the proceeds where the
19    proceeds go, the way any normal case would be decided?  The
20    interpleader gives the parties who have -- whoever the Court
21    determines has the right to the money -- gives them the same
22    thing.  It gives the interpleader, as escrow agent, a
23    discharge.  And since my colleague, Mr. Griver, has come up
24    with numerous creative theories in the course of these
25    litigations, in particular his December action, which seeks
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              29
E4TATPRAps
1     damages against the escrow agent for not turning all the funds
2     over to Orly, we think that discharge by this Court would
3     surely be something good to have, something we're entitled to
4     as a matter of law.
5           The only other thing I would say to the Court is, I
6     did check the account.  The current balance in the escrow is
7     $10,376,163.20.  That's going to change on April 30.  So I take
8     it that when the Court decides this, if the Court decides that
9     the money should go to someone or the other --
10          THE COURT:  It can be tomorrow.
11          MR. MEISTER:  If it's tomorrow --
12          THE COURT:  Tomorrow's April 30th.
13          MR. MEISTER:  It is.  It is.  The way Chase credits
14    things, I send out a notice to all the parties every month.
15    The credit comes in on April 30th.  Not in a huge amount of
16    money.  It's now earning 0.15 percent interest.
17          THE COURT:  Yes.  I'm aware of the bank statements.
18          MR. MEISTER:  The only thing that I would say apropos
19    of the claim against the escrow agent is that there was an
20    objection to the Orly claim.  It's attached to my papers.  The
21    notice went out.  Mr. Griver says he doesn't remember receiving
22    it.  His client doesn't open her mail, so it's not a problem
23    there.  But the point is, the escrow agreement does not require
24    the escrow agent to send out notices of objection.  It does
25    require notices of claims.  There's no argument that notices of
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              30
E4TATPRAps
1     claims weren't sent out.  So I don't see how the escrow agent
2     can be faulted in that case.
3           And with that I'll just remind your Honor of the old
4     Russian proverb, which I should have borne in mind when
5     agreeing to become here, as escrow agent, that no good deed
6     remains unpunished.
7           THE COURT:  Thank you.
8           All right.  So first we're going to have Mr. Griver's
9     rebuttal.  Go ahead.
10          MR. GRIVER:  Thank you, you, your Honor.  As
11    demonstrated, TPR's plea is that you allow it to ignore the
12    escrow agreement because it's as if they had met its
13    requirements.  Orly gave up fundamental rights to reach the
14    specific language of the escrow agreement.  They admit they
15    don't need it.
                           Page 14

E4TATPRA
16          They say instead that beneficial ownership has been
17     decided.  Well, look at what the New York court said on May 29,
18     2013.  And this was at page 3 of our memo.  It says, "Nor can
19     TPR's unilateral declaration of ownership be reconciled with
20     the undisputed fact that the issues of ultimate beneficial
21     ownership in such shares and the related proceeds have not yet
22     been judicially determined by a court of competent
23     jurisdiction."  Look at what you said just one week before they
24     came in and said, oh, it's been determined.  You said,
25     "Therefore, it is inaccurate for TPR to suggest that the issue

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                            31
E4TATPRAps
1      of beneficial ownership is conclusively resolved."
2               What Mr. Dellaportas does is, he mixes and matches the
3      arguments of Arie Genger and Orly Genger.  I am in front of you
4      have representing Orly Genger and the Orly proceeds and the
5      Orly shares.  Arie Genger is completely and entirely different.
6      Look at what your Honor said about what Orly was seeking to do.
7      "Orly moves to dismiss the federal action, to which they are
8      party, and asks the Court to stay the Delaware court chancery
9      action so the merits of their claim can proceed in New York
10     Supreme Court."  That's what Orly asked for.  That's on page 15
11     of your decision dated June 14, 2012.  Orly didn't say, I don't
12     care where it's being decided.  She said it should be in front
13     of the New York State court.
14              And your Honor went on to say that the decision on
15     beneficial ownership does not void or amend the escrow
16     agreement.  You have said that the proceeds will be provided
17     pursuant to the escrow agreement that all of the parties
18     contracted to.
19              As far as the Delaware stipulation is concerned, your
20     Honor, which, Orly has no part in that proceeding or in the
21     stipulation, paragraph 1 just references -- it said "in an
22     action styled TR Investments, LLC, the Court found that" -- it
23     isn't making new findings.  It is just memorializing what
24     happened before.  It does not go on to say, but those findings
25     as to the Orly Trust and the Orly Trust shares and the Orly

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                            32
E4TATPRAps
1      proceeds have been voided by the Delaware Supreme Court --
2      which is exactly what happened.
3               Paragraph 2 does not say -- and Mr. Dellaportas said
4      this but it's not true.  It does not say TPR had beneficial
5      ownership.  All paragraph 2 says is that the Trump Group owns
6      those shares.  It talks about the buyer.  It does not talk
7      about the seller.
8               In paragraph 3, Dalia and TPR get together and try and
9      amend the escrow agreement to say, well, you can go to a court
10     of competent jurisdiction.  But paragraph 9 of the escrow
11     agreement, in two places, says everybody has to agree.  And
12     they keep forgetting about Orly and they keep forgetting about
13     the fact that Orly is a party to this.
14              And finally, your Honor, it can't be a decision of
15     TPR's right to the sale of proceeds because --
16              THE COURT:  Hold it.  Slowly.  Slowly.
17              MR. GRIVER:  OK.  It cannot be, your Honor, a decision
18     of TPR's right to the sale of proceeds, because it specifically
19     memorializes the fact that those claims were dismissed prior to
20     this stipulation.  That was language that acknowledged the fact

                            Page 15

                              E4TATPRA
21  TPR chose to dismiss its claims and as a result the stipulation
22  has nothing do with its rights to those proceeds.
23          Your Honor, I think that they're ignoring Orly at
24  every stage of the proceeding and ignoring the agreement that
25  they reached with Orly in the escrow agreement.  It runs
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              33
    E4TATPRAps
1   through this entire case.  The escrow agent, right, had a clear
2   conflict of interest.  We raised it.  We've raised it in the
3   New York State action.  The waiver that he says he obtained, he
4   never obtained it from the beneficiary of the trust.  He went
5   to his client Dalia and said, is it OK if I represent you and
6   somebody else.  But he never went and say, hey, how can I do
7   this.  For Dalia to stand up as trustee and say, oh, give it to
8   TPR, is exactly why we have been trying through Dalia for years
9   now, why we objected to appointment in the first place, and why
10  Dalia was recently found to have violated her fiduciary duties
11  in one of the secret agreements that she entered into with TPR.
12          THE COURT:  You said "finally" about five minutes ago.
13          MR. GRIVER:  Well, your Honor, then I'm pleased to say
14  that I am finally done.
15          DELLAPORTAS:  One minute?
16          THE COURT:  Yes.  There is a little time.  Go ahead.
17          DELLAPORTAS:  I just wanted to respond to a couple
18  things that were said.  It was alleged that we've mixed Arie
19  and Orly.  Exhibit N to our papers, page 26, is Orly's
20  appellate brief, which was filed with the Appellate Division
21  after your Honor ruled that the beneficial ownership of the
22  shares was on life support but not yet dead.  And then Orly
23  says she settled with the Trumps and, quote, Orly is no longer
24  seeking beneficial ownership of the Orly Trust PRI shares.
25          Beneficial ownership is over, your Honor, of the
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              34
    E4TATPRAps
1   shares.  Now they say, now we want the money.  Great.  But
2   that's not what the ruling is, your Honor.
3           They also said that Chancellor Strine's ruling,
4   paragraph 2, speaks only as the buyer and not the seller.
5   Absolutely incorrect.  What Chancellor Strine ruled in
6   paragraph 2 was, "The Trump Group, having closed on the
7   purchase of the so-called Orly Trust shares" -- here's the
8   important part -- "pursuant to and under the terms of the side
9   letter agreement between TPR and the Trump Group."  That's the
10  ruling.  The side letter agreement is in the record.  That's a
11  contract whereby we sold those shares to them.  Exactly the
12  ruling your Honor said we needed to get in order to get our
13  proceeds.
14          We've gotten the ruling that the Court asked us to
15  get.  We would now like our proceeds.  Thank you very much,
16  your Honor.
17          THE COURT:  Thank you.  All right.  Decision is
18  reserved.  Thanks very much.
19          MR. GRIVER:  Thank you, your Honor.
20                              o0o
21
22
23
24
25
                            Page 16

E4TATPRA
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
ARIE GENGER and ORLY GENGER, in her          :
individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,                  :          Index No. 651089/2010
                                                        (Jaffe, B. JSC)
                                             :

          Plaintiffs,                        :

                                             :

          -against-                          :

SAGI GENGER, TPR INVESTMENT                  :
ASSOCIATES, INC., DALIA GENGER, THE
SAGI GENGER 1993 TRUST, ROCHELLE             :
FANG, individually and as trustee of THE SAGI
GENGER 1993 TRUST, GLENCLOVA                 :
INVESTMENT COMPANY, TR INVESTORS,
LLC, NEW TR EQUITY I, LLC, NEW TR            :
EQUITY II, LLC, JULES TRUMP, EDDIE
TRUMP AND MARK HIRSCH,                       :

          Defendants.                        :
------------------------------------------------------------x
SAGI GENGER, individually and as assignee of :
THE SAGI GENGER 1993 TRUST, and TPR
INVESTMENT ASSOCIATES, INC.                  :

      Cross-Claimants, Counterclaimants, and :
      Third-Party Claimants,

                                             :

          -against-                          :

                                             :

ARIE GENGER, ORLY GENGER,                    :
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,
NEW TR EQUITY II, LLC, JULES TRUMP,          :
EDDIE TRUMP, MARK HIRSCH,
TRANS-RESOURCES, INC., WILLIAM               :
DOWD, and THE ORLY GENGER 1993 TRUST,
                                             :
      Cross-Claim, Counterclaim and/or
      Third-Party Defendants.                :
------------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT
OF TRUSTEE DALIA GENGER'S MOTION
TO SUBSTITUTE FOR PLAINTIFF ORLY GENGER
ON HER DERIVATIVE CLAIMS AGAINST THE TRUMP GROUP
AND FOR AN ORDER DIRECTING
SETTLEMENT PROCEEDS TO
BE PAID INTO COURT

Judith Lisa Bachman, Esq.
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

Table of Contents

Table of Authorities ................................................................................ i

Preliminary Statement ........................................................................... 1

Statement of Facts ................................................................................ 1

Argument

      Point I

            Substitution of Derivative Plaintiff Orly Genger
            Is Necessary Because She No Longer
            Represents the Orly Trust on the
            Trump Group Claims And She Has Suggested the Trustee
            "Pick Up the Cudgel" on those Claims ....................................... 4

      Point II

            The Proceeds of the Settlement
            Should be Paid into Court
            To Protect the Fund ...................................................................... 5

Conclusion .............................................................................................. 10

Table of Authorities

Cases

Bonham v Coe, 249 A.D. 428, 292 N.Y.S. 423 (4th Dep't 1937)    9

Clarke v. Greenberg, 71 N.E.2d 443, 296 N.Y. 146 (1947)    6

Conforti v. Goradia, 234 A.D.2d 237, 651 N.Y.S.2d 506  (1st Dep't 1996)    6

Gusinsky v. Bailey, 21 Misc.3d 1107(A), 873 N.Y.S.2d 234 (Table)
(Sup. Ct. N.Y. County 2008), rev'd on other grounds,
66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008)    6

In re Carroll's Estate, 153 Misc. 649, 275 N.Y.S. 911 (Sur. Ct. 1934)    9

In re Martin's Estate, 96 N.Y.S.2d 842 (Surr. Ct. 1950)    9

In re Roosevelt's Estate, 131 Misc. 800, 228 N.Y.S. 323 (Sup. Ct. 1928)    9

James v. Bernhard, 106 A.D.3d 435, 965 N.Y.S.2d 56 (1st Dep't 2013)    4, 5

Lade v. Levitt, 33 A.D.2d 956, 306 N.Y.S.2d 704 (3d Dep't 1970)    6, 9

Rice v. DiNapoli, 23 Misc.3d 1128(A), 889 N.Y.S.2d 507 (Table)
(Sup. Ct. Albany County 2009)    6, 9

Titus v. Empire Mink Corp., 17 N.Y.S.2d 909  (Sup. Ct. 1939)    9

Werner v. Werner, 70 Misc.2d 1051, 334 N.Y.S.2d 966 (Sup. Ct. Albany County 1982)    6

Statutes and Rules

CPLR 2701    6, 9

Preliminary Statement

Dalia Genger, as trustee for the Orly Trust, moves to be substituted in for derivative plaintiff Orly Genger on the claims Orly brought on behalf of the Orly Trust against the Trump Group since "Orly no longer represents the Orly Trust as to the Trump Group".

As the substituted plaintiff, Dalia Genger, as trustee for the Orly Trust, respectfully requests an order pursuant to CPLR 2701 directing that the settlement fund from the Trump Group be paid into court since the Court "cannot determine whether <u>some or all</u> of the settlement proceeds with the Trump Group belong to <u>Orly or the Orly Trust</u>."   Order of the Court, Filed May 13, 2014, Doc. 925 at 4 (emphasis added).

Statement of Facts

Dalia Genger is the trustee of the Orly Genger 1993 Trust ("Orly Trust").  In this action, Orly Genger ("Orly") instituted direct and derivative claims on behalf of the Orly Trust against various defendants, including the so-called Trump Group.

Orly settled with the Trump Group defendants.  Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Affirmation of Judith Bachman, dated August 11, 2014 ("Bachman Aff.').

"A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group, contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group bargained and paid for in the settlement . . ." Letter to the Court from Thomas J. Allingham II, dated June 28, 2010, Doc. 728 at 2, attached as Exhibit 2 to the Bachman Aff. (emphasis added).

The Trump Group later reaffirmed this aspect of the settlement:

> "[any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against the Trump Group, but not resolve the Orly Trust's claims against the Trump Group and the TPR Group. (Opp'n Br. at 28) . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. *See Genger v. Genger*, 966 N.Y.S.2d 346, 2013 WL 221485, at *6 (N.Y. Sup. Ct. Jan. 3, 2013) (TABLE) (citing *Genger v. Genger*, No. 109749/2009 (N.Y. Sup. Ct. June 28, 2010)). In settling the claims among them, the Trump Group, Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

Reply Memorandum of Law of Trump Group, Filed April 17, 2014, Doc. 888 at 22-23, attached as Exhibit 3 to the Bachman Aff.

Evidencing this intent, in paragraph 8 of her settlement agreement, Orly agreed to "cooperate" and "cause" the Orly Trust to release any and all claims against the Trump Group." Order of the Court, Filed May 13, 2014, Doc. 925 at 4, attached as Exhibit 4 to the Bachman Aff.

Pursuant to that duty, Orly not only settled all her claims in this case; she also caused the Orly Trust to release claims against the Trump Group in a parallel Delaware case. Specifically, at the time of the Trump Group settlement, the Orly Trust was maintaining a proceeding in Delaware Chancery Court. Following her Trump Group settlement, Orly's counsel twice wrote to Chancellor Strine urging "the dismissal of the last remaining Genger related case in Delaware" and "acknowledg[ing] individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." Exhibit M, Filed June 2, 2014, Doc. 1034, attached as Exhibit 5 to the Bachman Aff. Satisfied that Orly no longer wanted the Orly Trust to pursue its claims, the

Chancery Court dismissed the Orly Trust's claims in that case with prejudice. Exhibit N, Filed June 2, 2014, Doc. 1034, attached as Exhibit 6 to the Bachman Aff.

Notwithstanding the provisions of her own Trump Group settlement agreement and her representations to the Delaware Chancery Court, Orly told this Court that her Trump Group settlement "only dismisses Orly's individual claims against the Trump Group, but does not resolve or dismiss any claims of the Orly Trust against the Trump Group". Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff. Moreover, Orly stated that she "no longer represents the Orly Trust as to the Trump Group (while allowing Dalia Genger to pick up the cudgel if she so chooses) . . ." Id. (emphasis added).

In light of these conflicting statements, this Court "invite[d] the parties to the settlement agreement to set forth the claims given up by Orly in her individual and beneficial capacities, and to explain why any derivative claims advanced in the complaint are not released in the agreement." Order of the Court, Filed May 13, 2014, Doc. 925 at 4, attached as Exhibit 4 to the Bachman Aff.

Conveniently for them, none of the parties to the settlement agreement complied with the Court's request to "set forth the claims given up by Orly in her individual and beneficial capacities, and to explain why any derivative claims advanced in the complaint are not released in the agreement." Id. In fact, Orly's counsel explicitly refused to comply with that request. Email Correspondence dated May 26, 2014, attached as Exhibit 7 to the Bachman Aff.

Accordingly, this Court held that "[u]nless and until the issue of [the status of the] derivative claims is resolved, I cannot determine whether some or all of the settlement proceeds with the Trump Group belong to Orly or the Orly Trust . . ." Order of the Court, Filed May 13, 2014, Doc. 925 at 4 (emphasis added), attached as Exhibit 4 to the Bachman Aff.

3

Even in the presence of this conveniently self-manufactured uncertainty by Orly as to whom the settlement proceeds belong to, *i.e.,* Orly or the Orly Trust, counsel for both Orly and the Trump Group have represented in Court that cash payments were made and will be made only to Orly. Exhibit N, Filed June 2, 2014, Doc. 1034, attached as Exhibit 6 to the Bachman Aff. ("Orly did sign the settlement agreement, and that's a settlement in which real money is changing hands and will continue to change hands."). Upon information and belief, Orly used the proceeds to pay her own debts, and those of her father, acts which are explicitly prohibited by the Orly Trust agreement.

To protect the interests of the Orly Trust, Dalia Genger, as trustee of the Orly Trust, now moves this Court for an order of substitution for derivative plaintiff Orly Genger on the Orly Trust Trump Group claims and for an order directing that the settlement fund with the Trump Group be deposited into Court.

<div align="center">

Point I

Substitution of Derivative Plaintiff Orly Genger
Is Necessary Because She No Longer
Represents the Orly Trust on the
Trump Group Claims And She Has Suggested the Trustee
"Pick Up the Cudgel" on those Claims

</div>

Pursuant to CPLR 1021, "a motion for substitution may be made by the successors or representatives of a party or by any party."

Such substitution is appropriate, and indeed necessary, when a derivative plaintiff is no longer an appropriate representative plaintiff. James v. Bernhard, 106 A.D.3d 435, 965 N.Y.S.2d 56 (1st Dep't 2013).

In James, the Court found that the substitution of independent directors in place of a club member derivative plaintiff was necessary where the derivative plaintiff club member no longer represented the club's interests.

Here too, substitution for derivative plaintiff Orly Genger is necessary because Orly Genger no longer represents the Orly Trust on those claims, and indeed she has suggested that the Trustee should "pick up the cudgel". Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff. Orly Genger, the party to be substituted, has expressly acknowledged that such substitution is appropriate: "Orly no longer represents the Orly Trust as to the Trump Group (while allowing Dalia Genger to pick up the cudgel if she so chooses) . . ." Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff. (emphasis added).

Since, by her own admission and, in fact urging, Orly has said that Dalia Genger has standing to make this motion and "pick up the cudgel" on the Orly Trust Trump Claims, Dalia Genger, as Trustee, must be substituted for Orly as to the Orly Trust Trump Group claims. Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff. This substitution will, as described more fully below, protect the Orly Trust's interest in the settlement with the Trump Group.

Point II

The Proceeds of the Settlement
Should be Paid into Court
To Protect the Fund

A court may direct that funds should be paid into court if

> 1. a party has such property in his possession, custody or control as
> trustee for another party or where it belongs or is due to another
> party; or

2. a party has such property in his possession, custody or control and it belongs or is due to another party, where special circumstances make it desirable that payment or delivery to such other party should be withheld;

3. the ownership of such property will depend on the outcome of a pending action and no party is willing to accept possession or custody of it during the pendency of the action.

CPLR 2701.  See, e.g., Conforti v. Goradia, 234 A.D.2d 237, 651 N.Y.S.2d 506  (1st Dep't 1996).

Where two parties dispute entitlement to a settlement fund of money, a court should direct payment of the fund into court under CPLR 2701, rather than allow payment to one party, to protect that fund and the mutual interests of the parties.  Lade v. Levitt, 33 A.D.2d 956, 306 N.Y.S.2d 704 (3d Dep't 1970); Rice v. DiNapoli, 23 Misc.3d 1128(A), 889 N.Y.S.2d 507 (Table) (Sup. Ct. Albany County 2009); Werner v. Werner, 70 Misc.2d 1051, 334 N.Y.S.2d 966 (Sup. Ct. Albany County 1982)

In the instant action, this Court has held "[u]nless and until the issue of [the status of the] derivative claims is resolved, I cannot determine whether some or all of the settlement proceeds with the Trump Group belong to Orly or the Orly Trust . . ." ."  Order of the Court, Field May 13, 2014, Doc. 925 at 4 (emphasis added), attached as Exhibit 4 to the Bachman Aff.

This difficulty flows from the fact that any settlement of Orly's derivative claims on behalf of the Orly Trust belongs to the Orly Trust and not to Orly, individually.  See Gusinsky v. Bailey, 21 Misc.3d 1107(A), 873 N.Y.S.2d 234 (Table) (Sup. Ct. N.Y. County 2008), rev'd on other grounds, 66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008); Clarke v. Greenberg, 71 N.E.2d 443, 296 N.Y. 146 (1947).   Any payment of the settlement funds to Orly or any other person which belong to the Orly Trust, is improper.

6

It appears that Orly has deliberately manufactured confusion as to whether or not she settled the Orly Trust derivative claims against the Trump Group so that she can take all of the settlement funds for herself rather than have them paid to the Orly Trust. Counsel for both Orly and the Trump Group have represented in Court that cash payments were made and will be made only to Orly. Exhibit N, Filed June 2, 2014, Doc. 1034, attached as Exhibit 6 to the Bachman Aff. ("Orly did sign the settlement agreement, and that's a settlement in which real money is changing hands and will continue to change hands.")

Such payment only to Orly, and not the Orly Trust, is improper, since there is compelling evidence that some, if not all, of the settlement funds belong to the Orly Trust as the result of the settlement of derivative claims against the Trump Group.

The Trump Group, one of the settling parties, believes the derivative Orly Trust claims have been settled: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group, contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group bargained and paid for in the settlement . . ." Letter to the Court from Thomas J. Allingham II, dated June 28, 2010, Doc. 728 at 2, attached as Exhibit 2 to the Bachman Aff. (emphasis added). The Trump Group reaffirmed this aspect of the settlement:

> [any suggestion] that the confidential settlement agreement *might* only dis-miss Orly's individual claims against the Trump Group, but not resolve the Orly Trust's claims against the Trump Group and the TPR Group. (Opp'n Br. at 28) . . . is counterfactual. This Court has already held that certain of Or-ly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. *See Genger v. Genger*, 966 N.Y.S.2d 346, 2013 WL 221485, at *6 (N.Y. Sup. Ct. Jan. 3, 2013) (TABLE) (citing *Genger v. Genger*, No. 109749/2009 (N.Y.

7

> Sup. Ct. June 28, 2010)). In settling the claims among them, the Trump Group, Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

Reply Memorandum of Law of Trump Group, Filed April 17, 2014, Doc. 888 at 22-23, attached as Exhibit 3 to the Bachman Aff.

Further, in paragraph 8 of her settlement agreement, Orly agreed to "cooperate" and "cause" the Orly Trust to release any and all claims against the Trump Group." Order of the Court, Filed May 13, 2014, Doc. 925 at 4, attached as Exhibit 4 to the Bachman Aff.   Pursuant to that duty, Orly not only settled all her claims in this case; she also caused the Orly Trust to release claims against the Trump Group in a parallel Delaware case, when she twice had her counsel urge (and later obtain) for "the dismissal of the last remaining Genger related case in Delaware" and "acknowledg[ing] individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." Exhibit M, Filed June 2, 2014, Doc. 1034, attached as Exhibit 5 to the Bachman Aff.

All of these facts compel the conclusion that Orly's Trump Group settlement in this action resulted in the dismissal of both her individual and derivative claims, and that some, if not all, of the settlement fund belongs to the Orly Trust.

Yet, in self-manufactured confusion, notwithstanding the provisions of her own Trump Group settlement agreement and her representations to the Delaware Chancery Court, Orly told this Court that she "only dismisses Orly's individual claims against the Trump Group, but does not resolve or dismiss any claims of the Orly Trust against the Trump Group". Memorandum of Law of Orly Genger, Doc. 775 at 2, attached as Exhibit 1 to the Bachman Aff.

8

In light of the conflicting statements, this Court "invite[d] the parties to the settlement agreement to set forth the claims given up by Orly in her individual and beneficial capacities, and to explain why any derivative claims advanced in the complaint are not released in the agreement." Order of the Court, Filed May 13, 2014, Doc. 925 at 4, attached as Exhibit 4 to the Bachman Aff.   Conveniently for them, none of the parties to the settlement agreement complied with the Court's request.   Email Correspondence dated May 26, 2014, attached as Exhibit 7 to the Bachman Aff.

With these efforts, Orly succeeded in clouding the question of to whom the settlement proceeds belong: the Court "cannot determine whether some or all of the settlement proceeds with the Trump Group belong to Orly or the Orly Trust . . .".

Such self-manufactured confusion, though, is the very reason why the settlement proceeds must be paid into Court[1] - - to protect that fund and the mutual interest of the parties. Lade v. Levitt, 33 A.D.2d 956, 306 N.Y.S.2d 704 (3d Dep't 1970); Rice v. DiNapoli, 23 Misc.3d 1128(A), 889 N.Y.S.2d 507 (Table) (Sup. Ct. Albany County 2009).  Without such an order, the Orly Trust will be denied the opportunity to obtain any of the settlement proceeds paid as the result of settling claims belonging to the Orly Trust.

---

[1] Such an order must be made against all of the settling parties since it is undisclosed who is holding the settlement proceeds.  If such payment has already been made, then the recipient stands in relation as a quasi trustee of the Orly Trust and/or is in possession of funds which belong to the Orly Trust.  Bonham v Coe, 249 A.D. 428, 292 N.Y.S. 423 (4th Dep't 1937); In re Martin's Estate, 96 N.Y.S.2d 842 (Surr. Ct. 1950); In re Roosevelt's Estate, 131 Misc. 800, 228 N.Y.S. 323 (Sup. Ct. 1928); Titus v. Empire Mink Corp., 17 N.Y.S.2d 909  (Sup. Ct. 1939); In re Carroll's Estate, 153 Misc. 649, 275 N.Y.S. 911 (Sur. Ct. 1934).  This state of facts fits squarely within CPLR 2701.

Conclusion

Dalia Genger as Trustee must be substituted in for derivative plaintiff Orly Genger since "Orly no longer represents the Orly Trust as to the Trump Group" and the settlement proceeds must be paid into Court since the Court "cannot determine whether some or all of the settlement proceeds with the Trump Group belong to Orly or the Orly Trust . . ."

Dated: New City, New York
        August 11, 2014

_____/s/_____
Judith Lisa Bachman, Esq.
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

10

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

**PRESENT:  Hon. BARBARA JAFFE**                                **PART 12**
*Justice*

| | |
|---|---|
| ARIE GENGER and ORLY GENGER, in her individual capacity and on behalf of THE ORLY GENGER 1993 TRUST, | INDEX NO.  651089/2010 |
| | MOTION DATE |
| Plaintiffs, | MOTION SEQ. NO.    42 |
| | CALENDAR NO. |
| - v - | |
| SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC., DALIA GENGER, *et al.,* | **INTERIM ORDER** |
| Defendants. | |

The following paper, numbered 1, was read on this motion.

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answer —  Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion:  ☐ Yes   ☐ No

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE DATED: *J.S.C.*

        Defendant Dalia Genger's motion for an order substituting her, as trustee, as plaintiff for Orly Genger's Trump Group claims, and for an order pursuant to CPLR 2701 directing that the Trump Group settlement fund be paid into Court is held in abeyance pending the Surrogate's Court's resolution of Orly Genger's petition to remove Dalia Genger as trustee of Orly Trust. (*See Genger v Genger*, interim order dated Apr. 1, 2015, index No. 113862/2010 [mot. seq. no. 2]).

Dated:    **5/7/15**                                _____  **BARBARA JAFFE**
                                                                                    *J.S.C.*
                                                                         J.S.

Check one:  ☐ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION
Check if appropriate:   ☐ DO NOT POST    ☐ REFERENCE

SUPREME COURT: NEW YORK COUNTY

| | |
|---|---|
| ARIE GENGER and ORLY GENGER, in her individual capacity and on behalf of the ORLY GENGER 1993 Trust, | Index No. 651089/10 |
| | (Justice Barbara Jaffe) |
| Plaintiffs, | Motion Seq. No. 42 |
| -against- | |
| SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC., DALIA GENGER, THE SAGI GENGER 1993 TRUST, ROCHELLE FANG, Individually and as Trustee of THE SAGI GENGER 1993 TRUST, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP and MARK HIRSCH, | |
| Defendants. | |
| SAGI GENGER, individually and as assignee of THE SAGI GENGER 1993 TRUST, and TPR INVESTMENT ASSOCIATES, INC., | |
| Cross-Claimants, Counterclaimants, and Third-Party Claimants, | |
| -against- | |
| ARIE GENGER, ORLY GENGER, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP, MARK HIRSCH, TRANS-RESOURCES, INC., and WILLIAM DOWD, | |
| Cross-Claim, Counterclaim and/or Third-Party Defendants. | |

**ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO DALIA GENGER'S MOTION TO SUBSTITUTE HERSELF AS DERIVATIVE PLAINTIFF ON BEHALF OF THE ORLY GENGER 1993 TRUST AGAINST THE TRUMP GROUP AND FOR AN ORDER DIRECTING SETTLEMENT PROCEEDS TO BE PAID INTO COURT**

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................ii

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF FACTS .......................................................................................2

    A.   Orly's New York Action On Behalf Of Herself And Her Orly Trust .........2

    B.   The Many Court Recognitions That Dalia Suffers From Irreparable
        Conflicts Of Interest And Has Often Sided With Sagi Genger
        Against Orly.............................................................................................3

    C.   The June 2013 Confidential Settlement Agreement Between The
        "AG Group" And The "Trump Group" .......................................................7

    D.   The Second Amended Stipulation Of Discontinuance In This Action ........8

    E.   No Claims Remain Against The Trump Group In This Action...................9

    F.   The Dalia Delaware Action Against The Trump Group And August
        2013 Delaware Stipulation Dismissing Dalia's Claims Against The
        Trump Group With Prejudice ...................................................................10

    G.   The Delaware Stipulation Works To Harm Orly And The Orly Trust
        As Dalia And Sagi Intended ....................................................................14

ARGUMENT...........................................................................................................16

I.      DALIA'S MOTION TO SUBSTITUTE HERSELF ON THE
       CLAIMS IN THIS CASE AGAINST THE TRUMP GROUP
       SHOULD BE DENIED ...........................................................................16

    A.   Dalia's Motion To Substitute Fails As Moot Because There Are No
        Claims Remaining Against The Trump Group For Which Dalia
        Could Substitute......................................................................................16

    B.   Dalia's Motion To Substitute Fails Because Of The Delaware
        Stipulation...............................................................................................16

    C.   Dalia's Motion To Substitute Fails Because Dalia Suffers From
        Conflicts Of Interest, Is Biased In Favor Of Sagi And Against Orly,
        And Is Otherwise Unfit To Conduct This Litigation On Behalf Of
        The Orly Trust ........................................................................................17

II.     DALIA'S MOTION TO HAVE THE CONFIDENTIAL
       SETTLEMENT AGREEMENT PROCEEDS PAID INTO COURT
       UNDER CPLR 2701 SHOULD BE DENIED .........................................18

CONCLUSION........................................................................................................21

## TABLE OF AUTHORITIES

Page(s)

CASES

Clarke v. Greenberg,
  296 N.Y. 146 (1947) .................................................................................................21

Conforti v.Goradia,
  234 A.D.2d 237 (1st Dept. 1996).............................................................................21

General Electric Co. v. Inter-America Marketing Systems, Inc.,
  220 A.D.2d 307 (1st Dept. 1995).......................................................................17, 18

Genger v. Genger
  120 A.D.3d 1102 (1st Dept. 2014).............................................................................4

Genger v. Genger,
  2014 N.Y. App. Div. LEXIS 5390 (1st Dept. July 24, 2014)............................15, 16

Gusinsky v. Bailey,
  2008 Misc. LEXIS 5811 (N.Y. Sup. Ct. Sept. 17, 2008).........................................21

ICN Pharmaceuticals, Inc. v. Bristol-Myers Co.,
  245 A.D.2d 182 (1st Dept. 1997)..............................................................................17

James v. Bernhard,
  106 A.D.3d 435 (1st Dept. 2013)..............................................................................18

Lade v. Levitt,
  33 A.D.2d 956 (3d Dept. 1970) ................................................................................21

Rice v. DiNapoli,
  2009 NY Misc. LEXIS 1182 (N.Y. Sup. Ct. Apr. 21, 2009)....................................20

TPR Investment Associates, Inc. v. Pedowitz & Meister, LLP,
  2014 U.S. Dist. LEXIS 67116 (May 15, 2014) .......................................................15

Werner v. Werner,
  1972 N.Y. Misc. LEXIS 1743 (N.Y. Sup. Ct. July 6, 1972) ....................................21

STATUTES

CPLR 1021........................................................................................................... 1, 18

CPLR 2701.............................................................................................................. passim

## PRELIMINARY STATEMENT

Dalia Genger's ("Dalia") two motions are meritless and should be denied for a number of independent reasons.

*First*, under CPLR 1021, Dalia seeks to be substituted into this action as a derivative plaintiff to litigate any claims the Orly Genger 1993 Trust ("Orly Trust") may have in this action against the Trump Group. Dalia's "substitution motion" is moot because the Orly Trust has no existing claims against the Trump Group in this action. Even if such claims still existed, Dalia's substitution motion should be denied. CPLR 1021 exists to ensure that derivative plaintiffs with conflicts of interest may be removed, and conflict-free plaintiffs substituted. Here, Dalia's motion would achieve the opposite result because Dalia suffers from manifest conflicts of interest and improper bias. To allow her to substitute in would bring her conflicts of interest into this litigation, and place Orly Genger ("Orly") and the Orly Trust at risk. If Dalia truly believes the Orly Trust should "pick up the cudgel" against the Trump Group in this litigation, the proper course is for her to resign and let a new trustee who is conflict-free and acceptable to Orly advance those claims. See Statement of Facts and Argument, Point I.

*Second*, under CPLR 2701, Dalia seeks to have the proceeds from Orly's individual settlement with the Trump Group paid into Court, contending she has a right to seek that relief because Orly's settlement also settled Orly Trust claims. Dalia is wrong.

Dalia's request relies on ignoring the plain language of CPLR 2701 by omitting the critical phrase "which is the subject of this action" from her citation of the statute. CPLR 2701 only permits property "which is the subject of the action" to be paid into Court, yet the proceeds Dalia seeks to be placed into Court are not the subject of this action, or any other

action.  For this reason and others, CPLR 2701 simply does not apply, and Dalia's effort to have

the settlement proceeds placed with the Court should be denied.  <u>See</u> Statement of Facts and

Argument, Point II.

Moreover, the factual predicate of Dalia's "funds motion" is incorrect.  The multi-

party confidential settlement with the Trump Group did not settle Orly Trust claims.  This is

confirmed by, among other things, (i) the plain language of that Confidential Settlement

Agreement; (ii) the plain language of the Second Amended Stipulation of Settlement, which did

not dismiss any Orly Trust claims; and (iii) Dalia previously taking advantage of the fact that

Orly Trust claims were not settled to continue her Dalia Delaware Action and enter into the

Delaware Stipulation.  <u>See</u> Statement of Facts and Argument Point II.

## STATEMENT OF FACTS

### A.    Orly's New York Action On Behalf Of Herself And Her Orly Trust

On July 26, 2010, co-plaintiffs Orly and Arie Genger commenced this action.  <u>See</u>

Complaint [Docket No. 112].  Orly's operative complaint asserted both individual claims and

claims on behalf of the Orly Trust.  Orly is the sole non-contingent beneficiary of the Orly Trust.

<u>See</u> Complaint ¶¶ 208-219.  On January 2, 2013, the Court dismissed most of plaintiffs' claims

against the Trump Group entities.  <u>See</u> Jan 2, 2013 Amended Decision and Order at 25-27, 28-29

[Docket No. 285].  The Court allowed plaintiffs to proceed with claims for: (i) breach of

fiduciary duty and aiding and abetting fiduciary duty against Sagi Genger ("Sagi"); and (ii)

unjust enrichment against TPR Investment Associates, Inc. ("TPR") and against Sagi.  <u>Id.</u>

The Court already has ruled that Orly may properly advance claims on her own

behalf and on behalf of the Orly Trust:

> Plaintiff [Orly] argues, and none of the defendants dispute her, that as beneficiary of the Orly Genger 1993 Trust, she has a right to assert causes of action on behalf of the trust, citing *Velez v. Feinstein*, 87 AD2d 209 (1st Dept. 1982) (where trustee has failed to enforce a claim on behalf of the trust, the beneficiary may do so). She further argues that as the Orly Genger 1993 Trust is a limited partner of D&K Ltd. Partnership, she has the right to assert causes of action on behalf of the Partnership as against TPR Investment and the other defendants, citing among other cases, *CCG Assoc. I v. Riverside Assoc.*, 157 AD2d 435, 442 (1st Dept. 1990) ("[t]he right of a limited partner to bring an action on behalf of the partnership to enforce a right belonging to the partnership is beyond dispute") (Pl Memo of Law [Doc. 9:4] p.1 n.1). Defendants' arguments in opposition are not persuasive.

7/28/10 Decision and Order at 4 [Index No. 109749/2009; Docket No. 80]. That Orly has such standing is law of the case.

**B.      The Many Court Recognitions That Dalia Suffers From Irreparable Conflicts Of Interest And Has Often Sided With Sagi Genger Against Orly**

On January 2, 2009, Surrogate Roth, denied Orly's first application to remove Dalia as Trustee of the Orly Trust. Surrogate Roth states that she would give Dalia the opportunity to serve as Trustee and see what happens:

> Indeed, it appears that Dalia (who states that she is ready and able to act as fiduciary) has yet to assume the duties of trustee in deference to her daughter's position in this litigation. As a validly appointed trustee, she should be given the opportunity to do what she deems necessary to manage and protect the trust's assets.

January 2, 2009 Surrogate Decision at 7 (emphasis added) [Index No. 109749/09; Docket No. 198]. Orly has renewed her application to remove Dalia, and it remains pending in Surrogate Court.

Since Surrogate Roth's January 2, 2009 Decision, numerous courts have

3

examined Dalia's actual actions as Trustee, and recognized that Dalia suffers from conflicts of

interest and is otherwise unfit to serve as Trustee. Thus, for example, the First Department held

that Dalia suffered from conflicts of interest, and placed her personal interests ahead of the Orly

Trust and Orly, benefiting herself at the expense of the Orly Trust:

> In entering into the aforementioned October 2011 and March 2012
> settlement agreements with TPR and D&K LP on behalf of the
> Orly Trust, of which she was sole trustee, Dalia had a conflict of
> interest. The new promissory notes executed by Dalia on behalf of
> the Orly Trust pursuant to the settlement agreements contained
> provisions that were plainly intended to entrench her as sole trustee
> of Orly Trust, notwithstanding the ongoing disputes and litigation
> between herself and plaintiff, the trust's beneficiary. Specifically,
> the replacement notes provided that Dalia's resignation or removal
> as trustee of Orly Trust, or the appointment of any additional
> trustee, would constitute an event of default rendering the notes
> immediately due and payable by Orly Trust. Further, the purported
> settlement of the derivative claims that plaintiff asserts on behalf of
> Orly Trust in this action – which was already pending at the time
> the settlement agreements were executed – required the court's
> approval, which was never sought. Moreover, as previously
> discussed, the settlements were entered into in violation of the
> aforementioned 2010 and 2011 injunctions. For these reasons, the
> settlements are voidable and, given the expressed intention of
> plaintiff (the beneficiary of Orly Trust) to void them, the purported
> releases they contain are not enforceable.

Genger v. Genger 120 A.D.3d 1102, 1104 (1st Dept. 2014).

This Court also recognized Dalia's conflicts of interest and collusion with Sagi

against Orly make her unfit to act for Orly's benefit:

> Additionally, Dalia, trustee of the Orly Trust, has often sided with
> her son Sagi in these actions, and if Orly is deemed to be an
> inadequate representative of the Orly Trust, and Dalia declines to
> pursue the Orly Trust claims against TPR/Sagi, TPR/Sagi could be
> insulated from the prosecution of such claims. However, after
> TPR/Sagi filed this motion, the Appellate Division, First
> Department, held that Dalia had a conflict of interest in releasing

4

herself, as part of settlement agreements entered into in 2011 and 2012 between TPR/Sagi and herself, as trustee. It also adjudicated the settlements, which were against Orly's interests, as void and/or voidable. (*Genger v Genger*, 115 AD3d 421, 423 [1st Dept 2014]).[1] Thus, <u>Dalia may no longer be able to serve as trustee, having failed to disclose the conflict to her principal, Orly</u>. And, as noted by the First Department, Orly has petitioned the Surrogate's Court to remove Dalia as trustee and to surcharge her. (*Id.*).

7/3/14 Decision and Order at 3-4 (emphasis added) [Index No. 109749/09; Docket No. 698].

Dalia Genger, trustee of the Orly Trust, neither filed nor joined in the instant motion. Instead, she signed an affidavit, dated June 28, 2013, asserting that "an analysis of the claims [filed by Orly against the Trump Group] shows that they are entirely claims of the Orly Trust and that she has no individual rights separate therefrom." (NYSCEF 483, ¶ 2). Dalia's assertion is not supported or accompanied by any analysis of the subject claims, and is fatally conclusory....And <u>having found that "Dalia – as trustee of Orly's Trust – had a conflict of interest in releasing herself as part of the October 2011 and March 2012 settlement agreements [embodying the proposed transactions]" (*Genger v Genger*, --AD3d--, 2014 NY Slip Op 01421 *2 (1st Dept 2014), the Appellate Division throws doubt on Dalia's standing to complain</u>.

3/20/14 Decision and Order at 3-4 (emphasis added) [Docket No. 925].

This Court, the Delaware Chancery Court, and the District Court for the Southern District of New York have all questioned Dalia's fitness to serve as a fiduciary for Orly, and questioned her motivation for refusing to resign as Trustee.

THE COURT: [referring to Surrogate Roth's January 2009 decision] The Surrogate said, you know, basically she should be given a chance to try out, in essence. That's when I reread Judge Roth's decision that at the time of the original objection to her, or the challenge to her, she hasn't been given a chance to serve.

---

[1]   In response to Dalia and Sagi/TPR's motions for reconsideration, the First Department replaced the referenced decision with a September 2014 decision, which re-affirmed Dalia's conflict of interest and expanded upon its prior ruling.

I just don't understand why somebody would want to continue to serve as the trustee of her daughter's trust when the daughter doesn't want her. Why not just say: Okay. I'm out of this. You want to have a fight with your brother, have a fight with your brother. If you want to have a fight with your father, have a fight with your father.

I mean, <u>unless there is some truth to the conspiracy theories asserted by the plaintiffs, why is she continuing to serve? Why doesn't she resign? Who needs this aggravation?</u>

8/15/12 Hearing Tr. 3:23-4:13 (Feinman, J.) (emphasis added) [Index No. 109749/09; Docket No. 318].

THE COURT: Well how can she be both? She is the trustee for the Orly Trust. Right?...And as I read Chancellor Strine's – he's chief justice down there, chief judge. As I read his remarks, he kept suggesting that she no longer should be trustee, didn't he?

4/29/14 Hearing Tr. at 27-28 (Keenan, J.) (Janovsky Aff., **Exhibit I**) <u>see</u> <u>also</u> 8/1/13 Hearing Tr. at 42-43 (Janovsky Aff., **Exhibit J**) (Chancellor Strine questioning Dalia's fitness to serve as trustee, where "Dalia brings a lawsuit that Orly doesn't want," where "Dalia's aligned with Sagi" and Dalia is willing to come to a since voided settlement "on terms that Orly gives up any claim that she has that Sagi didn't exactly cut the pie fairly").

Even after the Surrogate's Court directed the parties to find an alternate trustee, Dalia refused to step down as Trustee for the Orly Trust. <u>See</u> 3.12.13 Orly Letter to Court [Index No. 109749/09; Docket No. 406]. In this regard, Orly and Sagi identified a distinguished attorney – Alex Sussman – acceptable to both Orly and Sagi. Dalia, however, refused to step down unless and until she was released from all liability for her actions as Trustee (once again placing herself and her interests ahead of Orly and the Orly Trust). <u>See</u> June 2013

6

Correspondence re: Alex Sussman (Janovsky Aff., **Exhibit A**).

C.      **The June 2013 Confidential Settlement Agreement Between The "AG Group" And The "Trump Group"**

On June 16, 2013, plaintiffs Arie and Orly (individually and as beneficiary of the Orly Trust) and the Trump Group defendants entered into a confidential settlement agreement, resolving the settling parties' respective claims and counterclaims against one another (the "Confidential Settlement Agreement" or "CSA").[2] As this Court has found, based on its prior *in camera* review of the CSA, "in the settlement agreement, Orly stops short of releasing derivative claims." 3/20/14 Decision and Order at 4.

The Court's ruling on the matter is correct. The CSA is executed by the "AG Group" and the "Trump Group." Confidential Settlement Agreement at 1. The AG Group includes "Orly Genger (in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust)." Id. The Orly Trust is expressly excluded from the AG Group, and is, instead, defined as a member of the non-settling "Sagi Group." Id. at 3. No provision in the CSA provides for settlement of Orly Trust claims.

Dalia contends (Dalia Br. at 8) that Orly's agreement in the CSA to "cooperate" in any future Trump Group efforts to "cause" the Orly Trust to release its claims against them, should she be asked to do so by them (CSA, ¶ 8), is equivalent to Orly settling Orly Trust claims on behalf of the Orly Trust. "Cooperating" is not a synonym for "settling" or "releasing." More fundamentally, Dalia entirely misses the point of the "cooperation provision" – this provision further proves the CSA did <u>not</u> settle any Orly Trust claims. If the CSA had settled Orly Trust

---

[2]   The Confidential Settlement Agreement has been filed under seal as **Exhibit K** to the Affirmation of Peter

claims against the Trump Group, Orly's "cooperation" would be entirely unnecessary, because there would be nothing to "cause" in the future. Only if the CSA did not settle and release Orly Trust claims would there be a need for Orly to "cooperate" in future Trump Group efforts to "cause" the Orly Trust claims against them to be dismissed.

Dalia's recitation of positions taken at one time by Trump Group counsel, Thomas Allingham, regarding the CSA (see Dalia Br. at 2, 7-8) is unavailing, because it contradicts the CSA's "Entire Agreement" provision. See CSA, ¶ 17. That provision makes anything written about the CSA entirely irrelevant, unless it is an instrument in writing signed by all Parties. Id. Accordingly, the language of the CSA controls. Id. In turn, the CSA's plain and unambiguous language demonstrates that the Orly Trust is not a settling party, and Orly did not settle Orly Trust claims.

**D.    The Second Amended Stipulation Of Discontinuance In This Action**

On July 1, 2013, the Court signed the Second Amended Stipulation of Discontinuance. See Second Amended Stipulation of Discontinuance at 2 [Docket No. 487] ("All claims, counterclaims and third-party claims of the AG Group in this action against the Trump Group are discontinued with prejudice and without costs."). Like the CSA before it, the Second Amended Stipulation of Discontinuance carefully and expressly limited the claims discontinued by Orly to those brought by Orly "individually and as beneficiary of the Orly Trust." See generally id. It did not discontinue any Orly Trust claims. Id. Because the Orly Trust claims still existed and were not discontinued, the Second Amended Stipulation of Discontinuance also released Dalia to prosecute her previously stayed Dalia Delaware Action

Janovsky ("Janovsky Aff."), filed contemporaneously herewith.

8

(defined and discussed below). See id. The Dalia Delaware Action had been previously restrained by the Court as duplicative and irreparably harmful to Orly and the Orly Trust. See 10.26.11 Order To Show Cause; 11.9.11 Order To Show Cause; 4.10.12 Interim Decision [Docket Nos. 150, 165, 230].

## E.   No Claims Remain Against The Trump Group In This Action

On July 24, 2014, plaintiffs' remaining claims were dismissed on appeal to the Appellate Division, First Department.[3]  As a result of the First Department's July 24, 2014 Order, plaintiffs, including the Orly Trust, have no claims in this action. As shown below, the remaining claims were dismissed because of a so-called settlement of the Dalia Delaware Action, deliberately drafted and designed by Dalia and TPR/Sagi to end the Orly Trust claims against TPR/Sagi, and ensure that over $10 million from TPR/Sagi's sale of the Orly Trust TRI Shares went to TPR/Sagi, not the Orly Trust.

On November 25, 2014, the Court entered an Order, agreed to by the remaining parties to the action, dismissing plaintiffs' operative complaint (without prejudice to plaintiffs' right to seek leave to appeal to the Court of Appeals) and severing plaintiffs' dismissed complaint from Sagi/TPR's counterclaims, cross-claims and third-party claims. See 11.25.14 Order [Docket No. 1153]. (Dalia has appealed the Court's November 25, 2014 Order, but has not yet perfected her appeal.)

On January 31, 2014, the Trump Group defendants made a motion on notice to all parties to dismiss the remaining claims against them in this action. These claims were brought

---

[3]   Plaintiffs have sought leave to appeal the First Department's decision to the Court of Appeals. Plaintiffs' motion to the Court of Appeals is *sub judice*.

by Sagi and TPR.  [Docket Nos. 732-751.]  By Notice dated August 23, 2014, Sagi and TPR

voluntarily discontinued claims against the Trump Group members, but not TRI.  [Docket No.

1112].  By Decision and Order dated January 7, 2015, the Court dismissed all claims by Sagi and

TPR against the Trump Group and TRI.  See 1.7.15 Decision and Order at 21-22 [Docket No.

1159].  At present, there are no existing claims, counterclaims, or cross-claims against the Trump

Group in this action.

**F.**  **The Dalia Delaware Action Against The Trump Group And August 2013 Delaware Stipulation Dismissing Dalia's Claims Against The Trump Group With Prejudice**

On October 4, 2011 – one day after signing a "defendant-only settlement

agreement" that violated two court orders – Dalia commenced a derivative action on behalf of

the Orly Trust in Delaware Chancery Court (the "Dalia Delaware Action").  By the Dalia

Delaware Action, Dalia sought a Declaratory Judgment that the Orly Trust (and not TPR or the

Trump Group entities) was the beneficial owner of the Orly Trust TRI Shares.  See Dalia

Delaware Complaint ¶¶ 37-43 (Janovsky Aff., **Exhibit C**).  By commencing her action in

Delaware, Dalia provided the Delaware Chancery Court with the personal jurisdiction over the

Orly Trust that the Chancery Court previously lacked.  Id.

This lawsuit by Dalia was a transparent attempt to give the Delaware Court the

jurisdiction to apply previous adverse decisions to the Orly Trust, and find that the proceeds of

the sale of the Orly Trust TRI Shares belonged to TPR/Sagi, and not the Trust.  As beneficial

ownership of the Orly Trust TRI Shares and disposition of the proceeds from the sale were at

issue in this New York action, Orly obtained two temporary restraining orders in New York state

court on October 26, 2011 and November 9, 2011 (later continued by an April 10, 2012 Interim

Decision) preventing Dalia, TPR and the Trump Group from prosecuting the Dalia Delaware

Action.  See 10.26.11 Order To Show Cause; 11.9.11 Order To Show Cause; 4.10.12 Interim

Decision [Docket Nos. 150, 165, 230.]  These restraints were lifted as part of Orly's individual

settlement with the Trump Group.  See Second Amended Stipulation of Discontinuance at 2

[Docket No. 487].

When the restraints were lifted, Dalia (as Trustee of the Orly Trust), TPR

(controlled by Sagi), and the Trump Group, drafted and entered into an August 13 Stipulation

that was "So Ordered" by the Delaware Chancery Court (the "Delaware Stipulation").  In the

Delaware Stipulation, Dalia stipulated and agreed, on behalf of the Orly Trust, to (i) the validity

of the TPR sale of the Orly Trust TRI Shares to the Trump Group, (ii) the Trump Group's

ownership "(beneficially, of record, and otherwise)" of the Orly Trust TRI Shares, and

(iii) dismiss with prejudice the Orly Trust's claims to beneficial ownership of the Orly Trust TRI

Shares.  Thus, Dalia included in the Delaware Stipulation that:

> In the action styled *TR Investors, LLC, et al.* v. *Genger*, C.A. No.
> 3994-CS (the "3994 Action"), the Court found that (i) the transfers
> in October 2004 of Trans-Resources, Inc. ("Trans-Resources")
> stock out of TPR were in violation of the March 2001 Stockholders
> Agreement among Trans-Resources, TPR, TR Investors, LLC and
> Glenclova Investment Co.; (ii) the transfers were void and the
> stock reverted to TPR, and (iii) the Trump Group had the right to
> buy all of the improperly transferred Trans-Resources stock from
> TPR.  These determinations and findings were essential to the
> Court's determinations and findings in the 3994 Action.

Delaware Stipulation at ¶ 2 (Janovsky Aff., **Exhibit D**).

Dalia also included in the Delaware Stipulation that:

> The Trump Group, having closed on the purchase of the so-called
> Orly Trust Shares (representing 1102.8 shares of Trans-Resources
> stock) pursuant to and under the terms of the Side Letter

Agreement between TPR and the Trump Group entered into in
August 2008, as was the Trump Group's right under that
agreement, owns, for all purposes, all right, title and interest
(beneficially, of record and otherwise) to the shares if Trans-
Resources purportedly transferred by TPR to the Orly Genger 1993
Trust.  As a result, the Trump Group owns, for all purposes, all
right, title and interest (beneficially, of record and otherwise) to all
authorized and issued shares of Trans-Resources.

Id. at 1-2.

Finally, Dalia included in the Delaware Stipulation that:

The claims brought on behalf of the Orly Genger 1993 Trust by the
Trustee of the Orly Trust against the Trump Group are dismissed
with prejudice...

Delaware Stipulation at ¶ 4.  This means that Dalia purported to accept the void nature of the

transfer of the Orly Trust TRI Shares to the Orly Trust, the validity of the sale of those shares

between TPR/Sagi and the Trump Group, and to dismiss with prejudice all Orly Trust claims

against the Trump Group related to the beneficial ownership of the Orly Trust TRI Shares.  See

id.

Dalia now strategically contends that Orly, via the CSA, caused her to enter into

the Delaware Stipulation.  Dalia Br. at 2, 8.  If the CSA was the supposed guiding force of the

Delaware Stipulation, as Dalia now claims, one would naturally expect it to be described, or

discussed somewhere in the Delaware Stipulation, but it is not even mentioned or referenced.

See Delaware Stipulation (Janovsky Aff., Ex. D).

Moreover, Dalia entered into the Delaware Stipulation against Orly's express

direction.  Specifically, prior to its execution, Dalia's counsel, Robert Meister, wrote an August

9, 2013 letter to the Chancery Court representing that Dalia would not sign the Delaware

Stipulation unless Orly consented to its execution.  See 8/9/13 Meister Letter (Janovsky Aff., **Exhibit E**).  Then on August 13, 2013, Dalia's counsel provided Orly's counsel with a draft of the Delaware Stipulation, and stated that Dalia was considering signing the stipulation on behalf of the Orly Trust.  See 8/13/13 Meister Letter With draft stipulation (Janovsky Aff., **Exhibit F**).

By August 16, 2013 letter, Orly's counsel responded stating that the stipulation in its current form was unacceptable to Orly, and sought Dalia's representation that she would not sign the Delaware Stipulation without Orly's consent, as Dalia represented to the Delaware Chancery Court.  See 8/16/13 Orly Letter (Janovsky Aff., **Exhibit G**).  Orly also submitted her proposed changes to the Delaware Stipulation to the Delaware Chancery Court and to Dalia, who had represented she would not sign it on behalf of the Orly Trust without Orly's consent.  See 8.26.13 Wachtel Letter (Janovsky Aff., **Exhibit H**).  Despite Dalia's representations to the Court and her fiduciary duties to Orly as Trustee of the Orly Trust, Dalia ignored Orly's wishes and signed the Delaware Stipulation without Orly's proposed changes, without Orly's consent, and against Orly's instructions.

Dalia not only omits this direct evidence showing she once again ignored Orly, but Dalia's only supposed evidence that she entered into the Delaware Stipulation at Orly's direction is Dalia's repeated and deliberate misrepresentation of a letter sent to the Delaware Chancery Court by Orly counsel, William Wachtel.  See Dalia Br. at 2, 8 (citing and misquoting August 13, 2013 Wachtel Letter, attached as Ex. 5 to Dalia Motion).[4]

The Wachtel Letter did not direct the Orly Trust to do anything.  Rather, Mr. Wachtel wrote the letter to the Delaware Court to respond to Dalia's deliberate disregard of the

---

[4]   For the Court's convenience, the 8.12.13 Wachtel Letter is also attached as **Exhibit B** to the Janovsky Aff.

Delaware Court's directive that Dalia inform the Court "whether Dalia is willing to step out of the Trust." Wachtel Letter at 1 (citing Delaware Court). Mr. Wachtel then discussed some instances of Dalia's bias and conflicts of interest that renders her an unsuitable Trustee. Id. at 2-3. Mr. Wachtel summarized by noting that "[w]ere she [Dalia] to resign, it would instantaneously facilitate the dismissal of the last remaining Genger related case in Delaware." Id. at 1. This letter cannot possibly be read as an instruction by Orly directing the Orly Trust to do anything (except perhaps have Dalia resign as Trustee, which Dalia refuses to do). Dalia misrepresents the Wachtel letter by twice omitting the underlined portion of the above sentence.

Importantly, when Mr. Wachtel referred to the CSA in the Wachtel Letter, he confirmed that the CSA did not settle any Orly Trust claims – Orly only settled individually and in her capacity as beneficiary of the Orly Trust:

> We wish to confirm to your Honor that Orly has indeed settled all disputes between her and the Trump Group. As part of that settlement, Orly has acknowledged *individually and in her capacity as the beneficiary of her trust* that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust. Orly has not, however, abandoned her claim to the proceeds of the sale of those shares against TPR and Sagi, nor to her other damage claims against TPR and Sagi, some of which are discussed below.

Id. at 2 (italics added; underlines in original).

## G.   The Delaware Stipulation Works To Harm Orly And The Orly Trust As Dalia And Sagi Intended

Two separate courts already have found the Delaware Stipulation determined beneficial ownership of the intended Orly Trust TRI Shares (and paved the way for TPR/Sagi to claim the $10.3 million in proceeds from the sale of those shares to the Trump Group). Thus, the

District Court for the Southern District of New York (Keenan, J.) stated:

> As part of a stipulation dismissing the action in Delaware
> Chancery Court, the parties to that action -- TPR/Sagi, the Trump
> Group, and Dalia, but not Arie or Orly -- agreed that the Trump
> Group is the rightful owner of the Orly Trust Shares.

TPR Investment Associates, Inc. v. Pedowitz & Meister, LLP, 2014 U.S. Dist. LEXIS 67116,

*5-6 (May 15, 2014).  Likewise, the Appellate Division, First Department held the August 2013

Delaware Stipulation – and not the CSA – determined beneficial ownership and ended Orly's

claims to the $10.3 million in proceeds from Sagi/TPR's sale of those shares to the Trump

Group:

> Moreover, under the 2008 agreement between TPR and the Trump
> Group, the sale could only take place after a judicial determination
> that TPR is the record and beneficial owner of the Orly Trust's TRI
> shares.  When the complaint was filed, it had only been determined
> that TPR was the shares' record owner, but the Delaware Chancery
> Court has now also ruled that TPR is the shares' beneficial owner
> (Stipulation & Proposed Order of Dismissal, Dalia Genger v TR
> Invs., LLC [Del Ch Ct, Aug. 30, 2013] [C.A. No. 6906-CS]).

Genger v. Genger, 2014 N.Y. App. Div. LEXIS 5390, *13 (1st Dept. July 24, 2014).  The First

Department used that finding as a lever to dismiss all of Orly's remaining claims in this action.

See id.

It was only after Dalia secured $10.3 million for her favored son Sagi, by

"stipulating" to certain facts and "dismissing with prejudice" the Orly Trust claims against the

Trump Group, that she turned around and took the opposite position by this Motion.  Having

gone back to the Delaware Court and prosecuted her claims there until August 2013, Dalia now

claims Orly had previously settled those claims two months earlier, in the June 2013 CSA.  Dalia

performs this "switcheroo" not to protect the Orly Trust, but to harass Orly and continue her and Sagi's campaign to ensure that, no matter what else happens, Orly is left with nothing.

## ARGUMENT

### I.   DALIA'S MOTION TO SUBSTITUTE HERSELF ON THE CLAIMS IN THIS CASE AGAINST THE TRUMP GROUP SHOULD BE DENIED

#### A.   Dalia's Motion To Substitute Fails As Moot Because There Are No Claims Remaining Against The Trump Group For Which Dalia Could Substitute

Because of the Delaware Stipulation engineered by Dalia, all claims by Orly in the operative complaint were dismissed (without prejudice to plaintiffs' right to seek leave to appeal to the Court of Appeals). See Statement of Facts, Sections E, G; Genger v. Genger, 2014 N.Y. App. Div. LEXIS 5390, *13 (1st Dept. July 24, 2014); 11.25.14 Order (dismissing plaintiff's complaint and severing Sagi/TPR's remaining claims) [Docket No. 1153]. Thus, no plaintiffs' claims remain against the Trump Group for Dalia to substitute into, and Dalia's motion to substitute fails as moot.[5]

#### B.   Dalia's Motion To Substitute Fails Because Of The Delaware Stipulation

By executing the Delaware Stipulation, Dalia purported to dismiss the Orly Trust claims against the Trump Group with prejudice. See Delaware Stipulation at ¶ 4. Dalia also sought to incorporate in the Delaware Stipulation the prior findings of fact of the Delaware Chancery Court (in a litigation that did not involve Orly or the Orly Trust as parties) that the transfer of the Orly Trust TRI Shares were void, and "the Trump Group had the right to buy all

---

[5]   On January 7, 2015, this Court also dismissed all Sagi and TPR claims against the Trump Group, including TRI, see 1.7.15 Decision and Order at 21-22 [Docket No. 1159], eliminating all existing claims by any party against the Trump Group.

of the improperly transferred Trans-Resource stock from TPR."   Delaware Stipulation at ¶ 1. This all took place after the June 2013 CSA.

Having acted in Delaware on the implicit basis that the Orly Trust claims were not settled by the CSA, Dalia cannot now properly turn around and assert the CSA settled those Orly Trust claims.  See ICN Pharmaceuticals, Inc. v. Bristol-Myers Co., 245 A.D.2d 182, 186 (1st Dept. 1997) (holding that defendant was bound by the doctrine of judicial estoppel from taking a position before the New York County Supreme Court that was inconsistent with a position taken in a prior arbitration); General Electric Co. v. Inter-America Marketing Systems, Inc., 220 A.D.2d 307 (1st Dept. 1995) ("The IAS Court properly invoked the doctrine of judicial estoppel to preclude those counterclaims...since defendant successfully advanced the diametrically opposite position at the trial of plaintiff's claims.").

If Dalia believes in good faith that the Orly Trust has remaining claims against the Trump Group, they cannot be advanced by her.  ICN Pharmaceuticals, supra; General Electric Co., supra.  Accordingly, she should resign and let any such claims be advanced (or not) by a new trustee.

**C.     Dalia's Motion To Substitute Fails Because Dalia Suffers From Conflicts Of Interest, Is Biased In Favor Of Sagi And Against Orly, And Is Otherwise Unfit To Conduct This Litigation On Behalf Of The Orly Trust**

Multiple courts have properly found that Dalia suffers from conflicts of interest, has aligned herself with Sagi against Orly, and/or questioned why she does not simply resign if she truly cared more about Orly and the Orly Trust than about herself.  See Statement of Facts, Section B. Dalia already has amply demonstrated that she cannot be trusted to serve as Orly's fiduciary, or trusted to avoid using her position as Trustee to further harm Orly and the Orly

17

Trust. Id.

Ironically, James v. Bernhard, 106 A.D.3d 435, 965 N.Y.S.2d 56 (1st Dept. 2013) – the only case cited by Dalia in her brief (Dalia Br. at 4) – demonstrates precisely why Dalia should not be substituted as the plaintiff in this case.   In that case Bernhard was removed as derivative action plaintiff under CPLR 1021 because "defendants have established a 'persuasive case' that 'the proper protection of the corporation's interest or the proper conduct of the litigation would be better served by the elimination or change in the identity' of the plaintiff due to a conflict of interest." 106 A.D.2d at 435 (citations omitted).  To protect the corporation and ensure the litigation was conducted in good faith, a special litigation committee free from conflict was substituted for the conflicted plaintiff. Id. Here, Dalia seeks the exact opposite – to introduce her conflicts of interest into this litigation and place Orly and the Orly Trust at risk. CPLR 1021 does not exist for that reason, and Dalia's motion to substitute should be denied.

If Dalia truly wishes for the Orly Trust to "pick up the cudgel" against the Trump Group (Dalia Br. at 5), the proper course is for her to resign, and let Alex Sussman (or some other trustee that is conflict-free and acceptable to Orly) advance those claims, if it is appropriate for the Orly Trust to do so.

## II.   DALIA'S MOTION TO HAVE THE CONFIDENTIAL SETTLEMENT AGREEMENT PROCEEDS PAID INTO COURT UNDER CPLR 2701 SHOULD BE DENIED

Dalia claims the Orly Trust is entitled to proceeds from Orly's individual settlement with the Trump Group because the CSA settled Orly Trust claims.  Dalia is wrong. See 3/20/14 Decision and Order at 4 [Docket No. 925] ("In the settlement agreement, Orly stops short of releasing derivative claims.").   That the CSA does not settle Orly Trust claims is

confirmed by, among other things, (i) the plain language of the CSA; (ii) the plain language of the Second Amended Stipulation of Settlement; and (iii) Dalia taking prior advantage of the fact that neither the CSA nor the Second Amended Stipulation of Settlement settled Orly Trust claims to continue her Dalia Delaware Action and enter into the Delaware Stipulation. See Statement of Facts, Sections C, D, F, G.

Moreover, on its face, CPLR 2701 does not support Dalia's efforts to have the CSA proceeds from the CSA paid into Court. CPLR § 2701 provides:

> **When court may order disposition of property.** The court upon motion or on its own initiative with such notice as it deems proper, may order personal property capable of delivery <u>which is the subject of the action</u>, paid into court or delivered to such person as it may direct with such security as the court shall direct, and subject to its further direction if:
>
> 1. a party has such property in his possession, custody or control as trustee for another party or where it belongs or is due to another party; or
>
> 2. a party has such property in his possession, custody and it belongs or is due to another party where special circumstances make it desirable that payment or delivery to such other party should be withheld; or
>
> 3. the ownership of such property will depend on the outcome of a pending action and no party is willing to accept possession or custody of it during the pendency of the action.

CPLR § 2701 (emphasis added).

CPLR 2701 is narrow. It only permits property "which is the subject of the action" to be paid into Court. Id. The CSA proceeds are not the subject of this action, or any other action. Accordingly, CPLR 2701 simply does not apply. For this reason alone, Dalia's "funds motion" should be denied. Remarkably, Dalia omits the phrase "the subject of the

action" when citing CPLR 2701 on page 5 of her brief, to avoid informing the Court that there is an express "subject of the action" requirement in the statute that is fatal to her motion.

Not only must the property at issue be "the subject of the action," but a party must also fit within one of the three subdivisions of CPLR 2701. Dalia's motion does not. For example, each subdivision speaks in terms of "a party." The Orly Trust, however, is no longer a party to this action. All of plaintiffs' claims have been dismissed, and Sagi and TPR have bought no claims against the Orly Trust. See Statement of Facts, Section E.

Further, Orly is not holding any CSA proceeds "as trustee for another party" nor do any of those funds "belong or is due" to Dalia or the Orly Trust (CPLR 2701(1)); Dalia does not identify any "special circumstances" making it desirable that the CSA proceeds be paid into Court (CPLR 2701(2)); and there is no question that the "ownership of the settlement funds" will not "depend on the outcome of a pending action" (CPLR 2701(3)), particularly since the action into which Dalia appears to want to insert herself no longer exists.

For each of these reasons, CPLR§ 2701 is inapplicable, and cannot serve as a legal basis for the exceptional relief Dalia seeks – to force the AG Group to pay the CSA proceeds into Court.

The four CPLR 2701 cases cited by Dalia (Dalia Br. at 6) show Section 2701 is meant for those limited instances where (i) there is a monthly stream of ongoing payments, (ii) there is no question that those payments belong to either plaintiff or defendant, and (iii) those payments are the "subject of the action." Thus, in Rice v. DiNapoli, 2009 NY Misc. LEXIS 1182 (N.Y. Sup. Ct. Apr. 21, 2009), Lade v. Levitt, 33 A.D.2d 956 (3d Dept. 1970), and Werner v. Werner, 1972 N.Y. Misc. LEXIS 1743 (N.Y. Sup. Ct. July 6, 1972), the State Comptroller

paid monthly death benefits into Court until suits between widows and ex-spouses regarding who owned those death benefits could be decided.  Similarly, in <u>Conforti v.Goradia</u>, 234 A.D.2d 237 (1st Dept. 1996), rent was paid into Court until resolution of a lawsuit between landlord and tenant involving that rent.[6]

Here, there is no monthly payment stream, neither Dalia nor the Orly Trust has any real right to any CSA proceeds, and there is no action pending where Dalia or the Orly Trust claims ownership of the CSA proceeds.  There is only a moot motion improperly brought in an action that concerned other matters.

## CONCLUSION

For each of the foregoing reasons, Orly respectfully requests the entry of an Order (i) denying Dalia's CPLR 1021 motion to substitute herself as derivative plaintiff regarding Orly Trust claims against the Trump Group in this action; (ii) denying Dalia's CPLR 2701 motion to have the Confidential Settlement Agreement proceeds paid into Court; and (iii) granting Orly such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         February 13, 2015

                          ZEICHNER ELLMAN & KRAUSE LLP

                          By:/s/Peter Janovsky_____
                             Yoav M. Griver
                             Peter Janovsky
                             Bryan D. Leinbach
                             Attorneys for plaintiff Orly Genger
                             1211 Avenue of the Americas
                             New York, New York 10036
                             (212) 223-0400

---

[6]   The other two cases cited by Dalia at p. 6 of her brief – <u>Gusinsky v. Bailey</u>, 2008 Misc. LEXIS 5811 (N.Y. Sup. Ct. Sept. 17, 2008) and <u>Clarke v. Greenberg</u>, 296 N.Y. 146 (1947) – do not even concern or address CPLR 2701. <u>Gusinsky</u> concerns the requirement that a derivative settlement be approved by the Court. Here, the Confidential Settlement Agreement did not require court approval because it did not settle derivative claims.  The court in <u>Clarke</u> held proceeds from settlement of a pure shareholder derivative lawsuit belonged to the company.  In that case, however, plaintiff brought no individual claims on his own behalf, and only settled derivative claims.

DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __March 17, 2015__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X

SAGI GENGER,                  :    14-cv-5683 (KBF)

               Plaintiff,         :

               :    ECF Case
       -against-         :

               :    [PROPOSED]
ORLY GENGER,            :    **AMENDED JUDGMENT**

               Defendants.       :
------------------------------------------------------------------------ X

      **WHEREAS** the above-captioned action having come before this Court, and the matter

HAVING COME BEFORE THE Honorable Katherine B. Forrest, United States District Judge,

the Court, on January 5, 2015, having rendered its Opinion and Order granting Sagi Genger's

("Sagi") motion for summary judgment, denying Orly Genger's ("Orly") motion for summary

judgment, denying as moot Orly's motion to disqualify and all pending motions <u>in limine</u>, and

directing the Clerk of Court to terminate this action, and the Court on March 9, 2015 having

rendered its Opinion and Order awarding Sagi $150,059.01 in attorneys' fees, it is

      **ORDERED, ADJUDGED AND DECREED**:

      1.     That for the reasons stated in the Court's Opinion and Order dated January 5,

2015, Opinion and Order dated January 23, 2015 and addition submissions to the Orders and

Judgments Clerk hereto, Sagi's motion for summary judgment is granted; Orly's motion for

summary judgment is denied; all other pending motions are denied as moot;

      2.     That for the reasons stated in the Court's Opinion and Order dated March 9, 2015,

Sagi is entitled to $150,059.01 in attorneys' fees and costs;

1

3. Sagi is hereby awarded $100,000 in base damages, plus statutory interest in the amount of $7,989 pursuant to CPLR Article 50 at 9% per annum from February 17, 2014 through entry of the Amended Judgment, and $150,059.01 in attorneys' fees and costs, for a total judgment of $258,048.01.

Dated: New York, New York
       March 17, 2015

                          SO ORDERED.

                          _____ 03/17/2015
                          KATHERINE B. FORREST
                          United States District Judge

STATE OF NEW YORK,                                    AFFIDAVIT OF SERVICE
COUNTY OF NEW YORK.                      BY UPS GROUND COMMERCIAL DELIVERY

JOHN D. DELANEY, being duly sworn, says:  that I am over the age of eighteen years, and am not a party herein, and reside in Jersey City, New Jersey and that on the 6th day of October, 2015, I served a true copy of the within:

**ORLY GENGER'S RESPONSE TO DALIA'S UNAUTHORIZED
SUPPLEMENTAL FILING ON HER ALREADY FULLY
SUBMITTED MOTION TO DISMISS**

**AFFIRMATION OF BRYAN D. LEINBACH
with Exhibits;**

by delivering into the exclusive care and custody of a representative of United Parcel Service for ground commercial delivery a true copy of the papers to the attorneys hereinafter named at the places hereinafter stated, which was properly enclosed in a pre-paid addressed wrapper of United Parcel Service and left in the custody of a representative of UPS to be sent by ground commercial delivery, directed to said attorneys at their last known addresses given below:

Steven Riker, Esq.
*Guardian Ad Litem*
LAW OFFICE OF STEVEN RIKER
110 East 59th Street, 23rd Floor
New York, New York 10022

John G. Dellaportas, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178

Robert Meister, Esq.
PEDOWITZ & MEISTER, LLP
570 Lexington Avenue, 18th Floor
New York, New York 10022

JOHN D. DELANEY

Sworn to before me this
9th day of October, 2015

NOTARY PUBLIC

ANTHONY ROSARIO
Notary Public, State of New York
No. 01RO6212071
Qualified in Bronx County
Commission Expires 10/05/20_17_

#829899

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                          File No.:      0017/2008

In the Matter of the Application of Orly
Genger to Remove Dalia Genger  as
Trustee of the Orly Genger 1993 Trust
Established on December 13, 1993, by


       ARIE GENGER,


           Grantor,


## AFFIRMATION OF BRYAN D. LEINBACH


### ZEICHNER ELLMAN & KRAUSE LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
TEL: (212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com