SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of Orly Genger to Remove Dalia Genger as Trustee of The Orly Genger 1993 Trust Established on December 13, 1993, by<br><br>ARIE GENGER,<br><br>Grantor. | File No. 2008-0017<br><br>Surrogate Nora S. Anderson<br><br>**NOTICE OF ENTRY** |

PLEASE TAKE NOTICE that attached hereto as Exhibit A is a true and correct copy of

the Order of the Surrogate's Court for the State of New York, County of New York, dated June

21, 2017, which denied the motions to dismiss of Dalia Genger and the Sagi Genger 1993 Trust.

Dated: New York, New York
        July 13, 2017

                                    KASOWITZ BENSON TORRES LLP

                                    By:_____
                                        Eric D. Herschmann
                                        Michael P. Bowen
                                        1633 Broadway
                                        New York, NY 10019

                                    *Counsel for Orly Genger*

TO: (via Email and First Class Mail)

    John Dellaportas, Esq.
    Kelley Drye & Warren LLP
    101 Park Avenue
    New York, NY 10168

    *Counsel for Sagi Genger and*
    *TPR Investment Associates, Inc.*

Robert Meister, Esq.
Pedowitz & Meister LLP
570 Lexington Avenue, 18th Floor
New York, NY 10022

*Counsel for Dalia Genger*

# EXHIBIT A

SURROGATE'S COURT : NEW YORK COUNTY
----------------------------------------X
In the Matter of the Application of
Orly Genger to Remove Dalia Genger
as Trustee of the The Orly
Genger 1993 Trust Established on
December 13, 1993, by

ARIE GENGER,

Grantor.
----------------------------------------X



New York County Surrogate's Court
Date: June 21, 2017

File No. 2008-0017

A N D E R S O N, S .

This is a proceeding by Orly Genger, the primary
beneficiary of an irrevocable inter vivos trust established in
1993 by her father, Arie Genger, seeking removal of her mother,
Dalia Genger, as trustee and the appointment of a successor
trustee. Pending are two motions to dismiss Orly's third
amended petition, one by Dalia and the other by the trustee of
the contingent remainder beneficiary, a trust Arie Genger
established for the benefit of Orly's brother Sagi (the "Sagi
Trust"). For the reasons stated below, the motions are denied.

The trust at issue (the "Orly Trust") provides for
discretionary income and principal distributions to Orly for
life, with remainder to her descendants, or, if none, to the
Sagi Trust. The original trustees and a series of successors
served until January 2008, at which time Dalia was designated
trustee. By this time, Dalia and Arie had concluded a bitter
divorce. Orly, who believed her mother "would not protect her
interests ... because of [her] animosity towards Arie, and her
collusion with Sagi" immediately commenced a proceeding in this

court, challenging the validity of her mother's appointment. In the alternative, she sought the appointment of a "special trustee" to investigate alleged "wrongful dealings concerning the assets and income of the trust." In deference to Orly's position, Dalia refrained from acting as trustee during the pendency of the application. However, on December 31, 2008, the court held that Dalia's appointment was valid under the terms of the trust and that Orly had set forth no grounds that would warrant the appointment of a "special trustee." The application was thus denied "without prejudice to renewal if future circumstances warrant[ed] such relief" (*Matter of Genger*, NYLJ, Jan. 9, 2009, at 34, col 2 [Sur Ct, NY County 2009]). Thereafter, Dalia began acting as trustee.

Seven months later, Orly commenced the instant proceeding to remove her mother as trustee and to appoint a successor trustee. Orly also sought to restrain Dalia, during the pendency of the proceeding, from selling or otherwise encumbering the Orly Trust's 19.43% interest in Trans-Resources, Inc. ("TRI"), an allegedly valuable agricultural and industrial chemical manufacturing company founded by Arie. After a hearing, the court memorialized an agreement between the parties in an order dated July 1, 2009, which directed that Dalia give 10-days' notice of any offer to purchase the shares and of any attempt by Dalia or anyone acting on her behalf to sell or otherwise encumber those shares (the "July 1 2009

2

Order").[1]

After Orly amended the petition for a third time to allege additional conduct as a basis for removal, Dalia moved to dismiss for failure to state a claim and for failure to join a necessary party, the Sagi Trust (CPLR 3211[a][7], [10]). The court directed joinder of the Sagi Trust and held the balance of Dalia's motion in abeyance pending the completion of jurisdiction (*see Matter of Genger*, NYLJ 1202666658274 [Sur Ct, NY County 2014]). After Orly served the trustee of the Sagi Trust (the "Sagi Trustee"), he moved to dismiss for lack of personal jurisdiction (CPLR 3211[a][8]), claiming that service of process upon him by registered mail in Israel where he resides was insufficient under the Hague Convention. The court granted the motion (see *Matter of Genger,* NYLJ 1202723666996 [Sur Ct, NY County 2015).

After the trustee was served process in accordance with the Hague Convention, Dalia renewed her motion to dismiss the removal petition and the Sagi Trustee moved to dismiss as well. Both movants seek dismissal on the ground that the petition fails to state a claim (CPLR 3211[a][7]). In addition, the Sagi Trustee argues that the petition should be dismissed because

---

[1]     The July 1, 2009 Order was subsequently reaffirmed by the court on August 18, 2009 and then supplemented by a stipulation dated September 8, 2010, which provided that, in addition, Dalia would give notice of any intention to vote the Orly Trust's TRI shares for any purpose.

3

Orly purportedly 1) attempted to commit a fraud against the court by making a false statement in her petition concerning her proposed successor trustee and 2) is "exploiting" this proceeding to delay Dalia's efforts to recover on behalf of the Orly Trust funds that Orly allegedly has received on the trust's behalf in settlement of various litigations in other courts, but has kept for her personal use. Orly and the guardian ad litem for Orly's unborn issue oppose the motions.

Before turning to the merits of these motions, the court notes that Dalia did not attach to her motion papers a copy of the third amended petition. This is a technical defect which could be viewed as a basis to deny Dalia's motion (see e.g. *Alizio v Perpignano*, 225 AD2d 723 [2d Dept 1996]). This court has noted previously that "filing a motion which requires the court to search its records to obtain a pleading upon which the motion is based is not an advisable litigation practice" (*Matter of Terian*, NYLJ 1202646597731, at *3 [Sur Ct, NY County 2014], *citing Sheedy v* Pataki, 236 AD2d 92 [2d Dept 1997]; *Loeb v Tanenbaum*, 124 AD2d 941 [3d Dept 1986]). However, in this instance, the court will consider the motion, since the pleading was annexed properly to the Sagi Trustee's related motion to dismiss and is therefore easily accessible for review.

Since both movants seek dismissal pursuant to CPLR 3211(a)(7), we address first whether the allegations in the

4

amended petition state sufficient grounds for removal under
SCPA § 711. On a motion to dismiss for failure to state a
claim, the court must "'accept the facts as alleged in the
[pleading] as true, accord [petitioner] the benefit of every
possible favorable inference, and determine only whether the
facts as alleged fit within any cognizable legal theory'"
(*Braddock v Braddock*, 60 AD3d 84, 86 [1st Dept 2009], *quoting
Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Respondent on the
motion may submit affidavits, but they "will almost never
warrant dismissal under CPLR 3211 unless they 'establish
conclusively that [petitioner] has no [claim or] cause of
action'" (*Matter of Lawrence*, 11 NY3d 588, 595 [2008], *quoting
Rovello v Orofino Realty Co.*, 40 NY2d 633, 635-636 [1976]; *see
also Basis Yield Alpha Fund v Goldman Sachs Group, Inc.*, 115
AD3d 128 [1st Dept 2014]). The issue of "[w]hether a
[petitioner] can ultimately establish [his or her] allegations
is not part of the calculus in determining a motion to dismiss"
(*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]).

Petitioner seeks removal under subsections 2, 3, 7, 8 of
SCPA § 711. SCPA § 711(2) provides that a fiduciary's letters
may be revoked,

> "[w]here by reason of his having wasted or improperly
> applied the assets of the estate, ... or otherwise
> improvidently managed or injured the property committed
> to his charge, ... or by reason of other misconduct in the
> execution of his office or dishonesty, drunkenness,
> improvidence or want of understanding, he is unfit for
> the execution of his office."

5

Subsections 711(3) and (7) provide a further ground for removal where a fiduciary has "wilfully refused or without good cause neglected to obey any lawful direction of the court contained in any decree or order or any provision of law relating to discharge of his duty" or "has removed property of the estate without the state without prior approval of the court." Finally, 711(8) provides for removal where a fiduciary "does not possess the qualifications required of a fiduciary by reason of substance abuse, dishonesty, improvidence, want of understanding, or ... is otherwise unfit for the execution of the office."

Here, the conduct alleged (and assumed to be true) in Orly's 31-page pleading details a course of conduct by Dalia after December 31, 2008 (the date the court determined her appointment was proper) that, if true, could be a basis for removal under the above subdivisions of SCPA § 711. Orly alleges in great detail numerous actions by Dalia that have contributed to and/or resulted in the depletion of assets of the Orly Trust or otherwise disadvantaged the Orly Trust in violation of her fiduciary duty. She offers a substantial motive for such conduct as well: a desire to punish Orly, who has maintained a relationship with her father following the divorce, and to benefit Sagi with whom Dalia maintains a close relationship.

Orly alleges that the Orly Trust and the Sagi Trust were

6

established by Arie in 1993 as an estate planning vehicle for Arie and Dalia to pass some of their substantial wealth to their children. Initially, each trust was funded with a $600,000 gift from Arie and each child's 48% interest in D & K LP ("D & K"), a family owned limited partnership which was named for "Dalia and the Kids." Dalia was general partner and owned the remaining 4% of D & K.

At about the same time that the trusts were funded, D & K purchased 240 shares (a 49% interest) in TPR Investment Associates, Inc. ("TPR"), a closely held family corporation, for $10,200,000. The shares were purchased in part with $600,000 from each trust and $50,000 from Dalia. The balance ($8,950,000) was satisfied with a recourse promissory note (the D & K Note") payable over ten years. The D & K Note was secured by a pledge of the 240 TPR shares owned by D & K. Each trust and Dalia assumed liability on the note in proportion to its/her interest in D & K. Thus, at the conclusion of the transaction, each trust had assumed liability for 48% of the D & K Note, but also through D & K obtained an indirect interest in 23.52% of TPR. Dalia, for her part, had assumed liability for 4% of the D & K Note and obtained an indirect interest in 1.96% of TPR.

At this time, Arie owned the remaining 51% of TPR. TPR also had a majority interest in TRI. D & K initially used dividends from TRI (distributed by TPR) to pay the D & K Note.

7

However, in 1999, TRI stopped paying dividends and so D & K stopped making payments on the note. No effort was made to enforce the D & K Note, however. According to Orly, everyone involved understood that the D & K Note and the pledge of TPR shares as security were part of an estate plan that would be defeated if the note were enforced by TPR.

In October 2004, when Arie and Dalia divorced, Dalia received as part of the divorce settlement Arie's 51% interest in TPR. In addition, the parties caused TPR's 52.85% interest in TRI to be divided among Arie (13.99%), the Orly Trust (19.43%) and the Sagi Trust (19.43%). The Orly Trust and the Sagi Trust also granted Arie an irrevocable lifetime voting proxy over their TRI shares. As a result, Arie and the trusts in combination had a controlling interest in TRI and TPR no longer had an interest in TRI.

According to Orly, as divorce loomed, Dalia as the general partner of D & K took steps to give Sagi control over the management of D & K. To that end, she and Sagi formed D & K GP LLC ("D & K GP). Dalia then exchanged her general partnership interest in D & K and $1.00 for a 99% membership interest in D & K GP. Sagi purchased a 1% interest in D & K GP for $1.00 and, pursuant to D & K's Limited Liability Agreement, Sagi obtained the power to select a manager of D & K GP, who would be responsible for managing D & K's assets. Sagi then selected himself to manage D & K GP. Orly claims that the creation of D

8

& K GP shielded Dalia and Sagi from any personal liability
stemming from their interests in D & K, including personal
liability relating to the D & K Note. In addition, Dalia, as
the majority shareholder of TPR, facilitated Sagi's becoming a
board member of TPR (along with Dalia) and its Chief Executive
Officer. Later (but prior to her becoming trustee) Dalia, in
exchange for $5 million, divested herself of her interest in
TPR, leaving Sagi squarely in control of TPR and its interest
in the D & K Note, while at the same time controlling D & K
through D & K GP.

Orly further alleges that, once in control of TPR and D &
K, Sagi (with the assistance of Dalia) embarked on a scheme to
benefit himself and Dalia at the expense of Arie and Orly,
which involved trying to strip the Orly Trust of its indirect
interest in TPR and direct interest in TRI. The scheme was
first aided by Dalia's insistence as part of the divorce
settlement that the original trustees of the Orly Trust and the
Sagi Trust be replaced by friends or relatives of Sagi, who
would act at her and Sagi's behest. Then, in 2008, one such
trustee of the Orly Trust, Sagi's sister-in-law Lea Fang,
resigned and appointed Dalia against the wishes of Orly.
According to Orly, Dalia in her role as trustee then became an
"active and willing participant in Sagi's scheme."

Among the many specific acts as trustee that Orly asserts
were part of the scheme and are grounds for removal is Dalia's

9

execution of an agreement as trustee with D & K GP (by Sagi)
and TPR (by Sagi) on February 9, 2009, entitled, "Meeting of
Partners of D & K LP" (the "Agreement"). The Agreement, alleged
to have been signed by Dalia for no consideration, explicitly
"clarified" the authority of D & K GP (as per an earlier
agreement executed by Lea Fang, the prior trustee of the Orly
Trust) to encumber the Orly Trust's TRI shares for the benefit
of D & K in connection with the D & K Note. The Agreement also
provided that Sagi and Dalia would be indemnified for any claim
in connection with the Agreement. According to Orly, the
purpose of the Agreement was to give TPR, which was controlled
by Sagi, the ability to deplete the Orly Trust of its assets.

Orly also alleges that Dalia failed to stop TPR from
foreclosing on the D & K Note (which she asserts was never
intended to be enforced) and from selling at auction on
February 27, 2009, D & K's 240 shares of TPR which secured the
D & K Note. TPR then purchased the shares for $2.2 million in
what Orly alleges was a "bogus sale" because the value of TPR
shares was significantly higher. The result was that D & K's
obligation on the note was reduced far less than it should have
been while D & K's interest in TPR was in effect forfeited to
TPR. This, in turn, not only rendered the Orly Trust's interest
in D & K worthless, since D &K no longer owned TPR shares, but
also left the Orly Trust liable for its proportionate share of
the deficiency (about $4.5 million) and exposed it to the

10

possibility that TPR would seek to foreclose on the Orly Trust's TRI shares to satisfy the D & K Note as the Agreement would allow.

Orly alleges that, despite numerous requests for information about Dalia's administration of the Orly Trust, she was not informed by Dalia of the foreclosure and the sale of D & K's TPR shares even though, by this time, there was no issue that Dalia was acting as trustee and was aware that TPR was enforcing the D & K Note. According to Orly, when she finally learned of the foreclosure - after it had been concluded - she commenced the instant proceeding to remove Dalia and obtained the July 1 2009 Order. However, Dalia repeatedly violated the July 1 2009 Order by executing on behalf of the Orly Trust a series of agreements in 2011 and 2012 that negatively impacted the trust and its interest in TRI.[2]

One such agreement was a settlement with TPR that Dalia executed as trustee in October 2011. Pursuant to such agreement, the Orly Trust transferred its interest in D & K to TPR and disclaimed any interest it might have in TPR directly or indirectly (through D & K). TPR, for its part, cancelled the Orly Trust's share of the deficiency as guarantor of the D & K Note (about $4.5 million) and the Orly Trust executed a

---

[2]      During the course of this proceeding, Orly, on behalf of the Orly Trust, commenced lawsuits in New York County Supreme Court relating to the Orly Trust's TRI shares and D & K's interest in TPR. Orly alleges that by executing these agreements in 2011 and 2012 Dalia also violated restraints issued in those actions as well.

11

$4,000,000 promissory note in favor of TPR. In addition, TPR relinquished any claim it might have to the Orly Trust's TRI shares. Orly alleges that the settlement agreement was unfavorable for a variety of reasons, including that it unnecessarily saddled the Orly Trust with debt "that it has no hope of paying off" and improperly sought to entrench Dalia as trustee, since her removal as trustee was made an "event of default" under the note.

These allegations and others raise significant issues about whether Dalia's efforts as trustee have been calculated to benefit herself and others at the expense of the Orly Trust in violation of her fiduciary duty and whether she poses an ongoing threat to the assets of the Orly Trust. In other words, Dalia's fitness to serve within the meaning of SCPA § 711 has been squarely placed in issue in the petition. In view of the above, movants' arguments are insufficient to support dismissal for failure to state a claim.

For example, movants rely upon self-serving justifications for Dalia's conduct, when any purported explanation is irrelevant under circumstances where the allegations in the petition are assumed to be true (*see Braddock v Braddock*, 60 AD3d 84, *supra*). Movants also challenge Orly's allegations with matters outside the pleading. However, movants' submissions and arguments in this regard do not conclusively establish that Orly has no claim for removal (*see Basis Yield Alpha Fund*

12

*v Goldman Sachs Group, Inc.*, 115 AD3d 128, *supra*). Moreover, such submissions are more appropriate on a motion for summary judgment rather than on the present motions. Movants do not request that the court convert the motions into ones for summary judgment (CPLR 3211[c] and the court, on its own, declines to do so (*id.*). This proceeding, despite the time that has elapsed since its commencement, is still in its pre-discovery stage and should continue in due course as contemplated under the SCPA and CPLR.

As for the other arguments raised by the Sagi Trustee, none provides a basis for dismissal under CPLR 3211. His argument that Orly committed a "fraud on the court" for which dismissal is warranted is without merit. There is a sharp factual dispute as to the truth or falsity of Orly's statement that the successor trustee she nominated, Joel Isaacson, "is not acquainted with any members of the Genger family." In any event, the alleged fraud on the court is not, as the trustee argues, a "central aspect of this case." Rather, it is tangential to the main issue before the court, namely Dalia's fitness to serve, and involves one statement in the petition. Under these circumstances, the case relied upon by the Sagi Trustee, *CDR Creances S.A.S. v Cohen* (23 NY3d 307, 323 [2014]), is plainly inapposite. In that case, unlike here, the court found clear and convincing evidence of "numerous instances of perjury, subornation of perjury, witness tampering and

13

falsification of documents by defendants."

Equally unavailing is the Sagi Trustee's argument that dismissal is warranted because "Orly is exploiting this proceeding to delay a determination on [Dalia's] application for the return of $32.3 million that Orly monetized and retained from claims she brought on behalf of the Orly Trust [in Supreme Court, New York County]." Again, there is a sharp factual dispute concerning the accuracy of the Sagi Trustee's allegation. Moreover, this issue bears no relationship to the issue before the court on this motion, namely whether Orly's third amended petition states a claim for Dalia's removal. Significantly, the Sagi Trustee cites no authority to support dismissal under these circumstances (even assuming arguendo they are true), and the court is aware of none.

Moreover, the Sagi Trustee's expressed concern as to delays in this proceeding is difficult to reconcile with his decision to defer a determination of the merits of this proceeding by moving to dismiss the petition based upon the waivable and ultimately curable defense of personal jurisdiction. As noted above, this tactical maneuver not only required a decision from the court, but then Orly's service of process upon the Sagi Trustee under the Hague Convention. The Sagi Trustee then appeared (as he could have done at the

14

outset) and the instant motions were filed.

Based upon the foregoing analysis, the motions to dismiss are denied. This decision constitutes the order of the court.

Dated: June 21, 2017

_____
SURROGATE

15

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of Orly Genger to
Remove Dalia Genger as Trustee of The Orly Genger
1993 Trust Established on December 13, 1993, by

ARIE GENGER

Grantor

File No. 0017/2008

**AFFIRMATION OF SERVICE**

I, Andrew R. Kurland, am an attorney admitted to practice before the Courts of the State

of New York, am not a party to this action. I hereby affirm the following under penalty of

perjury:

On July 13, 2017, on behalf of petitioner Orly Genger, I caused to be served by U.S. First

Class Mail, postage prepaid, a true and correct copy of the (1) Notice of Entry and (2) the Order

of the Surrogates Court for the State of New York, County of New York, dated June 21, 2017

("Exhibit A"), on the parties to this action through their counsel, as follows:

Counsel to Dalia Genger:

> Robert Meister, Esq.
> Pedowitz & Meister, LLP
> 570 Lexington Ave., 18th Floor
> New York, New York 10022

Counsel to Sagi Genger:

> John Dellaportas, Esq.
> Kelley, Drye & Warren, LLP
> 101 Park Avenue
> New York, New York 10178

Dated: New York, New York
July 17, 2017

Andrew R. Kurland

ALL-STATE LEGAL®
07181-BF • 07182-BL • 07183-GY • 07184-WH
07210   www.aslegal.com

*Index No.*    0017        *Year 20*   08

SURROGATE'S COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK

---

In the Matter of the Application of Orly Genger to Remove Dalia Genger as Trustee of The
Orly Genger 1993 Trust Established on December 13, 1993, by

ARIE GENGER

Grantor

---

## NOTICE OF ENTRY
## AFFIRMATION OF SERVICE

---

*Attorney(s) for*

   *Petitioner*

          *Office Address & Tel. No.:*

---

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State,
certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed
document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not
obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are
not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential
claims for personal injury or wrongful death, the matter was not obtained in·violation of 22 NYCRR.1200.41-a.*

*Dated:* ....July 13, 2017........        Signature ............................................................................................
                                                                   Michael P. Bowen
                                         Print Signer's Name .......................................................................

---

*Service of a copy of the within*                                          *is hereby admitted.*

*Dated:*

                                         *Attorney(s) for*  *Petitioner*

---

*PLEASE TAKE NOTICE*

☐  *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within-named Court on*                *20*
ENTRY

☐  *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF   *Hon.*                                    *, one of the judges of the within-named Court,*
SETTLEMENT  *at*
            *on*              *20*        *, at*            *M.*

*Dated:*

                                         *Attorney(s) for*

                                              *Office Address & Tel. No.:*
*To:*

*Attorney(s) for*

**Attorney's Certification**

☐ certify that the annexed

has been compared by me with the original and found to be a true and complete copy thereof.

**Attorney's Verification by Affirmation**

☐ say that: I am the attorney of record, or of counsel with the attorney(s) of record, for
. I have read the annexed

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following.

The reason I make this affirmation instead of                                    is

I affirm that the foregoing statements are true under penalties of perjury.

Dated:

....................................................................................................................

*(Print signer's name below signature)*

**Check Applicable Box**

STATE OF NEW YORK, COUNTY OF                                    ss:

being sworn says: I am

**Individual Verification**

☐ in the action herein; I have read the annexed

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

**Corporate Verification**

☐ the                                    of

a corporation, one of the parties to the action; I have read the annexed

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

My belief, as to those matters therein not stated upon knowledge, is based upon the following:

Sworn to before me on                                    , 20

....................................................................................................................

*(Print signer's name below signature)*

....................................................................................

STATE OF NEW YORK, COUNTY OF                                    ss:

being sworn says: I am not a party to the action, am over 18 years of age and reside at

On                                    , 20    , I served a true copy of the annexed
in the following manner:

**Check Applicable Box**

**Service by Mail**

☐ by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service, addressed to the address of the addressee(s) indicated below, which has been designated for service by the addressee(s) or, if no such address has been designated, is the last-known address of the addressee(s):

**Personal Service**

☐ by delivering the same personally to the persons at the address indicated below:

**Service by Facsimile**

☐ by transmitting the same to the attorney by facsimile transmission to the facsimile telephone number designated by the attorney for that purpose. In doing so, I received a signal from the equipment of the attorney served indicating that the transmission was received, and mailed a copy of same to that attorney, in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service, addressed to the address of the addressee(s) as indicated below, which has been designated for service by the addressee(s) or, if no such address has been designated, is the last-known address of the addressee(s):

**Service by Electronic Means**

☐ by transmitting the same to the attorney by electronic means upon the party's written consent. In doing so, I indicated in the subject matter heading that the matter being transmitted electronically is related to a court proceeding:

**Overnight Delivery Service**

☐ by depositing the same with an overnight delivery service in a wrapper properly addressed, the address having been designated by the addressee(s) for that purpose or, if none is designated, to the last-known address of addressee(s). Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

Sworn to before me on                                    , 20

....................................................................................

....................................................................................................................

*(Print signer's name below signature)*